**No. 22-16859**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

ANGELA WILLIAMS, JANE DOE #1, AND JANE DOE #2,

*Plaintiffs-Appellants*,

v.

JOSEPH LOMBARDO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF NEVADA; AARON FORD, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NEVADA, CITY OF LAS VEGAS, CLARK COUNTY, AND NYE COUNTY

*Defendants-Appellees*.

On Appeal from the United States District Court

for the District of Nevada

No. 2:21-CV-01676

Hon. Andrew P. Gordon

# EXCERPTS OF THE RECORD Vol. I OF I

Jason D. Guinasso (SBN# 8478)
Hutchison & Steffen, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

Benjamin W. Bull (SBN#388206)
Peter A. Gentala (SBN#021789)
Dani Bianculli Pinter (SBN#120441)
Christen M. Price (SBN#1016277)
National Center on Sexual
Exploitation
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Attorneys for Appellants Angela Williams,
Jane Doe #1, and Jane Doe #2*

# EXCERPTS OF THE RECORD COMBINED

| Title of Document | District Court Docket No. | Excerpts of Record Page No | Excerpts of Record Volume No. |
|---|---|---|---|
| Judgment- Filed November 7, 2022 | 192 | **ER-4** | **I** |
| Order (1) Directing Entry of Final Judgment Against Government Defendants and (2) Staying Case Pending Appeal – Filed November 7, 2022 | 191 | **ER-5** | **I** |
| Minutes of Proceedings – Motion Hearing held on 11/4/2022 – Filed November 4, 2022 | 189 | **ER-6–ER-7** | **I** |
| Reporter's Transcript of Proceedings of November 4, 2022, Hearing re: Motion for Interlocutory Appeal filed by Plaintiff and Government Defendants Motion for Entry of Final Judgment – Filed January 31, 2023 | 196 | **ER-8–ER-29** | **I** |
| Order on Motions to Dismiss, Strike, and Intervene – Filed July 18, 2022 | 171 | **ER-30–ER-48** | **I** |
| First Amended Complaint For Declaratory and Injunctive Relief Jury Trial Demanded – Filed November 10, 2021 | 49 | **ER-49–ER-106** | **I** |
| Notice of Appeal- Filed on December 1, 2022 | 193 | **ER-107–ER-118** | **I** |
| Docket | N/A | **ER-119–ER-140** | **I** |

AO450 (NVD Rev. 2/18) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANGELA WILLIAMS, et al.,

Plaintiffs,

v.

STEVE SISOLAK, et al.,

Defendants.

JUDGMENT IN A CIVIL CASE

Case Number: 2:21-cv-01676-APG-VCF

__ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

__ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

X **Decision by Court.** This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

that final judgment is entered in favor of defendants Steven Sisolak, Aaron Ford, Clark County, Nye County, and the City of Las Vegas, and against plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 on all claims among those parties.

11/7/2022
Date

DEBRA K. KEMPI
Clerk

/s/ H. Magennis
Deputy Clerk

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANGELA WILLIAMS, et al.,

Plaintiffs,

v.

STEVE SISOLAK, et al.,

Defendants.

Case No.: 2:21-cv-01676-APG-VCF

**Order (1) Directing Entry of Final Judgment Against Government Defendants and (2) Staying Case Pending Appeal**

On November 4, 2022, I granted the government defendants' motion for certification and entry of final judgment under Rule 54(b). ECF No. 175. I also ordered that the proceeding against the remaining defendants is stayed pending the appeal of the judgment by the plaintiffs.

I THEREFORE ORDER the clerk of the court to enter final judgment in favor of defendants Steven Sisolak, Aaron Ford, Clark County, Nye County, and the City of Las Vegas, and against plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 on all claims among those parties.

I FURTHER ORDER that this case is stayed as to the plaintiffs and the remaining defendants while the case against the government defendants is on appeal. Should any party wish to lift the stay, they may file a motion to do so.

DATED this 7th day of November, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

**From:** cmecf@nvd.uscourts.gov <cmecf@nvd.uscourts.gov>
**Date:** Friday, November 4, 2022 at 4:48 PM
**To:** cmecfhelpdesk@nvd.uscourts.gov <cmecfhelpdesk@nvd.uscourts.gov>
**Subject:** Activity in Case 2:21-cv-01676-APG-VCF Williams et al v. Sisolak et al Order on Motion for Certificate of Appealability

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**District of Nevada**

## Notice of Electronic Filing

The following transaction was entered on 11/4/2022 at 4:47 PM PDT and filed on 11/4/2022

**Case Name:** Williams et al v. Sisolak et al
**Case Number:** 2:21-cv-01676-APG-VCF
**Filer:**
**Document Number:** 189(No document attached)

**Docket Text:**
**MINUTES OF PROCEEDINGS - Motion Hearing held on 11/4/2022 before Judge Andrew P. Gordon. Crtrm Administrator: *M. Johansen*; Pla Counsel: *Jason Guinasso, Peter Gentala, Christen Price*; Def Counsel: *Brandon Thompson, Sabrena Clinton, Joel Browning, Brent Ryman*; Court Reporter: *Paige Christian*; Time of Hearing: *9:03 a.m. - 9:29 a.m.*; Courtroom: *6C*; The court heard arguments of counsel regarding the plaintiffs' [172] motion for certification of interlocutory appeal and the government defendants' [175] motion for certification and entry of final judgment. As stated on the record, the plaintiffs' motion is denied, and the defendants' motion is granted under rule 54(b). This case is stayed from further litigation while the appeal is pending. Any party seeking to lift the stay may file a motion to do so. The minutes of this proceeding and the transcript will serve as the court's official ruling-no separate order to follow. (no image attached) (Copies have been distributed pursuant to the NEF - MAJ)**

**2:21-cv-01676-APG-VCF Notice has been electronically mailed to:**

Deanna L Forbush DForbush@foxrothschild.com, jdeangelis@foxrothschild.com, sharper@foxrothschild.com

Gregory Louis Zunino GZunino@ag.nv.gov, sgeyer@ag.nv.gov

Ogonna M Brown OBrown@lrrc.com, dberhanu@lewisroca.com, jhess@lewisroca.com, klopez@lewisroca.com, mdale@lrrc.com, nlord@lewisroca.com, ogonna-brown-4984@ecf.pacerpro.com, ombcalendar@lewisroca.com

Paul M Bertone pbertone@etsreno.com, squigley@etsreno.com

Sabrena Clinton SClinton@ag.nv.gov, LJCombs@ag.nv.gov, mpizzariello@ag.nv.gov, ssouthworth@ag.nv.gov

Jeffrey L Galliher jgalliher@lasvegasnevada.gov, ccorwin@lasvegasnevada.gov, ckelly@lasvegasnevada.gov, jandrews@lasvegasnevada.gov, khansen@lasvegasnevada.gov

Brent L Ryman bryman@etsreno.com, jhumes@etsreno.com, jramirez@etsreno.com

Jason D. Guinasso jguinasso@hutchlegal.com, avelto@hutchlegal.com, bfrancis@hutchlegal.com, paralegals-reno@hutchlegal.com

Rex Garner rgarner@foxrothschild.com, dloffredo@foxrothschild.com

John M Orr jorr@foxrothschild.com, roya.rokni@lewisbrisbois.com

Joel K Browning joel.browning@clarkcountyda.com, Tawana.Thomas@clarkcountyda.com

Casey Wallace cwallace@wallaceallen.com, service@wallaceallen.com, vbaker@wallaceallen.com

Zachary Youngsma zack@bradshaferlaw.com, brad@bradshaferlaw.com, info@bradshaferlaw.com, matt@bradshaferlaw.com

Benjamin W Bull bbull@ncose.com

Peter Gentala pgentala@ncoselaw.org

Dani Bianculli Pinter dpinter@ncoselaw.org

Christen M Price cprice@ncoselaw.org, mvanoss@ncoselaw.org

William X King wking@wallaceallen.com

Deanna L Forbush dforbush@foxrothschild.com, sharper@foxrothschild.com

Russell G Greer russmark@gmail.com

**2:21-cv-01676-APG-VCF Notice has been delivered by other means to:**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANGELA WILLIAMS, et al., Plaintiffs, v. STEVE SISOLAK, et al., Defendants.

Case No. 2:21-cv-01676-APG-VCF

Las Vegas, Nevada
Friday, November 4, 2022
9:03 a.m. - 9:29 a.m.
UNLV Moot Courtroom
MOTION HEARING

***C E R T I F I E D C O P Y***

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THE HONORABLE ANDREW P. GORDON
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES: (See next page.)

REPORTED BY: PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
United States District Court
333 South Las Vegas Boulevard
Las Vegas, Nevada 89101

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**APPEARANCES:**

For Plaintiffs:

**JASON D. GUINASSO, ESQ.**
*HUTCHISON & STEFFEN, PLLC*
5371 Kietzke Lane
Reno, NV 89511
(775) 853-8746
E-mail: jguinasso@hutchlegal.com

--*AND*--

**CHRISTEN M. PRICE, ESQ.** (*Pro Hac Vice*)
1201 F Street NW
Suite 200
Washington, DC 20004
(202) 393-7245
E-mail: cprice@ncoselaw.org

--*AND*--

**PETER GENTALA, ESQ.** (*Pro Hac Vice*)
1201 F Street NW
Suite 200
Washington, DC 20004
(202) 393-7245
E-mail: pgentala@ncoselaw.org

For Defendants Steve Sisolak and Aaron Ford:

**SABRENA CLINTON, ESQ.**
*NEVADA OFFICE OF THE ATTORNEY GENERAL*
555 E. Washington Avenue
Suite 3900
Las Vegas, NV 89101
(702) 486-5708
E-mail: sclinton@ag.nv.gov

///

**APPEARANCES CONTINUED:**

For Defendant Clark County:

**JOEL K. BROWNING, ESQ.**
*DISTRICT ATTORNEY'S OFFICE*
500 S. Grand Central Parkway
Suite 200
Las Vegas, NV 89155
(702) 455-4761
E-mail: joel.browning@clarkcountyda.com

--*AND*--

**BRANDON M. THOMPSON, ESQ.**
*DISTRICT ATTORNEY'S OFFICE*
500 S. Grand Central Parkway
Suite 200
Las Vegas, NV 89155
(702) 455-4761
E-mail: brandon.thompson@clarkcountyda.com

For Defendant Nye County:

**BRENT L. RYMAN, ESQ.**
*ERICKSON, THORPE & SWAINSTON, LTD.*
1885 South Arlington Avenue
Suite 205
Reno, NV 89509
(775) 786-3930
E-mail: bryman@etsreno.com

LAS VEGAS, NEVADA; FRIDAY, NOVEMBER 4, 2022; 9:03 A.M.

--o0o--

P R O C E E D I N G S

**COURTROOM ADMINISTRATOR:** Angela Williams, et al., vs. Steve Sisolak, et al., 21-cv-01676-APG-VCF.

Counsel, please make your appearances, starting with the plaintiffs.

**MS. PRICE:** Christen Price, Your Honor, together with --

*(Whereupon, the reporter interrupts to preserve the record.)*

**THE COURT:** Speak into the microphone. There we go.

**MS. PRICE:** Christen Price for the plaintiffs together with my colleagues, Jason Guinasso and Peter Gentala, all on behalf of the plaintiffs.

**THE COURT:** Good morning to all of you.

**MR. THOMPSON:** Brent Thompson, Your Honor, with government defendants with my associates --

**MR. BROWNING:** Joel Browning on behalf of Clark County, Your Honor.

**MS. CLINTON:** Sabrena Clinton on behalf of Governor Sisolak and AG Ford.

**MR. RYMAN:** Good morning, Your Honor. Brent Ryman on behalf of Nye County --

**THE COURT:** Thank you. Good morning to all of you.

There are two motions on this case. There is a motion for interlocutory appeal that was filed by plaintiff, and the government defendants have moved for entry of final judgment.

It seems to me that from a practical standpoint, everybody's on the same page. There ought to be an immediate appeal. The question is how to go about the mechanism.

Is that correct? Do the plaintiffs agree to that?

**MS. PRICE:** Yes, Your Honor.

**THE COURT:** And the defense?

**MR. THOMPSON:** Yes, Your Honor.

**THE COURT:** All right. And plaintiffs prefer to proceed with the appeal but would prefer a setting of the rest of the action against the remaining defendants while the appeal is pending; is that right?

**MS. PRICE:** That's correct, Your Honor.

**THE COURT:** All right. And the government defendants don't really care what happens in the underlying case while it's on appeal because you're out of the case; is that correct?

**MR. THOMPSON:** That is correct.

**THE COURT:** All right. So my real focus this morning is on, why does it matter which mechanism we use for the appeal?

So with that being said, I'll ask the plaintiff if you can go ahead and argue and focus in on that issue.

**MS. PRICE:** Thank you, Your Honor. And may it please the Court.

 Is there a way I can reserve two minutes of my time for rebuttal?

**THE COURT:** Sure. I'm not going to be real sickly about time, so just jump in.

**MS. PRICE:** Okay. Thank you, Your Honor.

**THE COURT:** I think you might want to point the microphone down just a little bit or pull it closer to you. You might not -- there you go. Thank you.

**MS. PRICE:** Thank you. This case is about an ecosystem where slavery thrives. Private and public actors have cultivated and enabled an environment hospitable to sexual abuse for profit in which my clients were sex trafficked by legal licensed businesses. So the government defendants eager to remove themselves, have --

*(Whereupon, the reporter interrupts to preserve the record.)*

**THE COURT:** Slow down because we're having problems with the audio.

**MS. PRICE:** Sorry about that.

**THE COURT:** That's okay.

**MS. PRICE:** In a case about systemic laws, plaintiffs should be allowed to bring a case against the system and so seek two things: Permission to appeal, but also to not have the case broken up before they have a chance to -- so to Your Honor's question about why defendants would prefer the certification, we

are concerned with the case becoming severable as a result of final judgment being entered specifically with respect to the efficiency point in the sense that if the case were to proceed to final judgment and then as to Sapphire and Chicken Ranch, discovery were to proceed, there would be potentially a need for duplication and redo of discovery if the Ninth Circuit were to take the appeal, would reverse, government defendants are back in the case.

Just to give an example, with respect to Nye County, plaintiffs would be seeking information on their licensing process for both the women at the brothel, but the brothel itself. And that would implicate communications with Nye County and interactions with the County, which the defendants could object to on relevance grounds or something like that. We could end up back here before you in a discovery dispute, but also, if there's a reversal by the Ninth Circuit, we would have to basically redo that discovery and ask those questions of both Nye County and Chicken Ranch --

**THE COURT:** If I -- if I enter judgment and don't stay the underlying case, in theory, you could still conduct discovery against the government entities, either treat them as parties and use Rule 26 for depositions and things like that or Rule 45 for subpoenas for depositions for a nonparty.

I suppose, it's a little more difficult if they're considered nonparties to get interrogatories, requests for

 admissions, and the like as nonparties. But certainly, Rule 45, subpoenas duces tecum, things like that, allow you to get discovery from them.

So from a practical standpoint, are you that much injured if discovery proceeds?

**MS. PRICE:** Yes, Your Honor. I think the concern is that there would be much more to dispute about, and so, there would be an inefficiency kind of built in there. And there isn't really an injury to the plaintiffs in having the whole thing stayed and be able to take potentially all of the discovery together, particularly because the plaintiffs allege that the defendants have reenforced indemnity to each other and it's in a systemic way. And so, we don't want the case to be viewed in fragments because it's really about an ecosystem.

**THE COURT:** Your motion implies but doesn't specifically come out and request a stay. If I grant it under 1292(b), do you -- I think I have the inherent power to stay the case down below.

Is that what you want if I grant 1292(b)?

**MS. PRICE:** Yes, Your Honor. If you grant the 1292(b) certification, plaintiffs would want a stay of the full case.

**THE COURT:** Okay. So then, the next step becomes -- I'm a little concerned that the motion itself doesn't come right out and say, We want a stay.

So my concern is that the remaining defendants -- Sapphire, the brothels, the strip clubs -- are on notice of that, so my thought is we'd have to have another motion for stay at that point so they could chime in, at least, and give them due process to be heard.

**MS. PRICE:** Yes. And plaintiffs would be happy and would intend to move for a stay if the 1292(b) certification is granted. We prefer that.

**THE COURT:** Okay. All right. I didn't mean to cut you off.

Anything further?

Go ahead.

**MS. PRICE:** Plaintiffs also would just note that the Ninth Circuit has found final judgment entry to be premature where the claims were inherently inseverable, both legally and factually, for claims that remain in a case if there weren't a mutual compelling circumstance to justify and recommend entry. And here, sex trafficking survivors have alleged that a highly-connected group of defendants are reenforcing and enabling each other, and so, a just reason going back to the 54(b) factors for delaying final judgment is --

*(Whereupon, the reporter interrupts to preserve the record.)*

**MS. PRICE:** Sorry about that. Here, sex trafficking survivors have alleged a highly-connected group of defendants is

reenforcing and enabling each other. Thus, a just reason for delaying entry of final judgment is that we don't want parties alleged to have commuted to be hermetically sealed off from each other.

**THE COURT:** If -- if I grant 54(b) certification as to defendants -- the government defendants' request and stay the case, can you live with that?

**MS. PRICE:** Yes, Your Honor. As long as the case isn't being severed, the plaintiffs can -- can live with that.

**THE COURT:** All right. And if I grant -- back -- to circle back to the question I asked before, if I grant 54(b), can I stay the case now, or do we think we still need to have another motion to stay so that the remaining defendants can be heard?

I just don't recall off the top of my head if the -- if the 54(b) motion included a request to stay.

**MS. PRICE:** I'm not certain off the top of my head, Your Honor, but we'd be happy to brief it.

**THE COURT:** Okay. All right. We'll look at that issue another day.

Okay. Anything further?

**MS. PRICE:** Just to close, Your Honor, standing is a controllable question of law. Every defendant where there are multiple players in this ecosystem remain in the case. As it relates to the 13th Amendment and the Trafficking Victims Protection Act, this is an issue of first impression and have

extraordinary importance to women's rights, to which the Ninth Circuit has already (indiscernible) and a case about systemic (indiscernible). We want to be able to bring the case against the systems, so accordingly, plaintiffs ask the Court permission to appeal.

**THE COURT:** Thank you.

**MS. PRICE:** Thank you, Your Honor.

**THE COURT:** All right. For the defense.

**MR. THOMPSON:** Thank you, Your Honor. And I'd also like to reserve time for rebuttal.

The Court has honed in on the purpose of this hearing today. It's not for the immediate vindication of plaintiffs' rights with the allegations. It's not to address any underlying allegations or challenges to the systemic profits of legalized prostitution nor is the ability to appeal right now.

As the Court mentioned, we're just trying to determine the appropriate vehicle for appeal and the parties' status going forward from there.

So our position is that section 20 -- I'm sorry, 1292(b) motion to stay is improper. The Court noticed the stay issue. You mentioned that several times. And I think that was the main concern here is that it sort of defeats the ability of the plaintiffs to vindicate the right against the other defendants. A stay here would completely halt all arguments and procedure in this case.

It's -- they mention that the -- I'm sorry, that the defendants are inseverable. However, the allegations made against the government defendants, the strategy and the discovery needed do not require them to be in the case currently. It does not require them to be argued with the other defendants.

So in order to grant a 1292(b) motion, the plaintiffs would need to prove that there's a controlling question of law (indiscernible) and they can -- advance the ultimate determination of this litigation. This is an and, not an or.

The plaintiffs in their motion spent a lot of time in the first two, but they very rarely address the third question. And in -- as I mentioned before, the stay itself automatically defeats that. It defeats advancing this litigation. This stays their proceedings against the other defendants as well as they're requesting to stay and appeal in order to add parties back in. That's going to expand. It's not going to --

**THE COURT:** But do you care about a stay if you're on appeal even if I grant 54(b), as you're requesting?

**MR. THOMPSON:** If 54(b) is granted, then the parties are substantially out of the question unless the unfortunate happens and they reverse, but --

**THE COURT:** Well, then that leads to the point that's the plaintiff's concern that if they're, quote/unquote, out of the case on appeal and discovery is not stayed, they have difficulty obtaining information from your clients. As I

 suggested, Rule 45 exists to allow subpoena duces tecum and the like, but they wouldn't -- I guess that's the point, whether they would be able to use Rule 33 for interrogatories, Rule 26 for depositions, things like that.

**MR. THOMPSON:** Correct. And I'd also note that there's 30(b)(6) deponents would be available even as nonparties, so they'd have that available to them.

Again, I think their ability to obtain discovery, whatever they need for government defendants would not be harmed by granting 54(b) and then being out of the case.

They've also stated the controlling question of law regarding the issue of standing under the 13th Amendment. And it's been held -- the question of law which the Court ruled on and has considered the facts are not controlling questions. They didn't address, though, how far that --

**THE COURT:** Well, why is it a standing and controlling question here with regard to your clients?

**MR. THOMPSON:** They're trying to determine whether or not --

**THE COURT:** That's where the compelling issue, in a sense, with standing.

**MR. THOMPSON:** Okay.

**THE COURT:** Standing is one of the significant and compelling issues here.

Why is that a controlling question that the Ninth

Circuit would say, Okay. Let's take it up?

**MR. THOMPSON:** Well, the standing would determine whether or not the defendants stay in the case or not. That's their point.

**THE COURT:** Wouldn't that materially affect the outcome of litigation, then, and therefore, it's sufficient for appeal? Or perhaps I'm misinterpreting --

**MR. THOMPSON:** I think it would affect the outcome of the litigation materially, I guess, is an argument. But there is the concern that these can go separately, as well. They're not so much interconnected that the Court ruled on that would require the defendants to stay in.

**THE COURT:** I understand. Thank you.

**MR. THOMPSON:** Moving into the 54(b) aspect of it, we've already established there's multiple parties here, and there's multiple claims, so we have that problem there of more than one claim for relief for multiple parties involved. The Court has made a final judgment on all the defendants, so we have that. The only concern here is if there's any just reason for delay. And we established there's no reason to delay entering a final judgment because it would not hamper the plaintiffs pursuing not only their defendants, the sex industry defendants, but if they reverse, then they can still come back and deal with the government defendants.

**THE COURT:** Doesn't that create inefficient

litigation, though, if I don't stay the underlying case? because they'll have to repeat -- I guess, in theory, if they take depositions while your clients are on appeal, and then for some reason, they get reversed and it comes back down, arguably, you get to retake those depositions because you were parties to those, things like that.

So doesn't that create inefficiencies if I don't stay the underlying litigation?

**MR. THOMPSON:** I would -- I guess, it's a possibility. Maybe not inefficient, but it might cause a negligible delay, but I don't think it's inefficient delay.

**THE COURT:** Okay.

**MR. THOMPSON:** And if Your Honor has no other questions, I'll submit --

**THE COURT:** You addressed it. Thank you, sir.

All right. Any final rebuttal from the plaintiffs?

Since there's two motions, I'll go back to the defendant for final words.

**MS. PRICE:** Yes. And thank you, Your Honor. Just wanted to clarify one point with respect to authority and what I think the defendants were arguing and -- as to the mixed -- potential mixed question of fact of law under the question of law prong, which is simply that standing is treated as a question of law even when there is some factual analysis due to the fact that injuries are being analyzed. The Ninth Circuit

has held --

*(Whereupon, the reporter interrupts to preserve the record.)*

**MS. PRICE:** Including in *Barnhart v. County of Los Angeles* in 2002.

And then with respect to the efficiency point, it seems that the defendants have more or less admitted that there would be an inefficiency in not staying the case, severing, and continuing with multiple cases with respect to the point plaintiffs have made about it being an ecosystem and inefficiencies inherent in combining the cases back together.

So unless Your Honor has any further questions, that's all from the plaintiffs.

**THE COURT:** I had one follow-up question I forgot to ask both of you in the first part, and it's unrelated, in a sense, to the present motion. But there were two motions for protective order that were filed, ECF No. 2 and ECF No. 50. Magistrate Judge Ferenbach administratively closed those two motions without ruling on them pending resolution of the motions that I was considering back in the day.

Now that I've ruled on those, those two motions, in a sense, reignite. My recollection is these were two motions to keep the plaintiffs' names as Doe --

**MS. PRICE:** Yes, Your Honor.

**THE COURT:** -- I guess, the question now becomes now

 that those dispositive motions have been ruled upon, what do we want to do with those motions for protective order? Since it's going up on appeal, if I stay the case, do we want to keep those motions administratively closed until it comes back, or what's your thought?

**MS. PRICE:** Yes, Your Honor. The plaintiffs would prefer for the motions to remain administratively closed for as long as the case is stayed.

**THE COURT:** Is on appeal, at least --

**MS. PRICE:** Or is on appeal. Yes.

**THE COURT:** All right. Thank you for that.

All right. Anything else from the defense?

And if you'll address that issue, as well, as far as closing the case -- or those motions, I meant.

**MR. THOMPSON:** Thank you, Your Honor. Regarding the -- those motions, we have no objection to closing that.

I do just want to mention the defendants are not opposed to a stay. We still argue that the 54(b) vehicle is the proper vehicle.

We would address the plaintiffs' arguments regarding systemic -- or a system within -- regarding their allegations. Other than that, no allegations are proof -- proof have been provided -- there's not factual allegations as to Clark County, and Nye County is a different jurisdiction with different laws that are not applicable there.

One minor thing I would just mention the plaintiffs rely on the *Morris (indiscernible)* case for the intertwined nature of the claims. And I would just note that the Court's own analysis mentions that these parties were separately trafficked. Their positions were separate from each other and they're distinct. So it's an analysis that was already brought up in submission and ruled on by the Court that substantiates the lack of interconnection between all the parties.

And if the Court has no further questions, I will submit on that.

**THE COURT:** Let me check my notes. I think you picked up on -- got it. Thank you, sir.

*(Pause.)*

**THE COURT:** All right. I guess I'm going to rule on this. Frankly, it's one of the easier ones I get to do because the parties are mostly in agreement on what needs to happen from a practical standpoint. It's just a question of which mechanism is the proper way to go about it.

I'm going to rule. I'm going to deny the plaintiffs' motion and grant the defendants' motion under Rule 54(b). I think that's the more proper vehicle on which to take this up on appeal. My July 2022 order was a final order dismissing all of the claims against the government defendants with prejudice, so that's properly under 54(b).

But let me make a note for purposes of appeal that

 under 28 U.S.C. 1292(b), which is the preferred mechanism for the plaintiffs, I can certify and I'll enter a final order for interlocutory appeal if the order does three things. One, it involves a controlling question of law as to which there's substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate determination of litigation. Those are the three factors I have to look at.

The plaintiffs bear the burden of establishing all three of those because they're the movant, and the Ninth Circuit has held several times that certification under 1292(b) is for exceptional situations, not just difficult rulings in hard cases. So the standard is fairly high.

I think the plaintiffs have established that the standing issue in this case is a controlling question of law because its resolution could materially affect the outcome of the case, and immediate appeal may also materially advance interest of the parties because an early answer to the same question and whether the defendants could -- I'll just say the government found to be held liable will materially advance the case.

Where I am troubled is I don't think the plaintiffs have established that there are substantial grounds for difference of opinion on whether they possibly alleged foundation for standing. I've ruled that way against the plaintiffs on that issue.

I -- and my order did not eliminate the possibility of (indiscernible) liability for government defendants, but I found that the plaintiffs have not alleged a close enough connection in this case. The beneficiary on liability cases that plaintiffs cite to consistently have a closer connection between the plaintiff and the defendants that have been alleged here.

The plaintiffs also in their moving papers reiterate their arguments that (indiscernible) standing. But simply a strong disagreement with the Court ruling is not sufficient for there to be substantial ground for a difference of opinion under the Ninth Circuit case law.

