No. 22-16859

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANGELA WILLIAMS, JANE DOE #1, AND JANE DOE #2,

*Plaintiffs – Appellants,*

v.

JOSEPH LOMBARDO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF NEVADA; ET AL.

*Defendants – Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:21-cv-01676-APG-VCF
Hon. Andrew P. Gordon

**STATE DEFENDANTS' ANSWERING BRIEF**

AARON D. FORD
Attorney General
KIEL B. IRELAND (Bar No. 15368)
Deputy Solicitor General
SABRENA CLINTON (Bar No.6499)
Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
(775) 684-1234 (phone)
(775) 684-1108 (fax)
kireland@ag.nv.gov
*Attorneys for the State Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

JURISDICTIONAL STATEMENT ..........................................................................1

ISSUES PRESENTED............................................................................................1

INTRODUCTION ...................................................................................................1

STATEMENT OF THE CASE.................................................................................2

    I.    Nevada's Regulation of Sex Work.........................................................2

    II.    Plaintiffs' Allegations............................................................................4

    III.    Procedural History.................................................................................7

SUMMARY OF ARGUMENT ................................................................................9

ARGUMENT ........................................................................................................10

    I.    Plaintiffs Lack Standing to Assert Their Claims Against the State
        Defendants ...........................................................................................10

        A.    The Operative Complaint Failed to Allege Facts Showing
            that Plaintiffs' Injuries Are Fairly Traceable to the State
            Defendants' Conduct............................................................11

        B.    Ignoring Constitutional Standing Requirements Is Not
            Necessary to Vindicate the Thirteenth Amendment or the
            TVPRA.................................................................................17

        C.    Plaintiffs Forfeited Any Right to Amend Their Complaint
            Again ...................................................................................21

    II.    In the Alternative, Plaintiffs Cannot Obtain Any Relief on Their
        Claims Against the State Defendants ...............................................21

        A.    The State Defendants Are Entitled to Eleventh Amendment
            Immunity from Plaintiffs' Claims for Damages......................22

        B.    Plaintiffs Lack Standing to Seek Prospective Relief ...............22

CONCLUSION .....................................................................................................24

STATEMENT OF RELATED CASES ..................................................................25

i

CERTIFICATE OF COMPLIANCE ........................................................................26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bailey v. Alabama*,
219 U.S. 219 (1911) ........................................................................18

*Cato v. United States*,
70 F.3d 1103 (9th Cir. 1995) .........................................................18

*Charleston v. Nevada*,
830 F. App'x. 948 (9th Cir. 2020)..................................................23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .........................................................................22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................11

*Coyote Pub., Inc. v. Miller*,
598 F.3d 592 (9th Cir. 2010)........................................................2, 3

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......................................................................12

*Dittman v. California*,
191 F.3d 1020 (9th Cir. 1999).......................................................22

*Ditullio v. Boehm*,
662 F.3d 1091 (9th Cir. 2011).......................................................22

*Fleck & Assocs., Inc. v. City of Phoenix*,
471 F.3d 1100 (9th Cir. 2006).......................................................23

*Fleites v. MindGeek S.A.R.L.*,
617 F. Supp 3d 1146 (C.D. Cal. 2022)...........................................15

*G&G Fire Sprinklers, Inc. v. Bradshaw*,
No. 95-56639, 1997 WL 1106525 (9th Cir. Aug. 27, 1997)............16

*In re Breland*,
989 F.3d 919 (11th Cir. 2021).......................................................18

*Jones v. Allison*,
9 F.4th 1136 (9th Cir. 2021).........................................................21

# Table of Authorities (Con't)

**Page**

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020) ................................................................15

*Kowalski v. Tesmer*,
    543 U.S. 125, (2004) ..........................................................................23

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011)................................................. 8, 11, 15

*Novak v. United States*,
    795 F.3d 1012 (9th Cir. 2015)..................................................... 13, 15

*Phillips v. Snyder*,
    836 F.3d 707, 722 (6th Cir. 2016).......................................................18

*Retail Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268, (9th Cir. 2017)..............................................................5

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996) ..........................................................................22

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ..............................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..........................................................................14

*Turaani v. Wray*,
    988 F.3d 313 (6th Cir. 2021) ..............................................................12

*United States v. Texas*,
    No. 22-58 U.S. __, 2023 WL 4139000, (June 23, 2023) ................. 11, 14, 18, 19

*United States v. Wardlow*,
    951 F.2d 1115 (9th Cir. 1991)............................................................21

*United Transp. Union v. ICC*,
    891 F.2d 908, (D.C. Cir. 1989) ..........................................................20

*Wash. Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013)............................................................12

iv

## Table of Authorities (Con't)

**Page**

*White v. U.S. Pipe & Foundry Co.*,
   646 F.2d 203 (5th Cir. Unit B May 1981)...........................................................18

*WildEarth Guardians v. U.S. Forest Serv.*,
   70 F.4th 1212 (9th Cir. 2023)......................................................... 10, 12, 15, 16

