No. 22-16859

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ANGELA WILLIAMS, JANE DOE #1, AND JANE DOE #2,

*Plaintiffs - Appellant,*

v.

JOSEPH LOMBARDO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF NEVADA; ET AL.

*Defendants – Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:21-cv-01676-APG-VCF
Hon. Andrew P. Gordon

## STATE DEFENDANTS' SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME I OF I

AARON D. FORD
Attorney General
KIEL B. IRELAND (Bar No. 15368)
Deputy Solicitor General
SABRENA CLINTON (Bar No.6499)
Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
(775) 684-1234 (phone)
(775) 684-1108 (fax)
kireland@ag.nv.gov
*Attorneys for the State Defendants*

AARON D. FORD
  Attorney General
GREGORY L. ZUNINO (Bar No. 4805)
  Deputy Solicitor General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
(775) 684-1237 (phone)
(775) 684-1108 (fax)
GZunino@ag.nv.gov

*Attorneys for Governor Steve Sisolak*
*Attorney General Aaron Ford*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA WILLIAMS; JANE DOE,<br><br>        Plaintiff(s),<br><br>  vs.<br><br>STEVE SISOLAK, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; THE CITY OF LAS VEGAS; CLARK COUNTY; NYE COUNTY; CHICKEN RANCH; JAMAL RASHID; MALLY MALL MUSIC, LLC, FUTURE MUSIC, LLC, PF SOCIAL MEDIA MANAGEMENT, LLC, E.P. SANCTUARY BLU MAGIC MUSIC, LLC, EXECLUSIVE BEAUTY LOUNGE, LLC, FIRST INVESTMENT PROPERTY LLC, V.I.P. ENTERTAINMENT, LLC, MP3 PRODUCTIONS, INC., & MMM PRODUCTIONS, INC,<br><br>        Defendant(s). | Case No. 2:21-cv-01676-APG-VCF<br><br>**STATE DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

       Defendant STEVE SISOLAK, in his official capacity as Governor of the State of Nevada, and Defendant AARON FORD, in his official capacity as the Attorney General of Nevada (together "State Defendants"), by and through counsel, Gregory L. Zunino, Deputy

Solicitor General, hereby move to dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

DATED this 16th day of June 2022.

AARON D. FORD
Attorney General

By: /s/ Gregory L. Zunino
GREGORY L. ZUNINO
Deputy Solicitor General, (Bar No. 4805)
100 N. Carson Street
Carson City, Nevada 89701
(775) 684-1237
GZunino@ag.nv.gov
*Attorneys for State Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The plaintiffs in this case are Angela Williams and two Jane Does (hereinafter "Plaintiffs") (FAC ¶ 4).[1] The defendants include Governor Steve Sisolak, in his official capacity, and Attorney General Aaron Ford, in his official capacity (hereinafter the "State Defendants") (FAC ¶ 5). This case is a sequel to a similar case that was dismissed in 2019 on jurisdictional grounds. *See Charleston v. Nevada*, 423 F.Supp.3d 1020, 1028 (D. Nev. 2019). There, the plaintiffs lacked standing to challenge the constitutionality of Nevada's statutory scheme for licensing and regulating brothels.

The plaintiffs in *Charleston* lacked standing because they could not trace an injury to the licensure, regulation, or operation of a brothel, or to the enactment, implementation, or enforcement of a Nevada statute or regulation. *Id.* Here, for the same reason, Plaintiffs fail once again to demonstrate their standing to challenge the constitutionality of Nevada's statutory scheme for licensing and regulating brothels. Various other defendants have briefed the standing issue. The State Defendants will not repeat those arguments here

---

[1] References are to the First Amended Complaint file-stamped November 10, 2021 ("FAC"), identified in the Court's electronic filing system as document no. 49.

other than to say that they apply with equal force to all the governmental defendants in this case. If the Court finds that Plaintiffs lack standing, it should dismiss the First Amended Complaint as to all the governmental defendants, including the State Defendants.

While Plaintiffs' claims against the State Defendants are subject to dismissal for lack of standing, their claims against the State Defendants fail for the additional reason that Nevada is immune from suit under the Eleventh Amendment. Plaintiffs' suit against the State Defendants is the equivalent of a suit against Nevada itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (holding that "a suit against a state official in their official capacity is not a suit against the official, but a suit against the official's office").

Nevada has not waived its immunity under the Eleventh Amendment. *See* Nev. Rev. Stat § 41.031(3). Therefore, to avoid the Eleventh Amendment's bar to suit against Nevada, Plaintiffs must plead a factual basis for their claims against the State Defendants. Such a factual basis could include, for example, an allegation that the State Defendants voluntarily waived their immunity, *see, e.g., Hill v. Blind Indus. and Serv. of Maryland*, 179 F.3d 754, 758-59 (9th Cir. 1999), or engaged in conduct that falls within a recognized exception to the immunity doctrine, *see, e.g., Ex parte Young*, 209 U.S. 123, 155-156 (1908).

Plaintiff have made no such allegation. Setting aside questions of immunity altogether, Plaintiffs have made no allegations that implicate the State Defendants in any conceivable constitutional or statutory violation. Plaintiffs have apparently sued the State Defendants for the simple reason that they are elected officials. Accordingly, Plaintiffs have failed to establish a factual basis for jurisdiction, and they have otherwise failed to state a claim upon which relief can be granted. Pursuant to Rule 12(b)(1) and/or (6) of the Federal Rules of Civil Procedure, the Court should dismiss Plaintiffs' claims against the State Defendants.

## II.     STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), Plaintiffs' claims against the State Defendants are subject to dismissal unless Plaintiffs plead a factual basis for federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiffs must meet this requirement because the party invoking federal jurisdiction bears the burden of establishing the elements of jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Article III of the Constitution confines the jurisdiction of federal courts to the adjudication of "Cases" and "Controversies." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). In this case, as discussed below, Article III's standing requirement overlaps with Eleventh Amendment immunity.

"To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

When a plaintiff sues state officials in their official capacities, the plaintiff must demonstrate that their claims present a justiciable case or controversy. *See Whole Woman's Health v. Jackson*, 595 U.S.__, 142 S. Ct. 522, 532 (2021). When state officials have no enforcement functions, a plaintiff who claims to be have been injured by state law or policy cannot sue those state officials as a symbolic representation of the law or policy with which they disagree. *See id*. Such a complaint is barred by the Eleventh Amendment and/or by the plain language of 42 U.S.C. § 1983. *See Hafer v. Melo*, 502 U.S. 21, 25-30 (1991) (plaintiff must show that that state enforcement of "policy or custom" played a role in the alleged violation of federal law); *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (2007) (plaintiff must show that state defendants "had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation").

Additionally, pursuant to Rule 12(b)(6), Plaintiffs' claims against the State Defendants are subject to dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court must grant a motion to dismiss when the plaintiff fails to plead a cognizable legal theory or fails to plead sufficient facts to support such a legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To avoid dismissal, a complaint must include enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Though the facts of the First Amended Complaint must be accepted as true, this Court must ignore unsupported conclusions, unwarranted inferences, and sweeping legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S., at 678. The Court can consider matters of which it may take judicial notice and documents referenced in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (judicial notice does not convert a motion to dismiss to one for summary judgment); *Johnson v. Federal Home Loan Mortg. Corp*, 793 F.3d 1005, 1007 (9th Cir. 2015) (considering documents incorporated by reference does not convert a motion to dismiss to one for summary judgment).

Here, Plaintiffs base their claims against the State Defendants on their alleged participation in a "system" of slavery and human exploitation (FAC ¶¶ 3, 4, 160, 324 and 326). Plaintiffs offer no concrete details concerning the State Defendants' alleged ties to this amorphous system. The gist of their generalized complaint is that Nevada, as a nondescript entity consisting of state, local, and private actors, provides a safe harbor for, and benefits financially from, interstate sex trafficking. Plaintiffs maintain that brothels give rise to human trafficking via an intricate web of law, policy, private sector activity, and human psychology. This is a political platform, not a factual allegation upon which Plaintiffs' can base their federal lawsuit.