So that's why I think the proper vehicle is under 54(b) because I have entered a final judgment against these defendants on which there's no just reason for delay, and an appeal will address the needs of the parties going forward.

While there is some risk of inefficiencies of proceeding with an appeal at this time, I think the present needs of the parties, the need for resolution of this issue, and the ability to stay the case down below pending appeal address those concerns about the inefficiencies.

So I'm going to grant the 54(b) motion, deny the plaintiffs' motion to stay (indiscernible) go up on appeal to the Ninth Circuit. As I mentioned, I think, technically, I'm not comfortable granting a stay right now because I'm concerned that the -- well, let me think about it for a minute.

I'll go about it this way. I'm going to grant a stay of the underlying case that remains against the remaining defendants under my inherent power. If the defendants who remain in the case want to proceed with the litigation, they can file a motion for reconsideration. I think your motion teed it up. The plaintiffs' motion teed it up. It didn't specifically request it, but there's enough in that, that I got that you were looking for a stay. And so, maybe the most efficient way is I'm going to stay the underlying litigation right now, and defendants can move for reconsideration if they think there's a reason for the case to go forward. So I think that gets everybody where they want to be on appeal with the Ninth Circuit if I stay the case down below.

Any questions or things I need to modify in that regard.

For the plaintiffs?

**MS. PRICE:** Nothing from the plaintiffs, Your Honor.

**THE COURT:** All right. Anything from the defense?

**MR. THOMPSON:** No, Your Honor.

**THE COURT:** All right. That will be my order, then. I'm not going to enter a separate order. The minutes here and the transcript will constitute my order. Thank you all. Well argued. Thank you.

(*Proceedings adjourned at 9:30 a.m.*)

--o0o--

Case: 22-16596, 04/13/2023, ID: 12695209, DktEntry: 10, Page 29 of 140

COURT REPORTER'S CERTIFICATE

I, Paige M. Christian, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, do certify that pursuant to 28 U.S.C. § 753, the foregoing is a true, complete, and correct transcript of the proceedings had in connection with the above-entitled matter.

DATED: January 31, 2023

/s/ Paige M. Christian
Paige M. Christian, RPR, CRR, CCR #955
Official Court Reporter
United States District Court
District of Nevada

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANGELA WILLIAMS, et al.,

Plaintiffs,

v.

STEVE SISOLAK, et al.,

Defendants.

Case No.: 2:21-cv-01676-APG-VCF

**Order on Motions to Dismiss, Strike, and Intervene**

[ECF Nos. 53, 95, 98, 105, 133, 164, 168]

Plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 (collectively, the plaintiffs) sue 20 defendants, alleging violations of the Thirteenth Amendment and the Trafficking Victims Protection Reauthorization Act (TVPRA). The plaintiffs' claims arise from their experiences as victims of human trafficking that they contend were facilitated by Nevada's system of legal prostitution. Four motions to dismiss,[1] two motions to strike, and one motion to intervene are pending. I grant in part three motions to dismiss, I deny as moot the remaining motion to dismiss and the motions to strike, and I deny the motion to intervene.

## I. BACKGROUND

The plaintiffs divide the defendants into five groups for ease of reference: (1) "State Defendants;" (2) "City Defendants;" (3) "Escort Agency Defendants;" (4) "Strip Club Defendants;" and (5) "Brothel Defendants." *Id.* at 5-6, 8-9. The State Defendants are Nevada Governor Steve Sisolak and Nevada Attorney General Aaron Ford, both sued in their official capacities. *Id.* at 5. The City Defendants are the City of Las Vegas, Clark County, and Nye County. *Id.* at 6. The Escort Agency Defendants are Jamal Rashid; Mally Mall Music, LLC;

[1] The first of these motions to dismiss was filed as a motion to strike the plaintiffs' First Amended Complaint or, in the alternative, to dismiss. *See* ECF No. 53.

Future Music, LLC; PF Social Media Management, LLC; E.P. Sanctuary; Blu Magic Music, LLC; Exclusive Beauty Lounge, LLC; First Investment Property LLC; V.I.P. Entertainment, LLC; MP3 Productions, Inc.; and MMM Productions, Inc. *Id.* at 8. The Strip Club Defendants are SHAC, LLC doing business as Sapphire Gentleman's Club; SHAC MT, LLC; and Las Vegas Bistro doing business as Larry Flynt's Hustler Club. *Id.* The Brothel Defendants are Western Best LLC and Western Best, Inc. doing business as the Chicken Ranch. *Id.* at 9. The plaintiffs refer to the Escort Agency, Strip Club, and Brothel Defendants collectively as the "Sex Industry Defendants." *Id.*

Williams alleges that when she was 17 years old, non-party Andre McDaniels trafficked her in Houston. *Id.* at 27-28. She alleges that from 2006 to 2017, her victimization continued in Nevada, California, Illinois, and Texas under the control of another trafficker, defendant Jamal Rashid, and his affiliates, the Escort Agency Defendants. *Id.* at 27, 34. Her ordeal in Nevada also included being trafficked "through the strip club[] . . . Sapphire [Gentleman's Club]," which is one of the Strip Club Defendants. *Id.* at 35.

Jane Doe #1 alleges that she was trafficked from a young age. *Id.* at 37. While she does not specify where her trafficking began, a family member eventually "induced her to travel to Las Vegas" where multiple non-party pimps trafficked her from 2013 to 2018. *Id.* at 37-38. During this period, she was also trafficked in New York, New Jersey, Colorado, Oregon, Texas, New Mexico, California, Oklahoma, Arizona, and Georgia. *Id.* at 38. At some point, she "became engaged in legal brothel prostitution at the Chicken Ranch while being pimped by" non-party traffickers. *Id.* at 40. She further alleges that the Chicken Ranch, a Brothel Defendant, subjected her to debt bondage in the course of her employment. *Id.* at 41-42.

Jane Doe #2 claims that she was trafficked in Houston from the age of 18. *Id.* at 42. Eventually, she travelled to Las Vegas where a series of non-party pimps trafficked her through Sapphire Gentleman's Club and Larry Flynt's Hustler Club, both Strip Club Defendants. *Id.* at 42-43. She contends that the Strip Club Defendants, like the Brothel Defendants, engaged in a form of debt bondage and were complicit in sexual abuses by clients. *Id.* at 46-48. Jane Doe #2's ordeal in Nevada spanned from March 2017 to September 2018. *Id.* at 42.

The plaintiffs allege that different subgroups of Sex Industry Defendants perpetrated and benefited from their trafficking in violation of the Thirteenth Amendment and the TVPRA. *See generally id.* While the plaintiffs were separately trafficked and their ordeals relative to one another were distinct, they contend that these experiences are collectively attributable to Nevada's system of legalized prostitution because "legal trade correlates with exponential increases in the illegal trade." *Id.* at 18. Given this alleged correlation, the plaintiffs assert the same Thirteenth Amendment and TVPRA claims against the State and City Defendants, seeking a declaration that Nevada's system of legal prostitution is unconstitutional, and seeking to enjoin that system. *Id.* at 3, 54.

Seven motions are pending. Clark County moves to strike the First Amended Complaint or, in the alternative, to dismiss. ECF No. 53. Its motion is joined by the remaining City Defendants, the State Defendants, and the Brothel Defendants. ECF Nos. 58; 69; 71; 99. The Brothel Defendants, Strip Club Defendants SHAC, LLC and SHAC, MT LLC (collectively, the Sapphire Club), and the State Defendants move separately to dismiss. ECF Nos. 98; 133; 168. The plaintiffs move to strike excess pages in Clark County's reply to their opposition to its motion to dismiss. ECF No. 95. Clark County moves to strike three errata filed by the plaintiffs to add the language "oral argument requested" to each of their first three briefs opposing

dismissal. ECF No. 164. Finally, Russell G. Greer moves to intervene as a defendant. ECF No. 105.

## II. ANALYSIS

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The complaint must set forth coherently "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted).

I apply a two-step approach when considering motions to dismiss. First, I must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiffs' favor. *Iqbal*, 556 U.S. at 678; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

Second, I must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges

facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**A. Clark County's Motion to Dismiss (ECF No. 53)**

Clark County argues that I lack subject matter jurisdiction because the plaintiffs fail to properly allege Article III standing. Specifically, Clark County contends that the plaintiffs fail to articulate a concrete, particularized, and actual or imminent injury; that they allege a theory of causation that is too hypothetical and tenuous; and that the relief they seek would fail to redress their injuries.[2] The plaintiffs respond that they adequately allege both their own injuries and injuries of presently trafficked individuals by pleading third-party standing. They further respond that their injuries are sufficiently traceable to the City and State Defendants, and that the damages they seek would redress their own past injuries, while the declaratory and injunctive relief they seek would redress the injuries of presently trafficked individuals.[3] The State

---

[2] Clark County also presents several arguments on the merits.

[3] The plaintiffs also argue that Clark County improperly attempts to "incorporate by reference" its prior, mooted motion to dismiss (ECF No. 36). While I agree with Clark County that Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere," the rule does not contemplate wholesale incorporation of denied motions to effectively evade the Local Rules' page limits. Therefore, I base my decision on Clark County's pending motion, without reference to its previous motion.

Defendants, Nye County, the City of Las Vegas, and the Brothel Defendants join Clark County's motion, largely echoing Clark County's arguments or providing no additional analysis.

Article III of the Constitution "limits the jurisdiction of federal courts to '[c]ases' and '[c]ontroversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (simplified). The "irreducible constitutional minimum of [Article III] standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (simplified). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Each element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).

Surviving a motion to dismiss with respect to the causation element requires the plaintiffs to "establish a line of causation between defendants' action and their alleged harm that is more than attenuated." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (simplified). "A causation chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous." *Id.* (simplified). But where "a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Id.* (simplified).

The plaintiffs do not plausibly allege that the injuries they suffered are fairly traceable to Nevada's system of legal prostitution or to the State or City Defendants. The plaintiffs allege that legal prostitution in Nevada "correlates with exponential increases in the illegal trade," in part due to Nevada's failure to "enforce its limited regulation." ECF No. 49 at 18, 27. But Nevada's legal system of prostitution is, at best, an attenuated cause of the plaintiffs' alleged injuries. The plaintiffs reference numerous third-party actors throughout the First Amended Complaint "whose independent decisions collectively [had] a significant effect on the plaintiffs' injuries." *Maya*, 658 F.3d at 1070 (simplified).

Williams alleges that she was groomed and trafficked by Andre McDaniels, an unnamed "violent trafficker," defendant Jamal Rashid, Tarnita Woodard, unnamed "managers [and] assistant traffickers" to Rashid, and an unnamed "final sex trafficker." ECF No. 49 at 27-36. She also references various complicit strip clubs. *Id.* Jane Doe #1 similarly alleges that she was groomed and trafficked by an unnamed abuser, that a family member introduced her to multiple pimps (one of which was the family member's spouse) who then trafficked her, and that a "guerilla" pimp, a "Romeo" pimp named Khalieff Wilson, a "madam" pimp named Nicole Flowers, and defendant Chicken Ranch also trafficked her. *Id.* at 37-42. Finally, Jane Doe #2 alleges that unnamed traffickers groomed and trafficked her before the age of 18, that "a series of" "Romeo" pimps trafficked her, followed by a second group of unnamed pimps, and that defendants Sapphire Gentlemen's Club and Larry Flynt's Hustler Club trafficked her or benefited from her trafficking. *Id.* at 42-49.

Williams and Jane Doe #2 also allege that their trafficking began in Houston, and Williams and Jane Doe #1 allege that they were both trafficked in numerous states. *Id.* at 27-31, 34, 38, 42. Because numerous third parties and their independent actions collectively impacted

the plaintiffs in a significant way, and because the out-of-state origins and continuations of the plaintiffs' trafficking further attenuate Nevada's role in their respective ordeals, the plaintiffs' alleged causal chain is too weak to support standing against the City and State Defendants. *See Charleston v. Nev.*, 423 F. Supp. 3d 1020, 1027-28 (D. Nev. 2019) (dismissing comparable action, including some identical parties, for lack of standing), *aff'd*, 830 F. App'x 948 (9th Cir. 2020). Consequently, I dismiss with prejudice the plaintiffs' claims against Clark County, Nye County, the City of Las Vegas, Steve Sisolak, and Aaron Ford.[4, 5] I deny amendment because the plaintiffs previously amended their complaint, and the standing deficiency cannot be cured by further amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

The Brothel Defendants joined in Clark County's motion. ECF No. 99. But because the Brothel Defendants also move separately to dismiss, I consider the claims against them under their own motion. The plaintiffs' motion to strike excess pages in Clark County's reply (ECF No. 95) is moot because the relevant causation analysis in the reply was within the page limit and the excess pages do not alter my decision. Aaron Ford and Steve Sisolak's motion to dismiss (ECF No. 168) is moot because Ford and Sisolak joined in Clark County's motion, they reiterate

---

[4] The plaintiffs allege third-party standing on behalf of individuals currently being trafficked in Nevada. ECF No. 49 at 49-50. While I am unconvinced that the plaintiffs successfully plead a requisite special relationship with presently trafficked individuals to support third-party standing, and while that class as pleaded is amorphous, the same standing defect that is fatal to the plaintiffs' claims against the State and City Defendants applies equally in the third-party standing context.

[5] In its motion, Clark County requests that I strike the First Amended Complaint for improper joinder of plaintiffs. A motion to sever the plaintiffs would have been more appropriate. Because I dismiss the State and City Defendants, and because their presence and the plaintiffs' claims implicating the constitutionality of legal prostitution in Nevada may have been the primary commonality between the plaintiffs, it is unclear whether there is justification for the plaintiffs to remain joined. I therefore deny Clark County's motion to strike. If they deem it appropriate, the remaining defendants may file a motion to sever.

the same standing arguments in their own motion, and the parties had adequate opportunities to be heard on those issues while briefing Clark County's motion.

**B. Brothel Defendants' Motion to Dismiss (ECF No. 98)**

**1. Thirteenth Amendment**

The Brothel Defendants move to dismiss the plaintiffs' Thirteenth Amendment claim, arguing that there is no private right of action under the Thirteenth Amendment, that they are not state actors for purposes of 42 U.S.C. § 1983, and that the plaintiffs failed to join indispensable parties with interests in the laws and ordinances that permit prostitution in Nevada. The plaintiffs respond that the Brothel Defendants are sufficiently entangled with public entities that they may bring a § 1983 claim based on the alleged Thirteenth Amendment violation. They argue that this entanglement results primarily from governmental regulation, including the imposition of mandatory STI testing. They also argue that they joined all necessary and indispensable parties.[6]

Under the Thirteenth Amendment, "[n]either slavery nor involuntary servitude . . . shall exist within the United States," and "Congress shall have power to enforce this article by appropriate legislation." U.S. Const. amend. XIII §§ 1-2. The Thirteenth Amendment's Enabling Clause "clothed Congress with powers to pass all laws necessary and proper for abolishing all badges and incidents of slavery." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968) (simplified). "There is not a private right of action under the Thirteenth Amendment; rather, plaintiffs must instead base such claims on one of the statutes implementing" it. *Simpson v.*

[6] I need not address whether the plaintiffs joined all necessary and indispensable parties because I dismiss the State and City Defendants from this action. Because only claims against private parties remain, the injunctive and declaratory relief the plaintiffs seek against the State and City Defendants is no longer viable.

*Agatone*, No. 2:15-cv-00254-RFB-CWH, 2018 WL 5074677, at *4 (D. Nev. Sept. 5, 2018); *see, e.g.*, *Flores v. City of Westminster*, 873 F.3d 739,753 (9th Cir. 2017) (permitting a claim under 42 U.S.C. § 1981 in part because "[t]he Civil Rights Act of 1866 implemented the Thirteenth Amendment); *United States v. Diggins*, 36 F.4th 302, 306-11 (1st Cir. 2022) (analyzing congressional enforcement under the Thirteenth Amendment's Enabling Clause, and holding the Hate Crimes Prevention Act to be constitutional enforcement); *United States v. Roof*, 10 F.4th 314, 391-92 (4th Cir. 2021) (same). While the Ninth Circuit has not yet addressed the issue, a claim under 42 U.S.C. § 1983 may be an appropriate way to redress certain violations of the Thirteenth Amendment. *See Jobson v. Henne*, 355 F.2d 129, 132 (2d Cir. 1966) (holding that a plaintiff stated a claim under § 1983 for a violation of the Thirteenth Amendment).

Section 1983 prohibits interference with federal constitutional rights under color of state law, so claims must be based on "state action" rather than a private actor's conduct. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 833 (1982) (explaining that § 1983's "under color of law" language is the "same thing" as the state action doctrine) (simplified). While there is no exact formula for determining what conduct constitutes state action, courts are guided by the public function test, the joint action test, the compulsion test, and the governmental nexus test. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). As argued here, the governmental nexus test asks whether "there is such a close nexus between the [s]tate and the challenged action that the seemingly private behavior may be fairly treated as that of the [s]tate itself." *Id.* at 1095 (simplified). Despite the several tests, "the central question[s] remain[] whether the alleged infringement of federal rights is fairly attributable to the government," and "whether the defendant[s] [have] exercised power possessed by virtue of state law and made possible only because [they are] clothed with the authority of

state law." *Id.* at 1096 (simplified); *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021).

   The plaintiffs seem to concede that there is no free-standing private right of action under the Thirteenth Amendment, and they instead argue that their claim is properly brought under § 1983 given sufficient entanglement between the governmental and private defendants. ECF Nos. 127 at 5; 49 at 51. But the plaintiffs have not sufficiently alleged a nexus between the governmental and private defendants such that the challenged conduct of sex trafficking can be fairly attributed to the state. While state entities license and regulate prostitution in Nevada, this conduct does not amount to "pervasive entwinement to the point of largely overlapping identity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001); *see also Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 755 (9th Cir. 2020) ("[E]xtensive state regulation is not enough to create state action."). While the state mandates STI testing of legal sex workers as part of its regulatory scheme, and "state action may lie in private conduct that is affirmatively commanded by state protocols," the plaintiffs do not challenge mandatory STI testing in their complaint. *See Rawson*, 975 F.3d at 755-56. Instead, the plaintiffs challenge trafficking and involuntary servitude which is not conduct affirmatively commanded by the state. The plaintiffs do not plausibly allege that the affirmative mandate of STI testing bears a relationship to sex trafficking. Consequently, the relationship between the challenged conduct and the mandate that the plaintiffs claim implicates state action is attenuated at best, and does not manifest an overlap in identity between the defendants and the state.

   The plaintiffs likewise do not plausibly allege that the commission of sex trafficking is an exercise of power possessed by virtue of Nevada law or made possible only because of authority granted by Nevada. *See Pasadena*, 985 F.3d at 1167. Instead, the challenged conduct is illegal

Case: 22-16596, 04/13/2023, ID: 12695201, DktEntry: 18, Page 41 of 140

under Nevada law, and the plaintiffs allege that their experiences with trafficking both began and continued outside the state of Nevada, thereby further attenuating the nexus between the challenged conduct and the Nevada state government. *See* Nev. Rev. Stat. § 201.300; *Kirtley*, 326 F.3d at 1096. Consequently, the plaintiffs have not plausibly alleged a sufficient nexus between the state and the private defendants to make the defendants' conduct state action under § 1983.[7] This deficiency cannot be cured by amendment, and the plaintiffs have already amended once, so I dismiss with prejudice the plaintiffs' Thirteenth Amendment claim against the Brothel Defendants. *Lopez*, 203 F.3d at 1130.

**2. TVPRA**

The Brothel Defendants move to dismiss the plaintiffs' claim[8] under the TVPRA, arguing that the plaintiffs insufficiently allege that the Brothel Defendants either perpetrated or benefited from sex trafficking. The plaintiffs respond that they adequately allege violations under both perpetrator and beneficiary theories because the Brothel Defendants subjected Jane Doe #1 to debt bondage at Chicken Ranch, and because the Brothel Defendants benefited financially from their own perpetration of sex trafficking.

---

[7] Dismissal may also be appropriate on statute of limitations grounds. For actions arising under § 1983, I "apply [Nevada's] statute of limitations for personal injury actions, along with [Nevada's] law regarding tolling, . . . except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). The "applicable statute of limitations in Nevada is two years." *Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014); Nev. Rev. Stat. § 11.190(4)(e). The plaintiffs allege that Williams escaped trafficking in 2017, Jane Doe #1 escaped the Brothel Defendants by 2018, and Jane Doe #2 escaped trafficking in 2018. ECF No. 49 at 36, 42. Consequently, absent applicable tolling, the two-year statute of limitations expired prior to the filing of the complaint in September 2021.

[8] The plaintiffs plead two separate claims under the TVPRA, but the statutory provision underlying one claim describes criminal liability, while the provision underlying the other claim provides a civil right of action. *See* 18 U.S.C. § 1591 (criminal liability); *Id.* § 1595 (civil right of action). Because this is a civil lawsuit, I refer to the plaintiffs' allegations under the TVPRA as a single claim under § 1595.

A defendant perpetrates trafficking in violation of the TVPRA when it "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person[,] . . . knowing [that] . . . force, threats of force, fraud, [or] coercion . . . will be used to cause [that] person to engage in a commercial sex act." 18 U.S.C. §§ 1591(a)(1)-(2). Coercion means "threats of serious harm to or physical restraint against any person[, or] . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm . . . or physical restraint." *Id.* §§ 1591(e)(2)(A)-(B). A defendant likewise violates the TVPRA if it "benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" perpetrating trafficking. *Id.* § 1591(a)(2). Anyone "who is a victim of a violation of [§ 1591] may bring a civil action against the perpetrator" or beneficiary. 18 U.S.C. § 1595(a).

At this stage, Jane Doe #1 plausibly alleges that the Brothel Defendants trafficked her in violation of the TVPRA. She alleges that, during her employment at the Chicken Ranch, "the brothel arranged and controlled arrival and departure times for the prostituted women" via "the brothel's transportation system" between Las Vegas and Pahrump. ECF No. 49 at 41. The brothel required prostitutes to pay for this transportation, in addition to room, board, and mandatory medical examinations. *Id.* She also alleges that she was locked inside the brothel during her two-week shifts, that she "was not permitted to leave the brothel if she owed the brothel money" at the end of a shift, and that the Brothel Defendants otherwise subjected her to "debt bondage." *Id.* at 41-42.

These allegations support the reasonable inference that the Brothel Defendants transported, harbored, and maintained Jane Doe #1 while knowing that commercial sex acts were either forced or motivated by threats of restraint. *See* 18 U.S.C. §§ 1591(e)(2)(A)-(B).

According to the Brothel Defendants, "[a]t most, these allegations suggest Jane Doe #1 may have been stranded at the Chicken Ranch, but they do not imply that the Chicken Ranch . . . coerced[] or forced [Jane Doe #1] to engage in a commercial sex act." ECF No. 98 at 9. I disagree. Controlling her transportation and prohibiting (or threatening to prohibit) her departure pending the payment of debt plausibly alleges force, threat of force, or coercion leading to commercial sex acts. It is reasonable to infer that engaging in commercial sex acts would be the likely way Jane Doe #1 would be able to pay a debt when "stranded" at the brothel until the debt is paid. Her allegations of debt bondage assert a "scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in . . . physical restraint." 18 U.S.C. § 1591(e)(2)(B). It may be reasonably inferred that many or all of the commercial sex acts she performed at the Chicken Ranch were motivated by the coercive plan. Thus, Jane Doe #1 plausibly alleges a violation of 18 U.S.C. § 1591(a)(1). She also plausibly alleges that the Chicken Ranch benefited financially from this arrangement because it received payment for her debts and it profited from sex acts she performed. I therefore deny the Brothel Defendants' motion to dismiss Jane Doe #1's claim under the TVPRA. Because neither Williams nor Jane Doe #2 allege any facts as to the Brothel Defendants, I grant the motion to dismiss as to them, and only Jane Doe #1's claim remains.

**C. Sapphire Club's Motion to Dismiss[9] (ECF No. 133)**

The Sapphire Club moves to dismiss the plaintiffs' Thirteenth Amendment claim. I dismiss the claim with prejudice for the same reasons I dismissed it against the Brothel Defendants. The Sapphire Club also moves to dismiss the plaintiffs' TVPRA claim, arguing that

[9] Defendant Las Vegas Bistro, LLC is a Strip Club Defendant with which the plaintiffs group the Sapphire Club in the First Amended Complaint, but it has neither moved to dismiss nor joined any pending motions. As a result, all claims against Las Vegas Bistro, LLC remain pending.

Williams and Jane Doe #1 fail to allege any facts as to it, and that Jane Doe #2 fails to state a claim against it for either perpetrator or beneficiary liability. The plaintiffs clarify that only Jane Doe #2 alleges that the Sapphire Club trafficked her or benefited from her trafficking in violation of the TVPRA.[10] ECF No. 146 at 6.

Jane Doe #2 fails to plausibly allege a TVPRA violation based on her debt-bondage theory of liability. She describes many expenses that dancers incur working at strip clubs. ECF No. 49 at 44-46. According to her, these expenses result in dancers becoming indebted to the clubs, resulting in debt bondage. *Id.* at 46. But she also alleges that the clubs require dancers to pay outstanding debts upon signing in each night. *Id.* at 46-47.

These allegations are distinguishable from Jane Doe #1's allegations against the Brothel Defendants because Jane Doe #2 does not allege that dancers are transported by the clubs to remote locations or that they are barred from departing until debts are paid. Instead, she alleges that dancers cannot commence work until debts are paid. Thus, Jane Doe #2 could not dance at a club, and presumably perform commercial sex acts there, until she first cleared her debt. Although the onerous expenses imposed by the clubs may have precluded Jane Doe #2 from working, that does not plausibly allege debt bondage that would force her to perform sex acts as a condition precedent to freedom.

However, Jane Doe #2 plausibly alleges that the Sapphire Club violated the TVPRA by facilitating sexual abuse. She claims that many clients at the Sapphire Club "sexually assaulted [her]." ECF No. 49 at 48. She further alleges that "[a]fter sex buyers raped [her], the club[],

---

[10] Williams alleges that "her final trafficker trafficked [her] through . . . Sapphire." ECF No. 49 at 35. That single statement in the First Amended Complaint is insufficient to support a plausible claim by Williams against the Sapphire Club. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Jane Doe #1 makes no allegations against the Sapphire Club.

knowing this, would insist on collecting [its 40% share of] tips from [her]." *Id.* at 48-49. The Sapphire Club's knowledge of rape and other sexual abuses came from "video and audio recording devices in each area of the club, including private rooms," which allowed the club to "see and hear all that occurred." *Id.* at 48-49. From these allegations, it can be reasonably inferred that the Sapphire Club "provided" Jane Doe #2, knowing, or in reckless disregard of the fact, that means of force would cause her to engage in commercial sex acts. *See* 18 U.S.C. § 1591(a)(1). These allegations also support a claim of beneficiary liability because the club allegedly benefited from its receipt of both fees from customers and tip percentages from Jane Doe #2. Given the club's alleged perpetration, Jane Doe #2 plausibly alleges that it was a participant in its own venture, and that its perpetration implies knowledge of violations. *See* 18 U.S.C. § 1595(a). I therefore deny the Sapphire Club's motion to dismiss Jane Doe #2's claim under the TVPRA.[11] Because neither Williams nor Jane Doe #1 allege any facts as to the Sapphire Club, I grant the motion to dismiss as to them, and only Jane Doe #2's claim remains.