*Will* v. *Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ...................................................................................7

*Wright v. SEIU Local 503*,
   48 F.4th 1112 (9th Cir. 2022) *cert. denied*, 143 S. Ct. 749 (2023) .....................22

## REGULATIONS

Nev. Admin. Code § 441A.800 .................................................................3

Nev. Admin. Code § 441A.800(1)...........................................................17

Nev. Admin. Code § 441A.800(3)...........................................................17

Nev. Admin. Code § 441A.805 .................................................................3

Nev. Admin. Code §§ 441A.777–815 .......................................................3

## STATUTES

18 U.S.C. § 1595(a) ........................................................................ 19, 20

28 U.S.C. § 1292(b) ...............................................................................9

42 U.S.C. § 1983 ............................................................................7, 22

Nev. Rev. Stat. §  41.031(3)..................................................................22

Nev. Rev. Stat. § 200.463(1)(d), (g)–(h), (2)............................................3

Nev. Rev. Stat. § 200.463(3)(b) ..............................................................3

Nev. Rev. Stat. § 201.300 ......................................................................3

Nev. Rev. Stat. § 201.300(2)...................................................................3

Nev. Rev. Stat. § 201.320(1)...................................................................3

# Table of Authorities (Con't)

**Page**

Nev. Rev. Stat. § 201.353 ...................................................................3

Nev. Rev. Stat. § 201.353(3)..............................................................4

Nev. Rev. Stat. § 201.353(3)(b)(1) .....................................................4

Nev. Rev. Stat. § 201.353(4)..............................................................4

Nev. Rev. Stat. § 201.354 ...................................................................3

Nev. Rev. Stat. § 244.345 ...................................................................3

Nev. Rev. Stat. § 244.345(8)..................................................... 3, 13, 16

Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"),
    Pub. L. 108-193, 117 Stat. 2875...................................................7

## OTHER AUTHORITIES

Adopted Regulation of the State Board of Health,
    LCB File No. R089-10, at 6 (2010),
    https://tinyurl.com/r08910 .................................................3, 17

Cir. R. 36-3(c) ..................................................................................16

Denise Rosch, *Program Giving Second Chances to Low-Level Offenders*,
    News 3 Las Vegas (Nov. 23, 2022),
    https://tinyurl.com/2jtzt35s...........................................................4

*Early Standing Doctrine*,
    congress.gov, https://tinyurl.com/yrefz73t (last visited July 10, 2023) .............18

Neal Kumar Katyal, *Men Who Own Women: A Thirteenth Amendment Critique of
    Forced Prostitution*,
    103 Yale L.J. 791 (1993)..............................................................19

*Peonage*,
    *Black's Law Dictionary* (11th ed. 2019). ...........................................3

Defendants/Appellees Governor Joseph M. Lombardo and Attorney General Aaron D. Ford (the "State Defendants") submit this answering brief pursuant to Federal Rule of Appellate Procedure 28.

## JURISDICTIONAL STATEMENT

As explained below, the district court lacked and this Court lacks jurisdiction because Plaintiffs have not shown that they have standing for their claims. *See infra* Argument Part I. The State Defendants agree with Plaintiffs' jurisdictional statement in all other respects.

## ISSUES PRESENTED

1. Did the district court err in dismissing Plaintiffs-Appellants Angela Williams, Jane Doe #1 and Jane Doe #2's ("Plaintiffs") claims against the State Defendants because the operative complaint failed to show that Plaintiffs had standing?

2. Was dismissal warranted on the alternative ground that Plaintiffs are barred as a matter of law from obtaining any relief from the State Defendants?

## INTRODUCTION

Sex trafficking is a scourge across this country. Plaintiffs' operative complaint shows how tragically widespread it is: they allege that they were trafficked in Arizona, California, Colorado, Georgia, Illinois, Texas, Massachusetts,

New Jersey, New Mexico, New York, Oklahoma and Oregon, as well as Nevada. ER-82, 86.

The sad fact that Nevada – in common with its 49 sister states – has not eradicated sex trafficking does not confer standing on Plaintiffs to sue the State Defendants. Holding otherwise would mean that any person alleging that a state isn't doing a good enough job fighting crime could commandeer the courts to supervise the legislative and executive branches' law-enforcement efforts. That would violate Article III's careful cabining of judicial authority and would be bad policy besides.

Plaintiffs' claims will proceed against many of the individuals and businesses that allegedly trafficked them. But because the operative complaint's allegations failed to show that Nevada law had a determinative or coercive effect on those Defendants or anyone else that allegedly injured Plaintiffs, the chain of causation is too tenuous to support standing against the State Defendants. This Court should affirm the judgment in favor of the State Defendants.