…

## III.   ARGUMENT

Plaintiffs have admittedly sued the State Defendants in their official capacities (FAC ¶¶ 22 and 23). Therefore, their suit is equivalent to a suit against the state of Nevada. *See Will*, 491 U.S. at 70-71. The Court in *Will* noted that "a suit against a state official in their official capacity is not a suit against the official, but a suit against the official's office." *Id.*, at 71. Further, the drafters of 42 U.S.C. § 1983 had no intention of destroying state sovereign immunity under the Eleventh Amendment. *Id.* at 67.   Therefore, the State Defendants are immune from suit under the Eleventh Amendment unless they have done something to waive that immunity, *see Hill,* 179 F.3d at 758-59, or unless they have engaged in conduct that falls within an exception to the immunity doctrine, *see Ex parte Young*, 209 U.S. at 155-156.

Nevada has not waived its sovereign immunity. *See* Nev. Rev. Stat § 41.031(3).   Nor have the State Defendants waived their immunity as state elected officials. Plaintiffs allege no facts that suggest such a waiver. *See, e.g., Hill,* 179 F.3d, at 758-59. Granted, there is a narrow exception to Eleventh Amendment immunity when a plaintiff seeks to enjoin the enforcement of an unconstitutional law, policy, or custom. *See Ex parte Young*, 209 U.S., at 155-156. However, Plaintiffs must allege facts from which one could reasonably infer that the State Defendants took, or threatened to take, enforcement action against them. *See Hafer*, 502 U.S., at 25-30; *Galen*, 477 F.3d, at 667; *Iqbal*, 566 U.S., at 678. Otherwise, there is no justiciable case or controversy.

Whether the issue is viewed as a question of standing or adversity between parties, the federal courts have no jurisdiction to adjudicate federal claims against state officials who have not waived their Eleventh Amendment immunity from suit. "[A]lthough sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Therefore, when a defendant raises the issue of immunity in a motion to dismiss, "the party asserting subject matter jurisdiction has the burden of proving its

existence, *i.e.* that immunity does not bar the suit." *Id.* (internal citation and quotation omitted).

As the U.S. Supreme Court recently explained, the immunity doctrine contains only "a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 142 S. Ct., at 532. However, when state officials exercise no enforcement functions, a lawsuit against them in their official capacities presents no case or controversy. *Id.*

Plaintiffs have identified no enforcement action on the part of the State Defendants. The State Defendants play no role in the licensure and regulation of brothels. Nevada law authorizes county officials to license and regulate brothels in counties with a population under a specified ceiling. *See* Nev. Rev. Stat § 244.345. If county officials exercise their power to license and regulate brothels, the resulting activity within those brothels escapes prosecution under Nev. Rev. Stat § 201.353.

Subject to this minor exception for licensed brothels in rural counties, prostitution and sex trafficking is illegal in Nevada. *See* Nev. Rev. Stat §§ 201.295–.440. As the Ninth Circuit observed in *Coyote Publishing Inc. v. Miller*, Nevada's position on brothels "is essentially agnostic: [rural] county governments are free to license or prohibit brothels at their option." 598 F.3d 592, 607 (9th Cir. 2010). The State Defendants play no role in Nevada's regulatory scheme. Nor were the State Defendants involved in the enactment or implementation of applicable law or policy. Plaintiffs fail to identify a factual basis for their attempt to skirt the Eleventh Amendment.

Like Nevada's position, the federal government's position on brothels is agnostic. Congress has not criminalized prostitution. As Plaintiffs concede, Congress has criminalized interstate sex trafficking, not prostitution (FAC ¶¶ 74–83). Nevada also criminalizes sex trafficking. For example, Nevada criminalizes "induc[ing], recruit[ing], harbor[ing], transport[ing], obtain[ing], maintain[ing] a child to engage in prostitution" in "any place" within Nevada. *See* Nev. Rev. Stat § 201.300(2)(a)(1). Nevada also makes it a

crime to cause "a person" to engage in prostitution "in any place" by means of "threats, violence, force, intimidation, fraud, duress, or coercion." Nev. Rev. Stat § 201.300(2)(a)(2). Further, Nevada punishes people who facilitate sex trafficking. Nev. Rev. Stat § 201.301. Nevada outlaws the very activity of which Plaintiffs complain.

Inexplicably, Plaintiffs argue that the State Defendants provided "legal cover for the Nevada sex trade, enabling the system through which the Plaintiffs were subjected to slavery and involuntary servitude in the form of sex trafficking." (FAC ¶ 326). They further assert that the State Defendants "knowingly harbored and/or maintained Plaintiffs, knowing or in reckless disregard of the fact that force, fraud, and/or coercion were being used to induce Plaintiffs to engage in commercial sex acts." (*Id.* ¶ 332). Finally, Plaintiffs allege that State Defendants "knowingly benefited financially and by receiving something of value, knowing or in reckless disregard of the fact that they are participating in sex trafficking ventures." (*Id.* ¶ 339).

These are legal conclusions. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S., at 678 (*quoting Twombly*, 550 U.S., at 555). Plaintiffs offer no factual support for their assertion that the State Defendants provide a safe harbor for, and/or benefit financially from, sex trafficking. The alleged grounds for Plaintiffs' claims against the State Defendants are a supposed violation of the Thirteenth Amendment and supposed violations of the Trafficking Victims Protection Act. Plaintiffs have not described any state action that runs afoul of the Thirteenth Amendment or the Trafficking Victims Protection Act

Plaintiffs assert a right to sue the State Defendants pursuant to 42 U.S.C. § 1983 and 18 U.S.C. § 1595. But neither of these statutes purports to abrogate Nevada's immunity from suit under the Eleventh Amendment, and neither of these statutes apply by their terms to any conceivable activity on the part of the State Defendants. Insofar as Plaintiffs assert a right to sue for injunctive or declaratory relief, they must identify the official conduct that they seek to enjoin and/or have declared unconstitutional.

They have identified no conduct that could reasonably be addressed by an injunction or declaratory order.[2]

To seek "declaratory/injunctive" relief, a plaintiff must show that they are under threat of suffering an "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000).

For prospective injunctive relief, a plaintiff "must demonstrate that he is realistically threatened by a repetition of [the violation]." *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (internal citation and quotation omitted), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504–05 (2005). The Ninth Circuit has explained that "plaintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief." *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983)).

Since the State Defendants do not enact, enforce, or implement laws or policies related to the licensure, regulation, or operation of brothels, there is no case or controversy between Plaintiffs and the State Defendants. *See Whole Woman's Health*, 142 S. Ct., at 532. And there is not a credible threat that the State Defendants will cause Plaintiffs to suffer an injury in the future. Consequently, there is not a factual or legal basis upon which Plaintiffs can obtain an injunction or declaratory relief against the State Defendants. *Ex parte Young* is inapposite. *See* 209 U.S., at 155-156. The Eleventh Amendment precludes Plaintiffs from pursuing their claims against the State Defendants.

---

[2] Likewise, Plaintiffs have identified no conduct that could conceivably lead to a judgment for nominal damages. Nominal damages will be available to a plaintiff when a defendant deprives a plaintiff of an "absolute right," even if they are unable to prove a compensable injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Plaintiffs do not allege facts to support their assertion that the State Defendants deprived them of a constitutional or statutory right.

## IV.    CONCLUSION

Plaintiffs simply disagree on policy grounds with Nevada's "agnostic approach" to legalized prostitution. *See Coyote Publishing Inc.*, 598 F.3d at 607. As it pertains to the State Defendants, Plaintiffs' lawsuit is misplaced because it seeks to hold the State Defendants accountable for laws that the State Defendants do not enforce or implement. If the Plaintiffs wish to criminalize all forms of prostitution, including the prostitution that takes place within county-licensed brothels, they must exercise their political remedies. The Plaintiffs have no federal judicial remedies against the State Defendants because the Plaintiffs have alleged no factual basis upon which a federal court may exercise jurisdiction over the State Defendants. The State Defendants are immune from suit under the Eleventh Amendment. Plaintiffs' claims are subject to dismissal under Rule 12(b)(1) and/or (6) of the Federal Rules of Civil Procedure.