**D. Greer's Motion to Intervene (ECF No. 105)**

Russell G. Greer moves to intervene as of right, arguing that he has interests in the outcome of this litigation because only through legal prostitution in Nevada can he experience intimacy, and because he wishes to seek sanctions against plaintiffs' attorney, Jason D. Guinasso, for "waging" a "crusade" against legal brothels. He also argues that the disposition of this case could impair his access to brothels and that the existing parties do not represent his interests because neither the brothels he frequents nor the counties in which they reside are parties to this action. Alternatively, Greer seeks permissive intervention. The plaintiffs respond

[11] Because this order resolves all pending motions to dismiss, I deny as moot Clark County's motion to strike the plaintiffs' errata seeking to add "Oral Argument Requested" to the captions of their dismissal oppositions. *See* ECF Nos. 161, 162, 163, 164.

that patronizing brothels and desiring to seek sanctions against an attorney are not significant,

legally protectable interests, and that Greer's interests are adequately represented by the existing

parties.  The plaintiffs also argue that permissive intervention is inappropriate because Greer's

interests are adequately represented, and intervention would cause undue delay and prejudice.

On timely motion, a party may intervene as of right under Federal Rule of Civil

Procedure 24(a)(2) if he "claims an interest relating to the . . . transaction that is the subject of

the action, and is so situated that disposing of the action may as a practical matter impair or

impede [his] ability to protect [his] interest, unless existing parties adequately represent that

interest."  Alternatively, I may permit permissive intervention if a party "has a claim or defense

that shares with the main action a common question of law or fact," and whose intervention

would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R.

Civ. P. 24(b)(1)-(3).  "The party seeking to intervene bears the burden of showing that all the

requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915,

919 (9th Cir. 2004). When deciding whether intervention is appropriate, I am "guided primarily

by practical and equitable considerations, and the requirements for intervention are broadly

interpreted in favor of intervention." *Id.*

Because I grant Clark County's motion to dismiss (joined by the remaining State and City

Defendants) the injunctive and declaratory relief the plaintiffs seek is no longer viable.

Therefore, Greer's interest in legalized prostitution is no longer in jeopardy and his motion to

intervene is partially moot.  And even assuming that Greer has significant, legally protectible

interests in this action, those interests are adequately represented by the existing parties.  Even if

the brothels Greer frequents and the counties in which they reside are not parties to this action,

the existing parties have identical interests in Nevada's system of legal prostitution and in

guarding against frivolous lawsuits.[12] Thus, Greer fails to satisfy his burden of showing that the requirements for intervention as of right have been met. Permissive intervention is inappropriate because it would subject the plaintiffs to duplicative arguments and cause unnecessary delay. I thus deny Greer's motion for intervention.

## III. CONCLUSION

I THEREFORE ORDER that defendant Clark County's motion to dismiss **(ECF No. 53) is GRANTED** in part. I dismiss with prejudice the plaintiffs' claims against the City and State Defendants (Clark County, Nye County, the City of Las Vegas, Steve Sisolak, and Aaron Ford). I deny Clark County's motion to the extent it requests I strike the First Amended Complaint.

I FURTHER ORDER that plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2's motion to strike **(ECF No. 95) is DENIED** as moot.

I FURTHER ORDER that the State Defendants' (Steve Sisolak and Aaron Ford's) motion to dismiss **(ECF No. 168) is DENIED** as moot.

I FURTHER ORDER that the Brothel Defendants' (Western Best LLC and Western Best, Inc.'s) motion to dismiss **(ECF No. 98) is GRANTED** in part. I dismiss with prejudice the plaintiffs' Thirteenth Amendment claim. I also dismiss with prejudice the TVPRA claim as to plaintiffs Angela Williams and Jane Doe #2.

I FURTHER ORDER that the Sapphire Club's (SHAC, LLC and SHAC MT, LLC's) motion to dismiss **(ECF No. 133) is GRANTED** in part. I dismiss with prejudice the plaintiffs' Thirteenth Amendment claim. I also dismiss with prejudice the TVPRA claim as to plaintiffs Angela Williams and Jane Doe #1.

[12] This analysis is not to be understood as implying the plaintiffs' claims are frivolous.

I FURTHER ORDER that defendant Clark County's motion to strike **(ECF No. 164) is DENIED** as moot.

I FURTHER ORDER that Russell G. Greer's motion to intervene **(ECF No. 105) is DENIED**.

I FURTHER ORDER that the remaining defendants may file motions to sever within 30 days of this order if they believe it is appropriate.

DATED this 18th day of July, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

Jason D. Guinasso (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
Pansy Watson*
NATIONAL CENTER ON SEXUAL EXPLOITATION
1201 F Street, NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

**Admitted Pro Hac Vice*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANGELA WILLIAMS; JANE DOE #1; JANE DOE #2;<br><br>Plaintiffs,<br><br>v.<br><br>STEVE SISOLAK, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; THE CITY OF LAS VEGAS; CLARK COUNTY; NYE COUNTY; WESTERN BEST, INC. D/B/A CHICKEN RANCH; WESTERN BEST LLC; JAMAL RASHID; MALLY MALL MUSIC, LLC; FUTURE MUSIC, LLC; PF SOCIAL MEDIA MANAGEMENT, LLC; E.P. SANCTUARY; BLU MAGIC MUSIC, LLC; EXCLUSIVE BEAUTY LOUNGE, LLC; FIRST | Case No. 2:21-cv-01676<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

INVESTMENT PROPERTY LLC; V.I.P. ENTERTAINMENT, LLC; MP3 PRODUCTIONS, INC.; MMM PRODUCTIONS, INC.; SHAC, LLC D/B/A SAPPHIRE GENTLEMAN'S CLUB AND/OR SAPPHIRE; SHAC MT, LLC; and LAS VEGAS BISTRO, LLC D/B/A LARRY FLYNT'S HUSTLER CLUB;

Defendants.

## COMPLAINT

## INTRODUCTION

1. It is axiomatic that the right to be free from slavery is among the most basic of human rights: uncontested in international law, and enshrined in the United States Constitution at significant cost.

2. Yet it is a right numerous women and girls are denied in Nevada, where they are bought and sold in a glamorized, lucrative monument to male sexual entitlement: the state's prostitution industrial complex.

3. Nevada has cooperated with the City of Las Vegas, Clark County, Nye County, Western Best, Inc. d/b/a Chicken Ranch, Western Best LLC, Jamal Rashid; Mally Mall Music, LLC, Future Music, LLC, PF Social Media Management, LLC, E.P. Sanctuary, Blu Magic Music, LLC, Exclusive Beauty Lounge, LLC, First Investment Property LLC, V.I.P. Entertainment, LLC; MP3 Productions, Inc., MMM Productions, Inc. SHAC, LLC d/b/a Sapphire Gentlemen's Club and/or Sapphire, SHAC MT, LLC, and Las Vegas Bistro, LLC d/b/a Larry Flynt's Hustler Club to maintain and profit from a legalized system of prostitution – explicit in certain counties, and de facto elsewhere.

4. Plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 were sex trafficked

due to that system of legalized prostitution, that is, they were induced to engage in commercial sex acts through force, fraud, and coercion – including psychological manipulation and debt bondage – in legal strip clubs, legal escort businesses, and a legal brothel operating in Nevada.

5. The collusion of the State of Nevada, its political subdivisions, and private businesses in the sex trade, which have in turn failed to enforce or violated state and federal laws against prostitution, prostitution advertising, debt bondage, and sex trafficking, has allowed sex traffickers to operate in Nevada with impunity.

6. As victims of sex trafficking, Plaintiffs were diminished to a status in which their sex traffickers and buyers exercised powers of ownership over them—that is, a condition of slavery.

7. Under the Thirteenth Amendment, states cannot create conditions that allow slavery or involuntary servitude to flourish, including in the form of sex trafficking. By providing legal cover for the sex trade, that is precisely what Nevada has done.

8. Additionally, neither states nor private parties may perpetrate or benefit from slavery under the Trafficking Victims Protection Act, yet the Defendants have done so – through direct revenues, taxes, and licensing fees.

9. Because Defendants have facilitated and profited from sex trafficking, violating the Thirteenth Amendment's ban on slavery and involuntary servitude, and the Trafficking Victims Protection Act, Plaintiffs now seek to hold them accountable for these human rights violations.

## JURISDICTION AND VENUE

10. This civil rights action raises federal questions under the Thirteenth Amendment to the United States Constitution, and the Trafficking Victims Protection

Reauthorization Act, 18 U.S.C. §§ 1591–95.

11. This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

12. This Court has authority to award the requested damages under 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201–02; the requested injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

13. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this district and division and/or all of the acts described in this Complaint occurred in this district.

**PARTIES**

15. Plaintiff Angela Williams is an individual residing in Texas.

16. Plaintiff Jane Doe #1 is an individual residing in California.

17. Plaintiff Jane Doe #2 is an individual residing in Texas.

18. Due to the sensitive, private, nature of Plaintiff Jane #1 and Plaintiff Jane Doe #2's allegations, and the potential for harmful retaliation against them, Plaintiffs Jane Does #1 and #2 requests that this Court permit them to proceed under pseudonyms. Courts recognize an exception to the general rule that pleadings name all parties when the issues involved are of a sensitive and highly personal nature.

19. For good cause, as exists here, the Court may permit Plaintiffs Jane Does #1 and #2 to proceed in pseudonym to protect a party from annoyance, embarrassment,

oppression, or undue burden or expense.  Here, granting pseudonym status is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape.  Plaintiffs fears the stigma from their family, friends, current and future employers, and communities if their true identities are revealed in the public record.

20.     Defendants will not be prejudiced by Plaintiffs' use of pseudonyms.  Plaintiffs will agree to reveal their identities to the Defendants for the limited purpose of investigating Plaintiffs' claims once the parties are governed by a protective order.  Plaintiffs simply seek redaction of their personal identifying information from the public docket and assurances that Defendants will not use or publish Plaintiffs' identities in a manner that will compromise their personal lives or future employment prospects.

21.     Plaintiff Jane Doe #2's motion for a protective order and leave to proceed pseudonymously is forthcoming.

22.     Defendant Steve Sisolak is the Governor of Nevada, ultimately responsible for enforcing Nevada's laws and regulations, and is sued in his official capacity.

23.     Defendant Aaron Ford is the Attorney General of Nevada, who is authorized to enforce and prosecute violations of Nevada's laws and regulations, and is sued in his official capacity.

24.     Defendants Sisolak and Ford will be referred to here as "State Defendants."

25.     Defendant City of Las Vegas is a municipal corporation authorized under Nevada law with the power to sue and be sued, to issue licenses and otherwise regulate escort agencies, strip clubs, and related businesses, and to enact and enforce certain ordinances challenged in this lawsuit.

26.     Defendant Clark County is a municipal corporation authorized under Nevada law with the power to sue and be sued, to issue licenses and otherwise regulate escort agencies, strip clubs, and related businesses, and to enact and enforce certain ordinances challenged in this lawsuit.

27.     Defendant Nye County is a municipal corporation authorized under Nevada law with the power to sue and be sued, to issue licenses and otherwise regulate brothels within the county, and to enact and enforce certain ordinances challenged in this lawsuit.

28.     Defendants City of Las Vegas, Clark County, and Nye County will be referred to here as "City Defendants."

29.     Defendant Jamal Rashid, also known as "Mally Mall," is an individual currently residing at Federal Correctional Institution Sheridan, 27072 Ballston Road, Sheridan, OR 97378.

30.     Defendant Mally Mall Music, LLC is a company located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose registered agent is Jennifer Paone. The managing member is Jamal Rashid, located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014.

31.     Defendant Future Music, LLC is a company located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose registered agent is Jennifer Paone. The managing member is Jamal Rashid, located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014.

32.     Defendant PF Social Media Management, LLC is a company located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose registered agent is Jamal Rashid.

33.     Defendant Blu Magic Music, LLC is a company located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose registered agent is Jennifer Paone. The managing

member is Jamal Rashid, located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014.

34.    Defendant Exclusive Beauty Lounge, LLC is a company located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose managing members are Jamal Rashid and Tarnita Woodard, located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, and 7583 S Las Vegas Blvd #123, Las Vegas, NV, 89123, respectively.

35.    Defendant First Investment Property LLC is a company located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose registered agent is Jennifer Paone. The managing member is Jamal Rashid, located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014.

36.    Defendant V.I.P. Entertainment, LLC is a company located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose registered agent is Tarnita Woodard. The managing member is John Williams, addressed at 528 S. Casino Center Blvd #300, Las Vegas, NV, 89101.

37.    Defendant MP3 Productions, Inc. is a company located at 4730 S. Fort Apache Rd., Suite 300, Las Vegas, NV, 89147, whose registered agent is Nevada Corporate Headquarters, Inc. The managing member is Tarnita Woodard, located at 1452 W Horizon Ridge Pkwy #121, Henderson, NV, 89012.

38.    Defendant MMM Productions, Inc. is a company located at 2520 St. Rose Pkwy Ste 319, Henderson, NV, 89074, whose registered agent is United Corporate Headquarters, Inc. The managing member is Jamal Rashid, located at 420 Lexington Ave., Suite 1756, New York, NY, 10170.

39.    Defendant E.P. Sanctuary is a nonprofit located at 2764 N Green Valley Pkwy #400, Henderson, NV, 89014, whose registered agent is Jamal Rashid, located at 2764 N Green

Valley Pkwy #400, Henderson, NV, 89014.

40. On information and belief, while not all of the companies listed are Mr. Rashid's escort ventures, all of the companies received or currently receive revenue and engaged in profit sharing with the escort companies. They also raise concerns of commingling assets and self-dealing.

41. Defendants Mally Mall Music, LLC, Future Music, LLC, PF Social Media Management, LLC, E.P. Sanctuary, Blu Magic Music, LLC, Exclusive Beauty Lounge, LLC, First Investment Property LLC, V.I.P. Entertainment, LLC, MP3 Productions, Inc., and MMM Productions, Inc. are legally affiliated with Defendant Jamal Rashid and will be referenced here with Rashid as "Escort Agency Defendants."

42. Defendant SHAC, LLC d/b/a Sapphire Gentlemen's Club and/or Sapphire, is a company located at 3025 Sammy Davis Jr. Dr., Las Vegas, NV, 89109. Defendant SHAC MT, LLC is a company located at 3135 S. Industrial Rd Suite 219, Las Vegas, NC, 89109. Sapphire Las Vegas (Sapphire) is located at 3025 Sammy Davis Jr. Dr., Las Vegas (Winchester), NV 89109.

43. Defendant Las Vegas Bistro, LLC d/b/a Larry Flynt's Hustler Club is a company located at 701 S Carson St.Suite 200, Carson City, NV, 89701. Larry Flynt's Hustler Club (Hustler) is located at 6007 Dean Martin Dr, Las Vegas (Paradise), NV 89118.

44. Defendants SHAC, LLC d/b/a Sapphire Gentlemen's Club and/or Sapphire, SHAC MT, LLC, and Las Vegas Bistro, LLC d/b/a Larry Flynt's Hustler Club will be referenced here as "Strip Club Defendants."

45. Defendant Western Best, Inc. d/b/a Chicken Ranch is a company located at 6166 S. Sandhill Rd. #140, Las Vegas, NV, 89121. Western Best LLC is a company located

at 6166 S. Sandhill Rd. #140, Las Vegas, NV, 89121. Western Best, Inc. and/or Western Best LLC own the Chicken Ranch, a legal brothel located at 10511 Homestead Rd, Pahrump, NV 89061.

46. The corporations above are incorporated and/or licensed under Nevada law with the power to sue and be sued.[1]

47. Defendants Western Best, Inc. d/b/a Chicken Ranch and Western Best LLC will be referenced here as "Brothel Defendants." Brothel Defendants, together with the Escort Agency Defendants and Strip Club Defendants will be referenced here as "Sex Industry Defendants."

## BACKGROUND

***The US sex trade in historical context***

*Sex trafficking and chattel slavery*

48. For over three hundred years, African people and their descendants were bought, sold, and used in chattel slavery in the Americas, that is, they were legally considered property, and were subjected to untold abuses, including torture, murder, family separation, coercion, and exploitation of their labor.

49. Sex slavery was a part of chattel slavery in the American South. White men subjected enslaved women and girls to rape and sexual abuse and harassment as a matter of course,[2] and women and girls were also sold specifically for prostitution in the euphemistically-named "fancy" trade.[3]

---

[1] A revoked or dissolved company can still be sued. *See* NEV. REV. STAT. §§ 86-274(5), & 86-505.

[2] Neal Kumar Katyal, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 Yale L.J. 791, 796–803 (1993).

[3] Edward E. Baptist, *"Cuffy," "Fancy Maids," and "One-Eyed Men": Rape, Commodification, and The Domestic Slave Trade in the United States*, 106 AM. HIST. REV. 1619, 1619–22 (2001).

50.     Ellen Brooks was one such woman, bought by Bruckner Payne to be a seamstress (a euphemism), then abused so badly that she died two weeks later.[4]  Enslaved women and girls were also forced to work in or manage brothels, and give their owners the fees they got from sex buyers.[5]

51.     In Louisiana, some sisters were raised as free daughters of a white planter and his mixed-race mistress.  Their father did not establish their legal status, as their mother warned him to do, before he died.  His creditors insisted that the sisters were legally slaves and refused their uncle's attempt to buy their freedom; they were sold into the New Orleans sex slavery market to pay for their father's debts.[6]

52.     In Alexandria, Virginia, Isaac Franklin and John Armfield had the largest, wealthiest slave trading firm in the United States in the 1820s and 1830s.[7]  Franklin was one of the main pimps for the New Orleans sex trafficking market.[8]  Both men joked in their letters to each other about the women they routinely raped.[9]

53.     This pervasive, commercialized sexual violence was not only admitted by the perpetrators, but decried by several abolitionists.  Harriet Jacobs, a formerly enslaved woman, wrote that as a 15-year-old, she was subjected to daily sexual abuse at the hands of her owner.[10]  Frederick Douglass called slave owners legalized brothel keepers, and averred that at least a

---

[4] Walter Johnson, *Soul by Soul: Life Inside the Antebellum Slave Market* 115 (Harvard University Press, 1999).
[5] Judith Schafer, *Brothels, Depravity and Abandoned Women: Illegal Sex in Antebellum New Orleans* 11 LA. STATE UNIV. PRESS (2009).
[6] 2 Harriet Martineau, *Society in America* 115-16, (Julia Miller ed., Project Gutenberg 2016) (1837).
[7] Hannah Natanson, *They were Once America's Cruelest, Richest Slave Traders. Why Does No One Know Their Names?*, WASHINGTON POST (Sept. 14, 2019, 7:00 AM), https://www.washingtonpost.com/history/2019/09/14/they-were-once-americas-cruelest-richest-slave-traders-why-does-no-one-know-their-names/.
[8] Baptist, *supra* note 2, at 1619.
[9] Natanson, *supra* note 6.
[10] Cheryl Nelson Butler, *The Racial Roots of Human Trafficking*, 62 UCLA L. REV. 1464, 1473–75 (2015).

million enslaved women were "consigned to a life of revolting prostitution" in the South.[11]

54. One proslavery advocate confessed as much, writing: "The fact is, that, in the Southern States, the prostitutes of the communities are usually slaves, unless they are imported from the free states. The negro and the colored woman in the south, supply the place, which at the north is usually filled with factory and serving girls."[12]

*The Thirteenth Amendment*

55. The Thirteenth Amendment was ratified in 1865, following the Civil War, to abolish slavery and involuntary servitude, except as a punishment for a crime.

56. After the Amendment was ratified, Southern states attempted to evade its implications, including through allowing debt bondage, that is, compelled or voluntary labor to repay a debt. Congress then passed the Peonage Act in 1867, banning debt bondage.[13]

57. The United States Supreme Court also clarified the Amendment's application was not limited to the enslavement of black people in the American South, but to all persons, and to any form of slavery or involuntary servitude.[14]

---

[11] Katyal, *supra* note 1, at 799 (quoting *Frederick Douglass Discusses Slavery, 1850, in A Documentary History of the Negro People in the United States* 309, 313 (Herbert Aptheker ed., 2d ed. 1969)("I hold myself ready to prove that more than a million of women, in the Southern States of this Union, are, by the laws of the land, and through no fault of their own, consigned to a life of revolting prostitution .... I am also prepared to prove that slave breeding is relied upon by Virginia as one of her chief sources of wealth. It has long been known that the best blood of old Virginia may now be found in the slave markets of New Orleans. It is also known that slave women, who are nearly white, are sold in those markets, at prices which proclaim, trumpet-tongued, the accursed purposes to which they are to be devoted. Youth and elegance, beauty and innocence, are exposed for sale upon the auction block; while villainous monsters stand around, with pockets lined with gold, gazing with lustful eyes upon their prospective victims[.]").

[12] W. Gilmore Simms, *The Morals of Slavery,* 39-40; *reprinted in* THE PRO-SLAVERY ARGUMENT 175, 2230 (Lippincott, Grambo, & Co. 1853), https:// archive.org/details/proslaveryargum00unkngoog/page/n239/mode/2up.

[13] 42 U.S.C. § 1994. *See also 42 U.S. Code § 1994-Peonage Abolished*, CORNELL L. SCH., https://www.law.cornell.edu/uscode/text/42/1994 (last visited July14, 2021).

[14] *See, e.g.*, *The Slaughterhouse Cases*, 83 U.S. (16 Wall.) 36 (1873).

58.     Southern states then started enacting criminal fraud statutes.  For example, a person who entered into a written contract for services in Alabama, received payment, and then failed to do the work or return the money could be charged with criminal fraud.[15]

59.     The Supreme Court held that Alabama's law violated the Thirteenth Amendment, because threatening criminal penalties for failure to perform a contract was a way to indirectly coerce labor through debt bondage.[16]

60.     Alabama tried to argue that the law was merely a neutral fraud statute, but the Court reasoned that using apparently neutral statutes that had the effect – through the independent actions of third parties – of perpetuating slavery violated the Thirteenth Amendment.[17]

*Feminist activism and legal reforms*

61.     Many abolitionists were also active in movements to secure women's rights. Feminist activism in the late 1800s and early 1900s was concerned with preventing men's violence against women, including statutory rape, domestic violence, and prostitution.[18]

62.     In particular, activists focused on stopping what they called "white slavery" – that is, women and girls being forced, coerced, or defrauded into prostitution.

63.     Despite the characterization of sex trafficking as a danger primarily to white women, which was often fueled by racism, women of color remained very vulnerable to commercial sexual exploitation after the Thirteenth Amendment was enacted.

---

[15] *Bailey v. Alabama*, 219 U.S. 219, 227–28 (1911).  There was an intent requirement:  you had to intend to injure or defraud the employer, but with a significant caveat:  simply failing to provide the services – for whatever reason – was considered evidence of intent to commit fraud.
[16] *Bailey v. Alabama*, 219 U.S. 219, 238-242, 245 (1911).
[17] *Id.*
[18] *See, e.g.*, Bonnie Shucha, *White Slavery in the Northwoods: Early U.S. Anti-Sex Trafficking and its Continuing Relevance to Trafficking Reform*, 23 Wm. & Mary J. Race, Gender, & Soc. Just. 75, 75–76 (2016); Jane E. Larson, *"Even a Worm Will Turn at Last": Rape Reform in Late Nineteenth-Century America*, 9 YALE. J. L. & HUMANS. 1, 2–4 (1997); Katyal, *supra* note 1, at 805–06.

64. During the Jim Crow era, red light districts were placed in black neighborhoods, and segregation did not stop white men from frequenting them.[19]

65. A similar story played out in the North, with Southern black women being promised big city factory jobs and then forced into prostitution when they arrived.[20]

66. Additionally, Chinese women were trafficked into the United States for purposes of prostitution,[21] into situations recognized as slavery by the Ninth Circuit in at least one case.[22]

67. For many key feminist activists in the nineteenth and early twentieth centuries campaigning against prostitution as a form of men's violence against women was central to their advocacy.

68. One of these was the prominent physician and theologian Katharine Bushnell, a spokesperson for the Women's Christian Temperance Union, who spent several years opposing the prostitution of Chinese women and girls in the San Francisco area, who were exploited by Chinese traffickers and white male buyers.[23]

69. Some women and girls were auctioned off for prostitution at San Francisco's wharf, well after slavery had been outlawed in the United States.[24]

70. Women formed a mission house as a refuge for prostituted women and girls,

---

[19] Vednita Nelson, *Prostitution: Where Racism & Sexism Intersect*, 1 MICH. J. GENDER & L. 81, 84 n.14 (1993). *See also* Anna Julia Cooper, *A Voice from the South* 12 (1891) (noting the need for a White Cross league – an anti-prostitution organization which focused its efforts on men – for black women and girls).

[20] Butler, *supra* note 9, at 1490.

[21] *See, e.g.*, *Id.* at 1480.

[22] The court found that this fact did not enable them to prevent enforcement of immigration laws. *United States v. Ah Sou*, 138 F. 775, 777–78 (9th Cir. 1905) ("The fact that the deportation of a Chinese slave girl illegally brought into this country for purposes of prostitution by her master, from whom she subsequently escaped, would result in remanding her to slavery and degradation, affords no ground upon which the courts can refuse to enforce the statute.").

[23] Dana Hardwick, *San Francisco and 'Social Hygiene,'* in *Oh Thou Woman that Bringest Good Tidings*, 73-75 (2002).

[24] Anna Diamond, *The Women Who Waged War Against Sex Trafficking in San Francisco,* SMITHSONIAN MAGAZINE (May 8, 2019), https://www.smithsonianmag.com/history/women-banded-together-fight-slavery-san-francisco-180972113/.

facing down pressure from white city officials and Chinese organized crime.

71. Bushnell similarly investigated and exposed the sex trafficking of women and girls into Wisconsin in the 1880s, where many brothels were attached to logging camps.[25]

72. Bushnell also worked with Josephine Butler, an abolitionist and women's rights activist, to combat the exploitation of women and girls through prostitution in other countries as well, including China, India, and the United Kingdom.

73. For example, in nineteenth century Britain, Josephine Butler's campaign to eradicate the Contagious Diseases Act centered on the fact that the process was invasive, degrading, and stigmatizing. The testing of alleged prostituted women, and not male buyers, highlighted the disparity between the prostituted and those exploiting them. It not only neglected the harm of prostitution itself but compounded its harm by only protecting the male buyer. It was successfully repealed in 1886.[26]

74. In 1910, Congress passed the Mann Act, which criminalized the interstate or foreign transport of women and girls for prostitution purposes.[27] Congressional reports from that time show that Congress considered what they termed "forced prostitution" to be a form of slavery.[28]

75. Between 1904 and 1949, a number of international treaties also sought to address the sex trafficking of women and girls, assuming a direct connection between prostitution and exploitation.[29]

---

[25] *See, e.g.*, Bonnie Shucha, *White Slavery in the Northwoods: Early U.S. Anti-Sex Trafficking and Its Continuing Relevance to Trafficking Reform*, 23 Wm. & Mary J. Women & L. 75 (2016).

[26] Josephine Butler, *Josephine Butler and the Prostitution Campaigns: Diseases of the Bodily Politic* (Jane Jordan & Ingrid Sharp eds., 2004), https://www.routledgehistoricalresources.com/feminism/sets/josephine-butler-and-the-prostitution-campaigns.

[27] *Mann Act*, CORNELL L. SCH., https://www.law.cornell.edu/wex/mann_act (last visited Apr. 21, 2021).

[28] *See also* Katyal, *supra* note 1, at 806 (citing H.R. Rep. No. 47, 61st Cong., 2d Sess. 10 (1909); S. Rep. No. 886, 61st Cong., 2d Sess. 11 (1909)).

[29] *See* Convention for the Suppression of the Traffic in Persons and of the Exploitation of the Prostitution of Others,

***The Nevada sex trade in contemporary context***

*Federal and international laws on sex trafficking*

76. In 2000, Congress passed the Trafficking Victims Protection Act, the first comprehensive law in the United States to explicitly penalize the full range of human trafficking offenses, including sex trafficking.