## STATEMENT OF THE CASE

## I. Nevada's Regulation of Sex Work

"Nevada's position on the legality of prostitution in much of the state is essentially agnostic." *Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 607 (9th Cir. 2010). Nevada law prohibits prostitution in counties with a population of over 700,000; the

only such county is Clark County, which contains Las Vegas.  Nev. Rev. Stat. § 244.345(8).  The other sixteen counties may, but are not required to, license brothels.  *Coyote Pub.*, 598 F.3d at 596; *see* Nev. Rev. Stat. § 244.345.

The Nevada Board of Health has promulgated regulations to protect licensed brothels' workers and clients.  Nev. Admin. Code §§ 441A.777–815.  Condom use is mandatory.  *Id.* § 441A.805.  To "identify[ ] infection if present and treat[ ] it immediately and appropriately," regular testing of legal sex workers for sexually transmitted infections is also mandatory.  Adopted Regulation of the State Board of Health, LCB File No. R089-10, at 6 (2010), https://tinyurl.com/r08910; *see* Nev. Admin. Code § 441A.800.

At the same time, nonconsensual and unlicensed prostitution are criminal offenses.  Prostitution outside of a licensed brothel is illegal.  Nev. Rev. Stat. §§ 201.353, 201.354.  Sex trafficking is a felony.  *Id.* § 201.300(2).  As is subjecting a person to forced labor or services by means of confiscation of identity documents, debt bondage or peonage.[1]  *Id.* § 200.463(1)(d), (g)–(h), (2).  Nevada law also criminalizes pimping in at least two additional ways: by prohibiting inducing another person to begin or continue prostituting and by prohibiting living from the earnings of a prostitute.  *Id.* §§ 201.300, 201.320(1).

---

[1] Peonage is "a status or condition of compulsory service based upon real or alleged indebtedness."  Nev. Rev. Stat. § 200.463(3)(b); *see Peonage*, *Black's Law Dictionary* (11th ed. 2019).

3

Nevada law protects victims of sex trafficking who are swept up in the criminal-justice system. If a prosecuting attorney has "reason to believe" before trial that a person arrested for prostituting "is a victim of sex trafficking, the prosecuting attorney shall dismiss the charge." Nev. Rev. Stat. § 201.353(4). Criminal defendants charged with prostitution-related offenses may be eligible for preprosecution diversion programs. *Id.* § 201.353(3)(b)(1); *see* Denise Rosch, *Program Giving Second Chances to Low-Level Offenders*, News 3 Las Vegas (Nov. 23, 2022), https://tinyurl.com/2jtzt35s. Law-enforcement officers who detain, arrest or cite prostitutes are obligated to provide information on available social services. Nev. Rev. Stat. § 201.353(3).[2]

## II.    Plaintiffs' Allegations

Plaintiffs are three women who allege that they were victims of sex trafficking in numerous states, ER-75, 78, 85–86, 90. They allege that Nevada "is the state where there was and is the greatest demand for prostitution, legal and illegal." *Id.* at 84–85. They posit several theories for why. Las Vegas receives an "extremely high" number of annual tourists. *Id.* at 73. Las Vegas's reputation for nightlife and more

---

[2] The operative complaint and Plaintiffs' opening brief recount the appalling history of sexual slavery in the antebellum South. ER-57–60; OB 1, 4–5. That history has nothing to do with Nevada. The Nevada Constitution has banned slavery in two separate sections since its inception. Nev. Const. Ordinance; *id.* art. 1, § 17. And as discussed in this section, the practices that Plaintiffs describe violate Nevada criminal law.

4

liberal vice rules may attract visitors more likely to seek out prostitution. *See id.* Some tourists come with the incorrect belief that prostitution is legal everywhere in Nevada. *Id.* at 72. Others come intending to visit legal brothels outside Las Vegas. *See id.* at 82. Plaintiffs also allege that law enforcement in Nevada has failed to effectively enforce sex trafficking and prostitution-related laws. *Id.* at 72, 74.[3]

Angela Williams began being sex trafficked in Houston, Texas. *Id.* at 75–76, 78. She started at an illegal brothel, and then was trafficked at a Houston strip club. *Id.* at 77–79.

Williams answered a job listing in Las Vegas. ER-79. The job listing was posted on behalf of Jamal Rashid, "a major pimp in the illegal sex trade in Las Vegas." *Id.* at 79–80. Rashid forced Williams to have sex with clients for money in Nevada and other states. *Id.* at 80–82. He also moved Williams to California, where he continued forcing her to perform sex work. *See id.* at 83. Although Plaintiffs alleged that Rashid was a paid informant for the Las Vegas Metropolitan Police Department, they didn't allege any wrongdoing by State-level law enforcement. *See id.* at 79–80. Rashid was eventually convicted of prostitution-related offenses. *Id.* at 82.

---

[3] Because this Court is reviewing an order granting a motion to dismiss, this brief assumes, as it must, that the allegations in the complaint are true. *See Retail Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1271 n.1 (9th Cir. 2017). The inclusion of any allegation in this brief is not a concession that it is true.