Dated this 16 day of June 2022.

AARON D. FORD
Attorney General

By: /s/ *Gregory L. Zunino*
GREGORY L. ZUNINO
Deputy Solicitor General
gzunino@ag.nv.gov
*Attorneys for State Defendants*

**CERTIFICATE OF SERVICE**

I, Sandra Geyer, certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on June 16, 2022 I filed State Defendant's Motion to Dismiss Plaintiff's First Amended Complaint via this Court's electronic filing system. Parties that are registered with this Court's EFS will be served electronically.

/s/ *Sandra Geyer*
SANDRA GEYER, Legal Office Manager
Office of the Nevada Attorney General

Jason D. Guinasso (SBN# 8478)
HUTCHSON & STEFFEN PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
Pansy Watson*
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Admitted Pro Hac Vice*
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA WILLIAMS; JANE DOE #1; JANE DOE #2;<br><br>Plaintiffs,<br><br>v.<br><br>STEVE SISOLAK, Governor of Nevada, in his official capacity; AARON FORD, Attorney General of Nevada, in his official capacity; THE CITY OF LAS VEGAS; CLARK COUNTY; NYE COUNTY; WESTERN BEST, INC. D/B/A CHICKEN RANCH; WESTERN BEST LLC; JAMAL RASHID; MALLY MALL MUSIC, LLC; FUTURE MUSIC, LLC; PF SOCIAL MEDIA MANAGEMENT, LLC; E.P. SANCTUARY; | Case No. 2:21-cv-01676<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE** |

1

1   BLU MAGIC MUSIC, LLC; EXCLUSIVE
    BEAUTY LOUNGE, LLC; FIRST
2   INVESTMENT PROPERTY LLC; V.I.P.
    ENTERTAINMENT, LLC, MP3
3   PRODUCTIONS, INC., & MMM
    PRODUCTIONS, INC.; SHAC, LLC D/B/A
4   SAPPHIRE GENTLEMAN'S CLUB
    AND/OR SAPPHIRE; SHAC MT, LLC; and
5   LAS VEGAS BISTRO, LLC D/B/A LARRY
    FLYNT'S HUSTLER CLUB;
6
    Defendants.
7

8        Plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 by and through their counsel of

9   record, hereby file this Opposition to Defendant Clark County's Motion to Strike Plaintiffs' First

10  Amended Complaint [ECF No. 53], together with the joinders from Defendants Steve Sisolak and

11  Aaron Ford (State Defendants) [ECF No. 58], Defendant City of Las Vegas [ECF No. 69], and

12  Defendant Nye County [ECF No. 71].[1] This Opposition is made and based upon the attached

13  Memorandum of Points and Authorities.

14                    **MEMORANDUM OF POINTS AND AUTHORITIES**

15                                **INTRODUCTION**

16       Slavery in this country has always been deeply intertwined with prostitution and sex

17  trafficking, and has especially flourished where it has enjoyed official protection.  *See* Pls. First

18  Am. Compl., ECF 49 at ¶¶ 48-75.  The State of Nevada's prostitution industrial complex is no

19  exception.  Plaintiffs Angela Williams and Jane Doe #1 filed their Complaint on September 10,

20  2021, alleging Defendants violated the Thirteenth Amendment's slavery ban and federal laws

21

22  _____
    [1] State Defendants and the City of Las Vegas joined the Motion to Strike without substantive comment.  *See* ECF
23  58; ECF 69. Nye County joined and added 16 pages of briefing, ECF 71; those arguments will be addressed in the
    attached Memorandum as well. The various private defendants have not yet appeared in the case; accordingly, this
    Opposition focuses on State and City Defendants' claims.
24

                                         2

against sex trafficking.[2]  *See* Pls.' Compl., ECF 1.  On October 27, 2021, Defendant Clark County filed its Motion to Dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See* Def. Mot. to Dismiss, ECF 36.[3]

On November 10, 2021, Plaintiffs Angela Williams, Jane Doe #1, and Jane Doe #2 filed their First Amended Complaint (FAC), adding Jane Doe #2 as a plaintiff, as well as additional defendants.  ECF No. 49.  Plaintiffs have alleged that the State Defendants, Defendants Clark County, City of Las Vegas, Nye County (City Defendants), and multiple sex industry defendants have all cooperated together to maintain and profit from legalized prostitution system, and that Plaintiffs were sex trafficked due to that system.  *See* ECF 49 at ¶¶ 1-9.

Plaintiffs have alleged that sex trafficking increases in hospitable legal environments – that is, those that legalize or otherwise tolerate prostitution, and that State and City Defendants have colluded with Sex Industry Defendants to produce just such an environment, not least by licensing sex trade businesses, and by failing to enforce federal laws against debt bondage and sex trafficking.  *See, e.g.*, ECF 49 at ¶¶ 94, 96, 100-104, 108-126,147.  Plaintiffs have alleged that consequently, they were exploited for commercial sex in Nevada through force, fraud, and coercion – including psychological manipulation and debt bondage – in legal strip clubs, legal escort businesses, and a legal brothel.  *See, e.g.*, ECF 49 at ¶ 149.

---

[2] Consistent with the First Amended Complaint, Defendants Western Best, Inc. d/b/a Chicken Ranch, Western Best LLC, Jamal Rashid; Mally Mall Music, LLC, Future Music, LLC, PF Social Media Management, LLC, E.P. Sanctuary, Blu Magic Music, LLC, Exclusive Beauty Lounge, LLC, First Investment Property LLC, V.I.P. Entertainment, LLC; MP3 Productions, Inc., MMM Productions, Inc. SHAC, LLC d/b/a Sapphire Gentlemen's Club and/or Sapphire, SHAC MT, LLC, and Las Vegas Bistro, LLC d/b/a Larry Flynt's Hustler Club will be referred to as Sex Industry Defendants.

[3] Several filings from Defendants followed: on November 1, 2021, Defendant Clark County filed its Motion to Stay Discovery pending resolution of its Motion to Dismiss, Def. Mot. to Stay, ECF 40; on November 2, 2021, Defendants Governor Steve Sisolak and Attorney General Aaron Ford filed an Answer to Plaintiffs' Complaint. State Defendants' Answer, ECF 41; on November 3, Defendant City of Las Vegas filed its joinder to Defendant Clark County's Motion to Dismiss, Def. City of Las Vegas Joinder, ECF 42; on November 5, 2021, Defendant Nye County filed its Motion to Dismiss, Def. Nye County Mot. to Dismiss, ECF 43; on November 5, 2021, Defendant Nye County also filed a Joinder to Defendant Clark County's Motion to Stay, Def. Nye County Joinder, ECF 45.

SDSER015          SDSER015          SDSER015

On November 16, Defendant Clark County filed its Motion to Strike, Def. Clark County Mot. to Strike, ECF 53, which was joined by the State Defendants on November 23, Defs. Clark and Sisolak Joinder, ECF 58, the City of Las Vegas on November 24, Def. City of Las Vegas Joinder, ECF 69, and Nye County on November 24, Def. Nye County Joinder, ECF 71. State and City Defendants urge the Court to view their particular roles in isolation, but they are not isolated. Plaintiffs allege systemic, not isolated or incidental wrongs. Defendants essentially attempt to cast themselves as bystanders to sex trafficking, but Plaintiffs have alleged that they are both enablers and profiteers – State and City Defendants do not simply tolerate sex slavery; they get paid.[4] *Compare* ECF 53 at 8, 13, 19, 21 *with* ECF 49 at ¶¶ 94, 96, 100-104, 108-126, 136, 142-144, 147.