77. Congress reauthorized the law in 2003 as the Trafficking Victims Protection Reauthorization Act (TVPRA) and created a civil cause of action. 18 U.S.C. § 1595.

78. Under the TVPRA, sex trafficking occurs if there is a commercial sex act involving a person under age 18 or a person induced by force, fraud, or coercion.[30] This is considered a severe form of trafficking in persons under federal law. 22 U.S. Code § 7102 (11)(A). Anyone who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means" or "benefits, financially" from sex trafficking can be held liable.

79. Commercial sex act means "any sex act, on account of which anything of value is given to or received by any person."[31]

80. Coercion includes "threats of serious harm to or physical restraint against any person; any scheme, plan, or pattern intended to cause a person to believe that failure to

---

July 25, 1951, 96 U.N.T.S. 271, https://www.ohchr.org/en/professionalinterest/pages/trafficinpersons.aspx.

> (1) International Agreement of 18 May 1904 for the Suppression of the White Slave Traffic, as amended by the Protocol approved by the General Assembly of the United Nations on 3 December 1948,
> (2) International Convention of 4 May 1910 for the Suppression of the White Slave Traffic, as amended by the above-mentioned Protocol,
> (3) International Convention of 30 September 1921 for the Suppression of the Traffic in Women and Children, as amended by the Protocol approved by the General Assembly of the United Nations on 20 October 1947,
> (4) International Convention of 11 October 1933 for the Suppression of the Traffic in Women of Full Age, as amended by the aforesaid Protocol . . . .

*Id.* pmbl.

[30] 18 U.S.C. § 1591.

[31] *Id.* at § 1591(e)(3).

Case 2:21-cv-01567-APG-VCF Document 49 Filed 11/10/21 Page 16 of 58

perform an act would result in serious harm to or physical restraint against any person; or the abuse or threatened abuse of law or the legal process."[32]

81. Serious harm refers to "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm."[33]

82. Section 1595 authorizes civil claims against sex trafficking perpetrators, as well as anyone who "knowingly benefits, financially or by receiving anything of value" from participating in what the person knew or should have known was a sex trafficking venture.[34]

83. Prostitution continues to be against federal policy as a form of sexual exploitation that is linked to sex trafficking.[35]

84. This is consistent with international law. The 1949 UN Convention for the Suppression of the Traffic in Persons and of the Exploitation of the Prostitution of Others states that, "prostitution and the accompanying evil of the traffic in persons for the purpose of prostitution are incompatible with the dignity and worth of the human person," and forbids prostitution related activities, including exploiting "the prostitution of another person, even with the consent of that person."[36]

[32] *Id.* at § 1591(e)(2).
[33] *Id.* at § 1591(e)(5).
[34] 18 U.S.C. § 1595.
[35] *See, e.g.*, 22 U.S.C. § 7601 ("Prostitution and other sexual victimization are degrading to women and children and it should be the policy of the United States to eradicate such practices.").
[36] Convention for the Suppression of the Traffic in Persons and of the Exploitation of the Prostitution of Others, pmbl., Art. 1, July 25, 1951, 96 U.N.T.S. 271, https://www.ohchr.org/en/professionalinterest/pages/trafficinpersons.aspx.

*Connections between prostitution and sex trafficking*

85.     It is also borne out by experience. Prostitution is associated with a high risk of sexual assault and other violence, predominately from sex buyers.[37]

86.     When prostitution is legal, it leads to increased sex trafficking to meet demand. This has occurred in Rhode Island and in the Netherlands.

87.     In Rhode Island, indoor prostitution was decriminalized from 1980-2009 and during that period of time the illicit trade exploded, and it heavily involved organized crime.[38]

88.     Brothels existed under the guise of spas and health services but were deeply intertwined with the international trafficking of Asian women.[39]

89.     Men visited these spas from nearby states in droves and their reviews of these places increased by 200% reflecting the explosion of the sex trade, especially in Providence.[40]

90.     The lack of regulations also meant that 16- and 17-year-olds were involved in these enterprises, police were unable to adequately investigate matters, and labor laws or code violations were insufficient ways to get at the more serious crimes.[41]

91.     Legalization in the Netherlands has also been ineffective at curbing illegal

---

[37] For example, a study of 562 women exploited in prostitution in Miami, Florida (USA) found the lifetime prevalence of abuse was extremely elevated at 88%, and 34% reported violent encounters with "dates" or clients in the prior 90 days. Serious mental illness among this population of prostituted women was quite common, with 74% reporting severe symptoms of depression, anxiety, or traumatic stress.  Hilary L. Surratt et al., *HIV Risk Among Female Sex Workers in Miami: The Impact of Violent Victimization and Untreated Mental Illness*, 24 AIDS CARE, 553-561 (2012).  Also, a study of homicide in the United States from 1970 to 2009 found that prostituted persons accounted for 32% of all cases of serial murder involving female victims only. The proportion of serial murders with female prostituted victims increased across the study period, from 16% during 1970-1979 to 69% during 2000-2009. Killers of prostituted women also amassed a greater average number of victims than do killers of other victim types and kill for slightly longer periods of time. Kenna Quinet, *Prostitutes as Victims of Serial Homicide: Trends and Case Characteristics, 1970-2009*, 15 HOMICIDE STUDIES 74-100 (2011).
[38] Melanie Shapiro & Donna M Hughes, *Decriminalized Prostitution: Impunity for Violence and Regulation*, 52 WAKE FOREST L. REV. 534 (2017).
[39] *Id*. at 545. In fact, the largest mafia bust in FBI history resulted from infiltration of these brothels and led to the arrest of over 127 people from seven crime families including the Gambinos, with extortion efforts totaling up to 1.5 million dollars. *Id*. at 547.
[40] *Id*. at 540.
[41] *Id*. at 552-555.

activities. In fact, the illegal industry flourishes, and the criminals who run those operations also participate in the legal industry, which further provides cover for their illicit activities.[42] Multiple studies out of the Netherlands indicate organized crime permeates it, and conclude that it is impossible to eliminate, or even reduce, the criminal aspects of the sex trade.[43] These conclusions have led legislators to consider new approaches and revamp their existing policies.[44]

92. In Nevada, the signs point to the same conclusion. In the United States, it is believed that illegal prostitution generates over 14 billion dollars of revenue.[45] Of that, 5 billion is generated in Vegas alone,[46] even though prostitution is not legal in Las Vegas. Legal brothels are reported to provide 75 million dollars of revenue for the state.[47] More to the point, they allow the sex trade to flourish all over the state and become a part of tourist expectations, which furthers growth of state revenue. In other words, the legal trade correlates with exponential increases in the illegal trade and state cash flow.

93. The legal trade also correlates with an increase in sex trafficking: two multi-country studies have concluded that wherever there is legal or decriminalized prostitution, human trafficking increases. One study compared 39 nations and the other was more expansive, assessing 150 countries, and both found a relationship between prostitution laws and sex trafficking.[48] Sex trafficking is greater in countries where prostitution is legal or

---

[42] Sheila Jeffreys, *Brothels Without Walls: The Escort Sector as a Problem for the Legalization of Prostitution,* 17 SOC. POL.: INT'L STUD. GENDER, ST., SOC'Y 210 (2010).

[43] Karin Werkman, *Briefing on Legal Prostitution in The Netherlands: Policies, Evaluations, Normalisation,* June 2016, feminismandhumanrights.files.wordpress.com/2014/06/karin-werkman-2016-briefing-on-legal-prostitution-in-the-netherlands.pdf (last visited Sep. 9,2021).

[44] Jeffreys, *supra* note 42, at 11.

[45] Prostitution Revenue by Country, HAVOCSCOPE, https://www.havocscope.com/prostitution-revenue-by-country/3809085/ (last visited July 14, 2021).

[46] Ronald B. Flowers, *Prostitution in the Digital Age: Selling Sex from the Suite to the Street* 42-46 (2011).

[47] *Id.*

[48] Niklas Jakobsson & Andreas Kotsadam, *The Law and Economics of International Sex Slavery: Prostitution*

decriminalized.[49]

*Nevada's legal norms and sex trafficking*

94. In the United States, Nevada stands alone in maintaining legalized prostitution, in apparent defiance of the legal and human rights norms and data described above.

95. While Nevada has allowed brothel operation since the nineteenth century, the first officially sanctioned brothel, Mustang Ranch, was licensed by Storey County in 1971.

96. Nevada then enacted NEV. REV. STAT. § 244.345(8), legalizing prostitution in county-licensed brothels, for counties with fewer than 200,000 residents.

97. Prostitution is now permitted in counties that have fewer than 700,000 residents, and Nevada currently has legal brothels in seven counties: Elko,[50] Lander,[51] Lyon,[52] Mineral,[53] Nye,[54] Storey,[55] and White Pine.[56]

98. State regulations force women in prostitution to get tested for sexually transmitted infections every week. NEV. ADMIN. CODE § 441A.800.

99. Nevada does not require sex buyers to undergo any similar testing. Not unlike the Contagious Diseases Act in nineteenth-century Great Britain described above, the one-sided testing protects the sex buyer and compounds the harm to and burden on the prostituted persons.

---

*Laws and Trafficking for Sexual Exploitation*, 35 EUR. J. L. AND ECON. 1 (2013); Seo-Young Cho, Axel Dreher, & Eric Neumayer, *Does Legalized Prostitution Increase Human Trafficking*?, WORLD DEV. 41 (2013).

[49] *Id.*

[50] ELKO, NEV., COUNTY CODE, §6-11 (2020) (defining sexually oriented businesses and employee licensing).

[51] LANDER, NEV., COUNTY CODE, "Prostitution," §5.16 (2020) (defining prostitution).

[52] LYON, NEV., COUNTY CODE, §5.03 (2020 (defining brothels).

[53] MINERAL, NEV., COUNTY CODE, §5.12 (2019) (defining prostitution).

[54] NYE, NEV., COUNTY CODE, §9.20 (2020) (defining prostitution).

[55] STOREY, NEV., COUNTY CODE, §5.16 (2015) (defining brothels).

[56] WHITE PINE, NEV., COUNTY CODE, §10.36 (2021) (disallowing prostitution in unincorporated areas of White Pine, but allowing such activity within the incorporated areas). *See* ELY, NEV., CITY ORDINANCE, "Prostitution," §3.6 (2020) (city within White Pine County explicitly authorizing prostitution).

100. Nevada also permits cities and counties to license escorting, and what it terms "entertainment by referral service," defined as follows:

> (a) "Entertainer for an entertainment by referral service" means a natural person who is sent or referred for a fee to a hotel or motel room, home or other accommodation by an entertainment by referral service for the purpose of entertaining the person located in the hotel or motel room, home or other accommodation.
>
> (b) "Entertainment by referral service" means a person or group of persons who send or refer another person to a hotel or motel room, home or other accommodation for a fee in response to a telephone or other request for the purpose of entertaining the person located in the hotel or motel room, home or other accommodation.

NEV. REV. STAT. § 244.345(8).

101. Nevada permits counties to self-regulate as to prostitution. In Storey County, the local brothel owner is also a county commissioner who sits on the brothel board, the government entity that supposedly regulates the brothels.[57]

102. In the legal brothels, women are commonly subjected to a number of practices that amount to debt bondage, including:

- Being locked inside the brothels and not allowed to leave for weeks at a time;
- Having to give the brothel 50% of their earnings;
- Being required to follow the brothel's rules or face fines; and
- Being forced to live on the premises and pay the brothels for room and board to do so.

103. Most Nevada brothels are located in the middle of the desert – that is, in extremely remote locations, with few trees or spaces where a person would not be almost

[57] *See* STOREY, NEV., COUNTY CODE, § 5.16 (2015).

immediately visible, and often without meaningful access to public transportation. Some are also surrounded by high fences.

104. The practices described above are inherently coercive, particularly given the geographic context, and lead to women in prostitution owing the brothels money and being held in debt bondage in legal Nevada brothels.

105. Many women prostituted in Nevada brothels are controlled by outside pimps, in addition to brothels themselves, which also act as pimps.

106. One federal court acknowledged this problem recently, citing a study that found that pimps remained common and some assaults against prostituted women occurred within Nevada's legal brothels. *Coyote Publishing, Inc. v. Miller*, 598 F. 3d 592, 596 n.2 (2010).

107. And in 2018, the Lyon County Sheriff's Office conducted multiple brothel work card compliance checks, assisted by U.S. Immigration and Customs Enforcement officials. They found numerous illegal practices, including immigration law violations, fraudulent statements, and sex trafficking indicators.[58]

108. Prostitution is legal in Nye County, which is just outside Las Vegas.

109. The Nye County Code states that solicitation is illegal unless it occurs within a legal brothel. Nye Co. Code § 9.20.160.

110. The Nye County Code defines solicitation as someone who offers to engage in prostitution, or who "[i]nduces, persuades, encourages, inveigles or compels" someone else to do so. Nye Co. Code § 9.20.020.

111. The Nye County Code does not define "compel."

112. By implication, Nye County does not ban compelling prostitution as long as the

[58] Lyon County Sheriff's Office, *Internal Audit Report on Brothel Compliance Requirements* (2018).

perpetrator does so in a legal brothel.

113. Compelling someone to engage in prostitution violates federal law, which bans sex trafficking, including coercing people into commercial sex acts.

114. The Nye County brothel licensing board *may* refuse to grant a brothel license to someone who has been convicted of a felony, has a financial interest in an illegal prostitution business, is under twenty-one years old, or who has had a previous brothel license revoked for cause, but *is not required* to do so. Nye Co. Code § 9.20.120.

115. Prostitution is officially illegal in Las Vegas and Clark County, though this is more pretense than reality.

116. Las Vegas has legalized escorts and escort bureaus. LAS VEGAS, NEV., MUN. CODE § 6.36.010 (2020).

117. Escorting is a common front for prostitution. Defendant City of Las Vegas is aware of this, noting in its own code the need to prevent prostitution without implicating "free expression." LAS VEGAS, NEV., MUN. CODE § 6.57.010. [59]

118. Escorts may not operate independently, but are forced by law to be managed by an escort agency, and only one at a time. *Id.* § 6.36.170, 6.36.190.

119. By city regulation, escorts must submit to medical testing and provide "written evidence" from a physician who has deemed them "free from any communicable diseases" twice a year to maintain work card status. *Id.* § 6.36.160.[60] No such requirement is imposed

[59] The Clark County ordinances are more explicit about this compromise: "The cover of the First Amendment has materially increased the burden of policing this business to decrease the incidence of prostitution and drug sales." CLARK, NEV., COUNTY CODE § 6.140 (2021). Las Vegas is located in Clark County. The ordinances for Clark apply to the unincorporated parts of the county. *Id.*

[60] *See also* City of Las Vegas Department of Planning Business Licensing Division, *Checklist/Instructions – Escort Bureau – Form PL056* (revised Apr. 11, 2016), https://files.lasvegasnevada.gov/business-licensing/Escort-Bureau-Web-Instruction-Sheet.pdf.

on the men who patronize the escorts.

120.    Clark County, where Las Vegas is located, also has ordinances licensing escort

businesses,[61] as well as regulations licensing outcall entertainment.[62]

121.    Similar to the state statute, Clark County defines the latter as follows:

> "Outcall" or "entertainment by referral" service means a person or group of persons who send or refer another person to a hotel or motel guest room for a fee in response to a telephone call or other request for the purpose of entertaining the person located in the hotel or motel guest room.[63]

122.    Clark County criminalizes prostitution.[64]

123.    Strip clubs are also common fronts for prostitution.  Defendants City of Las Vegas and Clark County are aware of this, directly acknowledging that strip clubs are connected to both prostitution and organized crime in the preface to their regulations.[65]  The City also bans dancers from being alone in private rooms with club patrons.[66]

124.    Defendant Clark County has no such prohibition, but its ordinances provide: "Dancers shall not mingle with the patrons while in an unclothed or nude state at the licensed establishment."[67]

125.    Both the City of Las Vegas and Clark County regulate strip clubs extensively, distinguishing between venues allowing partial and full nudity,[68] permitting alcohol to be sold

---

[61] *See* CLARK, NEV., COUNTY CODE §§ 8.32.010-150 (2021).  Clark County distinguishes between "service-oriented" and "sexually-oriented" escort businesses, *See* CLARK, NEV., COUNTY CODE §§ 8.32.160 and provides that licenses may be denied to participants in sexually oriented escorting, id at §§ 8.32.80, 140, but does not actually require denial.

[62] *See* CLARK, NEV., COUNTY CODE §§ 6.140.030-140 (2021).

[63] *See* CLARK, NEV., COUNTY CODE § 6.140.020 (2021).

[64] *See* CLARK, NEV., COUNTY CODE § 6.140.150 (2021).

[65] LAS VEGAS, NEV., MUN. CODE § 6.35.010 (findings as to erotic dance establishments); CLARK, NEV., COUNTY CODE § 6.160.010 (findings as to erotic dance establishments).

[66] LAS VEGAS, NEV., MUN. CODE § 6.35.100.

[67] CLARK, NEV., COUNTY CODE § 6.160.110 (2021).

[68] *See* LAS VEGAS, NEV., MUN. CODE §§ 6.06B.030 (defining adult nightclubs) and 6.35.030 (defining erotic dance establishments); CLARK, NEV., COUNTY CODE §§ 6.170.030(a)(defining adult nightclubs) and 6.160.030(d)(defining erotic dance establishments). "Erotic dance establishments" are venues permitting partial

only in the former,[69] and generally requiring dancers to be eighteen (or, for clubs selling alcohol in Clark County, twenty-one) years of age, and licensed. [70]

126. Strip club dancers may not apply for the required work cards unless their employers sign their applications.[71]

127. Legalized prostitution increases the demand for commercial sex, and men travel to Nevada to buy sex because they incorrectly believe it is legal throughout the state.

128. The sex industry exploits this misconception with impunity, that is, by operating both legal and illegal entities that violate federal laws against debt bondage and sex trafficking, without facing any meaningful enforcement from Nevada.

129. Prostitution advertising, for both legal and illegal prostitution in Nevada, is pervasive online, and directed toward people outside the counties where prostitution is legal.

130. On information and belief, many men who buy women for sex in Nevada come from outside Nevada, many of them induced by online advertising and marketing.

131. On information and belief, Nevada does not enforce the advertising regulations, NEV. REV. STAT. §§ 201.430; 201.440, that outlaw prostitution advertisements outside the

---

nudity (unless not serving alcohol in Clark County, in which case full nudity is permitted), and "adult nightclubs" are venues permitting full nudity. The Strip Club Defendants are erotic dance establishments.

[69] *Compare* LAS VEGAS, NEV., MUN. CODE § 6.06B.090(F) (banning alcohol consumption in adult nightclubs) and LAS VEGAS, NEV., MUN. CODE § 6.35.100 (requiring erotic dance establishments to obtain licenses to sell alcohol); compare CLARK, NEV., COUNTY CODE § 6.170.090 (f) (banning alcohol consumption in adult nightclubs) *and* CLARK, NEV., COUNTY CODE § 6.160.110 (distinguishing between erotic dance establishments that sell alcohol and those that do not).

[70] *Compare* LAS VEGAS, NEV., MUN. CODE § 6.06B.090(D)(requiring persons employed as servers or attendants in adult nightclubs to possess valid permits and to be eighteen years old) *and* LAS VEGAS, NEV., MUN. CODE § 6.35.100 (requiring persons employed as dancers in erotic dance establishments to possess a valid license and to be eighteen years old, although patrons must be twenty-one if alcohol is sold); *Compare* CLARK, NEV., COUNTY CODE § 6.170.090 (d) (requiring persons employed as servers or attendants in adult nightclubs to possess valid permits and to be eighteen years old) *and* CLARK, NEV., COUNTY CODE §6.160.110(d)(requiring persons employed in erotic dance establishments to possess valid licenses, and to be eighteen if alcohol is not sold, and twenty-one if it is).

[71] *See* LAS VEGAS METROPOLITAN POLICE DEPARTMENT, https://www.lvmpd.com/en-us/RecordsFingerprintBureau/Pages/WorkCards.aspx (last visited Nov. 8, 2021).

counties that permit brothels.

132.    Nevada itself has acknowledged this problem, submitting a federal grant application for combating sex trafficking, admitting that the state is "a major national and even global destination, because Nevada is also synonymous with legalized gambling, legalized prostitution, clubbing, partying, bars, strip clubs, celebrities, glamour and gaudy excess – a grand spectacle of legitimized sin 24/7, 365 days per year!"  The application also noted that prostitution is not "universally legal in Nevada," despite visitors' belief otherwise, and:

> Nevada's legal brothels complicate development of a consistent statewide response to sex trafficking . . . Nevada's recognition as one of the top trafficking destinations by multiple government and non-profit advocacy agencies is earned by effectively marketing the state's entertainment and fantasy fulfillment possibilities.[72]

133.    Nevada criminalized sex trafficking in 2013.

134.    Nevada had 4 new federal sex trafficking prosecutions in 2020, for a total of 9 active cases (compared to 7 in the District of Columbia, 30 in Illinois, 44 in New York, and 61 in Texas), and 0 sex trafficking convictions (compared to more than 150 nationwide).[73]

135.    While these numbers may seem reflective of Nevada's relatively small population (3 million residents),[74] they are disproportionately low given Nevada's extremely high tourism numbers:  in 2018, Las Vegas had 42.1 million visitors (compared to 21.8 million in Boston, 22.8 million in Washington, DC, 53 million in Atlanta, 57.6 million in Chicago, and 65.2 million in New York City).[75]

---

[72] OVC FY 2014 Services for Victims of Human Trafficking Grant Application Nevada Office of the Attorney General – Program Narrative.

[73] *See* Kyleigh Feehs & Alyssa Currier Wheeler, *2020 Federal Human Trafficking Report*, https://www.traffickinginstitute.org/wp-content/uploads/2021/06/2020-Federal-Human-Trafficking-Report-Low-Res.pdf.

[74] *Nevada Population,* POPULATIONU, www.populationu.com/us/nevada-population (last visited Aug. 9, 2021).

[75] *America's 30 Most Popular Cities for Tourists 2019*, BEST CHOICE REVIEWS, www.populationu.com/us/nevada-population (last visited Aug. 9, 2021).

136.    On information and belief, Nevada's economy relies heavily on tourism.  The top 15 employers in Clark County in 2020 were all either departments run by city officials or casinos/resorts (with the exception of Nellis Air Force Base).[76]

137.    Nevada has had significant problems with government corruption, ranking 46 out of 50 states and receiving an "F" grade on the Center for Public Integrity's State Integrity Investigation in 2015.[77]

138.    Over the last several years, federal corruption probes have investigated Nevada's then-governor,[78] and the Las Vegas Metropolitan Police Department – specifically for collaborating with the pimps/sex traffickers they were supposedly investigating.[79]

139.    On information and belief, there is no state-reported data on sex trafficking investigations, prosecutions, or convictions under state law.

140.    On information and belief, Nevada does not aggressively prosecute sex trafficking.

141.    Yet Nevada's sex trade is disproportionately large; sex trafficking reports in Nevada are out of proportion with the state's small population size.

142.    Nevada's legal brothels generate an estimated $75 million dollars per year, a

---

[76] *See Comprehensive Area Financial Report*, NEV. LAB. MKT. INFO., https://nevadaworkforce.com/CAFR (last visited Sep. 7,2021). With the exception of the University of Nevada, the top 15 employers for the whole state are exclusively state and local government entities, and casinos/resorts. *20 Largest Employers in Nevada*, NEV. DEP'T OF EMP'T, https://www.nevadaresorts.org/benefits/largest-employers-full.php.

[77] *See* Felicia Mello, *Nevada Gets F Grade in 2015 State Integrity Investigation,* CENTER FOR PUBLIC INTEGRITY (Nov. 12, 2015, 12:01 PM), https://publicintegrity.org/politics/state-politics/state-integrity-investigation/nevada-gets-f-grade-in-2015-state-integrity-investigation/.

[78] *See* The Associated Press, *Attorney: Nevada Governor Cleared in FBI Probe*, NBC NEWS (Nov. 2, 2008, 5:25 PM), https://www.nbcnews.com/id/wbna27507509.

[79] *See* George Knapp and Matt Adams, *I-Team: Former cop, suspected pimp linked together in FBI investigation,* 8 NEWS NOW (Nov. 11, 2016, 12:40pm), https://www.8newsnow.com/news/i-team-former-cop-suspected-pimp-linked-together-in-fbi-investigation/607916728/; George Knapp and Matt Adams, *I-Team: Explosive Testimony in Police Corruption Case,* 8 NEWS NOW (Nov. 17, 2018, 8:08 AM), https://www.8newsnow.com/news/i-team-explosive-testimony-in-police-corruption-case/859451936/; Dana Gentry, *Cops, pimps winners in FBI Probe,* NEVADA CURRENT (Oct. 31, 2019), https://www.nevadacurrent.com/2019/10/31/cops-pimps-winners-in-fbi-probe/.

figure dwarfed by the $5 billion a year Nevada's illegal sex trade generates.[80]

143. The state government receives revenues from prostitution occurring through escort agencies, as it taxes escort agencies and strip clubs 9% of their fees under the state live entertainment tax, NEV. REV. STAT. § 368A.010–368A.370.

144. Local governments with legal brothels receive revenues from brothel taxes and fees.

145. Nevada does not enforce its limited regulation of prostitution, permitting de facto prostitution to exist through escort bureaus, entertainment by referral service, and strip clubs, failing to implement or enforce laws limiting prostitution advertising, and failing to prevent the resultant debt bondage in legal brothels.

146. Nevada allows not only prostitution within legal and rural brothels, but also escorting and "outcall entertainment" – effectively legalizing prostitution throughout the state – directly for small towns and counties, and through euphemism and inaction in the rest, without meaningful prevention or accountability for the severe forms of sex trafficking occurring in the Nevada sex trade.

***Plaintiffs' exploitation in the sex trade***

147. Plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 were all induced through force, fraud, and coercion into providing commercial sex acts in Nevada's legal sex industry, including legal escort agencies, legal strip clubs, and a legal brothel.

*Plaintiff Angela Williams*

148. Plaintiff Angela Williams was sex trafficked in Nevada from 2006 to 2017.

149. Ms. Williams lived on her own as a seventeen-year-old in Houston. She came

[80] Flowers, *supra* note 46.

from an economically marginalized family and neighborhood, worked two jobs to support herself, and was attending college.

150. During this vulnerable time in her life, Ms. Williams 's first trafficker, Andre McDaniels, introduced himself as a "friend," worked to gain her trust, and enticed her to go to his "modeling studio."

151. Ms. Williams later learned that McDaniels's studios[81] were illegal brothels disguised as lingerie modeling studios.

152. Ms. Williams did not know what a pimp was, and believed sex-trafficked women were streetwalkers only. She just thought Mr. McDaniels was a rich older man that had other girls from Ms. Williams's high school working for him who could afford to move away from their poor childhood neighborhoods.

153. The other high school peers that "worked" for Mr. McDaniels did not initially disclose to Ms. Williams what they were doing at the "modeling studios."

154. Ms. Williams later learned that some of the girls who worked for Mr. McDaniels, who was 36, were seventeen years old or younger.

155. Mr. McDaniels continued to groom Ms. Williams until she was eighteen, then increased his recruitment tactics.

---

[81] On Monday, January 7, 2013, McDaniels was ordered to serve 96 months in federal prison for his convictions of conspiracy to commit sex trafficking, one count of coercion and enticement, and two counts of transportation in relation to Operation Total Exposure, at the time, the largest domestic sex trafficking case in the Southern District of Texas. USAO S. D. TX, *Three Sentenced in Massive Domestic Sex Trafficking Case*, U.S. DEP'T OF JUST. (Jan. 7, 2013), https://www.justice.gov/usao-sdtx/pr/three-sentenced-massive-domestic-sex-trafficking-case. Mr. McDaniels was shortly thereafter convicted for witness tampering in connection to the same case. USAO S. D. TX, *Witness Tampering Lands Convicted Sex Trafficker More Prison Time,* FBI HOUSTON DIVISION (June 26, 2013), https://archives.fbi.gov/archives/houston/press-releases/2013/witness-tampering-lands-convicted-sex-trafficker-more-prison-time.