Williams was later trafficked by her "final sex trafficker," who was "extremely abusive." ER-84. After her final sex trafficker tried to kill her, he was arrested and convicted of sex trafficking and other offenses. *Id.* at 84 & n.82. Williams was then able to escape sex trafficking. *Id.* at 84.

Promising a way to make quick money, a family member induced Jane Doe #1 to travel to Las Vegas. ER-85. One of her traffickers was Khalieff Wilson, who required her to travel across the United States to prostitute for him. *Id.* at 86. Wilson was eventually convicted of sex trafficking and imprisoned. *Id.* at 87.

Doe #1 also worked at a legal brothel licensed by Nye County. ER-88. Doe #1 witnessed the brothel commit numerous crimes, including employing minors and holding the legal sex workers in debt bondage. *Id.* at 89–90.

Jane Doe #2, like Williams, was sex trafficked in Houston. ER-90. She was induced to travel to Las Vegas, where she continued being sex trafficked. *Id.* at 90–91. Her pimps stole her identification documents and forced her to work in strip clubs. *Id.* at 91–92. The strip clubs had audio and video recording devices in their private rooms, so they knew if a client demanded an illegal commercial sex act or sexually assaulted a dancer. *Id.* at 96–97. They nevertheless took a portion of the fee even after clients raped the dancers. *Id.* at 96.

Plaintiffs did not allege that the State Defendants took any direct action toward them. *See* OB 23-29. Instead, they asserted that Nevada's "norms" contributed to

Plaintiffs' being trafficked. ER-67–75. The only allegations referring to Nevada's (and, by extension, the State Defendants') actions involved general laws and conditions. *See* OB 23-29.[4]

## III. Procedural History

Plaintiffs filed their complaint in the U.S. District Court for the District of Nevada. ER-119, 126. The operative first amended complaint asserted claims against the State Defendants solely in their official capacity. *Id.* at 53. As such, the State Defendants are stand-ins for the State of Nevada itself, and their alleged "conduct" is the aspects of Nevada law that Plaintiffs challenge. *See Will* v. *Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The operative complaint also names as Defendants the City of Las Vegas, Clark County and Nye County, as well as individuals and businesses that allegedly took part in trafficking Plaintiffs. *Id.* at 53–57. Plaintiffs asserted a Thirteenth Amendment claim under 42 U.S.C. § 1983 and two claims based on the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), Pub. L. 108-193, 117 Stat. 2875 (codified at scattered sections of 8, 18 and 22 U.S.C.). ER-98–101.

---

[4] The operative complaint did refer to the Board of Health's regulation requiring legal sex workers to be tested for STIs. ER-67. But the only Plaintiff within the scope of STI testing – Jane Doe #1 – didn't allege any injury from the testing. *See id.* at 85–90. STI testing was another part of the general conditions that Plaintiffs alleged indirectly contributed to their injuries. *See id.* at 67.

Clark County moved to dismiss the operative complaint, and the State Defendants (among others) joined the motion. ER-34–35. The State Defendants also filed a separate motion to dismiss explaining that Eleventh Amendment immunity barred any damages award against them and that Plaintiffs lacked standing for prospective relief. SDSER-4, 10.

The district court granted Clark County's motion to dismiss, dismissing with prejudice the claims against the State Defendants, Clark County, Nye County and the City of Las Vegas. ER-47. It found that Plaintiffs failed to "plausibly allege that the injuries they suffered [were] fairly traceable to Nevada's system of legal prostitution," so they lacked standing for their claims against those Defendants. *Id.* at 36–37. It acknowledged that Plaintiffs alleged that legal prostitution in Nevada was "correlate[d] with exponential increases in the illegal trade," but concluded that "Nevada's legal system of prostitution is, at best, an attenuated cause of the plaintiffs' alleged injuries." *Id.* at 36. It then summarized the "numerous third-party actors" whose "independent decisions collectively [had] a significant effect on [Plaintiffs'] injuries." *Id.* (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)) (some brackets in original).

The district court's order did not dismiss all the claims against the Defendant brothels and strip clubs, so it was not an appealable final judgment. ER-43 n.9, 47. Plaintiffs moved for the district court to certify its order for appeal under 28 U.S.C.

8

§ 1292(b).  Doc. 172, at 2.[5]  The State Defendants (together with the other dismissed Defendants) countermoved for entry of final judgment under Federal Rule of Civil Procedure 54(b).  ER-6.

The district court denied Plaintiffs' motion and granted the State Defendants'. ER-6.  It entered judgment in favor of the State Defendants, Clark County, Nye County and the City of Las Vegas.  *Id.* at 4.  The surviving claims against the other Defendants are stayed pending this appeal.  *Id.* at 5.

## SUMMARY OF ARGUMENT

The district court correctly concluded that Plaintiffs failed to show that they had standing to assert claims against the State Defendants.  Their alleged injuries are not traceable to the State Defendants' conduct.  Plaintiffs don't allege that the State Defendants took any direct action against them.  Nor do they identify any Nevada law that had a determinative or coercive effect on the alleged traffickers that injured them.  On the contrary, Nevada law criminalizes the injurious conduct alleged.