Because Plaintiffs have alleged facts demonstrating that the State Defendants and City Defendants have provided legal cover to the sex trade in violation of the Thirteenth Amendment, and have facilitated and profited from sex trafficking in violation of the Trafficking Victims Protection Act (TVPRA), ECF 49 at ¶¶ 4-9, Plaintiffs ask this Court to deny Defendants' Motion to Strike and related joinders.

## ARGUMENT

Plaintiffs will proceed by setting forth the relevant legal standards, explaining why Defendants' Motion to Strike is procedurally improper, and detailing how Defendants' Motion to Dismiss in the alternative is substantively unwarranted. Procedurally, Defendants seek an inappropriate remedy and improperly incorporate a denied motion to dismiss. Substantively, Defendants' misjoinder arguments misunderstand the systemic nature of Plaintiffs' allegations,

---

[4] The person who gets paid when someone else is sold in prostitution is a pimp, not a bystander. *See, e.g.*, *Pimp*, MERRIAM-WEBSTER DICTIONARY (2021), https://www.merriam-webster.com/dictionary/pimp; *see also* NEV. REV. STAT. § 201.320 (2015) (criminalizing profiting from someone else's prostitution).

SDSER016         SDSER016         SDSER016

1    misapply past case law on subject matter jurisdiction for lawsuits against government defendants,

2    and misstate the relevant standards for pleading constitutional rights violations.

3    **I.        Legal Standard**

4            Defendants have styled the motion as a motion to strike for improper joinder, or in the

5    alternative, to dismiss the FAC. ECF No. 53.  The Federal Rules allow a court to "strike from a

6    pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

7    Fed. R. Civ. P. 12(f).

8            To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6),

9    a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that

10   is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).[5]  A court must

11   construe the complaint's allegations "in the light most favorable to the nonmoving party." *Gray

12   v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 608–09 (9th Cir. 2014) (internal citations

13   omitted).  A court also "must accept as true all facts alleged in the complaint and draw all

14   reasonable inferences in favor of the plaintiff."  *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th

15   Cir. 2016) (internal citations omitted).

16           To establish Article III standing, plaintiffs must demonstrate they have "(1) suffered an

17   injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that

18   is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330,

19   338 (2016), as revised (May 24, 2016) (cleaned up).  This means that "each element" of standing

20   "must be supported in the same way as any other matter on which the plaintiff bears the burden

21

22   _____
     [5]  This brief uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted

23   from quotations.  *See, e.g., Brownback v. King*, 141 S. Ct. 740, 748 (2021); *Ashford v. Raby*, No. 19-1677, 2020 WL
     1057393, at *2 (6th Cir. Mar. 5, 2020); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017); *Smith v. Kentucky*,

24   520 S.W.3d 340, 354 (Ky. 2017).

of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

Accordingly, at the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561(1992) (cleaned up). That is, Plaintiffs need not prove standing, but they must sufficiently allege it.

## II.    Defendants' motion to strike for misjoinder is procedurally improper.

Defendants' Motion to Strike for misjoinder is procedurally improper because the motion states no grounds for striking an entire pleading, the remedy for misjoinder is not dismissal, and the motion attempts to incorporate by reference a denied Motion to Dismiss.

### A. Defendants seek an inappropriate and unavailable remedy.

A court may "strike a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Ninth Circuit has determined that Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (cleaned up). Defendants do not claim, let alone demonstrate, that Plaintiffs' FAC – in whole or in part – is "redundant, immaterial, impertinent, or scandalous," as required under the rules. *See* ECF 53 at 3-17. Accordingly, Defendants have presented no grounds on which the FAC may be stricken.

"Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The Ninth Circuit has said that "if plaintiffs fail to meet the standard for permissive joinder, the district court may sever the misjoined plaintiffs, as long as

SDSER018          SDSER018                    SDSER018

no substantial right will be prejudiced by the severance." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870–71 (9th Cir. 2013) (cleaned up). Even assuming, *arguendo*, that Plaintiffs' FAC misjoined any plaintiffs or defendants, Defendants have asked for the wrong remedy.[6] The appropriate remedy for misjoinder is severance, not striking or dismissing the FAC, and accordingly, the Court should decline to strike or dismiss Plaintiffs' FAC.

### B. Defendants' motions improperly incorporate a denied motion to dismiss.

On November 15, this Court denied Clark County's Motion to Dismiss as moot due to the FAC. ECF 51. Yet Defendants repeatedly attempt to incorporate that denied motion to dismiss – in its entirety – in their Motion to Strike. *See, e.g.*, ECF 53 at 1, 4, 8; ECF No. 71 at 4. Throughout the Motion to Strike, Defendants reference the denied motion, without making supporting arguments. *See, e.g.*, ECF 53 at 1, 8, 11, 19-22; ECF 71 at 4-5, 8-10. For example, Defendants assert that the statute of limitations bars claims, citing Nevada law, but do not identify time limit they believe applies, let alone address the TVPRA's statute of limitation, which is 10 years, 18 U.S.C. § 1595(c), under which Plaintiffs' claims are brought.[7] ECF 53 at 19.

The District of Nevada's local rules limit motions, other than summary judgement motions, to 24 pages. L.R. 7-3(b). Defendant's Motion to Dismiss contained 31 pages, and its Motion to Strike has 22 pages, which together exceed the page limits under the local rules. *Compare* ECF 36 and 53. At least one district court has rejected arguments incorporated from previously denied motions to dismiss, for effectively exceeding page limits. *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011). Unless and until Defendant Clark

---

[6] The remedy Defendants seek is also odd as well as improper: they seem eager for the original complaint to be reinstated, ECF 53 at 11, but if their arguments about joinder are correct, the original complaint contains the same defects.

[7] Similarly, Nye County cites Clark County's claim from its motion to dismiss that the statute of limitations is two years, but does not explain or defend this, referencing only the denied Motion to Dismiss. *See* ECF No. 71 at 7-8.

SDSER019          SDSER019          SDSER019

County re-files its Motion to Dismiss, Plaintiffs will only address arguments State and City Defendants explicitly make in their Motion to Strike and in Nye County's Joinder. Plaintiffs do not wish to waste the Court's time by responding to briefing that is no longer operative. Plaintiffs are, however, ready to brief any arguments from Defendant Clark County's Motion to Dismiss if Defendant re-files them or as otherwise directed by the Court. In all events, Plaintiffs submit that Defendants should not be permitted to simply do an end run around page limits by referencing a denied, inoperative Motion.

Thus, Plaintiffs ask the Court to disregard and not incorporate by reference the denied Motion to Dismiss, especially to the extent that it would allow Defendants to more than double their briefing page count. Defendants' Motion to Strike should accordingly be denied on procedural grounds, as it articulates no basis for striking the First Amended Complaint, seeks the wrong remedy for supposed misjoinder, and repeatedly attempts to incorporate by reference a denied Motion to Dismiss.

### III. Defendants misunderstand the systemic nature of Plaintiffs' claims.

State and City Defendants' claims about misjoinder misunderstand the nature of Plaintiffs' claims against them; Plaintiffs' lawsuit is not based on a single incident, such as a car accident or mistaken diagnosis, but on a system: namely, Defendants' system of enabling and profiting from prostitution, through which Plaintiffs were sex trafficked.

> **A. Plaintiffs have alleged claims arising from the same series of transactions or occurrences: that State and City Defendants have acted with Sex Industry Defendants to maintain and profit from a legalized prostitution system, through which Plaintiffs were sex trafficked.**

The Federal Rules provide, in relevant part, that plaintiffs may be joined if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same

8

transaction, occurrence, or series of transactions or occurrences; and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20 (a)(1).  Similarly, defendants may be joined in a lawsuit if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (a)(2).  *See also Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980).  However: "Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities." Fed. R. Civ. P. 20 (a)(3).