156. He showered Ms. Williams with attention, supplied her with marijuana, spent thousands of dollars on lingerie for her, and convinced her to change her appearance, such as her hair color.

157. Mr. McDaniels completely isolated Ms. Williams from friends and family.

158. Eventually, through fraud and coercion, Mr. McDaniels brought Ms. Williams to his "modeling studio."

159. The other women and girls who worked for Mr. McDaniels eventually manipulated Ms. Williams into believing that prostitution was glamorous and that "working" for Mr. McDaniels was not different than anything she would do for any other boyfriend, except she would get paid extremely well.

160. In the beginning, due to the systemized coercion and dehumanization, Ms. Williams minimized the trauma of performing sexual acts on sex buyers since she was surrounded by other young women sex trafficked by Mr. McDaniels and his brothers.

161. Ms. Williams was swiftly forced into performing hand jobs on sex buyers before she could make sense of the details.

162. Ms. Williams started out by performing hand jobs, and eventually the sex buyer would complain, and another girl would come in the room to finish the service the sex buyer desired, whether it was vaginal or anal sex.

163. Ms. Williams did not even know how to perform some of the sexual positions the sex buyers were demanding.

164. Mr. McDaniels continued to manipulate and groom Ms. Williams by giving her special treatment and hiding the fact that the sex buyers were unhappy with Ms. Williams being uncomfortable performing sexual acts such as vaginal or anal sex on sex buyers.

165. Ms. Williams was always the last one to come to the lineup, hoping that a sex buyer would see a different sex trafficked woman first, so she would not have to perform sexual acts.

166. Mr. McDaniels would tell some of the sex buyers that Ms. Williams was underage. One sex buyer actually paid Ms. Williams to dress like a cheerleader and meet him at the high school bleachers.

167. Despite her distress and unwillingness, Ms. Williams was eventually coerced into performing any sex act requested by the sex buyer.

168. Ms. Williams was confused and afraid.

169. As is common with grooming, suddenly, just like the rest of the girls working for Mr. McDaniels, Ms. Williams no longer received special treatment and was forced to give all the money she earned from sex buyers to Mr. McDaniels.

170. Ms. Williams was not permitted to leave the illegal brothels for periods as long as 24 hours.

171. Ms. Williams was only permitted to go “home” from the “modeling studio” to the shared living quarters where all the women and girls being sexually exploited by Mr. McDaniels were forced to live on Sundays, and sometimes not at all. The women and girls in the shared living quarters were permitted few personal items, except for lingerie.

172. Ms. Williams was able to break free from Mr. McDaniels, but then ended up stripping at a strip club chain in Houston, Texas.

173. The Houston strip club generally encouraged prostitution and sex trafficking within the clubs.

174. While Ms. Williams was at the Houston strip club, the club knew she was a

victim of human trafficking and sold her for sex in the club.

175. Ms. Williams was introduced to a very violent trafficker through the Houston strip club.

176. While under the sexual servitude to the violent trafficker, Ms. Williams began browsing classified ads in an effort to escape.

177. In or around early 2006, Ms. Williams responded to an advertisement for a job posted by Tarnita Woodard, an employee of Jamal Rashid, also known as “Mally Mall.”

178. Mr. Rashid owned many escort businesses, some of them shell corporations to disguise his escort services, including Defendants Exclusive Beauty Lounge, LLC, E.P. Sanctuary, First Investment Property LLC, V.I.P. Entertainment, LLC, and listed Ms. Woodard as the registered owner of many of these companies.

179. Mr. Rashid’s other corporations received profits from his escort companies. On information and belief, Mr. Rashid’s other businesses that benefited from his sex trafficking business include Defendants PF Social Media Management, LLC, Mally Mall Music, LLC, Future Music, LLC, Blu Magic Music, LLC,; MP3 Productions, Inc., and MMM Productions, Inc.

180. Ms. Williams was hired to work for one of Mr. Rashid’s companies, V.I.P. Entertainment, LLC, which was a licensed escort business in Las Vegas.

181. Mr. Rashid had three offices in Nevada over a fifteen-year period, all registered to his various entertainment businesses.

182. Mr. Rashid, who has ties to organized crime, was on the Las Vegas Metropolitan Police Department payroll as an informant, and also paid large sums of money to the police.

183. In 2014, the FBI raided Mr. Rashid's home during the corruption investigation referenced above. In 2019, the FBI again raided Mr. Rashid's home, in an apparent sex trafficking and animal trafficking investigation.

184. The City of Las Vegas knew Mr. Rashid was an active sex trafficker.

185. Ms. Williams was required to obtain a work card from the Clark County Sheriff's Office by one of Mr. Rashid's escort agencies.

186. V.I.P. Entertainment enticed Ms. Williams to travel across state lines from Texas to Las Vegas, Nevada to be sex trafficked, under the guise of upscale escorting, because the demand for prostitution was so high in Nevada.

187. Mr. Rashid used fraud to entice the women working for him into thinking that the work performed was glamorous, and that the women were like "Playboy Bunnies," and he was like Hugh Hefner.

188. In the beginning, Mr. Rashid allowed Ms. Williams to keep 30% of any monies earned from the escort services and required her to give him the remaining 70%.

189. Eventually, Mr. Rashid designated Ms. Williams as a "priority girl," and forced her to give him 100% of what she earned.

190. He claimed this was necessary to take care of Ms. Williams's living expenses.

191. Mr. Rashid was entering the music industry, and he was recognized as a major pimp in the illegal sex trade in Las Vegas, Nevada, where he began sending Ms. Williams in the fall of 2006.

192. Mr. Rashid and his employees began to control every aspect of Ms. Williams's money, from booking her rooms when she traveled and providing her a small allowance to cover food and a hotel while she was traveling for commercial sex acts outside Nevada, to controlling

what she was allowed to wear.

193. Ms. Williams was required to go to whatever house or hotel Mr. Rashid provided and sleep. She had to be hair and make-up ready by 3:00pm.

194. Her shifts were 4:00pm-12:00am (swing) and 12:00-8:00am (grave). If sex buyers were on cocaine, Ms. Williams would be required to continue into the day. She would have to remain with the sex buyer until she was relieved.

195. Ms. Williams was not allowed to leave the sex buyer, even if she felt her life was in danger. She was not allowed to leave the room, until she was cleared by one of the managers/ assistant traffickers.

196. Ms. Williams was forced to service sex buyers who abused her in the past. In one case, Ms. Williams stated: "I don't want to see him; he is a pervert," and was not permitted to decline.

197. To be cleared to leave the sex buyer, Ms. Williams had to tell the manager, in front of the sex buyer, "I am leaving," and disclose the full amount of money she had received, which meant saying aloud if she had received a tip, which the manager would take as well.

198. Ms. Williams was sometimes kicked out of buildings by security personnel, who would require her to use a different entrance, even if that would jeopardize her safety. Ms. Williams was sometimes arrested for trespassing.

199. The managers would yell at Ms. Williams. If managers decided Ms. Williams and the other exploited women and girls were not being sufficiently subservient, they would not eat well.

200. Ms. Williams would often get home at 9:00am, and have six hours to sleep, eat, run errands, and then be hair and makeup-ready by 3:00pm.

201.    The sex trafficking ring guised as a legal escort service was successfully and strategically planted in Las Vegas and Clark County to intercept sex tourists planning to travel to the nearby cities of Pahrump or Crystal where the closest legal brothels were located.

202.    The escort service trafficked Ms. Williams by plane from Las Vegas, Nevada to perform sex acts for money in large cities such as Dallas, Los Angeles, Chicago, and Boston.

203.    Most of the Las Vegas sex buyers were under the misconception that prostitution was legal in all of Nevada, including Las Vegas and Clark County, and the escort service took advantage of this misconception.

204.    Ms. Williams most frequently interacted with sex buyers who traveled across state lines to Nevada for the sole purpose of purchasing sex, whether it was for a newly divorced party, a bachelor party, or a corporate CEO wishing to privately cheat on his wife.

205.    Ms. Williams knew numerous women in the sex industry who were trafficked and sexually exploited in the legal brothels.

206.    Ms. Williams was arrested as a result of being trafficked for purposes of prostitution.

207.    When Ms. Williams was on probation for her prostitution charges, Mr. Rashid coerced her to violate her probation by continuing to sell sex, by assuring her that he had a "dream team" of lawyers that could get them out of anything.

208.    Mr. Rashid used the money from sex trafficking the women to pay for his music production. Mr. Rashid has worked for Grammy award-winning artists, and lived in a multi-million-dollar home in Encino, California.

209.    Mr. Rashid was sentenced to prison in May 2021 for unlawfully operating a prostitution business.

210.     Eventually, Ms. Williams was arrested by Chicago police while being sex trafficked by Mr. Rashid's company.  Ultimately, Ms. Williams served 13 months in jail.

211.     After serving her time, Mr. Rashid tried to recruit Ms. Williams to return back to his escort business.

212.     Ms. Williams moved to Los Angeles, California, where Mr. Rashid had multiple community apartments for the women and girls who worked for him to use while they were traveling to be bought for sex from sex buyers or for escort services.

213.     While in Los Angeles, California, Mr. Rashid forced Ms. Williams to perform oral sex on him.

214.     While working for Mr. Rashid, Ms. Williams understood that she belonged to "the Game" and/or the "Pimp and Ho" subculture.  Ms. Williams was threatened and brainwashed into believing that if she were to prostitute as a "free agent" or without the representation of a trafficker that she would be opening herself up to be assaulted or robbed by sex buyers, or to worse treatment by another sex trafficker.

215.     Mr. Rashid tore down Ms. Williams's identity and self-worth so much that he made her believe the only "job" she would ever be able to obtain was one where she sold sexual acts to sex buyers.

216.     Eventually after going back and forth between being sex trafficked by Mr. Rashid and working in the strip clubs, Ms. Williams met her final trafficker through a contact from Moonshine and Candy Apple Girls escort agency.  Her final trafficker trafficked Ms. Williams through the strip clubs again, including the Sapphire in Las Vegas.

217.     Ms. Williams's final sex trafficker came to her with empty promises of love, and of retiring her from being a sex trafficked woman.

218.     Ms. Williams became frightened when she realized her final sex trafficker was extremely abusive.

219.     When Ms. Williams would try to escape from him, he would severely physically assault her.

220.     Ms. Williams escaped from her final sex trafficker in 2017.

221.     After Ms. Williams escaped she moved to a condominium in Las Vegas that lacked security. One morning Ms. Williams's final sex trafficker came to her doorstep with a bouquet of roses and tried to kill her.

222.     After almost losing her life, Ms. Williams was able to escape the grip of sex traffickers.[82]

223.     Though Ms. Williams suffers from post-traumatic stress disorder from her near-death assault when her sex trafficker attempted to kill her, she suffers more from the flashbacks of her memories of being sold and exploited by sex buyers.

224.     To this day, Ms. Williams still suffers from the trauma of being sex trafficked. She cannot enjoy the relaxation of a normal vacation with her family because of the violence she experienced in hotel rooms across this country, the majority of which occurred in Las Vegas.

225.     Nevada was a regular location for Ms. Williams to be sex trafficked. No matter where her traffickers would take her, they would always return to Nevada to sell Ms. Williams,

---

[82] On May 22, 2018, Tyree Wright was sentenced to serve nine and a half (9 ½) years in prison for his charges of sex-trafficking, second degree kidnapping, and battery with use of a deadly weapon resulting in substantial bodily harm. Brenda Yahm & Adam Herbets, *Valley victim confronts abusive pimp during his sentencing,* FOX 5 KVVU TV (May 22, 2018), https://www.fox5vegas.com/news/valley-victim-confronts-abusive-pimp-during-hissentencing/article_ec3c3c29-9355-5664-b58d-3b50b1e5ed69.html.

and others similarly situated to her, because Nevada is the state where there was and is the greatest demand for prostitution, whether legal or illegal.

*Plaintiff Jane Doe #1*

226. Plaintiff Jane Doe #1was sex trafficked in Nevada from 2013 to 2018.

227. Jane Doe #1 experienced homelessness, being placed in the foster care system, and sexual abuse as a child, including statutory rape by a man 13 years older than her, who left her pregnant at the age of 15, while a ward of the court.

228. The abuser used pornography to groom Jane Doe #1 from age 14, including the 2005 film, “Boss’n up.” The abuser also created pornography of Jane Doe.

229. At 18, Jane Doe #1 moved in with the abuser, and within six months had entered a domestic violence shelter with her child, pregnant with her second child. Thereafter, Jane Doe #1 was chronically homeless, going from shelter to shelter and program to program while fighting her abuser for child custody.

230. Due to Jane Doe #1 being sex trafficked and her absence at the family court date, the custody judgment went into default and the abuser gained full custody of their children. That abuser made false allegations against Jane Doe #1 in family court, causing her to lose her welfare income, subsidized housing, and financial aid for college. He retains custody of their children.

231. Jane Doe #1was thereafter introduced to prostitution by a family member who induced her to travel to Las Vegas, promising that it would be a way to quickly make money for a lawyer and Jane Doe #1’s other emergency needs.

232. That family member was also being sex trafficked by multiple pimps, and married one of them.

233.    Jane Doe #1 was introduced to at least three other pimps in 24 hours, who all sex trafficked her.

234.    Paying cash to multiple pimps/traffickers at once violates the "rules" of pimping, and when some of the pimp/traffickers found out, they brutally beat both Jane Doe #1 and her aunt.

235.    The sex trafficker that Jane Doe #1 ended up with was a guerilla pimp, that is, one that uses extreme violence, including torture, to force persons under his control to engage in prostitution.

236.    Jane Doe #1 was sex trafficked by the guerilla pimp in Las Vegas street prostitution.

237.    Jane Doe #1 was subjected to extreme violence, as well as starvation and confinement – forms of torture – by the guerilla pimp, who was also a gang member, who was prostituting her.

238.    Jane Doe #1 escaped the guerilla pimp and was then sex trafficked by a "Romeo" pimp – an exploiter who coerces through romance, affection, instilling a sense of family obligation, and other forms of predominantly psychological manipulation.

239.    Jane Doe #1 was subjected to physical violence by the "Romeo" pimp, Khalieff "Leef" Wilson, on at least one occasion, for breaking one of his marijuana drug "rules."

240.    The "Romeo" pimp renamed Jane Doe #1 and in addition to Nevada, required her to travel throughout the United States to prostitute for him in New York, New Jersey, Colorado, Oregon, Texas, New Mexico, California, Oklahoma, Arizona, Georgia– much of it with racial overtones.

241. Mr. Wilson required this travel to maximize his profits from Jane Doe #1's prostitution and to reduce the chances that they would be arrested.

242. Jane Doe #1 was sex trafficked in multiple venues, including casinos, executive offices, truck stops, brothels, agencies, outcall/incall to sex buyers' preferred locations, hotels, underground business pubs, restaurants, and massage parlors.

243. Jane Doe #1 frequently encountered violence from sex buyers, including a sex buyer who threatened her with a gun, a couple that decided they wanted their money back after Jane Doe #1 performed sexual services on them, and a sex buyer who discussed a serial killer of prostituted women in Albuquerque, while Jane Doe #1 was servicing him at the Albuquerque airport hotel.

244. Mr. Wilson was eventually arrested for sex trafficking a minor for prostitution, convicted, and sentenced to prison.

245. Jane Doe #1 remained under Mr. Wilson's control even while Mr. Wilson was in prison, continuing to give him part of the money she made through prostitution, until 2015.

246. While Mr. Wilson was in prison, Jane Doe #1 engaged in prostitution through escort agencies that would arrange her hotels and travel, screen her calls for sex buyer bookings, and give information on locations, in exchange for fees and splits of the money Jane Doe #1 would make.

247. Jane Doe #1 also fell under the control of additional madam pimp, Nicole Flowers. Ms. Flowers was associated with a travel agency that posted ads on craigslist to attract escorts. Ms. Flowers primarily relied on psychological means of coercion, including engaging in prostitution herself, and took portions of the money that Jane Doe #1was not giving to Mr. Wilson.

248. If Ms. Flowers provided transportation, room, supplies, photos, call screening, and advertisements for two weeks, Jane Doe #1was required to work two weeks in the state of Ms. Flowers' choosing.

249. Jane Doe #1 became engaged in legal brothel prostitution at the Chicken Ranch while being pimped by Mr. Wilson and Ms. Flowers.

250. Jane Doe #1was required to obtain a Sheriff's work card from the Nye County Sheriff's Office to be prostituted at the Chicken Ranch.

251. The Sheriff's office did not ask for a government ID or attempt to verify Jane Doe #1's age or consent, nor did it attempt to determine whether she was under the control of a pimp/trafficker.

252. Jane Doe #1did not have a government ID when she obtained her Sheriff's work card to work in the legal brothel. One of Jane Doe #1's earlier pimp/traffickers took away her identification as a scare tactic, and to keep her from leaving, threatening to locate and harm her children and family.

253. The Sheriff's work card did not display Jane Doe #1's age.

254. The brothel did not attempt to verify Jane Doe #1's age or consent, nor did it attempt to determine whether she was under the control of a pimp/trafficker.

255. The brothel was aware that many women being prostituted at the brothel were under the control of pimps/traffickers.

256. Jane Doe #1witnessed pimps/traffickers at the brothel. She also witnessed recruitment at the brothel.

257. The brothel was aware that many persons being prostituted at the brothel were under 21 years old.

258. Jane Doe #1witnessed minors being prostituted at the brothel, including minors who had not yet reached their teens.

259. Jane Doe #1was not permitted to have visitors at the brothel, unless they were sex buyers.

260. The brothel arranged and controlled arrival and departure times for the prostituted women.

261. Jane Doe #1 was picked up by the brothel's transportation system in Las Vegas, and transported to Pahrump, Nevada.

262. Sex buyers at the brothel paid via the brothel's website, or the ATM/card reader at the brothel itself. The brothel then paid Jane Doe #1, after taking out various amounts, at the end of the two-week period.

263. Jane Doe #1 was required to give the brothel 50% of what she earned.

264. Jane Doe #1 was also required to pay the brothel for room and board, roughly $250 per week, as well as $50 each way for any transportation to or from the brothel.

265. Jane Doe #1 was required to pay the brothel around $120 monthly for the weekly medical exams.

266. Jane Doe #1 gave any remaining money to her two pimps, Khalieff Wilson and Nicole Flowers.

267. Jane Doe #1 was not permitted to leave the brothel during her two-week shifts, even to run errands; women prostituted in the brothel were locked inside, and did not have keys, and had to sign out before leaving the brothel at the end of a two-week shift (unless extending her contract for another two weeks).

268. Jane Doe #1 was not permitted to leave the brothel if she owed the brothel

money, which happened at least one time. A friend from the same brothel paid the bill for her and they left the brothel together to prostitute elsewhere in Nevada, and then in the friend's Oklahoma hometown.

269. Jane Doe #1 was subjected to debt bondage while being prostituted at the Chicken Ranch, until 2018.

270. Jane Doe #1 was subjected to Ms. Flowers' control, continuing to engage in prostitution and give Ms. Flowers her earnings, until 2018 in Nevada and 2019 in California.

271. To this day, Jane Doe #1 still suffers from the trauma and other effects of being sex trafficked, including post-traumatic stress disorder, and depression, low self-esteem, possessing a criminal record, chronic homelessness, difficulty finding employment, and loss of custody for her children.

*Plaintiff Jane Doe #2*

272. Plaintiff Jane Doe #2 was sex trafficked in Nevada from March 2017 to September 2018.

273. Jane Doe #2 experienced bullying, sexual harassment and assault, and grooming as a minor. Sex traffickers groomed Jane Doe #2 through social media apps and advertised her for sex on platforms such Backpage.com, before she turned eighteen.

274. Jane Doe #2 was manipulated and coerced into prostitution by a series of boyfriend/"Romeo" pimps, who used psychological tactics as well as violence to control Jane Doe #2.

275. Jane Doe #2 was trafficked for sex by various pimps/sex traffickers in the Houston area after she turned eighteen. Eventually, Jane Doe #2 was induced to travel to Las Vegas on pretext of taking a short vacation in 2017. Once in Las Vegas, the pimps/sex

traffickers pressured Jane Doe #2 to engage in stripping, claiming that the women who did so led glamorous lives and never had to do "extras."[83]

276. One of the Las Vegas pimps/sex traffickers, who trafficked Jane Doe #2 in the Sapphire and Hustler, was extremely sexually, psychologically, and physically abusive to Jane Doe #2.

277. Sapphire Gentlemen's Club (Sapphire) bills itself as the world's largest strip club, with over 70,000 square feet.[84] Sapphire contains many private booths and private rooms, including skyboxes, which were especially expensive upstairs rooms. When Jane Doe #2 was there, Sapphire could have between 100 and 500 girls a night there as dancers.

278. Larry Flynt's Hustler Club (Hustler), one of a chain of clubs founded by the pornographer, is a strip club which similarly has private rooms called skyboxes and "Honey Suites."

279. Plaintiff Jane Doe #2's pimps/sex traffickers forced and coerced her to work at Sapphire from December 2017 to September 2018, and at Hustler from May 2017 to August 2018.

280. Jane Doe #2 was required to get a work card from the Clark County Sheriff's Office.

281. Jane Doe #2's sex traffickers forced her to assume the identity of an older woman (due to regulations requiring dancers to be twenty-one) to obtain the work card, and used the threat of being detected and prosecuted to further control Jane Doe #2.

282. Jane Doe #2's pimps/sex traffickers confiscated her actual identification

---

[83] "Extras" refers to commercial sex acts beyond dancing.

[84] SAPPHIRE GENTLEMEN'S CLUB, https://www.sapphirelasvegas.com/sapphire_club_features/ (last visited Nov. 10, 2021).

documents, preventing her from leaving Nevada without their permission.

283. Jane Doe #2's sex traffickers treated their identity theft crime as a "favor" to Jane Doe #2, for which she was indefinitely in their debt, and they expected her to make millions of dollars for them in return.

284. When Jane Doe #2 obtained her work card, she was not asked by the Sheriff's office whether she was being trafficked, was under a pimp's control, or whether she was consenting.

285. Sapphire and Hustler were open 24 hours a day, seven days a week, while Jane Doe #2 was sex trafficked through them.

286. Sapphire and Hustler had back door entrances for celebrities and others who did not want to be seen. Sapphire and Hustler typically subjected persons dancing and being prostituted from their establishments to a number of charges:

| **Type** | **Typical Amount** | **Notes** |
|---|---|---|
| Entry fee/house fee/tipout | $80-$200 per night | Based on arrival time. |
| Exempt from dancing on the stage | $50 per night | Stage is the least profitable (compared to lap dances and private VIP rooms). |
| Leaving early | $50-$100 per night | |
| Suggested tip for house mom | $10-$40 per night | If you did not tip the house mom, she might not help you in an emergency or with getting food if you were unable to purchase any. |

| | | The house mom provided snacks, sometimes meals, and other services. |
|---|---|---|
| Locker rent | $80-$250 per month | If dancers did not rent lockers, they might not be able to access one at all, and risked their money and property being stolen. |
| Club cash cage | 2-3% of transaction amount | If a customer paid with card instead of cash, you would get a ticket for the time and amount, and then cash cage would convert it into cash. |
| Club ATM | $25 per use, on average | The ATM fees fluctuated. |
| Makeup, shoes, clothes at club's store | $25 for stockings | Must be replaced almost daily. Could easily spend hundreds of dollars on other items. |
| Buy food | $20-$30 per night | No discounts for dancers. |
| Buy drinks | $25-$100 per night | Drinks were included with private rooms. But many dancers relied on daily alcohol use to get through their shifts. |
| Missing stage call | $50 per instance | Usually have a few minutes to make it, must run to avoid the missed call. Can miss and be charged multiple times in a night. |
| House/club deduction from private/VIP rooms | 20-28% of amount | This is the percent the club automatically takes from VIP and other private areas. |

Case 2:21-cv-01676-APG-VCF Document 49 Filed 11/10/21 Page 46 of 58

| Suggested DJ tip | $15-$25 per night | If you don't tip the DJ, he might not play good music for you or encourage patrons to tip you during songs. |
|---|---|---|
| Suggested tip wait staff, bottle service, bartenders, barbacks | $20-$100 per night | |
| Suggested tip host and floor host | $40-$200 per night | Tips for introducing dancers to customers, depending on how much time the customer spent. |
| Suggested tip for VIP staff | $20-$50 per night | This includes the front desk; check in is required |
| Suggested tip for managers | $20-$50 per night | Managers assist if VIP rooms are crowded |
| Tip security and bouncers | $10-$30 per night | Some will not even attempt to keep you safe if you don't. |
| Tip restroom attendant | $5-$10 per use | |

287. As a consequence, dancers were often in debt to Sapphire and Hustler.

288. Hustler provided a document detailing the amount they took from VIP room charges.

289. Sapphire provided no document detailing these expectations or charges.

290. Plaintiff Jane #2 was subjected to fees, fines, and charges as described above while at Sapphire and Hustler.

291. Jane Doe #2 was required to sign in and show her work card each time she

worked at Sapphire and Hustler. She was also required to pay outstanding balances to the clubs at this point.

292. Sapphire and Hustler expected Jane Doe #2 to work 6 hours a night if she wanted to avoid the fee for leaving early.

293. Jane Doe #2 typically worked 8 to 12 hours in a shift, six to seven days a week. Once clubs began remaining open for 24 hours, Jane Doe #2 consequently sometimes worked 15 to 24 hour shifts.

294. When doing stage dances, Jane Doe #2 could make no money or several hundred dollars.

295. Jane Doe #2, like the other dancers, made most of her money on the floor and in the private VIP rooms.

296. At Hustler, the smallest VIP room was cost $140 for fifteen minutes, of which the club would automatically take $40.

297. At Sapphire, the smallest VIP room cost $150-$200 for fifteen minutes, of which the club would automatically take at least $50.

298. At both Sapphire and Hustler, private rooms would include a table and chairs, and sometimes booths, couches, and/or a bed-like piece of furniture.

299. At Sapphire, the most expensive VIP rooms were called skyboxes, which could be $600 to $1200 dollars for thirty minutes. At Hustler, skyboxes could range from $500 to $1000 for thirty minutes. At Hustler, some private rooms were $1000 to $3,000 per hour. At Sapphire, some private rooms were $1000 to $5,000 per hour.

300. Dancers who engaged in sex for money on the premises were expected to pay Sapphire at least a 40% tip (beyond those described in the chart above), or they could be fired

or suspended, and also put on a blacklist (this meant not being selected for skyboxes or other appointments with high-paying sex buyers).

301. On a busy night, where Jane Doe #2 worked 10 hours or more, Sapphire and Hustler would sometimes take around or even more than half of the money she made.

302. On a slow night, Jane Doe #2 might make only $50 to $100, and therefore not even have enough to cover her house fee.

303. Plaintiff Jane Doe #2 was usually in debt to Sapphire and Hustler.

304. After she paid Sapphire and Hustler, Plaintiff Jane Doe #2 was then required to turn over her remaining money to her sex traffickers.

305. In order to make sufficient money, Jane Doe #2 and the other dancers engaged in commercial sex acts with strip club patrons in the strip clubs' VIP or private rooms.

306. Sex buyers, many of whom were wealthy and sometimes famous, were degrading and violent, and many of them sexually assaulted Jane Doe #2 often at both Sapphire and Hustler.