Plaintiffs' contention that standing requirements must give way to their Thirteenth Amendment and TVPRA claims is wrong.  Standing is an integral part of Article III's limitation of jurisdiction that ensures that courts don't exceed their role. Many plaintiffs in many cases have successfully shown that they have standing to

---

[5] "Doc." citations refer to the docket-entry number on the district court's CM/ECF system.

bring Thirteenth Amendment and TVPRA claims; it is not necessary or proper to exempt Plaintiffs' claims just because they don't meet the Constitution's requirements in this case.

If this Court rejects the district court's standing analysis, it should still affirm on the alternative ground that there is no relief available to Plaintiffs. The State Defendants possess Eleventh Amendment immunity from Plaintiffs' claims for damages. And Plaintiffs fail to allege a real and immediate threat of future harm from the State Defendants' conduct, so they lack standing for prospective relief.

## ARGUMENT

## I. Plaintiffs Lack Standing to Assert Their Claims Against the State Defendants

This Court reviews Article III standing de novo. *WildEarth Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1216 (9th Cir. 2023). A complaint challenged for lack of subject-matter jurisdiction (including standing challenges) is subject to the legal standard set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 n.9 (9th Cir. 2011) (en banc). That means that we must accept as true the operative complaint's factual allegations, but legal contentions and

conclusory statements are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. Affirmance is appropriate under that standard.[6]

### A. The Operative Complaint Failed to Allege Facts Showing that Plaintiffs' Injuries Are Fairly Traceable to the State Defendants' Conduct

**1.** It is the plaintiff's burden to show that she has standing to bring her claims. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013). Standing is a "bedrock constitutional requirement" that enforces Article III's limitation of jurisdiction to "Cases" and "Controversies." *United States v. Texas*, No. 22-58, 599 U.S. __, 2023 WL 4139000, at *3 (June 23, 2023). "[S]tanding is not merely a troublesome hurdle to be overcome if possible so as to reach the merits of a lawsuit which a party desires to have adjudicated; it is a part of the basic charter promulgated by the Framers." *Id.* (quotation marks omitted). "By ensuring that a plaintiff has standing to sue, federal courts prevent the judicial process from being used to usurp the powers of the political branches." *Id.* (quotation marks omitted).

To survive a motion to dismiss on standing grounds, the plaintiff must adequately "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

---

[6] The panel in *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011), concluded that *Iqbal* does not apply to a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Id.* at 1067–68. That conclusion impermissibly departed from the *Chapman* en banc decision, which applied *Iqbal* in considering whether dismissal under Rule 12(b)(1) was required. 631 F.3d at 954, 955 n.9. Although Plaintiffs' claims fail under the *Maya* standard too, the better course is for this Court to follow *Chapman* and *Terenkian* and apply *Iqbal*. *See also Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (collecting cases showing that *Maya* is the sole court of appeals case to decline to apply *Iqbal* to a Rule 12(b)(1) issue).

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). This appeal centers on the "fairly traceable" requirement, which obligates plaintiffs to establish a "line of causation between the defendant's action and the plaintiff's harm" that is "more than attenuated." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141–42 (9th Cir. 2013).

When, like here, causation turns on a third party's reaction to government action or inaction, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *WildEarth Guardians*¸ 70 F.4th at 1216 (quotation marks omitted). That is because the plaintiff must show that the government's conduct had a "determinative or coercive effect" on the third party. *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (emphasis omitted); *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021). Put simply, this kind of theory of standing "requires that the government cajole, coerce, command." *WildEarth Guardians*, 70 F.4th at 1217.

**2.**   Plaintiffs' allegations did not meet the high bar for showing that their injuries were fairly traceable to the State Defendants' actions or inactions. Nothing in the operative complaint showed that Nevada law had a determinative or coercive effect on the individuals and entities that allegedly trafficked Plaintiffs. Nevada did not command anyone to traffic Plaintiffs, nor did its alleged inaction *force* the trafficking to take place.

Indeed, the operative complaint itself showed that Nevada law did not have a determinative or coercive effect on Plaintiffs' traffickers. Much of the injurious

conduct alleged took place in Clark County. ER-79–87, 90–97. Yet Nevada law *prohibits* prostitution in Clark County. Nev. Rev. Stat. § 244.345(8). Plaintiffs likewise allege that they were trafficked in nearly a dozen states other than Nevada. ER-82, 86. They do not explain how Nevada law could have had a determinative or coercive effect on third parties' criminal activity when the exact same activity occurs across the country.

*Novak v. United States*, 795 F.3d 1012 (9th Cir. 2015), reinforces the conclusion that Plaintiffs' injuries are not fairly traceable to the State Defendants. The *Novak* plaintiffs alleged that a federal statute created the conditions for two private companies to establish a duopoly. *Id.* at 1019. But the complaint also provided reasons for the development of the duopoly separate from the statute at issue. *Id.* This Court held that the plaintiffs lacked standing because they had "alleged facts showing that the two companies may well have engaged in their injury-inflicting actions even in the absence of the government's challenged conduct." *Id.* (quotation marks omitted).