"[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  In the Ninth Circuit, "permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

The "same transaction or occurrence" requirement refers to "similarity in the factual background" of joined claims. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  "Claims that arise out of a systematic pattern of events" and have a "very definite logical relationship" can be said to arise out of the same transaction or occurrence. *Bautista v. Los Angeles County,* 216 F.3d 837, 842-843 (9th Cir. 2000) (Reinhardt, J., concurring) (internal citations omitted).  As this district has noted: "Joinder in a single case may be appropriate—even though there might be different occurrences—if the claims involve enough related operative facts." *Montes v. Bank of*

*Am.*, No. 2:13-CV-00660-RCJ, 2014 WL 1340232, at *2 (D. Nev. Apr. 3, 2014) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.").

Plaintiffs have alleged a series of logically related transactions and occurrences – conduct, policies, and practices – implicating Defendants, including State and City Defendants, in Plaintiffs' sex trafficking. *See, e.g.*, ECF 49 at ¶¶ 94-100, 131 (detailing how State Defendants permit prostitution in rural counties, force STI testing on prostituted people but not sex buyers, do not enforce their own regulations limiting prostitution advertising, and permits escorting and "entertainment by referral service" throughout Nevada); ECF 49 at ¶¶ 101-104 (detailing how State Defendants allow counties to self-regulate and do not bar brothel debt bondage practices); ECF 49 at ¶¶ 108-114 (detailing how Nye County not only permits brothel prostitution but does not ban compelling prostitution, as long as it occurs in a brothel, and has discretion about licensing felons to operate brothels); ECF 49 at ¶¶ 115-119, 125 (detailing how Las Vegas permits escorting and strip clubs, and forces escorts to work for an escort agency and to undergo STI testing for licensure); ECF 49 at ¶¶ 115, 120-125 (detailing how Clark County permits escorting, outcall entertainment, and strip clubs).

Plaintiffs have also alleged that Nevada's legal climate has created high demand for sex buying, ECF 49 at ¶¶ 127-131, and a disproportionately large sex trade, ECF 49 at ¶ 141, yet State and City Defendants have a sparse record of sex trafficking prosecutions, ECF 49 at ¶¶ 134, 142, and even outright corruption in their law enforcement, ECF 49 at ¶¶ 137-138, 182-184. And Plaintiffs have alleged that this prostitution system is profitable for State and City Defendants, due

SDSER022          SDSER022          SDSER022

to the tourism it motivates, as well as the taxes and licensing fees that brothels, escort agencies, and strip clubs generate. ECF 49 at ¶¶ 136, 142-144.

Defendants' joinder analysis misunderstands the nature of Plaintiffs' claims[8] (notably, these joinder arguments were not raised in Defendant Clark County's Motion to Dismiss, *see* ECF 36). Defendants cite to nonbinding district court cases to argue Plaintiffs have misjoined Defendants. ECF No. 53 at 13. Both cases involved wrongs that were incidental in nature – a driver whose records were accessed by some municipalities, and a "single child's use of acetaminophen." ECF No. 53 at 13 (citing *Bass v. Anoka Cty.*, 998 F. Supp. 2d 813 (D. Minn. 2014); *Tinsley v. Streich*, 143 F. Supp. 3d 450 (W.D. Va. 2015)).

In contrast, Plaintiffs do not allege incidental wrongs, but systemic ones.[9] That there are some distinctions in the Plaintiffs' experiences show how pervasive that system is, and how it manifests. The Defendants wish their actions (and inaction) to be considered in isolation. But they are not isolated; they form a part of a highly lucrative prostitution industrial complex in Nevada, where public and private entities reinforce and benefit each other. ECF 49 at ¶¶ 94-147, 182-184. Sex traffickers do not act in isolation either, especially not on the scale of Nevada's sex trade; they have enablers, facilitators, customers, and profiteers. *See* ECF 49 at *id.* Plaintiffs have also alleged facts detailing the history of how similar systems worked in other slavery contexts. *See* FAC at ¶¶ 48-75.

---

[8] Defendants also mischaracterize Jane Doe #2's allegations. ECF No. 53 at 6. Jane Doe #2 does not allege that she was "persuaded" to remain in Las Vegas to prostitute; she alleges that she was coerced. ECF 49 at ¶ 275.
[9] Defendants' car accident analogy is inapposite. *See* ECF No. 53 at 14. Plaintiffs' allegations are more analogous to Defendants being sued for several car accidents occurring on Nevada roads that had "No speed limit here!" signs, where reckless drivers were known to travel to drive there, where state and local officials refused to prosecute reckless driving, even when accident victims were permanently injured as a result, and where those same officials also received a special per-car tax each time a car drove on the road.

Moreover, the variety in Plaintiffs' experiences that Defendants highlight underscores significant common features, especially given that prostitution goes by several euphemisms. As Plaintiffs have alleged, Angela Williams' sex trafficking through legal escort agencies and strip clubs, Jane Doe #1's sex trafficking through a legal brothel in Nevada, and Jane Doe #2's sex trafficking through legal strip clubs in Nevada all have a common denominator: being subjected to force, fraud, and coercion in Nevada's legal prostitution system, as enabled and profited from by Nevada governmental entities. Defendants acknowledge that Plaintiffs, none of whom were originally from or trafficked in Nevada, were all eventually trafficked primarily in Nevada, ECF No. 53 at 6-8. And as Plaintiffs have alleged, Plaintiffs were trafficked primarily in two adjoining counties in the Las Vegas area, and two were trafficked at the same strip club. *See* ECF 49 at ¶¶ 216, 276.

As for Defendants' diversity, a symbiotic relationship exists among them: the prostitution industrial complex in Nevada is its own ecosystem. Plaintiffs alleged that the State, City, and Sex Industry Defendants are all acting together – creating, enabling, maintaining, and profiting from prostitution – to deprive Plaintiffs of their civil rights. Since a legal system is at the heart of the constitutional violations Plaintiffs allege, the State and City Defendants are indispensable to it.

Finally, grouping these plaintiffs and defendants together supports judicial economy, as severance would mean repetitively litigating the same issues in separate lawsuits. Defendants note that not all the relief requested will affect each Defendant in the same fashion, but the Federal Rules are explicit that this is not necessary. *See* Fed. R. Civ. P. 20(a)(3). Thus, Plaintiffs have alleged facts demonstrating that Plaintiffs' claims against Defendants arise from the same series of logically related transactions and occurrences.

12

**B. Plaintiffs have alleged facts demonstrating common questions of law and fact will arise in this litigation regarding Defendants' liability for sex trafficking.**

To be properly joined, there must be a question of law or fact common to all plaintiffs, and a common question of law or fact for all defendants must arise in the litigation. Fed. R. Civ. P. 20 (a)(2). One question of law common to all the State and City Defendants is whether they violated the Thirteenth Amendment's slavery ban by licensing, authorizing, failing to regulate, and profiting from the direct sex traffickers, the Sex Industry Defendants. *See* ECF 49 at ¶¶ 322-329.[10] State and City Defendants also face several other overlapping questions of law and fact, such as what duties they must affirmatively execute to avoid liability under the Thirteenth Amendment, and whether general tourism revenue is a knowing benefit within the meaning of the TVPRA. *See* ECF 49 at ¶¶ 322-347. Additionally, at least one question will arise as to all the Defendants, including Sex Industry Defendants: what is considered a knowing benefit from a sex trafficking venture under the TVPRA. *See* ECF 49 at ¶¶ 330-336. That other questions of law, such as causation, may arise as to specific Sex Industry Defendants is irrelevant; the standard is not having all legal and factual questions in common, but at least one. Fed. R. Civ. P. 20(a). Thus, this lawsuit has multiple common, overlapping questions of fact and law as to both the Plaintiffs and Defendants.

Accordingly, because Plaintiffs have alleged that Defendants colluded together to reinforce and benefit from Nevada's legalized prostitution system, through which Plaintiffs were sex trafficked, Plaintiffs have demonstrated that joinder is proper in this lawsuit.