307. After sex buyers raped the dancers, the clubs, knowing this, would still insist on collecting tips from the dancers.

308. Dancers, including Jane Doe #2 did outcalls from Sapphire and Hustler to hotels and casinos.

309. Sometimes Sapphire and Hustler wanted extra payment when dancers did outcalls.

310. Las Vegas Metropolitan Police Department officers would sometimes arrest dancers for outcalls after buying sex from them.

311. Sapphire and Hustler had video and audio recording devices in each area of the

clubs, including private rooms.

312. Sapphire and Hustler could see and hear all that occurred in their private rooms.

313. Pimps/sex traffickers would frequent Sapphire and Hustler, with the intent of monitoring dancers they controlled, and also recruiting others.

314. Staff at Sapphire and Hustler would see pimps/sex traffickers pick up or drop off girls, could overhear girls' phone calls to their pimps/sex traffickers (especially when they needed money to pay off debts to the strip clubs), and could also see pimps/sex traffickers' tattoos/brands on girls.

315. Dancers at Sapphire and Hustler commonly suffered from alcoholism and other substance abuse in order to get through their shifts at the clubs.

316. Jane Doe #2 struggled with alcohol addiction and sometimes drug abuse at Sapphire and Hustler, and was often intoxicated and incapacitated.

317. Jane Doe #2 suffered from an eating disorder while at Sapphire and Hustler, and was visibly underweight, malnourished, bruised, and scarred.

318. Plaintiff Jane Doe #2 engaged in commercial sex acts at Sapphire and Hustler, induced through force, fraud, and coercion from her pimps/sex traffickers, and through fraud and coercion from Sapphire and Hustler.

319. To this day, Jane Doe #2 still suffers from the trauma and other effects of being sex trafficked, including post-traumatic stress disorder, depression, low self-esteem, anxiety and fear regarding her sex traffickers – most of whom remain at large.

320. As persons recently sex trafficked within Nevada, Plaintiffs are appropriate persons to assert third-party standing on behalf of people currently being sex trafficked within legal brothels in Nevada jurisdictions which permit prostitution, and within legal escort

agencies and legal strip clubs in Nevada jurisdictions that do not permit prostitution.

321. Persons currently being sex trafficked within Nevada, being in a condition of slavery or involuntary servitude, are thereby unable to enforce their rights and seek redress apart from the third party standing which Plaintiffs assert.

**COUNT I**
**VIOLATING THE THIRTEENTH AMENDMENT BAN ON SLAVERY**

322. Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

323. Plaintiffs assert third party standing on behalf of people currently being sex trafficked within legal brothels in Nevada jurisdictions which permit prostitution, and within legal escort agencies and legal strip clubs in Nevada jurisdictions that do not permit legal prostitution, as to the rights violations described below.

324. The Thirteenth Amendment to the United States Constitution guarantees Plaintiffs the freedom from enslavement and involuntary servitude, which prohibits Defendants both from directly subjecting Plaintiffs to slavery or involuntary servitude, and from providing legal cover to, or otherwise enabling, any system of slavery or involuntary servitude.

325. Sex Industry Defendants directly subjected Plaintiffs to slavery and involuntary servitude in the form of sex trafficking.

326. State and City Defendants provided legal cover for the Nevada sex trade, enabling the system through which the Plaintiffs were subjected to slavery and involuntary servitude in the form of sex trafficking.

327. Defendants' conduct has caused Plaintiffs serious harm, including physical,

psychological, financial, and reputational harm.

328. Under 42 U.S.C. § 1983, Plaintiffs are entitled to a declaration that State and City Defendants violated their Thirteenth Amendment rights to be free from slavery and involuntary servitude, and an injunction against State and City Defendants' laws, policies, and actions.

329. Additionally, Plaintiffs are entitled to nominal damages from the State Defendants, and damages in an amount to be determined by the evidence and this Court from the City and Sex Industry Defendants.

**COUNT II**
**VIOLATING 18 U.S.C. §§ 1591(A)(1) AND 1595 BY PERPETRATING SEX TRAFFICKING**

330. Plaintiffs reallege and incorporate by reference all prior paragraphs as if fully incorporated here.

331. Plaintiffs assert third party standing on behalf of people currently being sex trafficked within legal brothels in Nevada jurisdictions which permit prostitution, and within legal escort agencies in Nevada jurisdictions that do not permit prostitution, as to the rights violations described below.

332. State and City Defendants knowingly harbored and/or maintained Plaintiffs, knowing or in reckless disregard of the fact that force, fraud, and/or coercion were being used to induce Plaintiffs to engage in commercial sex acts.

333. Sex Industry Defendants knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiffs, knowing or in reckless disregard of the fact that force, fraud, and/or coercion were being used to induce Plaintiffs to engage in commercial sex acts.

334. Defendants knew that their conduct was in or affected interstate and/or foreign commerce.

335. Defendants' conduct has caused Plaintiffs serious harm, including physical, psychological, financial, and reputational harm.

336. Accordingly, Defendants violated 18 U.S.C. § 1591(a)(1), and Plaintiffs are entitled to sue them under § 1595(a).

**COUNT III**
**VIOLATING 18 U.S.C. §§ 1591(A)(2) AND 1595 BY BENEFITING FROM SEX TRAFFICKING**

337. Plaintiffs reallege and incorporate by reference all prior paragraphs as if fully incorporated here.

338. Plaintiffs assert third party standing on behalf of people currently being sex trafficked within legal brothels in Nevada jurisdictions which permit prostitution, and within legal escort agencies and legal strip clubs in Nevada jurisdictions that do not permit prostitution, as to the rights violations described below.

339. Through the state entertainment tax and the general tourism revenue derived from Nevada's reputation as a legal haven for commercial sex, State Defendants knowingly benefit financially and by receiving something of value, knowing or in reckless disregard of the fact that they are participating in sex trafficking ventures.

340. Through the state entertainment tax and the general tourism revenue derived from Nevada's reputation as a commercial sex haven, State Defendants knowingly benefit financially and by receiving something of value, from what they know or should know are sex trafficking ventures.

341. Through local taxes, licensing fees, and the general tourism revenue derived from their reputations as legal havens for commercial sex, City Defendants knowingly benefit, financially and by receiving something of value, knowing or in reckless disregard of the fact that they are participating in sex trafficking ventures.

342. Through local taxes, licensing fees, and the general tourism revenue derived from their reputations as legal havens for commercial sex, City Defendants knowingly benefit, financially and by receiving something of value, from what they know or should know are sex trafficking ventures.

343. Through revenues for commercial sex, Sex Industry Defendants knowingly benefit, financially and by receiving something of value, knowing or in reckless disregard of the fact that they are participating in sex trafficking ventures.

344. Through revenues for commercial sex, Sex Industry Defendants knowingly benefit, financially and by receiving something of value, from what they know or should know are sex trafficking ventures.

345. Defendants knew that their conduct was in or affected interstate and/or foreign commerce.

346. Defendants' conduct has caused Plaintiffs serious harm, including physical, psychological, financial, and reputational harm.

347. Accordingly, Defendants have violated 18 U.S.C. §§ 1591(a)(2) and 1595(a) and Plaintiffs are entitled to sue them under § 1595(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs and people currently being sex trafficked within legal

brothels in Nevada jurisdictions which permit prostitution, and within legal escort agencies in Nevada jurisdictions that do not permit prostitution, with the following relief:

A. A declaratory judgment as currently implemented and enforced by state and local practices and policies, the following statutes are unconstitutional: NEV. REV. STAT. § 244.345 (as to permitting prostitution in certain counties, escorting, and entertainment by referral service); NEV. REV. STAT. § 244.335(2) (as to permitting prostitution in certain counties, escorting, and entertainment by referral service); NEV. ADMIN. CODE § 441A.800; and the brothel licensing ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine Counties, to the extent that they permit prostitution: ELKO, NEV., COUNTY CODE, "Sexually Oriented Businesses and Employee Licensing Chapter," §6-11 (2020); LANDER, NEV., COUNTY CODE, "Prostitution," §5.16 (2020); LYON, NEV., COUNTY CODE, "Lyon County Brothel Ordinance," §5.03 (2020); MINERAL, NEV., COUNTY CODE, "Prostitution," §5.12 (2019); NYE, NEV., COUNTY CODE, "Prostitution," §9.20 (2020); STOREY, NEV., COUNTY CODE, "Brothels," §5.16 (2015); and WHITE PINE, NEV., COUNTY CODE, "Prostitution," §10.36 (2021).

B. An injunction preventing all Defendants from implementing or enforcing: NEV. REV. STAT. § 244.345 (as to permitting prostitution in certain counties, escorting, and entertainment by referral service); NEV. REV. STAT. § 244.335(2) (as to permitting prostitution in certain counties, escorting, and entertainment by referral service); § NEV. ADMIN. CODE § 441A.800; and the brothel licensing ordinances of Elko, Lander, Lyon, Mineral, Nye, Storey, and White Pine counties, to the extent that they permit prostitution; and from any form of perpetrating or financially benefiting from violations of federal anti-trafficking laws.

C. Nominal damages against the State Defendants;

D. Compensatory, consequential, general, and punitive damages against the City and Sex Industry Defendants in an amount to be determined at trial;

E. Restitution and disgorgement of all profits and unjust enrichment obtained as a result of Defendants' unlawful conduct;

F. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action under 42 U.S.C. § 1988; and

G. All other further relief to which Plaintiffs may be entitled.

DATED this 10th day of November, 2021.

*<u>/s/ Jason D. Guinasso</u>*
Jason D. Guinasso (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
Pansy Watson*
NATIONAL CENTER ON SEXUAL EXPLOITATION
1201 F Street, NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

**Admitted Pro Hac Vice*
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, the foregoing **FIRST AMENDED COMPLAINT,** was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

**Defendant**
**Steve Sisolak**
*Governor of Nevada*

represented by **Gregory Louis Zunino**
Nevada State Attorney General's Office
100 N Carson Street Carson City, NV 89701 775-684-1137 Fax: 775-684-1108
Email: GZunino@ag.nv.gov, sgeyer@ag.nv.gov

**Defendant**
**Aaron Ford**
*Attorney General of Nevada*

represented by **Gregory Louis Zunino**
(See above for address)

**Defendant**
**The City of Las Vegas**

represented by **Jeffrey L Galliher**
LAS VEGAS CITY ATTORNEY'S OFFICE
495 S. MAIN STREET, 6TH FLR
Las Vegas, NV 89101 702-229-6629
Fax: 702-386-1749
Email: jgalliher@lasvegasnevada.gov, ccorwin@lasvegasnevada.gov, ckelly@lasvegasnevada.gov, jandrews@lasvegasnevada.gov, khansen@lasvegasnevada.gov

**Defendant**
**Clark County** represented by **Joel K Browning**
Clark County District Attorney Civil Division
500 S. Grand Central Pkwy., #5075
Las Vegas, NV 89155-2215
702-455-4761
Fax: 702-382-5178
Email: joel.browning@clarkcountyda.com, christine.wirt@clarkcountyda.com, Tawana.Thomas@clarkcountyda.com

**Defendant**
Nye County represented by **Brent L Ryman Erickson**
Thorpe & Swainston, Ltd.
99 W. Arroyo
P.O. Box 3559
Reno, NV 89505
775-786-3930
Fax: 775-786-4160
Email: bryman@etsreno.com, daguirre@etsreno.com, lligouri@etsreno.com

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, the foregoing **FIRST AMENDED COMPLAINT,** was electronically filed with the United States District Court. Service by traditional means through a process server of the foregoing document shall be made in accordance as follows:

**Defendant**
Western Best, Inc. d/b/a Chicken Ranch

**Defendant**
Western Best LLC

**Defendant**
Jamal Rashid

**Defendant**
Mally Mall Music LLC

**Defendant**
Future Music, LLC

**Defendant**
PF Social Media Management, LLC

**Defendant**
E.P. Sanctuary Blue Magic Music, LLC

**Defendant**
Exclusive Beauty Lounge, LLC

**Defendant**
First Investment Property LLC

**Defendant**
V.I.P. Entertainment, LLC

**Defendant**
MP3 Productions, Inc.

**Defendant**
MMM Productions, Inc

**Defendant**
SHAC, LLC d/b/a Sapphire Gentlemen's Club and/or Sapphire

**Defendant**
SHAC MT, LLC

**Defendant**
Las Vegas Bistro, LLC d/b/a Larry Flynt's Hustler Club

DATED this 10th day of November, 2021.

*/s/ Bernadette Francis*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**
**Form 1. Notice of Appeal from a Judgment or Order of a United States District Court**

U.S. District Court case number: 2:21-CV-01676

Notice is hereby given that the appellants listed below hereby appeal to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: September 10, 2021

Date of judgment or order you are appealing: November 7, 2022

Docket entry number of judgment or order you are appealing: ECF No.192

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

☒ Yes ☐ No ☐ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

ANGELA WILLIAMS; JANE DOE #1; and JANE DOE #2

Is this a cross-appeal? ☐ Yes ☒ No

If yes, what is the first appeal case number: N/A

Was there a previous appeal in this case? ☐ Yes ☒ No

If yes, what is the prior appeal case number? N/A

Your mailing address (if pro se): N/A

Prisoner Inmate or A Number (if applicable): N/A

**Signature** */s/ Jason D. Guinasso,* counsel for Appellants **Date** December 1, 2022

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List each party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

ANGELA WILLIAMS; JANE DOE #1; AND JANE DOE #2

Name(s) of counsel (if any):

**Jason D. Guinasso (NVSBN# 8478)**
Hutchison & Steffen, PLLC

Address: 5371 Kietzke Lane Reno, NV 89511

Telephone number(s): 775.853.8746

E-mail(s): jguinasso@hutchlegal.com

Is counsel registered for Electronic Filing in the 9th Circuit? ☒ Yes ☐ No

**Benjamin W. Bull (*admitted Pro Hac Vice, DCSB# 388206*)**
National Center on Sexual Exploitation

Address: 1201 F Street NW, Suite 200 Washington, DC 20004

Telephone number(s): 202.393.7245

E-mail(s): bbull@ncose.com

Is counsel registered for Electronic Filing in the 9th Circuit? ☐ Yes ☒ No

**Peter A. Gentala (*admitted Pro Hac Vice, AZSB# 021789*)**
National Center on Sexual Exploitation

Address: 1201 F Street NW, Suite 200 Washington, DC 20004

Telephone number(s): 202.393.7245

E-mail(s): pgentala@ncoselaw.org

Is counsel registered for Electronic Filing in the 9th Circuit? ☒ Yes ☐ No

**Dani Bianculli Pinter (*admitted Pro Hac Vice, FLSB# 120441*)**
National Center on Sexual Exploitation

Address: 1201 F Street NW, Suite 200 Washington, DC 20004

Telephone number(s): 202.393.7245

E-mail(s): dpinter@ncoselaw.org

Is counsel registered for Electronic Filing in the 9th Circuit? ☐ Yes ☒ No

**Christen M. Price (*admitted Pro Hac Vice, DCSB# 1016277*)**
National Center on Sexual Exploitation

Address: 1201 F Street NW, Suite 200 Washington, DC 20004

Telephone number(s): 202.393.7245

E-mail(s): cprice@ncoselaw.org

Is counsel registered for Electronic Filing in the 9th Circuit? ☒ Yes ☐ No

---

**Appellee(s)**: *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

STEVE SISOLAK, in his official capacity as Governor of Nevada; AARON FORD, in his official capacity as Attorney General for Nevada; CLARK COUNTY; THE CITY OF LAS VEGAS; and NYE COUNTY

Name(s) of counsel (if any):

*For Governor Steve Sisolak and Attorney General Aaron Ford, in their official capacities*

**Gregory Louis Zunino**
Nevada State Attorney General's Office

Address: 100 N. Carson Street, Carson City, NV 89701

Telephone number(s): 775.684.1137

E-mail(s): GZunino@ag.nv.gov ; sgeyer@ag.nv.gov

Is counsel registered for Electronic Filing in the 9th Circuit? ☐ Yes ☐ No
**Unknown**

*To list additional parties and/or counsel, use next page.*

*For Clark County*

**Joel K Browning**
Clark County District Attorney Civil Division

Address: 500 S. Grand Central Parkway, #5075 Las Vegas, NV 89155

Telephone number(s): 702.455.4761

Email(s):

joel.browning@clarkcountyda.com
christine.wirt@clarkcountyda.com;
Tawana.Thomas@clarkcountyda.com

Is counsel registered for Electronic Filing in the 9th Circuit? ☐ Yes ☐ No
**Unknown**

*For the City of Las Vegas*

**Jeffrey L Galliher**
Las Vegas City Attorney's Office

Address: 495 S. Main Street, 6th Floor  Las Vegas, NV 89101

Telephone number(s): 702.229.6629

Email(s):

jgalliher@lasvegasnevada.gov ; ccorwin@lasvegasnevada.gov ;
ckelly@lasvegasnevada.gov ; jandrews@lasvegasnevada.gov;
khansen@lasvegasnevada.gov

Is counsel registered for Electronic Filing in the 9th Circuit? ☐ Yes ☐ No
**Unknown**

*For Nye County*
**Brent L Ryman Erickson**
Thorpe & Swainston, Ltd.

Address: 99 W. Arroyo  P.O. Box 3559  Reno, NV 89505

Telephone number(s): 775.786.3930

Email(s):

bryman@etsreno.com ; daguirre@etsreno.com;
lligouri@etsreno.com

Is counsel registered for Electronic Filing in the 9th Circuit? ☐ Yes ☐ No
**Unknown**

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this 1st day of December, 2022, the foregoing was electronically filed with the United States District Court: **Form 1. Notice of Appeal from a Judgment or Order of a United States District Court; Form 6. Representation Statement**. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

**Defendant**
**Steve Sisolak**
*Governor of Nevada*

represented by **Gregory Louis Zunino**
**Sabrena Clinton**
Nevada State Attorney General's Office
100 N. Carson Street
Carson City, NV 89701
775-684-1137
Fax: 775-684-1108
Email: GZunino@ag.nv.gov, sgeyer@ag.nv.gov
SClinton@ag.nv.gov, LJCombs@ag.nv.gov, mpizzariello@ag.nv.gov, ssouthworth@ag.nv.gov

**Defendant**
**Aaron Ford**
*Attorney General of Nevada*

represented by **Gregory Louis Zunino**
**Sabrena Clinton**
(See above for address)

**Defendant**
The City of Las Vegas

represented by **Jeffrey L Galliher**
Las Vegas City Attorney's Office
495 S. Main Street, 6th Floor
Las Vegas, NV 89101
702-229-6629
Fax: 702-386-1749
Email: jgalliher@lasvegasnevada.gov,
ccorwin@lasvegasnevada.gov,
ckelly@lasvegasnevada.gov,
jandrews@lasvegasnevada.gov,
khansen@lasvegasnevada.gov

**Defendant**
Nye County

represented by **Brent L Ryman Erickson**
**Paul M. Berton**
Thorpe & Swainston, Ltd.
99 W. Arroyo
P.O. Box 3559
Reno, NV 89505
775-786-3930
Fax: 775-786-4160
Email: bryman@etsreno.com,
jhumes@etsreno.com,
jramirez@etsreno.com,
pbertone@etsreno.com,
squigley@etsreno.com
daguirre@etsreno.com,
lligouri@etsreno.com

**Defendant**
Western Best Inc. D/B/A
Chicken Ranch

                                                            represented by **Rex D. Garner**
                                                                  **John M. Orr**
  Fox Rothschild LLP
  1980 Festival Plaza Drive, Suite 700
  Las Vegas, NV 89135
  702-262-6899
  Fax: 702-597-5503
  Email: rgarner@foxrothschild.com,
  dloffredo@foxrothschild.com,
  jorr@foxrothschild.com,
  roya.rokni@lewisbrisbois.com

**Defendant**
Western Best LLC

                                                            represented by **Rex D. Garner**
  **John M. Orr**
  Fox Rothschild LLP
  1980 Festival Plaza Drive, Suite 700
  Las Vegas, NV 89135
  (702) 262-6899
  Fax: (702) 597-5503
  Email:rgarner@foxrothschild.com,
  dloffredo@foxrothschild.com
  jorr@foxrothschild.com,
  roya.rokni@lewisbrisbois.com

**Defendant**
Clark County

represented by **Joel K Browning**
Clark County District Attorney Civil Division
500 S. Grand Central Parkway, #5075
Las Vegas, NV 89155-2215
(702) 455-4761
Fax: (702) 382-5178
Email:
joel.browning@clarkcountyda.com,
christine.wirt@clarkcountyda.com,
Tawana.Thomas@clarkcountyda.com

**Defendant**
SHAC, LLC d/b/a Sapphire Gentlemen's Club and/or Sapphire

represented by **Ogonna M. Brown**
Lewis Roca Rothgerber Christie LLP
3993 Howard Hughes Parkway,
Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
Fax: (702) 949-8398
Email: OBrown@lewisroca.com; OBrown@lrrc.com, dberhanu@lewisroca.com, jhess@lewisroca.com, klopez@lewisroca.com, mdale@lrrc.com, nlord@lewisroca.com, ogonna-brown-4984@ecf.pacerpro.com, ombcalendar@lewisroca.com

**Casey T. Wallace, William X. King**
WALLACE & ALLEN, LLP
440 Louisiana, Suite 1500
Houston, Texas 77002
(713) 227-1744
Fax: (713) 227-0104
Email: cwallace@wallaceallen.com; wking@wallaceallen.com , service@wallaceallen.com, vbaker@wallaceallen.com, wking@wallaceallen.com

**Defendant**
SHAC MT, LLC

represented by **Ogonna M. Brown**
(See above for address)

**Casey T. Wallace, William X. King**
(See above for address)

**Defendant**
Las Vegas Bistro, LLC D/B/A
Larry Flynt's Hustler Club

represented by **Zachary Youngsma**
**Deanna L. Forbush (Local Counsel)**
Fox Rothschild LLP
198 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135

Shafter & Associates, P.C.
3800 Capital City Boulevard, Suite 2
Lansing, MI 48906
517-886-6560
Fax: 517-886-6565
Email: zack@BradShaferLaw.com, brad@bradshaferlaw.com, info@bradshaferlaw.com, matt@bradshaferlaw.com, DForbush@foxrothschild.com, jdeangelis@foxrothschild.com, sharper@foxrothschild.com

**Pro se litigant**
Russell Greer

represented by **Russell Greer**

P.O. Box 46602
Las Vegas, NV 89114
801-895 3501
Email: russmark@gmail.com

DATED this 1st day of December, 2022.

*/s/ Bernadette Francis*
*An employee of Hutchison & Steffen, PLLC*

Pursuant to FRCP 5(b), I certify I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date December 1, 2022, I caused the foregoing to be sent to a process server for service: **Form 1. Notice of Appeal from a Judgment or Order of a United States District Court; Form 6. Representation Statement** upon the parties below who have not ever appeared in the case and defaults are entered against each of them:

**Defendant**

Blu Magic Music, LLC,

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution, Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**

E.P. Sanctuary

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution, Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**

Exclusive Beauty Lounge, LLC,

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution, Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**
First Investment Property LLC

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution,
Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**
Future Music, LLC

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution,
Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**
Jamal Rashid

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution,
Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**
Mally Mall Music, LLC

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution,
Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**
MMM Productions, INC.

Jamal Rashid (Inmate #45040-509),
Corporate officer
At Federal Correctional Institution,
Sheridan
27072 SW Balliston Rd.
Sheridan, OR 97378

**Defendant**
MP3 Productions, INC.

4730 S. Fort Apache Road,
Suite 300,
Las Vegas, NV, 89147

**Defendant**

| | |
|---|---|
| PF Social Media Management, LLC | Jamal Rashid (Inmate #45040-509), Corporate officer<br>At Federal Correctional Institution, Sheridan<br>27072 SW Balliston Rd.<br>Sheridan, OR 97378 |

**Defendant**

| | |
|---|---|
| V.I.P Entertainment, LLC, | 2764 N. Green Valley Parkway, #400<br>Henderson, NV, 89014 |

DATED this 1st day of December, 2022.