So too here. Plaintiffs' allegations that they were subjected to the same injuries in Clark County and outside of Nevada show that the third parties may well have engaged in their injury-inflicting conduct in the absence of the parts of Nevada law that Plaintiffs challenge. Their allegations that Nevada law contains some

provisions that are purportedly conducive to trafficking cannot overcome the fact that the same issue plagues other jurisdictions without those provisions.

**3.** Plaintiffs' arguments to the contrary are without merit.

**a.** Plaintiffs contend that they "need only trace the Government Defendants' conduct to one injury to sufficiently allege standing." OB 33–34. But the only State Defendant conduct purportedly supporting that contention is Nevada's live-entertainment tax. *Id.* at 33–36. That doesn't make any sense. Plaintiffs weren't taxed, so they suffered no injury from the tax. If anything, the tax disincentivizes escort services by reducing their profits.

Faced with that commonsense point, Plaintiffs argue for a new type of injury never recognized by this Court or the Supreme Court: the "monetization" of sex trafficking. OB 35. The problem is that standing requires a "judicially cognizable" injury, *Texas*, 2023 WL 4139000, at *4, and monetization through taxation doesn't qualify. For an intangible harm to be a judicially cognizable injury, it should have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiffs point to no authority that an industrywide tax has historically been a basis for lawsuits by untaxed parties. *See* OB 35–36. The one district-court opinion they cite expressly distinguished cases involving government

14

policies from its application of the monetization theory. *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp 3d 1146, 1157 n.7 (C.D. Cal. 2022).

**b.** The cases that Plaintiffs rely on (OB 38–44) only confirm that their injuries can't be fairly traced to the State Defendants. In *Barnum Timber Co. v. U.S. EPA*, 633 F.3d 894 (9th Cir. 2011), the government directly injured the plaintiff by listing its property as "impaired," which allegedly "significantly reduced the value of [its] timberlands." *Id.* at 898. In *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020), the government had taken "direct actions," including by financially subsidizing the harmful conduct. *Id.* at 1169. This case is the opposite: the State Defendants have taken no direct action; they have criminalized, not subsidized, the actions that injured Plaintiffs.

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011), is of limited utility because unlike *WildEarth Guardians* and *Novak* it did not deal with alleged government action or inaction. But even there this Court held that the plaintiffs' decreased value and desirability claims failed when they could not show that the "defendants' actions *necessarily* result[ed]" in third parties' injurious conduct. *Maya*, 658 F.3d at 1072. Here too Plaintiffs failed to show that the State Defendants'

conduct necessarily resulted in Plaintiffs' trafficking, and Plaintiffs' claims were properly dismissed.[7]

      **c.**    Plaintiffs assert that the district court failed to draw two reasonable inferences in their favor: (1) that by legalizing escorting and entertainment by referral, the State Defendants and other government Defendants have legalized prostitution in Clark County; and (2) that the State Defendants and other government Defendants are encouraging prostitution "where women are under the control of someone else." OB 29–30. For the reasons already discussed, even if the State Defendants had tacitly legalized prostitution in Clark County – an inference foreclosed by section 244.345(8) of the Nevada Revised Statutes – and encouraged prostitution involving pimps, that would not have changed the result of the analysis. There would still be no allegation that the State Defendants coerced or commanded anyone to traffic Plaintiffs, so there would still be no injury traceable to the State Defendants. *See WildEarth Guardians*, 70 F.4th at 1217. Any argument that Nevada law was determinative on the third parties that trafficked Plaintiffs is implausible given that Plaintiffs were trafficked by pimps in other states with other legal regimes.

---

       [7] Plaintiffs also rely on an uncitable unpublished disposition issued before January 1, 2007, *G&G Fire Sprinklers, Inc. v. Bradshaw*, No. 95-56639, 1997 WL 1106525 (9th Cir. Aug. 27, 1997). Cir. R. 36-3(c).

Plaintiffs' assertion fails for the separate reason that the inferences they ask this Court to draw are not reasonable. Legalization of escorting and entertainment of referral services does not give rise to a reasonable inference that Nevada has legalized other conduct that is expressly criminalized, any more than a state's legalizing drinking implies that it legalized drunk driving too.

Likewise, laws and ordinances that require legal sex work, escorting and stripping to be managed by licensed entities do not give rise to a reasonable inference that the State Defendants are encouraging prostitution where women are under the control of someone else. All that that means is that these businesses are treated like other vice industries that also require licensing.

It is not clear how Board of Health regulations requiring STI testing (OB 30) could support the inference that the State Defendants are encouraging pimping either. They have nothing to do with what kind of entity employs legal sex workers. *See* Nev. Admin. Code § 441A.800(1), (3). They are simply recognize that STIs are a risk in sex work and help ensure that STIs are diagnosed and treated promptly. Adopted Regulation of the State Board of Health, LCB File No. R089-10, at 6 (2010), https://tinyurl.com/r08910.