---

[10] Defendants also assert without arguing that "providing 'legal cover' for prostitution in its jurisdiction through ordinances" is a "wholly untenable premise that does not present a legitimate and justiciable case and controversy for this court to rule on," *see* ECF 53 at 16, but Plaintiffs' allegations about State and City Defendants' enabling and profiting from sex trafficking are factual claims that must be taken as true at this stage.

13

**IV.  Defendants' subject matter jurisdiction claims fail to recognize material differences between this case and *Charleston*.**

To establish Article III standing, plaintiffs must demonstrate they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). Defendants have moved in the alternative to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). ECF 53 at 17-20. Plaintiffs have alleged physical, psychological, and financial injuries due to being sex trafficked, ECF 49 at ¶¶ 223-224, 271, 319, 327, 335, 346, have alleged that these injuries are traceable in part to City and State Defendants' enabling and profiting from the Nevada sex trade, *see* Section III.A of this brief, and have requested, on behalf of themselves and persons still being sex trafficked in Nevada's legal prostitution system, damages (including nominal damages), and injunctive and declaratory relief, ECF 49 at 53-55.

Defendants claim that Plaintiffs have not alleged facts establishing subject matter jurisdiction, because they have not alleged a sufficient injury: that they are in danger of being sex trafficked again in Nevada. ECF 53 at 17-18.[11] Defendants maintain that Plaintiffs have no right to assert third-party standing. ECF 53 at 19-20. Defendants also assert without argument that Plaintiffs "have not established a line of causation" between State and City Defendants' conduct and Plaintiffs' sex trafficking. ECF 53 at 18.[12] Plaintiffs will address each argument in turn.

---

[11] Nye County also asserts its agreement with the *res judicata* arguments in Clark County's now-denied Motion to Dismiss, but does not repeat those arguments. ECF No. 71 at 5.

[12] Nye County repeats some of these jurisdiction arguments, ECF No. 71 at 4-5, and also asserts without arguing that Plaintiffs' allegations that increased demand due to legalized prostitution leads to sex trafficking do not show that Nye County's brothel-harboring helps cause sex trafficking. ECF 71 at 4. But Plaintiffs' allegations must be taken as true at this stage, *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (internal citations omitted).

**A. Plaintiffs have sufficiently alleged that they were injured by being sex trafficked and that those injuries are redressable through damages against City and Sex Industry Defendants, and through nominal damages from State Defendants.**

First, as to the injuries Plaintiffs allege and the relief they seek: Defendants assert, incorrectly, that Clark County may not be sued in its official capacity. ECF 53 at 21. However, the Supreme Court has ruled that municipalities and counties are persons for § 1983 purposes, and can be sued for declaratory, injunctive, and monetary relief for constitutional violations. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). The FAC sufficiently alleges that City Defendants, through their laws and practices, continuously undermined federal laws against trafficking and deprived Plaintiffs of their constitutional rights. *See* Section III.A of this brief.

Plaintiffs have sought damages against City and Sex Industry Defendants, ECF 49 at 53-55, who can be sued for monetary relief. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 127 (1998) ("When one private party is injured by another, the injury can be redressed…by awarding compensatory damages[.]"); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91(1978) (permitting Section 1983 lawsuits against municipalities for damages).

In *Charleston*, the Ninth Circuit affirmed the district court's dismissal of claims against state defendants, on the theory that past injuries do not confer standing for declaratory and injunctive relief. *See Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020). *Charleston* thus does not apply to lawsuits against persons who may be sued for damages, including City Defendants. As for the State Defendants, the Supreme Court recently held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). Plaintiffs have requested nominal damages against the State Defendants, ECF 49 at 53-55, based

SDSER027          SDSER027          SDSER027

on a completed violation of their right to be free from slavery, and have thus sufficiently alleged redressability for their past injuries as to State and City Defendants.

**B. As sex trafficking survivors of Nevada's legalized prostitution system, Plaintiffs are proper parties to assert third party standing on behalf of persons currently being sex trafficked through Nevada's legalized prostitution system.**

Second, and relatedly, Plaintiffs have asserted third-party standing, on behalf of persons currently being sex trafficked in Nevada's legalized prostitution system, ECF 49 at ¶¶ 323, 331, 338, as the Ninth Circuit in *Charleston* suggested. *Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020) (citing Neal Kumar Katyal, Note, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 YALE L.J. 791, 815, 819 (1993)) ("Third-party standing may be the only practical way to assert the rights of enslaved human beings."). Because the injuries of persons currently being sex trafficked in Nevada's legalized prostitution can be redressed through injunctive and declaratory relief, due to the abuse's ongoing nature, Plaintiffs have also alleged facts to support standing on this basis. *See Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020).

Defendants question Plaintiffs' ability to assert third-party standing. Third-party standing is available when a plaintiff's "interests are aligned with those … whose rights are at issue and [they have] a sufficiently close connection … to assert claims on [their] behalf." *Pony v. Cty. of L.A.*, 433 F.3d 1138, 1147 (9th Cir. 2006). Plaintiffs have a close, special relationship with other sex trafficking victims as they form a distinct group: persons who have been enslaved through sex trafficking. Further, their interests are aligned: sex trafficking victims and survivors have the same interest in stopping the harm to those being exploited.

This relationship is closer and less conflicted than the school-student, doctor-patient, and advocacy organization-member relationships that have previously been recognized. *See*

*Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir. App. 2017) (states, as operators of state universities, may also assert faculty and students' rights); *McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) (doctor-patient); *NAACP v. Alabama*, 357 U.S. 449, 460 (1958) (NAACP-members). Being enslaved is not a generalized grievance, one that occasionally warrants standing, but a specific, particularized grievance shared only by fellow human trafficking victims. *See Warth v. Seldin,* 422 U.S. 490, 499 (1975). Thus, Plaintiffs have sufficiently alleged third party standing.

### C. Plaintiffs have sufficiently alleged facts demonstrating State and City Defendants' causal role in Plaintiffs' sex trafficking.

And finally, as to causation: Plaintiffs have alleged injuries are traceable in part to City and State Defendants' enabling and profiting from the Nevada sex trade:

> Nevada does not enforce its limited regulation of prostitution, permitting de facto prostitution to exist through escort bureaus, entertainment by referral service, and strip clubs, failing to implement or enforce laws limiting prostitution advertising, and failing to prevent the resultant debt bondage in legal brothels. Nevada allows not only prostitution within legal and rural brothels, but also escorting and "outcall entertainment" – effectively legalizing prostitution throughout the state – directly for small towns and counties, and through euphemism and inaction in the rest, without meaningful prevention or accountability for the severe forms of sex trafficking occurring in the Nevada sex trade.

ECF 49 at ¶¶ 145-146.

*See also* Section III.A of this brief. As discussed further below, that independent third parties are necessary for a completed Thirteenth Amendment violation does not prevent government defendants from being implicated. *See Bailey v. Alabama*, 219 U.S. 219, 227–28 (1911). This is particularly true given that the Thirteenth Amendment's context was that independent, private actors were a constant threat to the newly-freed people, and states could be held responsible for

not controlling them. *See, e.g.*, Katyal, *Men Who Own Women*, 103 YALE L.J. 791, 820–22 n.171-175 (1993) (internal citations omitted).

Given that government defendants can be held to violate the Thirteenth Amendment for inaction (let alone profiting) where slavery is concerned, Plaintiffs have alleged sufficient facts about State and City Defendants' causal role in Plaintiffs' sex trafficking. Therefore, Defendants' motion to strike or dismiss for lack of subject matter jurisdiction should be denied.

**V.      Defendants misstate the relevant standards for pleading slavery-related claims.**

Defendants misstate the relevant standards for pleading slavery related claims, in particular by relying on a superseded case, and by disregarding federal jurisprudence on civil sex trafficking claims.

**A.   By alleging that State and City Defendants enabled and profited from Plaintiffs' sex trafficking, Plaintiffs state a claim for Thirteenth Amendment violations.**

The Thirteenth Amendment provides, in relevant part: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII, § 1. Plaintiffs have alleged Thirteenth Amendment violations under Section 1983, which reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.