*/s/ Bernadette Francis*

*An employee of Hutchison & Steffen, PLLC*

APPEAL,STAYED

**United States District Court**
**District of Nevada (Las Vegas)**
**CIVIL DOCKET FOR CASE #: 2:21-cv-01676-APG-VCF**

Williams et al v. Sisolak et al
Assigned to: Judge Andrew P. Gordon
Referred to: Magistrate Judge Cam Ferenbach
Case in other court: Ninth Circuit, 22-16859
Cause: 28:1343 Violation of Civil Rights

Date Filed: 09/10/2021
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Angela Williams** represented by

**Jason D. Guinasso**
Hutchison & Steffen, PLLC
5371 Kietzke Lane
Reno, NV 89511
(775) 853-8746
Fax: (775) 201-9611
Email: jguinasso@hutchlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin W Bull**
1201 F St. NW
Suite 200
Washington, DC 20004
202-393-7245
Email: bbull@ncose.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christen M Price**
1201 F St NW
Suite 200
Washington, DC 20004
202-393-7245
Email: cprice@ncoselaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dani Bianculli Pinter**
1201 F St NW
Suite 200
Washington, DC 20004
202-393-7245
Email: dpinter@ncoselaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pansy Watson**
1201 F St NW

Suite 200
Washington, DC 20004
202-393-7245
Email: pwatson@ncoselaw.org
*TERMINATED: 10/14/2022*

**Peter Gentala**
1201 F St NW
Suite 200
Washington, DC 20004
202-393-7245
Email: pgentala@ncoselaw.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jane Doe #1**                            represented by **Jason D. Guinasso**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin W Bull**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christen M Price**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dani Bianculli Pinter**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pansy Watson**
(See above for address)
*TERMINATED: 10/14/2022*

**Peter Gentala**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jane Doe #2**                            represented by **Jason D. Guinasso**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin W Bull**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Christen M Price**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dani Bianculli Pinter**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Pansy Watson**
(See above for address)
*TERMINATED: 10/14/2022*

**Peter Gentala**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Steve Sisolak**
*Governor of Nevada, in his official capacity*
*TERMINATED: 07/18/2022*

represented by **Gregory Louis Zunino**
Nevada State Attorney General's Office
100 N Carson Street
Carson City, NV 89701
775-684-1137
Fax: 775-684-1108
Email: glzunino@outlook.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sabrena Clinton**
Nevada Office of the Attorney General
555 E. Washington Avenue Suite 3900
Las Vegas, NV 89101
702-486-5708
Fax: 702-486-3773
Email: SClinton@ag.nv.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Aaron Ford**
*Attorney General of Nevada, in his official capacity*
*TERMINATED: 07/18/2022*

represented by **Gregory Louis Zunino**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sabrena Clinton**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **The City of Las Vegas**<br>*TERMINATED: 07/18/2022* | represented by | **Jeffrey L Galliher**<br>LAS VEGAS CITY ATTORNEY'S OFFICE<br>495 S. MAIN STREET, 6TH FLR<br>Las Vegas, NV 89101<br>702-229-6629<br>Fax: 702-386-1749<br>Email: jgalliher@lasvegasnevada.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Clark County**<br>*TERMINATED: 07/18/2022* | represented by | **Joel K Browning**<br>District Attorney<br>500 S. Grand Central Parkway<br>Suite 200<br>Las Vegas, NV 89155<br>702-455-4761<br>Email: joel.browning@clarkcountyda.com<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Nye County**<br>*TERMINATED: 07/18/2022* | represented by | **Brent L Ryman**<br>Erickson, Thorpe & Swainston, Ltd.<br>1885 South Arlington Ave., Suite 205<br>Reno, NV 89509<br>775-786-3930<br>Fax: 775-786-4160<br>Email: bryman@etsreno.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Paul M Bertone**<br>Erickson Thorpe & Swainston Ltd<br>99 W Arrroyo St<br>PO Box 3559<br>Reno, NV 89509<br>775-786-3930<br>Fax: 775-786-4160<br>Email: pbertone@etsreno.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Jamal Rashid**<br>*[194] Notice of Bankruptcy* | represented by | **George Haines**<br>Freedom Law Firm<br>8985 S. Eastern Avenue<br>Suite 350<br>Las Vegas, NV 89123<br>(702) 880-5554 |

Fax: (702) 385-5518
Email: Ghaines@freedomlegalteam.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**Mally Mall Music LLC**

**Defendant**
**Future Music, LLC**

**Defendant**
**PF Social Media Managment, LLC**

**Defendant**
**Exclusive Beauty Lounge, LLC**

**Defendant**
**First Investment Property LLC**

**Defendant**
**V.I.P. Entertainment, LLC**

**Defendant**
**MP3 Productions, Inc.**

**Defendant**
**MMM Productions, Inc.**

**Defendant**
**Western Best LLC**                    represented by **Rex Garner**
Fox Rothschild LLP
1980 Festival Plaza Drive
Suite 700
Las Vegas, NV 89135
702-262-6899
Fax: 702-597-5503
Email: rgarner@foxrothschild.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deanna L Forbush**
Fox Rothschild LLP
1980 Festival Plaza Drive
Suite 700
Las Vegas, NV 89135
702-262-6899
Fax: 702-597-5503
Email: DForbush@foxrothschild.com
*ATTORNEY TO BE NOTICED*

**Deanna L Forbush**
Fox Rothschild LLP
One Summerlin

1980 Festival Plaza Drive
Ste 700
Las Vegas, NV 89135
702-262-6899
Email: dforbush@foxrothschild.com
*ATTORNEY TO BE NOTICED*

**John M Orr**
Lewis Brisbois Bisgaard & Smith, LLP
6385 S. Rainbow Blvd.
Ste. 600
Las Vegas
Las Vegas, NV 89118
702-693-4352
Fax: 702-893-3789
Email: jorr@foxrothschild.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**E.P. Sanctuary**

**Defendant**

**Blu Magic Music, LLC**

**Defendant**

**Shac MT, LLC**
*TERMINATED: 03/02/2022*

represented by **Casey Wallace**
Feldman & Feldman, P.C.
3355 W. Alabama St.
Suite 1220
Houston, TX 77098
713-986-9471
Fax: 713-986-9472
Email: cwallace@wallaceallen.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ogonna M Brown**
Lewis Roca Rothgerber Christie LLP
Hughes Center
3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996
702.474.2622
Fax: 702.949.8298
Email: obrown@lewisroca.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William X King**
Wallace & Allen, LLP
440 Louisiana St.
Suite 1500
Houston, TX 77002

713-227-1744
Fax: 713-227-0104
Email: wking@wallaceallen.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Las Vegas Bistro, LLC**
*d/b/a Larry Flynt's Hustler Club*

represented by **Deanna L Forbush**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Youngsma**
Shafer & Associates, P.C.
3800 Capital City Blvd., Suite 2
Lansing, MI 48906
517-886-6560
Fax: 517-886-6565
Email: zack@bradshaferlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Western Best, Inc.**
*d/b/a Chicken Ranch*

represented by **Rex Garner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deanna L Forbush**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John M Orr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHAC, LLC**
*d/b/a Sapphire Gentleman's Club and/or Sapphire*
*TERMINATED: 03/02/2022*

represented by **Casey Wallace**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ogonna M Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William X King**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Russell G Greer** represented by **Russell G Greer**
PO Box 46602
Las Vegas, NV 89114
801-895-3501
Email: russmark@gmail.com
PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 09/10/2021 | 1 | COMPLAINT against All Defendants (Filing fee $402 receipt number 0978-6628316) by Angela Williams. Proof of service due by 12/9/2021. (Attachments: # 1 Summons Chicken Ranch, # 2 Summons Clark County, # 3 Summons EP Sanctuary Blu Magic Music LLC, # 4 Summons Exclusive Beauty Lounge, # 5 Summons First Investment Property LLC, # 6 Summons Ford, # 7 Summons Jamal Rashid, # 8 Summons Mally Mall Music, # 9 Summons MMM Productions, # 10 Summons MP3 Productions, # 11 Summons Nye County, # 12 Summons PF Social Media Management, # 13 Summons Sisolak, # 14 Summons City of Las Vegas, # 15 Summons VP Entertainment, # 16 Civil Cover Sheet) (Guinasso, Jason)<br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must immediately file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 09/10/2021) |
| 09/10/2021 | 2 | MOTION for Protective Order by Plaintiff Jane Doe. (Attachments: # 1 Proposed Order, # 2 Index, # 3 Exhibit Exhibit 1) (Guinasso, Jason) (Entered: 09/10/2021) |
| 09/13/2021 | | Case randomly assigned to Judge Andrew P. Gordon and Magistrate Judge Cam Ferenbach. (JQC) (Entered: 09/13/2021) |
| 09/13/2021 | 3 | STANDING ORDER. This case has been assigned to the Honorable Andrew P. Gordon. Judge Gordon's Chambers Practices, which are posted on the U.S. District Court, District of Nevada public website, may also be accessed directly via this hyperlink: www.nvd.uscourts.gov. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/13/2021) |
| 09/13/2021 | 4 | NOTICE TO COUNSEL PURSUANT TO LOCAL RULE IA 11-2. Counsel Benjamin W. Bull, Christen M. Price, Dani Bianculli Pinter, Pansy Watson, Peter A. Gentala to comply with completion and filing of the Verified Petition and Designation of Local Counsel. For your convenience, click on the following link to obtain the form from the Court's website - www.nvd.uscourts.gov.<br><br>Upon approval of the Verified Petition, counsel is required to register for the Court's Case Management and Electronic Case Filing (CM/ECF) system and the electronic service of documents. Please visit the Court's website **www.nvd.uscourts.gov** to register Attorney. Verified Petition due by 9/27/2021. **(no image attached)** (JQC) (Entered: 09/13/2021) |
| 09/13/2021 | 5 | Summons Issued as to Chicken Ranch, Clark County, E.P. Sanctuary Blue Magic Music, LLC, Exclusive Beauty Lounge, LLC, First Investment Property LLC, Aaron Ford, Future Music, LLC, MMM Productions, Inc., Mally Mall Music LLC, Nye County, PF Social Media Managment, LLC, Jamal Rashid, Steve Sisolak, The City of Las Vegas, V.I.P. Entertainment, LLC. (JQC) (Entered: 09/13/2021) |
| 09/14/2021 | 6 | ORDER. IT IS ORDERED that briefing on Plaintiff Jane Does Motion for Protective Order and Leave to Proceed Anonymously, ECF No. 2 , is stayed pending further order. IT IS FURTHER ORDERED that the parties include the relief requested by Jane Doe during all 26(f) conferences and agree to a briefing schedule for filing any oppositions to |

| | | |
|---|---|---|
| | | this motion and a reply if necessary. Signed by Magistrate Judge Cam Ferenbach on 9/14/2021. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/14/2021) |
| 09/21/2021 | 7 | **VIEW Corrected Image 16 re:** MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Benjamin W. Bull and DESIGNATION of Local Counsel Jason D. Guinasso (Filing fee $ 250 receipt number 0978-6638989) by Plaintiff Angela Williams. (Guinasso, Jason) Modified on 9/24/2021 (SLD). (Entered: 09/21/2021) |
| 09/21/2021 | 8 | **VIEW Corrected Image 18 re:** MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Pansy Watson and DESIGNATION of Local Counsel Jason D. Guinasso (Filing fee $ 250 receipt number 0978-6638991) by Plaintiff Angela Williams. (Guinasso, Jason) Modified on 9/24/2021 (SLD). (Entered: 09/21/2021) |
| 09/21/2021 | 9 | **VIEW Corrected Image 15 re:** MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Peter A. Gentala and DESIGNATION of Local Counsel Jason D. Guinasso (Filing fee $ 250 receipt number 0978-6638997) by Plaintiff Angela Williams. (Guinasso, Jason) Modified on 9/24/2021 (SLD). (Entered: 09/21/2021) |
| 09/21/2021 | 10 | **VIEW Corrected Image 17 re:** MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Christen M. Price and DESIGNATION of Local Counsel Jason D. Guinasso (Filing fee $ 250 receipt number 0978-6639002) by Plaintiff Angela Williams. (Guinasso, Jason) Modified on 9/24/2021 (SLD). (Entered: 09/21/2021) |
| 09/22/2021 | 11 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Andrew P. Gordon on 9/22/2021. Verified Petition does not comply with LR IA 11-2(a). Certificate of Good Standing is missing from the Petition. Counsel is advised to remedy the deficiency and refile Petition under event Notice of Corrected Image linking to 7 by 10/22/2021. Failure to comply will result in denial of the Petition. **(no image attached)** (Copies have been distributed pursuant to the NEF - KSR) (Entered: 09/22/2021) |
| 09/22/2021 | 12 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Andrew P. Gordon on 9/22/2021. Verified Petition does not comply with LR IA 11-2(a). Certificate of Good Standing is missing from the Petition. Counsel is advised to remedy the deficiency and refile Petition under event Notice of Corrected Image linking to 8 by 10/22/2021. Failure to comply will result in denial of the Petition. **(no image attached)** (Copies have been distributed pursuant to the NEF - KSR) (Entered: 09/22/2021) |
| 09/22/2021 | 13 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Andrew P. Gordon on 9/22/2021. Verified Petition does not comply with LR IA 11-2(a). Certificate of Good Standing is missing from the Petition. Counsel is advised to remedy the deficiency and refile Petition under event Notice of Corrected Image linking to 9 by 10/22/2021. Failure to comply will result in denial of the Petition. **(no image attached)** (Copies have been distributed pursuant to the NEF - KSR) (Entered: 09/22/2021) |
| 09/22/2021 | 14 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Andrew P. Gordon on 9/22/2021. Verified Petition does not comply with LR IA 11-2(a). Certificate of Good Standing is missing from the Petition. Counsel is advised to remedy the deficiency and refile Petition under event Notice of Corrected Image linking to 10 by 10/22/2021. Failure to comply will result in denial of the Petition. **(no image attached)** (Copies have been distributed pursuant to the NEF - KSR) (Entered: 09/22/2021) |
| 09/23/2021 | 15 | NOTICE of Corrected Image/Document re 9 Motion for Permission to Practice Pro Hac Vice - Verified Petition for attorney Peter A. Gentala, by Plaintiff Angela Williams. (Service of corrected image is attached.) (Guinasso, Jason) (Entered: 09/23/2021) |
| 09/23/2021 | 16 | NOTICE of Corrected Image/Document re 7 Motion for Permission to Practice Pro Hac Vice - Verified Petition for attorney Benjamin W. Bull, by Plaintiff Angela Williams. |

| | | |
|---|---|---|
| | | (Service of corrected image is attached.) (Guinasso, Jason) (Entered: 09/23/2021) |
| 09/23/2021 | 17 | NOTICE of Corrected Image/Document re 10 Motion for Permission to Practice Pro Hac Vice - Verified Petition for attorney Christen M. Price, by Plaintiff Angela Williams. (Service of corrected image is attached.) (Guinasso, Jason) (Entered: 09/23/2021) |
| 09/23/2021 | 18 | NOTICE of Corrected Image/Document re 8 Motion for Permission to Practice Pro Hac Vice - Verified Petition for attorney Pansy Watson, by Plaintiff Angela Williams. (Service of corrected image is attached.) (Guinasso, Jason) (Entered: 09/23/2021) |
| 09/24/2021 | 19 | ORDER Granting 7 Verified Petition for Permission to Practice Pro Hac Vice Benjamin W. Bull and approving Designation of Local Counsel Jason D. Guinasso. Signed by Judge Andrew P. Gordon on 9/24/2021.<br>Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/24/2021) |
| 09/24/2021 | 20 | ORDER Granting 8 Verified Petition for Permission to Practice Pro Hac Vice Pansy Watson and approving Designation of Local Counsel Jason D. Guinasso. Signed by Judge Andrew P. Gordon on 9/24/2021.<br>Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/24/2021) |
| 09/24/2021 | 21 | ORDER Granting 9 Verified Petition for Permission to Practice Pro Hac Vice Peter A. Gentala and approving Designation of Local Counsel Jason D. Guinasso Signed by Judge Andrew P. Gordon on 9/24/2021.<br>Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/24/2021) |
| 09/24/2021 | 22 | ORDER Granting 10 Verified Petition for Permission to Practice Pro Hac Vice Christen M. Price and approving Designation of Local Counsel Jason D. Guinasso. Signed by Judge Andrew P. Gordon on 9/24/2021.<br>Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/24/2021) |
| 09/24/2021 | 23 | MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Dani Bianculli Pinter and DESIGNATION of Local Counsel Jason D. Guinasso (Filing fee $ 250 receipt number 0978-6643163) by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 09/24/2021) |
| 09/27/2021 | 24 | ORDER Granting 23 Verified Petition for Permission to Practice Pro Hac Vice Dani Bianculli Pinter and approving Designation of Local Counsel Jason D. Guinasso. Signed by Judge Andrew P. Gordon on 9/27/2021.<br>Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/27/2021) |
| 10/07/2021 | 25 | CERTIFICATE of Interested Parties by Angela Williams. There are no known interested parties other than those participating in the case (Guinasso, Jason) (Entered: 10/07/2021) |
| 10/19/2021 | 26 | PROPOSED SUMMONS to be issued *Blu Magic Music, LLC* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 10/19/2021) |
| 10/19/2021 | 27 | PROPOSED SUMMONS to be issued *E.P. Sanctuary* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 10/19/2021) |

| | | |
|---|---|---|
| 10/19/2021 | 28 | Summons Issued as to E.P. Sanctuary Blue Magic Music, LLC. (JQC) (Entered: 10/19/2021) |
| 10/26/2021 | 29 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint,,,. Clark County served on 10/13/2021. (Guinasso, Jason) (Entered: 10/26/2021) |
| 10/26/2021 | 30 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. Aaron Ford served on 10/12/2021. (Guinasso, Jason) Modified service date on 10/26/2021 (SLD). (Entered: 10/26/2021) |
| 10/26/2021 | 31 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. MP3 Productions, Inc. served on 10/13/2021. (Guinasso, Jason) Modified service date on 10/26/2021 (SLD). (Entered: 10/26/2021) |
| 10/26/2021 | 32 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. Nye County served on 10/13/2021. (Guinasso, Jason) Modified service date on 10/26/2021 (SLD). (Entered: 10/26/2021) |
| 10/26/2021 | 33 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. Steve Sisolak served on 10/12/2021. (Guinasso, Jason) Modified service date on 10/26/2021 (SLD). (Entered: 10/26/2021) |
| 10/26/2021 | 34 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. The City of Las Vegas served on 10/13/2021. (Guinasso, Jason) Modified service date on 10/26/2021 (SLD). (Entered: 10/26/2021) |
| 10/26/2021 | 35 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. V.I.P. Entertainment, LLC served on 10/15/2021. (Guinasso, Jason) Modified service date on 10/26/2021 (SLD). (Entered: 10/26/2021) |
| 10/27/2021 | 36 | **VIEW Corrected Image 38 re:** MOTION to Dismiss by Defendant Clark County. Responses due by 11/10/2021. Discovery Plan/Scheduling Order due by 12/11/2021. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Browning, Joel)<br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must immediately file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. Modified on 10/28/2021 (SLD). (Entered: 10/27/2021) |
| 10/28/2021 | 37 | CLERK'S NOTICE. Attorney Action Required to ECF No. 36 . Document missing attorney's signature.<br><br>Attorney Joel Browning is advised to file the corrected image using the event *Notice of Corrected Image/Document* and link to 36 . **(no image attached)** (SLD) (Entered: 10/28/2021) |
| 10/28/2021 | 38 | NOTICE of Corrected Image/Document re 36 Motion to Dismiss, by Defendant Clark County. (Service of corrected image is attached.) (Browning, Joel) (Entered: 10/28/2021) |
| 11/01/2021 | 39 | NOTICE of Change of Address by Jason D. Guinasso. (Guinasso, Jason) (Entered: 11/01/2021) |
| 11/01/2021 | 40 | MOTION to Stay Discovery ~~Case~~ by Defendant Clark County. (Browning, Joel) Modified motion type on 11/24/2021 (MAJ). (Entered: 11/01/2021) |
| 11/02/2021 | 41 | ANSWER to 1 Complaint,,, *Defendants' Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief* filed by Aaron Ford, Steve Sisolak.(Zunino, Gregory) (Entered: |

| | | |
|---|---|---|
| | | 11/02/2021) |
| 11/03/2021 | 42 | JOINDER to 36 Motion to Dismiss,, by Defendant The City of Las Vegas. (Galliher, Jeffrey) (Entered: 11/03/2021) |
| 11/05/2021 | 43 | MOTION to Dismiss 1 Complaint,,, by Defendant Nye County. Responses due by 11/19/2021. Discovery Plan/Scheduling Order due by 12/20/2021. (Ryman, Brent)<br><br>NOTICE of Certificate of Interested Parties requirement: Under Local Rule 7.1-1, a party must immediately file its disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court. (Entered: 11/05/2021) |
| 11/05/2021 | 44 | CERTIFICATE of Interested Parties by Nye County. There are no known interested parties other than those participating in the case (Ryman, Brent) (Entered: 11/05/2021) |
| 11/05/2021 | 45 | JOINDER to 40 Motion to Stay Case by Defendant Nye County. (Ryman, Brent) (Entered: 11/05/2021) |
| 11/08/2021 | 46 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint,,,. Chicken Ranch served on 10/18/2021. (Guinasso, Jason) (Entered: 11/08/2021) |
| 11/08/2021 | 47 | PROPOSED SUMMONS to be issued *to Future Music LLC* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 11/08/2021) |
| 11/08/2021 | 48 | SUMMONS ISSUED as to Future Music, LLC. (JQC) (Entered: 11/08/2021) |
| 11/10/2021 | 49 | First AMENDED COMPLAINT with Jury Demand against All Defendants by Angela Williams. Adds new parties. (Guinasso, Jason) (Entered: 11/10/2021) |
| 11/10/2021 | 50 | MOTION for Protective Order re 49 Amended Complaint by Plaintiff Angela Williams. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 11/10/2021) |
| 11/15/2021 | 51 | ORDER Denying as moot 36 and 43 Motion to Dismiss. Signed by Judge Andrew P. Gordon on 11/15/2021. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 11/15/2021) |
| 11/15/2021 | 52 | RESPONSE to 45 Joinder, 40 Motion to Stay Case by Plaintiff Angela Williams. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 11/15/2021) |
| 11/16/2021 | 53 | MOTION to Strike 49 Amended Complaint, or in the Alternative, to Dismiss 49 Amended Complaint, by Defendant Clark County. Responses due by 11/30/2021. (Browning, Joel) (Entered: 11/16/2021) |
| 11/16/2021 | 54 | First MOTION to Extend Time (First Request) re 40 Motion to Stay Case by Defendant Clark County. (Browning, Joel) (Entered: 11/16/2021) |
| 11/19/2021 | 55 | First MOTION to Extend Time (First Request) *Clark County* re 53 Motion to Strike by Plaintiff Angela Williams. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 11/19/2021) |
| 11/23/2021 | 56 | REPLY to Response to 40 Motion to Stay Case by Defendant Nye County. (Ryman, Brent) (Entered: 11/23/2021) |
| 11/23/2021 | 57 | NON-OPPOSITION to 54 Motion to Extend/Shorten Time, 55 Motion to Extend/Shorten Time by Defendant Nye County. (Ryman, Brent) (Entered: 11/23/2021) |
| 11/23/2021 | 58 | JOINDER to 53 Motion to Strike by Defendants Aaron Ford, Steve Sisolak. (Zunino, Gregory) (Entered: 11/23/2021) |

| | | |
|---|---|---|
| 11/23/2021 | 59 | PROPOSED SUMMONS to be issued *Western Best, LLC* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 11/23/2021) |
| 11/23/2021 | 60 | PROPOSED SUMMONS to be issued *Shac Mt, LLC* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 11/23/2021) |
| 11/23/2021 | 61 | PROPOSED SUMMONS to be issued *Shac, LLC d/b/a Sapphire Gentleman's Club and/or Sapphire* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 11/23/2021) |
| 11/23/2021 | 62 | PROPOSED SUMMONS to be issued *Las Vegas Bistro, LLC d/b/a Larry Flynt's Hustler Club* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 11/23/2021) |
| 11/23/2021 | 63 | PROPOSED SUMMONS to be issued *Western Best, Inc d/b/a Chicken Ranch* by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 11/23/2021) |
| 11/23/2021 | 64 | SUMMONS ISSUED as to Western Best LLC re 49 Amended Complaint. (KF) (Main Document 64 replaced on 11/24/2021) (KF). (Entered: 11/23/2021) |
| 11/23/2021 | 65 | SUMMONS ISSUED as to Shac MT, LLC re 49 Amended Complaint. (KF) (Main Document 65 replaced on 11/24/2021) (KF). (Entered: 11/23/2021) |
| 11/23/2021 | 66 | SUMMONS ISSUED as to SHAC, LLC re 49 Amended Complaint. (KF) (Main Document 66 replaced on 11/24/2021) (KF). (Entered: 11/23/2021) |
| 11/23/2021 | 67 | SUMMONS ISSUED as to Las Vegas Bistro, LLC re 49 Amended Complaint. (KF) (Main Document 67 replaced on 11/24/2021) (KF). (Entered: 11/23/2021) |
| 11/23/2021 | 68 | SUMMONS ISSUED as to Western Best, Inc. re 49 Amended Complaint. (KF) (Main Document 68 replaced on 11/24/2021) (KF). (Entered: 11/23/2021) |
| 11/24/2021 | 69 | JOINDER to 53 Motion to Strike by Defendant The City of Las Vegas. (Galliher, Jeffrey) (Entered: 11/24/2021) |
| 11/24/2021 | 70 | ORDER granting 55 Motion to Extend Time Re: 53 Motion to Strike - Responses due by 12/10/2021. Signed by Judge Andrew P. Gordon on 11/24/2021. (Copies have been distributed pursuant to the NEF - DRS) (Entered: 11/24/2021) |
| 11/24/2021 | 71 | JOINDER ~~MOTION~~ to 53 Motion to Dismiss 49 Amended Complaint, by Defendant Nye County. Responses due by 12/8/2021. (Ryman, Brent) Modified event on 11/24/2021 (SLD). (Entered: 11/24/2021) |
| 11/24/2021 | 72 | NOTICE of Docket Correction to 71 filed by attorney Brent Ryman. The Court has corrected and changed the event from Motion to Dismiss to Joinder. No further action is required. **Do not refile document. (no image attached)** (SLD) (Entered: 11/24/2021) |
| 12/02/2021 | 73 | REPLY to Response to 40 Motion to Stay Discovery by Defendant Clark County. (Browning, Joel) (Entered: 12/02/2021) |
| 12/09/2021 | 74 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Las Vegas Bistro, LLC served on 12/3/2021. (Guinasso, Jason) Modified service date on 12/9/2021 (MR). (Entered: 12/09/2021) |
| 12/09/2021 | 75 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. MP3 Productions, Inc. served on 12/3/2021. (Guinasso, Jason) (Entered: 12/09/2021) |
| 12/09/2021 | 76 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. V.I.P. Entertainment, LLC served on 12/3/2021. (Guinasso, Jason) (Entered: 12/09/2021) |
| 12/09/2021 | 77 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. First Investment Property LLC served on 10/26/2021. (Guinasso, Jason) |

| | | |
|---|---|---|
| | | Modified service date on 12/9/2021 (MR). (Entered: 12/09/2021) |
| 12/09/2021 | 78 | SUMMONS Returned Executed by Angela Williams re 2 Motion for Protective Order, 1 Complaint. Exclusive Beauty Lounge, LLC served on 10/26/2021. (Guinasso, Jason) Modified service date on 12/9/2021 (MR). (Entered: 12/09/2021) |
| 12/09/2021 | 79 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Western Best LLC served on 12/2/2021. (Guinasso, Jason) (Entered: 12/09/2021) |
| 12/09/2021 | 80 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Western Best, Inc. served on 12/2/2021. (Guinasso, Jason) (Entered: 12/09/2021) |
| 12/10/2021 | 81 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Future Music, LLC served on 12/6/2021. (Guinasso, Jason) (Entered: 12/10/2021) |
| 12/10/2021 | 82 | RESPONSE to 53 Motion to Strike, 71 Joinder, 58 Joinder, 69 Joinder by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 12/10/2021) |
| 12/15/2021 | 83 | NOTICE of Appearance by attorney Zachary Youngsma on behalf of Defendant Las Vegas Bistro, LLC. *and Designation pursuant to LR IA 11-1(b)(2)(ii) and Nev. Sup. Ct. R. 42.1(1)* (Youngsma, Zachary) (Entered: 12/15/2021) |
| 12/16/2021 | 84 | REPLY to Response to 53 Motion to Strike by Defendant Clark County. (Browning, Joel) (Entered: 12/16/2021) |
| 12/17/2021 | 85 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Shac MT, LLC served on 12/2/2021. (Guinasso, Jason) (Entered: 12/17/2021) |
| 12/17/2021 | 86 | REPLY to Response to 53 Motion to Strike by Defendant Nye County. (Ryman, Brent) (Entered: 12/17/2021) |
| 12/20/2021 | 87 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. PF Social Media Managment, LLC served on 12/6/2021. (Guinasso, Jason) (Entered: 12/20/2021) |
| 12/20/2021 | 88 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Blu Magic Music, LLC served on 12/6/2021. (Guinasso, Jason) (Entered: 12/20/2021) |
| 12/20/2021 | 89 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. First Investment Property LLC served on 12/6/2021. (Guinasso, Jason) (Entered: 12/20/2021) |
| 12/20/2021 | 90 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Mally Mall Music LLC served on 12/6/2021. (Guinasso, Jason) (Entered: 12/20/2021) |
| 12/20/2021 | 91 | Joint Stipulated Discovery Plan and Scheduling Order by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 12/20/2021) |
| 12/21/2021 | 92 | STIPULATION *and [Proposed] Order for Extension of Time to Respond to Plaintiff's First Amended Complaint (First Request)* re 49 Amended Complaint by Defendants SHAC, LLC, Shac MT, LLC. (Brown, Ogonna) (Entered: 12/21/2021) |
| 12/21/2021 | 93 | SCHEDULING ORDER Granting 91 Discovery Plan and Scheduling Order. Discovery due by 4/25/2022. Motions due by 5/25/2022. Proposed Joint Pretrial Order due by 6/25/2022. Signed by Magistrate Judge Cam Ferenbach on 12/21/2021.(Copies have been distributed pursuant to the NEF - JQC) (Entered: 12/21/2021) |
| 12/21/2021 | 94 | NOTICE PURSUANT TO LOCAL RULE IB 2-2: In accordance with 28 USC § 636(c) and FRCP 73, the parties in this action are provided with a link to the "AO 85 Notice of Availability, Consent, and Order of Reference - Exercise of Jurisdiction by a U.S. Magistrate Judge" form on the Court's website - www.nvd.uscourts.gov. **AO 85 Consent forms should NOT be electronically filed.** Upon consent of all parties, counsel are |