### B. Ignoring Constitutional Standing Requirements Is Not Necessary to Vindicate the Thirteenth Amendment or the TVPRA

**1.** Plaintiffs contend that the district court's application of standing undermines the Thirteenth Amendment. OB 50, 56. But standing, just like the

Thirteenth Amendment, is part of the Constitution. *Texas*, 2023 WL 4139000, at \*3. Nothing in the Thirteenth Amendment's text suggests that it was intended to abrogate Article III's limits on the judicial power. Nor do Plaintiffs cite any caselaw holding that Thirteenth Amendment claims are excused from standing's requirements. *See* OB 51-56.

There is no reason to invent an atextual exception from Article III for Thirteenth Amendment claims. Parties have been able to press Thirteenth Amendment claims without the need for a carveout. *See, e.g.*, *In re Breland*, 989 F.3d 919, 922 (11th Cir. 2021); *Phillips v. Snyder*, 836 F.3d 707, 714, 722 (6th Cir. 2016). When, on the other hand, plaintiffs are unable to show that they have standing, this Court and others do not circumvent Article III – they dismiss the claims for lack of jurisdiction. *See, e.g.*, *Cato v. United States*, 70 F.3d 1103, 1109 (9th Cir. 1995); *White v. U.S. Pipe & Foundry Co.*, 646 F.2d 203, 206 (5th Cir. Unit B May 1981).

*Bailey v. Alabama*, 219 U.S. 219 (1911), is not to the contrary. *Bailey* predated modern standing doctrine. *Early Standing Doctrine*, congress.gov, https://tinyurl.com/yrefz73t (last visited July 10, 2023). But if the same case arose today, the petitioner would have standing because he had been convicted of a crime under the challenged law. The operative complaint here lacks any analogous direct action by the State Defendants.

None of that is to say that Thirteenth Amendment claims should be treated worse than other constitutional claims. All constitutional claims are subject to standing. *See Texas*, 2023 WL 4139000, at *3 (collecting cases). That ensures that courts don't exceed their constitutionally assigned role and take on the duties of the executive and legislative branches, an equally important concern in our system of divided powers. *See id.*

The student note that the opening brief cites *passim* (OB vii) doesn't change the calculus. The note does not address constitutional standing at all. *See* Neal Kumar Katyal, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 Yale L.J. 791, 792–93 (1993). Its argument is that "forced prostitution" – which it distinguishes from the "consensual prostitution" that exists in some of Nevada's rural counties – violates the Thirteenth Amendment. *Id.* at 791–93. That point may arguably be relevant to the merits of Plaintiffs' Thirteenth Amendment claim, but it has no bearing on the threshold issue of standing.

**2.** Plaintiffs also contend that the district court's application of standing would "gut" 18 U.S.C. § 1595(a)'s creation of a cause of action against benefitting from trafficking. OB 57–59. Even if that were true, it would be immaterial. Standing is a constitutional limit on the courts' power. *Texas*, 2023 WL 4139000, at *3. A statute cannot "expand the constitutional jurisdiction of the federal courts" by exempting favored claims from standing's strictures. *United Transp. Union v.*

*ICC*, 891 F.2d 908, 915–16 (D.C. Cir. 1989). Congress's enacting § 1595(a) did not change Plaintiffs' burden of showing standing.

In any event, it is not true that faithfully applying standing doctrine guts § 1595(a). As the opening brief concedes, the court below found that Plaintiffs could state a § 1595(a) claim in this very case (against Defendants other than the State Defendants). OB 58.

And contrary to Plaintiffs' argument (OB 58–59), the district court's conclusion that some Defendants must face § 1595(a) claims was not inconsistent with its decision to dismiss the State Defendants. Doe #1 alleged that she was "locked inside" the Chicken Ranch and was "was not permitted to leave [it] if she owed [it] money" – a paradigm example of debt bondage. *Id.* at 42 (quoting ER-89–90). Doe #2 alleged that Sapphire Gentleman's Club provided the physical location for sexual assaults, that Sapphire customers committed the sexual assaults, that Sapphire knew about the sexual assaults through audio/video recording and that Sapphire demanded a portion of the fee post-sexual assaults. ER-44–45 (citing ER-96–97). Those allegations of direct harm were categorically different from the tenuous and hypothetical causation chain that Plaintiffs tried to use to link the State Defendants to their injuries.

### C.  Plaintiffs Forfeited Any Right to Amend Their Complaint Again

Plaintiffs contend that the district court "abused its discretion in not giving [them] leave to amend."  OB 31.  But Plaintiffs failed to request leave to amend in the court below, which forfeited their right to raise this issue on appeal.  *See Alaska v. United States*, 201 F.3d 1154, 1163–64 (9th Cir. 2000); ER-126–140.  They also failed to comply with the district court's local rule LR 15-1, which requires the party seeking leave to amend to file the proposed amended pleading (unless the court orders otherwise), an additional basis to decline to consider their new argument now. *See United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991).   In any event, the opening brief's failure to identify even a single fact that a second amended complaint could allege to cure the operative complaint's defects (*see* OB 31–32) shows that the district court didn't clearly err in finding that amendment would be futile.

## II.   In the Alternative, Plaintiffs Cannot Obtain Any Relief on Their Claims Against the State Defendants.

Because the district court concluded that Plaintiffs lacked standing to assert claims against the State Defendants, it didn't need to consider whether any relief could be granted on those claims.  If this Court disagrees with the district court's standing determination, it should nevertheless affirm on the alternative ground that no relief is legally available.  *See Jones v. Allison*, 9 F.4th 1136, 1139 (9th Cir. 2021) (explaining that this Court "may affirm a District Court's decision granting a motion to dismiss on any ground supported by the record").

### A. The State Defendants Are Entitled to Eleventh Amendment Immunity from Plaintiffs' Claims for Damages

"The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court." *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999). That goes for claims brought under 42 U.S.C. § 1983 and for TVPRA claims. *Id.* at 1026–27 (affirming the dismissal of a § 1983 claim for damages); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996) (holding that statutes enacted based on Article I powers cannot abrogate Eleventh Amendment immunity).[8]

That rule bars any damages award against the State Defendants. Plaintiffs assert their claims against the State Defendants solely in their official capacities. ER-53. Nevada has not waived its Eleventh Amendment immunity, Nev. Rev. Stat. § 41.031(3), and asserted it in its motion to dismiss, SDSER-4.

### B. Plaintiffs Lack Standing to Seek Prospective Relief

**1.** "Past wrongs are insufficient by themselves to grant standing" for declaratory and injunctive relief. *Wright v. SEIU Local 503*, 48 F.4th 1112, 1118 (9th Cir. 2022) (quotation marks omitted), *cert. denied*, 143 S. Ct. 749 (2023). A plaintiff seeking prospective relief must instead show a "real and immediate threat of repeated injury." *Id.*; *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

---

[8] The TVPRA was enacted under Congress's Commerce Clause power, which is an Article I power. *Ditullio v. Boehm*, 662 F.3d 1091, 1097 n.4 (9th Cir. 2011).

Plaintiffs cannot seek prospective relief because the operative complaint alleged only past wrongs without any threat of repeated injury. *See* ER-84, 90, 97–98. That is why this Court held that plaintiffs alleging nearly identical facts lacked standing, and there is no reason to come to a different conclusion here. *See Charleston v. Nevada*, 830 F. App'x. 948, 948–49 (9th Cir. 2020) (unpublished).

**2.** Plaintiffs didn't argue that they had ordinary standing for prospective relief in the court below. SDSER-28–29. Rather, they argued that they had "third-party standing on behalf of persons currently being sex trafficked" in Nevada. *Id.* at 27.

But third-party standing doesn't exempt Plaintiffs from Article III's standing requirements. *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006). Only a "a litigant who has *already* met the constitutional requirements" can use third-party standing to assert the rights of others. *Id.* Plaintiffs lack Article III standing for prospective relief because they have not shown a real and immediate threat of injury, and they cannot invoke third-party standing as an escape hatch from that dead end. *See id.*

Even if Plaintiffs somehow met the constitutional standing requirements for a claim for prospective relief, they still wouldn't qualify for third-party standing. Third-party standing is disfavored outside narrow circumstances not present here. *See Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). It requires a Plaintiff to make

two showings in addition to the traditional standing requirements: that she "has a close relationship with the person who possesses the right" and that "there is a hindrance to the possessor's ability to protect his own interests." *Id.* (quotation marks omitted).

Plaintiffs failed to allege that they have a close relationship with persons currently being trafficked in Nevada. *See* ER-97–98. The only relevant allegation in the operative complaint is that Plaintiffs were "appropriate persons to assert third-party standing" because they were "recently sex trafficked within Nevada." *Id.* That cannot be sufficient because it would destroy the requirement that a plaintiff show a real and immediate threat of repeated wrongdoing – the past wrong itself would always automatically establish third-party standing by creating a purported close relationship with current victims.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment in favor of the State Defendants.

DATED this 12th day of July, 2023.

AARON D. FORD
Attorney General

By:   /s/ *Kiel B. Ireland*
          Kiel B. Ireland
          Deputy Solicitor General

          *Attorneys for the State Defendants*

24

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9TH CIR. CASE NUMBER(S)**  No. 22-16859

The undersigned attorney or self-represented party states the following:

[ X ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** _s/ Kiel B. Ireland                          **Date** _July 12, 2023____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

25

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9TH CIR. CASE NUMBER(S)** __No. 22-16859_____

I am the attorney or self-represented party.

**This brief contains** <u>5144</u> **words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Kiel B. Ireland_____</u>      **Date** <u>July 12, 2023_____</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

26