The Thirteenth Amendment, unlike other constitutional rights, requires affirmative action from government entities. *See, e.g.*, Katyal, *Men Who Own Women*, 103 YALE L.J. 791, 817 (1993) (emphasis in original) (characterizing Section 1983 as "creating a cause of action against

18

*state inaction*").  After the Thirteenth Amendment was ratified, the federal government "repeatedly intervened in the domestic affairs of Southern states to ensure that slavery would not continue. And in a host of measures enacted after the Civil War, Congress forced officials to investigate and eliminate instances of slavery."  Katyal, *Men Who Own Women*, 103 YALE L.J. 791, 820–22 (1993).[13]

An early civil rights case characterized the Amendment as being self-executing, nullifying any laws supporting slavery, but also affirmatively establishing freedom:  "an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." *C.R. Cases*, 109 U.S. 3, 20 (1883).  This was recognized by public officials at that time; for example, in 1871, Senator George Edmunds noted that the Thirteenth Amendment meant that slavery was no longer "tolerated or upheld or winked at" by government officials, who had a duty to prevent state or local authorities from denying the newly freed people their rights.  Cong. Globe, 42d Cong., 1st Sess. 697 (1871).

Defendants advance three main arguments as to Plaintiffs' Thirteenth Amendment claim. First, Defendants claim that there is no private right of action for Thirteenth Amendment violations.  ECF 53 at 20-21; ECF 71 at 6.  But at least one circuit court has permitted a Section 1983 claim to proceed based on Thirteenth Amendment violations.  *See Jobson v. Henne*, 355 F.2d 129, 130 (2d Cir. 1966) (permitting Thirteenth Amendment claim from inmate at state mental health institution, who alleged he was forced to work excessive hours).  Additionally, Section 1983 creates a private right of action for constitutional violations.  The cases Defendants cite indicate

---

[13] *See also* Neal Kumar Katyal, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 YALE L.J. 791, 826 n.175 (1993) (noting that "The Civil Rights Act of 1866 imposed several affirmative duties on government," including a private cause of action similar to Section 1983 and a provision that criminalized any US marshal for disregarding "a warrant issued under the Act.").

Ninth Circuit has not yet weighed in on the question, ECF 53 at 20; ECF 71 at 6, not that the question has been answered in the negative in this jurisdiction.

Second, Defendants suggest they bear no responsibility for third party criminal acts. But the Supreme Court has held that that Thirteenth Amendment can be violated by even apparently neutral statutes if they have the effect – through third parties' independent actions – of perpetuating slavery. *See Bailey v. Alabama*, 219 U.S. 219, 227–28 (1911) (holding that state criminal fraud statute was an indirect way to coerce people into debt bondage). In other words, under the Thirteenth Amendment, "states cannot create conditions that allow slavery or involuntary servitude to flourish, including in the form of sex trafficking. By providing legal cover for the sex trade, that is precisely what Nevada has done." ECF 49 at ¶ 7. Plaintiffs have alleged that through policies and customs – including explicit laws on the books – State and City Defendants enabled and profited from their sex trafficking. *See* Introduction; Section III.A of this brief.

Third, Defendant Nye County contends that Plaintiffs must allege that state or local officials would "subject them to…legal sanction" for quitting prostitution. ECF 71 at 6-7. But to defend this, Nye County cites at length a decision that is no longer good law. ECF 71 at 6-7. (citing *United States v. Kozminski*, 487 U.S. 931, 942-943 (1988)). The TVPRA overruled *Kozminski* two decades ago, in part by defining coercion to include actual and threatened psychological, financial, or reputational harm. 18 USC § 1591(e).[14] *See* Victims of Trafficking and Violence Protection Act of 2000, PL 106–386, October 28, 2000, 114 Stat 1464 (asserting that "[i]nvoluntary servitude statutes are intended to reach cases in which persons are held in a

---

[14] Nye County also misstates the standard in *Kozminski*; persons asserting involuntary servitude claims must be have been subjected to physical force *or* threat of prosecution. *United States v. Kozminski*, 487 U.S. 931, 944 (1988) ("[O]ur precedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical or legal coercion."). Plaintiffs have indeed alleged that they were subjected to prostitution by physical force. ECF 49 at ¶¶ 218, 221, 234, 235, 237, 239, 274, 306, 317.

20

condition of servitude through nonviolent coercion," in contrast with the *Kozminski* approach).

*See also United States v. Bell*, 761 F.3d 900, 913 n.6 (8th Cir. 2014) (noting that Congress

overruled *Kozminski* with the TVPRA). Plaintiffs have alleged that they were prostituted due to

physical violence, psychological and other coercion, and fraud, consistent with the TVPRA's

requirements. 18 U.S.C. §1591.

Therefore, by alleging facts demonstrating that State and City Defendants enabled and

profited from their sex trafficking, Plaintiffs have stated a claim against State and City Defendants

under Section 1983 for violating their rights to be free from slavery.

### B. By alleging that Defendants enabled and profited from Plaintiffs' sex trafficking, Plaintiffs state a claim for Trafficking Victims Protection Act violations

Section 1595(a) allows sex trafficking victims to sue "the perpetrator (or whoever

knowingly benefits, financially or by receiving anything of value from participation in a venture

which that person knew or should have known has engaged in an act in violation of this chapter)."

18 U.S.C. § 1595(a). A perpetrator is anyone who knowingly "benefits, financially or by receiving

anything of value," or "recruits, entices, harbors, transports, provides, obtains, advertises,

maintains, patronizes, or solicits by any means a person," while "knowing, or . . . in reckless

disregard of the fact" that a person was induced into a commercial sex act through force, fraud, or

coercion. 18 U.S.C. § 1591(a).[15]

Plaintiffs have alleged that State and City Defendants harbored and/or maintained Plaintiffs

during their sex trafficking, and profited from Plaintiffs' sex trafficking, and that State and City

Defendants knew, recklessly disregarded that, or should have known that Plaintiffs were sex

trafficking victims. ECF 49 at ¶¶ 330-347. *See also* Introduction; Section III.A of this brief.

---

[15] Advertising claims must allege actual knowledge. 18 U.S.C. § 1591(a).

21

Plaintiffs have further alleged, among other facts, that State and City Defendants utterly fail to even ban, let alone prevent, the various debt bondage abuses legal brothels and strip clubs openly commit. *See, e.g.*, ECF 49 at ¶¶ 250-251; 259-269, 286-287.

Defendants assert that they cannot be held liable unless Plaintiffs allege that Defendants knew sex trafficking "was practically certain to result" from its ordinances. ECF 53 at 21. That flatly contradicts both §1591 and §1595, neither of which require actual knowledge for liability. *See* 18 U.S.C. §§ 1591 and 1595. Notably, State and City Defendants do not claim ignorance of Plaintiffs' sex trafficking. *See* ECF 53 and ECF 71.

Strangely, Nye County cites its regulation requiring prostituted women to register with the Sheriff as evidence that it prevents trafficking and has done everything it can to "intelligently regulate and control this vice which wells from human nature and is as old as time itself." ECF 71 at 12. Regulating prostituted people is entirely irrelevant to whether Nye County regulates the brothels, who, as Plaintiffs alleged, are the ones engaging in the sex trafficking. Nye County essentially admits that it does not screen the prostitution activity it licenses for sex trafficking or other abuses, because it feels it should be entitled to presume that the women being sold for sex in its jurisdiction are doing so freely. *See* ECF 71 at 12-13. This is consistent with Plaintiffs' allegations that Nye County did not check Jane Doe #1's identification at all, let alone verify her age or consent. *See* ECF 49 at ¶¶250-253.

Nye County's contention that they cannot be civilly liable under the statute's civil remedy because they have not yet been criminally convicted lacks merit. *See* ECF 71 at 8-9 ("Nye County has not been criminally charged, and therefore cannot be said to be a 'perpetrator' having 'violated'

SDSER034    SDSER034    SDSER034

those criminal statutes, especially absent a conviction.").[16]  Not only does Section 1595 not make criminal charges a requirement, it explicitly says that lawsuits can be brought against § 1591(a) perpetrators *and* anyone who benefits – that is, beneficiaries who might not meet the more stringent requirements under § 1591.  *Compare* 18 U.S.C. § 1591(a) and 18 U.S.C. § 1595(a).

Courts have consistently interpreted § 1595(a) this way, but even the minority who found that the statute only applies to those who meet the more stringent criminal standard did not hold that those defendants had to actually be criminally convicted first.[17]  Also, Nye County claims that § 1595(b), requiring civil actions be stayed pending criminal actions where the plaintiff is also the criminal case victim, means that civil actions can never be brought without a criminal case. *See* ECF 71 at 8. This is a non sequitur.

Defendants claim that immunity applies to their actions in any case, asserting that the Public Duty Doctrine shields them from claims under 18 U.S.C. §§ 1591(a) and 1595, citing *Porchia* and *Bruttomesso*. ECF 53 at 21-22.  Those cases are not authoritative, as they are state law cases, and they are also distinguishable.  In *Porchia,* the question was whether emergency responders had a specific duty to transport a caller to the hospital rather than use their discretion in the matter.  *Porchia v. City of Las Vegas*, 477 P.3d 1130 (Nev. App. 2020). *See also Bruttomesso v. Las Vegas Metro. Police Dep't*, 591 P.2d 254, 255 (1979) (public duty doctrine applied to police decision not to attend a public event due to being short-staffed, but does not apply where a statute

---

[16] Plaintiffs do not address Nye County's statement about *mens rea* under the TVPRA, as it proffers no argument but simply attempts to incorporate Clark County's inoperative motion to dismiss.  *See* ECF 71 at 9.

[17] *See, e.g., S.Y. v. Wyndham Hotels & Resorts, Inc. & Laxmi of Naples, LLC,* No. 2:20-CV-619-JES-MRM, 2021 WL 1814651, at *4-5 (M.D. Fla. May 6, 2021) (finding that civil claims under §1595 are subject to a less stringent knowledge standard than §1591 claims); *E.S. v. Best W. Int'l, Inc.,* No. 3:20-CV-00050-M, 2021 WL 37457, at *3–4 (N.D. Tex. Jan. 4, 2021) (same); *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d at 968–71 (S.D. Ohio 2019) (same); *S.J. v. Choice Hotels Int'l, Inc.,* 473 F.Supp.3d 147, 152-54 (E.D.N.Y. 2020) (same); *Doe S.W. v. Lorain-Elyria Motel, Inc.,* Case No. 2:19-cv-1194, 2020 WL 1244192, *6-7 (S.D. Ohio Mar. 16, 2020) (same).  *But see Doe I v. Red Roof Inns, Inc.,* Case No. 1:19-cv-3840, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (requiring "some participation in the sex trafficking act" for Section 1595 liability) (internal citation omitted).

23

creates a special relationship or duty).  By contrast, in this case, the question is whether officials failed to enforce certain mandatory laws *not* at their discretion to apply, *see* Section V.A of this brief, as they implicate the right to be free from slavery.

In addition, Defendants assert legislative immunity in passing, citing no law or case.  ECF 53 at 21.  This assertion is misplaced.  Legislative immunity applies to legislators, protecting them from section 1983 claims for their legislative activities.  The FAC names no legislators as defendants, and legislative immunity does not protect laws from being struck down for unconstitutionality.  *See generally, Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998).

Therefore, because Plaintiffs allege facts demonstrating that State and City Defendants are maintaining and benefiting from what they knew, recklessly disregarded, or should have known was sex trafficking, Plaintiffs have sufficiently alleged that Defendants violated the TVPRA as perpetrators and as beneficiaries.

///

///

///

///

///

///

///

///

///

///

///

SDSER036　　　　　SDSER036　　　　　SDSER036

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Clark County's Motion to Strike the First Amended Complaint, as joined by Defendants Sisolak, Ford, City of Las Vegas, and Nye County.


Dated this 10th day of December, 2021


_/s/ Jason D. Guinasso_
Jason D. Guinasso (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
_jguinasso@hutchlegal.com_

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
Pansy Watson*
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
_lawcenter@ncose.com_

*_Admitted Pro Hac Vice_
_Attorneys for Plaintiffs_

25

**ELECTRONIC CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, the foregoing **PLAINTFFS' OPPOSITION TO DEFENDANT CLARK COUNTY'S MOTION TO STRIKE**, was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

**Defendant**
**Steve Sisolak**              represented by **Gregory Louis Zunino**
*Governor of Nevada*           Nevada State Attorney General's Office
                               100 N Carson St
                               Carson City, NV 89701
                               775-684-1137
                               Fax: 775-684-1108
                               Email: GZunino@ag.nv.gov,
                               sgeyer@ag.nv.gov

**Defendant**
**Aaron Ford**                 represented by **Gregory Louis Zunino**
*Attorney General of Nevada*   (See above for address)

**Defendant**
The City of Las Vegas          represented by **Jeffrey L Galliher**
                               Las Vegas City Attorney's Office
                               495 S Main St, 6th Flr
                               Las Vegas, NV 89101
                               702-229-6629
                               Fax: 702-386-1749
                               Email: jgalliher@lasvegasnevada.gov,
                               ccorwin@lasvegasnevada.gov,
                               ckelly@lasvegasnevada.gov,
                               jandrews@lasvegasnevada.gov,
                               khansen@lasvegasnevada.gov

SDSER038          SDSER038                    SDSER038

**Defendant**
Clark County

represented by **Joel K Browning**
Clark County District Attorney's Office
Civil Division
500 S Grand Central Pkwy, #5075
Las Vegas, NV 89155
702-455-4761
Fax: 702-382-5178
Email: joel.browning@clarkcountyda.com,
christine.wirt@clarkcountyda.com,
Tawana.Thomas@clarkcountyda.com

**Defendant**
Nye County

represented by **Brent L Ryman Erickson**
Thorpe & Swainston, Ltd.
99 W Arroyo, PO Box 3559
Reno, NV 89505
775-786-3930
Fax: 775-786-4160
Email: bryman@etsreno.com,
daguirre@etsreno.com,
lligouri@etsreno.com

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, over the age of 21 years, and not a party to nor interested in the within action. I certify that on this date, the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT CLARK COUNTY'S MOTION TO STAY DISCOVERY (ECF No. 40) AND NYE COUNTY'S JOINDER (ECF NO. 45)** was electronically filed with the United States District Court.  Service by traditional means through a process server of the foregoing document shall be made in accordance as follows:

**Defendant**
Western Best Inc. D/B/A
Chicken Ranch

**Defendant**
Western Best LLC

1  **<u>Defendant</u>**
   Jamal Rashid
2

3  **<u>Defendant</u>**
   Mally Mall Music, LLC
4

   **<u>Defendant</u>**
5  E.P. Sanctuary

6  Blu Magic Music, LLC,

7

   **<u>Defendant</u>**
8  Exclusive Beauty Lounge, LLC,

9

10 **<u>Defendant</u>**
   First Investment Property LLC,
11

   **<u>Defendant</u>**
12 <u>V.I.P Entertainment, LLC,</u>

13

14 **<u>Defendant</u>**
   <u>MP3 Productions, INC.,</u>
15

16 **<u>Defendant</u>**
   <u>MMM Productions, INC,</u>
17

18 **<u>Defendant</u>**
   <u>SHAC, LLC d/b/a Sapphire</u>
19 <u>Gentlemen's Club and/or Sapphire,</u>

20

   **<u>Defendant</u>**
21 <u>SHAC, MT, LLC</u>

22

23

24

SDSER040          SDSER040          SDSER040

**Defendant**
Las Vegas Bistro, LLC D/B/A
Larry Flynt's Hustler Club

DATED this 10th day of December, 2021.


DATED this 10th day of December, 2021.

*/s/  Bernadette Francis*

SDSER041          SDSER041          SDSER041