| | | |
|---|---|---|
| | | advised to manually file the form with the Clerk's Office. (A copy of form AO 85 has been mailed to parties not receiving electronic service.) **(no image attached)** (JQC) (Entered: 12/21/2021) |
| 12/21/2021 | 95 | MOTION to Strike 84 Reply by Plaintiff Angela Williams. Responses due by 1/4/2022. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 12/21/2021) |
| 12/22/2021 | 96 | ORDER Granting 92 Stipulation for Extension of Time. SHAC, LLC, Shac MT, LLC answer due 1/24/2022. Responses due by 3/7/2022. Replies due by 3/14/2022. Signed by Magistrate Judge Cam Ferenbach on 12/22/2021. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 12/22/2021) |
| 12/22/2021 | 97 | RESPONSE to 95 Motion to Strike by Defendant Clark County. Replies due by 12/29/2021. (Browning, Joel) (Entered: 12/22/2021) |
| 12/23/2021 | 98 | MOTION to Dismiss 49 First Amended Complaint, by Defendants Western Best LLC, Western Best, Inc. Responses due by 1/6/2022. (Attachments: # 1 Certificate of Interested Parties) (Forbush, Deanna) Modified event on 12/27/2021 (SLD). (Entered: 12/23/2021) |
| 12/23/2021 | 99 | JOINDER to 53 Motion to Strike by Defendants Western Best LLC, Western Best, Inc.. (Forbush, Deanna) (Entered: 12/23/2021) |
| 12/23/2021 | 100 | JOINDER to 40 Motion to Stay Discovery by Defendants Western Best LLC, Western Best, Inc.. (Forbush, Deanna) (Entered: 12/23/2021) |
| 12/27/2021 | 101 | REPLY to 97 Response to 95 Motion to Strike, ~~84 Reply~~ by Plaintiff Angela Williams. (Guinasso, Jason) Modified on 12/28/2021 (SLD). (Entered: 12/27/2021) |
| 12/27/2021 | 102 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Jamal Rashid served on 12/6/2021. (Guinasso, Jason) (Entered: 12/27/2021) |
| 12/27/2021 | 103 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. MMM Productions, Inc. served on 12/6/2021. (Guinasso, Jason) (Entered: 12/27/2021) |
| 12/27/2021 | 104 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. E.P. Sanctuary served on 12/6/2021. (Guinasso, Jason) (Entered: 12/27/2021) |
| 12/27/2021 | 105 | MOTION to Intervene by Intervenor Russell G Greer. Responses due by 1/10/2022. (DRS) (Entered: 12/27/2021) |
| 12/27/2021 | 106 | Consent for Electronic Service of Documents by Intervenor Russell G Greer. (DRS) (Entered: 12/27/2021) |
| 12/27/2021 | 107 | STIPULATION FOR EXTENSION OF TIME (First Request) *and to Abate Deadlines* re 49 Amended Complaint by Defendant Las Vegas Bistro, LLC. (Youngsma, Zachary) (Entered: 12/27/2021) |
| 12/27/2021 | 108 | NOTICE of Docket Correction to 98 filed by attorney Deanna Forbush. The Court has corrected and changed the event from Motion Miscellaneous to Motion Dismiss. **(no image attached)** (SLD) (Entered: 12/27/2021) |
| 12/27/2021 | 109 | CLERK'S NOTICE re Certificate of Interested Parties attached to the 98 Motion to Dismiss. This document should be filed separately and not attached to another document.<br><br>Attorney Deanna Forbush is advised to file the Certificate of Interested Parties separately using the event Certificate Interested Parties. **(no image attached)** (SLD) (Entered: 12/27/2021) |
| 12/28/2021 | 110 | **ERROR**: Document terminated. Attorney attached wrong image. See correct 107 Stipulation and 111 Errata. ~~Amended STIPULATION FOR EXTENSION OF TIME (First~~ |

| | | |
|---|---|---|
| | | ~~Request)~~ *and to Abate Deadlines* ~~re 49 Amended Complaint by Defendant Las Vegas Bistro, LLC. (Youngsma, Zachary)~~ Modified on 12/28/2021 (SLD). (Entered: 12/28/2021) |
| 12/28/2021 | 111 | ERRATA to 107 Stipulation by Defendant Las Vegas Bistro, LLC. (Youngsma, Zachary) (Entered: 12/28/2021) |
| 12/28/2021 | 112 | ORDER Granting 107 Stipulation for Extension of Time. Signed by Magistrate Judge Cam Ferenbach on 12/28/2021. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 12/28/2021) |
| 12/28/2021 | 113 | ORDER. IT IS ORDERED that a video status conference hearing is scheduled for 10:00 AM, 1/7/2022, before Judge Cam Ferenbach. Signed by Magistrate Judge Cam Ferenbach on 12/28/2021. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 12/28/2021) |
| 12/29/2021 | 114 | CERTIFICATE of Interested Parties by Western Best LLC, Western Best, Inc.. There are no known interested parties other than those participating in the case (Forbush, Deanna) (Entered: 12/29/2021) |
| 12/29/2021 | 115 | First MOTION to Extend Time (First Request) *Western Best, Inc d/b/a Chicken Ranch and Western Best, LLC* re 98 Motion to Dismiss by Plaintiff Angela Williams. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 12/29/2021) |
| 12/30/2021 | 116 | RESPONSE to 115 Motion to Extend/Shorten Time and 98 Motion to Dismiss, by Defendants Western Best LLC, Western Best, Inc. Replies due by 1/6/2022. (Forbush, Deanna) Modified on 1/3/2022 to link to 98 Motion (SLD). (Entered: 12/30/2021) |
| 01/05/2022 | 117 | First STIPULATION FOR EXTENSION OF TIME (First Request) re 2 Motion for Protective Order, 50 Motion for Protective Order, 98 Motion to Dismiss by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 01/05/2022) |
| 01/05/2022 | 118 | NOTICE of Appearance by attorney Rex Garner on behalf of Defendants Western Best LLC, Western Best, Inc.. (Garner, Rex) (Entered: 01/05/2022) |
| 01/06/2022 | 119 | SUMMONS Returned Executed by Angela Williams re 49 Amended Complaint. Exclusive Beauty Lounge, LLC served on 12/6/2021. (Guinasso, Jason) (Entered: 01/06/2022) |
| 01/06/2022 | 120 | First STIPULATION TO CONTINUE (First Request) *Status Conference, Schedule for January 7, 2022* re 113 Order by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 01/06/2022) |
| 01/06/2022 | 121 | ORDER Granting 120 Stipulation to Continue. Status Conference set for 1/27/2022 at 10:00 AM in LV Chambers - Videoconference before Magistrate Judge Cam Ferenbach. Signed by Magistrate Judge Cam Ferenbach on 1/6/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/06/2022) |
| 01/10/2022 | 122 | ORDER Granting 117 Stipulation for Extension of Time (First Request) re 2 Motion for Protective Order, 50 Motion for Protective Order, 98 Motion to Dismiss. Plaintiffs Responses due by 1/20/2022. Signed by Judge Andrew P. Gordon on 1/10/2022. (Copies have been distributed pursuant to the NEF - YAW) (Entered: 01/10/2022) |
| 01/10/2022 | 123 | ORDER. It is ordered that the Clerk of Court administratively remove the Motions for Protective Order (ECF No. 2 and 50 ) from the list of undecided motions on this docket until further order of the court. It is further ordered that the parties be prepared to discuss the status of other pending non-dispositive motions during the status conference set for January 27, 2022. Signed by Magistrate Judge Cam Ferenbach on 1/10/2022. (Copies have been distributed pursuant to the NEF - HAM) (Entered: 01/10/2022) |

| | | |
|---|---|---|
| 01/10/2022 | 124 | RESPONSE to 105 Motion to Intervene by Plaintiff Angela Williams. Replies due by 1/17/2022. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 01/10/2022) |
| 01/14/2022 | 125 | ORDER. IT IS ORDERED that a video conference hearing on defendant Clark County 40 motion to stay discovery, is scheduled for 10:00 AM, 1/28/2022. Signed by Magistrate Judge Cam Ferenbach on 1/14/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/14/2022) |
| 01/18/2022 | 126 | Proposed Intervenor Russell Greer's REPLY to ECF No. 124 Response re ECF No. 105 Motion to Intervene as Defendant, by Intervenor Russell G Greer. (DRM) (Entered: 01/19/2022) |
| 01/20/2022 | 127 | RESPONSE to 98 Motion to Dismiss by Plaintiff Angela Williams. Replies due by 1/27/2022. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 01/20/2022) |
| 01/21/2022 | 128 | MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by Casey T. Wallace and DESIGNATION of Local Counsel Ogonna M. Brown (Filing fee $ 250 receipt number 0978-6769571) by Defendants SHAC, LLC, Shac MT, LLC. (Brown, Ogonna) (Entered: 01/21/2022) |
| 01/21/2022 | 129 | MOTION/VERIFIED PETITION for Permission to Practice Pro Hac Vice by William X. King and DESIGNATION of Local Counsel Ogonna M. Brown (Filing fee $ 250 receipt number 0978-6769593) by Defendants SHAC, LLC, Shac MT, LLC. (Brown, Ogonna) (Entered: 01/21/2022) |
| 01/21/2022 | 130 | ORDER Granting 54 Motion to Extend Time. IT IS FURTHER ORDERED that the status hearing scheduled for 10:00 AM, 1/27/2022, is RESCHEDULED and added to the hearing at 10:00 AM, 1/28/2022. Signed by Magistrate Judge Cam Ferenbach on 1/21/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/24/2022) |
| 01/24/2022 | 131 | ORDER Granting 128 Verified Petition for Permission to Practice Pro Hac Vice for Attorney Casey T. Wallace for SHAC, LLC,Casey T. Wallace for Shac MT, LLC and approving Designation of Local Counsel Ogonna M Brown. Signed by Judge Andrew P. Gordon on 1/24/2022.<br>Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/24/2022) |
| 01/24/2022 | 132 | ORDER Granting 129 Verified Petition for Permission to Practice Pro Hac Vice for Attorney Willaim X. King for SHAC, LLC,Willaim X. King for Shac MT, LLC and approving Designation of Local Counsel Ogonna M Brown. Signed by Judge Andrew P. Gordon on 1/24/2022.<br>Any Attorney not yet registered with the Court's CM/ECF System shall submit a Registration Form on the Court's website www.nvd.uscourts.gov<br>(Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/24/2022) |
| 01/24/2022 | 133 | MOTION to Dismiss 49 Amended Complaint by Defendants SHAC, LLC, Shac MT, LLC. Responses due by 2/7/2022. (Brown, Ogonna) Modified on 3/4/2022- Reopened Motion per 145 Order - (JQC). (Entered: 01/24/2022) |
| 01/26/2022 | 134 | NOTICE of Appearance by attorney John M Orr on behalf of Defendants Western Best LLC, Western Best, Inc.. (Orr, John) (Entered: 01/26/2022) |
| 01/26/2022 | 135 | ERROR: Document terminated - attorney to refile. ~~Joint STIPULATION FOR EXTENSION OF TIME (First Request) *to File Reply* re 98 Motion to Dismiss, by Defendants Western Best LLC, Western Best, Inc. (Orr, John)~~ Modified on 1/26/2022 (SLD). (Entered: 01/26/2022) |

| | | |
|---|---|---|
| 01/26/2022 | 136 | CLERK'S NOTICE. Attorney Action Required to ECF No. 135 . ERROR: Document was not filed pursuant to LR IC 2-2(c). The wrong event was selected and document is missing signatures for all other counsel. Pursuant to LR 7-1: A stipulation that has been signed by fewer than all the parties or their attorneys will be treated and must be filed as a joint motion.<br><br>Attorney John M. Orr is advised to refile ECF No. 135 either as a **Joint Motion** or a **Stipulation**, whichever is appropriate using the correct document event. If filed as a Stipulation, Stipulations must be in the form required by LR IA 6-2. Document 135 terminated.<br>**(no image attached)** (SLD) (Entered: 01/26/2022) |
| 01/27/2022 | 137 | Joint STIPULATION FOR EXTENSION OF TIME (First Request) to File Reply re 98 Motion to Dismiss by Defendants Western Best LLC, Western Best, Inc. (Orr, John) Modified to link to underlying motion on 1/27/2022 (EDS). (Entered: 01/27/2022) |
| 01/28/2022 | 138 | STIPULATION to Stay Discovery Pending Ruling on Dispositive Motions re 40 Motion to Stay, by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 01/28/2022) |
| 01/28/2022 | 139 | ORDER Granting 137 Stipulation for Extension of Time Re: 98 Motion to Dismiss. Replies due by 2/10/2022. Signed by Judge Andrew P. Gordon on 1/28/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/28/2022) |
| 01/28/2022 | 140 | MINUTES OF PROCEEDINGS - Motion Hearing held on 1/28/2022 before Magistrate Judge Cam Ferenbach. Crtrm Administrator: *T. Renfro*; Pla Counsel: *Jason Guinasso, Dani Pinter, Christen Price*; Def Counsel: *Deanna Forbush, Gregory Zunino, Ogonna Brown, Jeffrey Galliher, Brent Ryman, Rex Garner, Joel Browning, Zachary Youngsma, Casey Wallace, William King*; Recording start and end times: *10:06 - 10:27 am*; Courtroom: *3D*;<br><br>All parties appeared via video, except for Mr. Youngsma, who appeared telephonically. The Court makes preliminary remarks and hears representation of the parties regarding 138 Stipulation Regarding Discovery. A separate order will issue. IT IS ORDERED that 40 Motion to Stay Discovery is DENIED as MOOT.<br><br>(Copies have been distributed pursuant to the NEF - TR) (Entered: 01/28/2022) |
| 01/28/2022 | 141 | ORDER Granting 138 Stipulation re Discovery re 40 Motion to Stay Discovery. Signed by Magistrate Judge Cam Ferenbach on 1/28/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/28/2022) |
| 01/31/2022 | 142 | ORDER Denying as moot 115 Motion to Extend Time. Signed by Judge Andrew P. Gordon on 1/31/2022.(Copies have been distributed pursuant to the NEF - JQC) (Entered: 01/31/2022) |
| 02/10/2022 | 143 | REPLY to Response to 98 Motion to Dismiss by Defendants Western Best LLC, Western Best, Inc.. (Forbush, Deanna) (Entered: 02/10/2022) |
| 03/02/2022 | 144 | **Vacated per 145 Order** ORDER Granting 133 Unopposed Motion to Dismiss. Signed by Judge Andrew P. Gordon on 3/2/2022. (Copies have been distributed pursuant to the NEF - JQC) Modified on 3/8/2022 (EDS). (Entered: 03/02/2022) |
| 03/04/2022 | 145 | ORDER. IT IS ORDERED that 144 the Order granting ECF No. 133 Motion to Dismiss is VACATED. Signed by Judge Andrew P. Gordon on 3/4/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 03/04/2022) |
| 03/07/2022 | 146 | RESPONSE to 133 Motion to Dismiss by Plaintiff Angela Williams. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 03/07/2022) |

| | | |
|---|---|---|
| 03/14/2022 | 147 | REPLY to Response to 133 Motion to Dismiss by Defendants SHAC, LLC, Shac MT, LLC. (Brown, Ogonna) (Entered: 03/14/2022) |
| 03/21/2022 | 148 | NOTICE of Change of Address by Brent L Ryman. (Ryman, Brent) (Entered: 03/21/2022) |
| 04/07/2022 | 149 | MOTION for Entry of Clerk's Default *against Blu Magic Music, LLC* re 88 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Affidavit) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 150 | MOTION for Entry of Clerk's Default *against E.P. Sanctuary* re 104 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Index Exhibit Index, # 2 Exhibit Exhibit 1, # 3 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 151 | MOTION for Entry of Clerk's Default *against Exclusive Beauty Lounge, LLC* re 119 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Index Exhibit Index, # 2 Exhibit Exhibit 1, # 3 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 152 | MOTION for Entry of Clerk's Default *against First Investment Property LLC* re 77 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 153 | MOTION for Entry of Clerk's Default *against Mally Mall Music, LLC* re 90 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 154 | MOTION for Entry of Clerk's Default *against MMM Productions, Inc*. re 103 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 155 | MOTION for Entry of Clerk's Default *against MP3 Productions, Inc*. re 75 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 156 | MOTION for Entry of Clerk's Default *as to PF Social Mediat Management LLC* re 87 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 157 | MOTION for Entry of Clerk's Default *against Jamal Rashid* re 102 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 158 | MOTION for Entry of Clerk's Default *against V.I.P Entertainment, LLC* re 76 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/07/2022 | 159 | MOTION for Entry of Clerk's Default *against Future Music, LLC* re 81 Summons Returned Executed by Plaintiff Angela Williams. Responses due by 4/21/2022. (Attachments: # 1 Declaration) (Guinasso, Jason) (Entered: 04/07/2022) |
| 04/28/2022 | 160 | Clerk's ENTRY OF DEFAULT as to Blu Magic Music, LLC, E.P. Sanctuary, Exclusive Beauty Lounge, LLC, First Investment Property LLC, Future Music, LLC, MMM Productions, Inc., MP3 Productions, Inc., Mally Mall Music LLC, PF Social Media Managment, LLC, Jamal Rashid, V.I.P. Entertainment, LLC re 149 , 150 , 151 , 152 , 153 , 154 , 155 , 156 , 157 , 158 , 159 Motion for Entry of Clerks Default. Signed by Clerk of Court Debra K. Kempi on 4/28/2022. (JQC) (Entered: 04/28/2022) |

| | | |
|---|---|---|
| 05/03/2022 | 161 | ERRATA to 127 Response by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 05/03/2022) |
| 05/03/2022 | 162 | ERRATA to 146 Response by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 05/03/2022) |
| 05/03/2022 | 163 | ERRATA to 82 Response by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 05/03/2022) |
| 05/09/2022 | 164 | MOTION to Strike by Defendant Clark County. Responses due by 5/23/2022. (Attachments: # 1 Exhibit Exhibit A - Certified Copy of the Interlocal Agreement between LVMPD and Clark County) (Browning, Joel) (Entered: 05/09/2022) |
| 05/09/2022 | 165 | ERRATA to 164 Motion to Strike by Defendant Clark County. (Browning, Joel) (Entered: 05/09/2022) |
| 05/23/2022 | 166 | RESPONSE to 164 Motion to Strike, 165 Errata by Plaintiff Angela Williams. (Attachments: # 1 Index Exhibit Index, # 2 Exhibit Exhibit 1) (Guinasso, Jason) (Entered: 05/23/2022) |
| 05/31/2022 | 167 | REPLY to Response to 164 Motion to Strike by Defendant Clark County. (Browning, Joel) (Entered: 05/31/2022) |
| 06/16/2022 | 168 | MOTION to Dismiss 49 Amended Complaint by Defendants Aaron Ford, Steve Sisolak. Responses due by 6/30/2022. (Zunino, Gregory) (Entered: 06/16/2022) |
| 06/30/2022 | 169 | RESPONSE to 168 Motion to Dismiss by Plaintiff Angela Williams. Replies due by 7/7/2022. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 06/30/2022) |
| 07/06/2022 | 170 | REPLY to 169 Response, 168 Motion to Dismiss by Defendants Aaron Ford, Steve Sisolak. (Zunino, Gregory) (Entered: 07/06/2022) |
| 07/18/2022 | 171 | ORDER. IT IS ORDERED that 53 defendant Clark County's motion to dismiss is GRANTED in part. IT IS FURTHER ORDERED that 95 plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2's motion to strike is DENIED as moot. IT IS FURTHER ORDERED that 168 the State Defendants' motion to dismiss is DENIED as moot. IT IS FURTHER ORDERED that 98 the Brothel Defendants' motion to dismiss is GRANTED in part. IT IS FURTHER ORDERED that 133 the Sapphire Club's motion to dismiss is GRANTED in part. IT IS FURTHER ORDERED that 164 defendant Clark County's motion to strike is DENIED as moot. IT IS FURTHER ORDERED that 105 Russell G. Greer's motion to intervene is DENIED. IT IS FURTHER ORDERED that the remaining defendants may file motions to sever within 30 days of this order if they believe it is appropriate. Signed by Judge Andrew P. Gordon on 7/18/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 07/18/2022) |
| 07/28/2022 | 172 | MOTION for Certification of Interlocutory Appeal. (Attachments: # 1 Proposed Order) (Guinasso, Jason) (Entered: 07/28/2022) |
| 08/01/2022 | 173 | ANSWER to 49 Amended Complaint with Jury Demand *DEFENDANTS SHAC, LLC D/B/A SAPPHIRE GENTLEMANS CLUB AND SHAC MT, LLCS ANSWER TO PLAINTIFFS FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (JURY TRIAL DEMANDED)* filed by SHAC, LLC, Shac MT, LLC.(Brown, Ogonna) (Entered: 08/01/2022) |
| 08/11/2022 | 174 | RESPONSE to 172 Motion for Certificate of Appealability by Defendant Clark County. Replies due by 8/18/2022. (Browning, Joel) (Entered: 08/11/2022) |
| 08/11/2022 | 175 | MOTION COUNTER MOTION FOR CERTIFICATION AND ENTRY OF FINAL JUDGMENT PURSUANT TO FRCP 54(b) by Defendant Clark County. Responses due |

| | | |
|---|---|---|
| | | by 8/25/2022. (Browning, Joel) (misc) (presiding) (Entered: 08/11/2022) |
| 08/18/2022 | 176 | REPLY to Response to 172 Motion for Certificate of Appealability by Plaintiff Angela Williams. (Guinasso, Jason) (Entered: 08/18/2022) |
| 08/18/2022 | 177 | RESPONSE to 175 Motion by Plaintiff Angela Williams. Replies due by 8/25/2022. (Guinasso, Jason) (Entered: 08/18/2022) |
| 08/24/2022 | 178 | REPLY to 177 Response to 175 Counter Motion by Defendant Clark County. (Browning, Joel) Modified to link to underlying motion on 8/24/2022 (EDS). (Entered: 08/24/2022) |
| 09/16/2022 | 179 | Motion to Withdraw as Attorney ~~NOTICE *of Disassociation of Counsel*~~ by Jane Doe #1, Jane Doe #2.. (Guinasso, Jason) Modified event on 9/19/2022 (EDS). (Entered: 09/16/2022) |
| 09/19/2022 | 180 | ORDER. IT IS ORDERED an Oral argument on the plaintiffs' 172 motion for certification of interlocutory appeal and the government defendants' 175 motion for certification and entry of final judgment will be held on Friday, 11/4/2022 on a stacked calendar beginning at 9:00 a.m. in the Thomas & Mack Moot Court Room at UNLV's Boyd School of Law. Signed by Judge Andrew P. Gordon on 9/19/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 09/20/2022) |
| 10/14/2022 | 181 | ORDER Granting 179 Motion to Withdraw as Attorney. Pansy Watson withdrawn from the case. Signed by Magistrate Judge Cam Ferenbach on 10/14/2022. (Copies have been distributed pursuant to the NEF - JQC) (Entered: 10/14/2022) |
| 10/17/2022 | 182 | MOTION for Reconsideration re ECF No. 171 Order, by Proposed Intervenor Russell G Greer. Responses due by 10/31/2022. (DRM) (presiding) (Entered: 10/17/2022) |
| 10/18/2022 | 183 | ERRATA to ECF No. 182 Motion for Reconsideration, by Intervenor Russell G Greer. (DRM) (Entered: 10/18/2022) |
| 10/21/2022 | 184 | NON-OPPOSITION to 182 Motion for Reconsideration by Defendant Western Best LLC. (Forbush, Deanna) (Entered: 10/21/2022) |
| 10/25/2022 | 185 | RESPONSE to 182 Motion for Reconsideration by Plaintiff Angela Williams. Replies due by 11/1/2022. (Guinasso, Jason) (Entered: 10/25/2022) |
| 10/31/2022 | 186 | REPLY to Response to 182 Motion for Reconsideration by Intervenor Russell G Greer. (JQC) (Entered: 10/31/2022) |
| 10/31/2022 | 187 | Second REPLY to Response to 182 Motion for Reconsideration by Intervenor Russell G Greer. (JQC) (Entered: 10/31/2022) |
| 11/02/2022 | 188 | NOTICE of Appearance by attorney Sabrena Clinton on behalf of Defendants Aaron Ford, Steve Sisolak. (Clinton, Sabrena) (Entered: 11/02/2022) |
| 11/04/2022 | 189 | MINUTES OF PROCEEDINGS - Motion Hearing held on 11/4/2022 before Judge Andrew P. Gordon. Crtrm Administrator: *M. Johansen*; Pla Counsel: *Jason Guinasso, Peter Gentala, Christen Price*; Def Counsel: *Brandon Thompson, Sabrena Clinton, Joel Browning, Brent Ryman*; Court Reporter: *Paige Christian*; Time of Hearing: *9:03 a.m. - 9:29 a.m.*; Courtroom: *6C*; The court heard arguments of counsel regarding the plaintiffs' 172 motion for certification of interlocutory appeal and the government defendants' 175 motion for certification and entry of final judgment. As stated on the record, the plaintiffs' motion is denied, and the defendants' motion is granted under rule 54(b). This case is stayed from further litigation while the appeal is pending. Any party seeking to lift the stay may file a motion to do so. The minutes of this proceeding and the transcript will serve as the court's official ruling-no separate order to follow. **(no image attached)** (Copies have been distributed pursuant to the NEF - MAJ) (Entered: 11/04/2022) |

| | | |
|---|---|---|
| 11/07/2022 | 190 | NOTICE of Appearance by attorney Joel K Browning on behalf of Defendant Clark County. (Browning, Joel) (Entered: 11/07/2022) |
| 11/07/2022 | 191 | ORDER. IT IS ORDERED that the clerk of the court to enter final judgment in favor of defendants Steven Sisolak, Aaron Ford, Clark County, Nye County, and the City of Las Vegas, and against plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 on all claims among those parties. IT IS FURTHER ORDERED that this case is stayed as to the plaintiffs and the remaining defendants while the case against the government defendants is on appeal. Should any party wish to lift the stay, they may file a motion to do so. Signed by Judge Andrew P. Gordon on 11/7/2022. (Copies have been distributed pursuant to the NEF - HAM) (Entered: 11/07/2022) |
| 11/07/2022 | 192 | JUDGMENT in favor of Defendants Steven Sisolak, Aaron Ford, Clark County, Nye County, and the City of Las Vegas and against Angela Williams. Signed by Clerk of Court Debra K. Kempi on 11/7/2022. (Copies have been distributed pursuant to the NEF - HAM) Modified defendants on 11/8/2022 (EDS). (Entered: 11/07/2022) |
| 12/01/2022 | 193 | NOTICE OF APPEAL as to 192 Judgment, by Plaintiff Angela Williams. Filing fee $ 505, receipt number BNVDC-7133401. E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (Guinasso, Jason) (Entered: 12/01/2022) |
| 12/02/2022 | 195 | USCA ORDER for Time Schedule as to 193 Notice of Appeal filed by Angela Williams. **USCA Case Number 22-16859**. (Copies have been distributed pursuant to the NEF - LOE) (Entered: 12/20/2022) |
| 12/08/2022 | 194 | NOTICE OF BANKRUPTCY Upon the Record as to Jamal Rashid by Defendant Jamal Rashid. (Haines, George) (Entered: 12/08/2022) |
| 01/31/2023 | 196 | TRANSCRIPT of Proceedings, 189 Order on Motion for Certificate of Appealability, Motion Hearing, held on 11/04/2022, before Judge Andrew P. Gordon. Court Reporter: Paige Christian, Paige_Christian@nvd.uscourts.gov. Any Redaction Request is due by 2/21/2023. Redacted Transcript Deadline is set for 3/3/2023. Release of the Transcript Restriction is set for 5/1/2023. Before release date, the transcript may be viewed at the court public terminal or purchased through the reporter. Transcript Order form is available on court website. After that date it may be obtained through the court reporter or PACER. (PMC) (Entered: 01/31/2023) |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/03/2023 13:55:24 | | | |
| **PACER Login:** | jguinasso | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-01676-APG-VCF |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |