**22-16859**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

ANGELA WILLIAMS, JANE DOE #1, AND
JANE DOE #2,

Plaintiffs-Appellants,

v.

JOSEPH LOMBARDO, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF NEVADA;
AARON FORD, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF NEVADA;
CITY OF LAS VEGAS; CLARK COUNTY;
AND NYE COUNTY,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA (LAS VEGAS)
CASE NO. 2:21-CV-01676-APG-VCF

**DEFENDANT-APPELLEE CLARK COUNTY'S ANSWERING BRIEF**

STEVEN B. WOLFSON (Bar No. 1565)
Clark County District Attorney
Joel K. Browning (Bar No. 14489)
Deputy District Attorney
500 South Grand Central Pkwy #5075
Las Vegas, NV 89155-2215
(702) 455-4761 (phone)
(702) 382-5178 (fax)
joel.browning@clarkcountyda.com
*Attorneys for Defendant-Appellee*
*Clark County*

# I.   TABLE OF CONTENTS

PAGE

I.    TABLE OF CONTENTS ................................................................. i

II.   TABLE OF AUTHORITIES ......................................................... iii

III.  INTRODUCTION ........................................................................ 1

IV.   JURISDICTIONAL STATEMENT ............................................. 4

    A.   Subject Matter Jurisdiction of the United States District Court .......... 4

    B.   Jurisdiction of the Ninth Circuit Court of Appeals regarding Final Order of Judgment ..................................................... 4

    C.   Timeliness of Appeal ....................................................... 4

V.    STATEMENT OF THE ISSUES PRESENTED ........................... 5

VI.   STANDARD OF REVIEW ......................................................... 5

VII.  STATEMENT OF THE CASE ..................................................... 6

    A.   Procedural Posture and Case Summary ............................... 6

    B.   Allegations of the Respective Appellants ........................... 11

    C.   Allegations against Clark County and the Other Government Appellees .......................................................... 22

VIII. ARGUMENT ............................................................................. 30

    A.   The District Court Correctly Held that Appellants Lacked Article III Standing to Assert the Claims in their First Amended Complaint against Clark County .......................... 30

        i.    Appellants have not Suffered an Invasion of a Legally Protected Interest that is Concrete and Particularized and Actual or Imminent .............................................. 31

        ii.   Appellants have not Established a Line of Causation between the Conduct of Clark County or its Agents and the Harm they Allegedly Suffered .......................... 35

        iii.   Appellants cannot Demonstrate how the Declaratory Relief Sought in the First Amended Complaint Will Provide Redress .38

    B.   Appellants' Thirteenth Amendment Claims Fail on their Face because there is no Private Right of Action under the Thirteenth Amendment ......................................................................................40

    C.   Appellants' Thirteenth Amendment Claims Also Fail because They were Brought more than Two Years after the Applicable Statute of Limitations for Section 1983 Claims in Nevada.................................41

    D.   Appellants' Claims under the TVPRA Fail as a Matter of Law because Clark County, as a Non-Sentient Entity, is not Capable of the Mens Rea Necessary to Violate U.S.C. § 1591(a) and Appellants have Alleged no Conduct or Knowledge of a Clark County Employee or Agent ...................................................................................42

    E.   Appellants lack Third-Party Standing to Assert Claims on Behalf of Women Currently being Sex-Trafficked ............................................45

IX.   CONCLUSION..............................................................................49

X.    CERTIFICATE OF COMPLIANCE WITH RULE 32(A)...........................51

XI.   STATEMENT OF RELATED CASES..........................................................52

XII.  CERTIFICATE OF MAILING ......................................................................53

## II.    TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*, 468 U.S. 737 (1984) .......................................................35

*Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289 (1979)* ........................6

*Charleston v. Nevada*, 423 F. Supp. 3d 1020 (D. Nev. 2019)........ 32, 35, 37, 38, 39

*Charleston v. Nevada*, 830 F. App'x 948 (9th Cir. 2020)............................ 2, 23, 35

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ......................... 32, 33, 34, 35, 39

*Coalition of Clergy v. Bush*, 310 F.3d 1153 (9th Cir. 2002) ...................................47

*Dawson v. Marshall*, 561 F.3d 930 (9th Cir. 2009)....................................................6

*Denson v. Clark Cnty., No. 2:10-CV-00525-RCJ, 2010 WL 3076260* (D. Nev. Aug. 4, 2010) ................................................................................................. 13, 21

*Doe v. Siddig*, 810 F. Supp. 2d 127 (D.D.C. 2011) .................................................40

*Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327 (9th Cir.1981)..................49

*Holland v. Bd. of Trustees of Univ. of D.C.*, 794 F.Supp. 420 (D.D.C.1992) .........40

*In re Riverside-Linden Inv. Co.*, 945 F.2d 320 (9th Cir. 1991) ..............................49

*Jane Doe I v. Reddy*, 2003 WL 23893010 (N.D. Cal. Aug. 2003).................... 40, 41

*Johnson v. Lucent-Alcatel*, 2019 WL 4391121 (C.D. Cal. July 24, 2019)..............40

*Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189 (9th Cir. 2008) 42

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ............................................... 46, 47

*Lagayan v. Odeh*, 199 F. Supp. 3d 21 (D.D.C. 2016) ............................................40

*Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992)*............................................ 6, 10, 32

*Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991) ....................................................49

*Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192 (9th Cir. 2001).........................47

*Maya v. Centex Corp., 658 F.3d 1060 (9th Cir. 2011)*..................................... 10, 35

*Meland v. WEBER, 2 F.4th 838 (9th Cir. 2021)*....................................................5, 6

*Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*, 841 F.3d 1129, 1132 (10th Cir. 2016)................................................................................43

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978)...............................30

*Perez v. Seevers*, 869 F.2d 425 (9th Cir. 1989) ......................................................42

*Powers v. Ohio*, 499 U.S. 400, 411 (1991)..............................................................47

*Singleton v. Wulff*, 428 U.S. 106, 115 (1976) ........................................................48

*Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411 (9th Cir. 2020) .................................................................................................................5

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..................................................... 31, 32

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).................................................................................................30

*Turner v. Unification Church*, 473 F.Supp. 367 (D.R.I.1978) ...............................41

*United States v. Beardslee*, 197 F.3d 378, 389 (9th Cir. 1999) ..............................44

*U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715 (1990) ...............................................48

*Warth v. Seldin*, 422 U.S. 490 (1975) .....................................................................46

## Statutes

18 U.S.C. § 1591 ............................................................ 3, 4, 25, 26, 30, 42, 45

18 U.S.C. § 1595 ................................................................ 4, 25, 26, 42, 43, 45

28 U.S.C. § 1291 ...........................................................................................4

28 U.S.C. § 1331 ...........................................................................................4

28 U.S.C. § 1343 ...........................................................................................4

42 U.S.C. § 1983 .......................................................................... 3, 4, 40, 41, 42

NRS § 11.190 ............................................................................................. 42

NRS § 201.345 ...............................................................................................2

NRS § 244.345 ........................................................................................ 2, 23, 24

## Rules

Fed. R. App. P. 4(a) .....................................................................................4

Fed. R. Civ. P. 12(b)(1)................................................................................5

Fed. R. Civ. P. 54(b) ....................................................................................4

## Other Authorities

Black's Law Dictionary (10th ed. 2014) ................................................................43

U.S. Const. amend. XIII................................................................................ passim

U.S. Const. art. III ....................................................................................... passim

**Ordinances**

Clark, Nev., County Code § 6.140.010.................................................. 28, 29, 30, 34

Clark, Nev., County Code §§ 6.140.085–6.140.095................................................45

## III.   INTRODUCTION

In this appeal ("*Williams Appeal*"), Appellants contend that Appellee Clark County ("Clark County") and the other Nevada government appellees have enslaved them in violation of the Thirteenth Amendment and have knowingly profited from their being trafficked in the sex trade in violation of the Trafficking Victims Protection Act ("TVPRA").

Given the flagrant and egregious nature of these allegations against Clark County, one would expect Appellants' First Amended Complaint to be rife with concrete factual allegations that shock the conscience and demonstrate an indisputable complicity between Clark County and illegal sex traffickers that allegedly operate within its jurisdictional authority.

Instead, what Appellants argue is that because Clark County "licenses escorting, outcall entertainment and strip clubs" and receives ancillary revenues, taxes, and licensing fees from businesses which may engage in illegal "sex tourism," Clark County is somehow the "beginning and end of the causal chain" for all sex trafficking that occurs in its jurisdiction. *Williams Appeal* Dkt. 9 at 7, 17–18.

The fact that Appellants and their counsel can assert these frivolous allegations against Clark County and the other government Appellees without compunction shocks the conscience far more than any "conduct" of Clark County identified in the First Amended Complaint.

Notably, the instant appeal is the *second* such frivolous action brought by Appellant Angela Williams and her counsel, Jason D. Guinasso, Esq., of Hutchison & Steffen, PLLC, and Christian M. Price, Esq., then of Alliance Defending Freedom and now with National Center on Sexual Exploitation (previously known as Morality in Media), against Nevada government entities. *See*, *e.g.*, *Charleston v. Nevada*, 830 F. App'x 948 (9th Cir. 2020). The appellants in *Charleston* "argue[d] that federal laws that prohibit prostitution and sex trafficking in interstate commerce preempt[ed] Nevada Revised Statutes §§ 201.345(1) and 244.345(8) that give less-populated counties the option to legalize brothels and also preempt[ed] local ordinances regulating those brothels." *Id*.

In *Charleston*, this Court affirmed the dismissal of Appellant Angela Williams' complaint and motion for injunction against the Nevada government appellees because the appellants "fail[ed] to show injury" sufficient to convey standing and, accordingly, held that the court lacked subject matter jurisdiction to hear the *Charleston* appellants' claims. *Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020). Notably, this closely mirrored the district court's reasoning in the instant case for dismissing the First Amended Complaint as the district court held that the Appellants' "alleged causal chain is too weak to support standing against the City and State Defendants." *See* Excerpts of the Records ("ER") at 37.

Appellants' failure to even establish the threshold of standing in this matter is a testament to the frivolous nature of the claims alleged against Clark County and the other government Appellees. Appellants cannot establish Article III standing to maintain this action because even the allegations in their complaint, accepted as true, can demonstrate no particularized injury caused by the conduct of Clark County and no causal chain between the conduct of Clark County and the Appellants' alleged injury.

Even if the Appellants had somehow raised a justiciable issue capable of redress before the district court sufficient to convey standing, their claims in the complaint would still be barred as a matter of law because there is no recognized private right of action under the Thirteenth Amendment, Appellants' Thirteenth Amendment claims are barred by the two-year statute of limitations for section 1983 claims in Nevada, and Appellants have not identified how a non-sentient organization like Clark County "knowingly" benefited from the Appellants' alleged sexual trafficking sufficient to satisfy the requisite elements of 18 U.S.C. § 1591(a) of the TVPRA or any conduct by a Clark County employee, officer, or agent associated therewith.

Accordingly, no matter how the Court decides to approach the dismissal of Clark County and the other government Appellees in this matter, all roads lead to an affirmation of the district court's order of dismissal.

## IV.    JURISDICTIONAL STATEMENT

### A. Subject Matter Jurisdiction of the United States District Court

The United States District Court for the District of Nevada (Las Vegas) has subject matter jurisdiction with respect to alleged violations of 42 U.S.C. § 1983 and 18 U.S.C. §§ 1591(a)(2) and 1595(a). The district court exercised this jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### B. Jurisdiction of the Ninth Circuit Court of Appeals regarding Final Order or Judgment

Pursuant to 28 U.S.C. § 1291, the Ninth Circuit Court of Appeals has jurisdiction to review an order granting dismissal and judgment issued by the United States District Court, District of Nevada.

### C. Timeliness of Appeal

The Judgment appealed from was entered July 18, 2022, when the district court granted Defendant Clark County's Motion to Strike or Motion to Dismiss in the alternative. ER-30–48. The district court certified that judgment as final on or around November 7, 2022, pursuant to Fed. R. Civ. P. 54(b). ER-5. The Notice of Appeal for this Judgment was filed with the district court on or around December 1, 2022, less than 30 days after the entry of the judgment as final. ER-107–118. Pursuant to Fed. R. App. P. 4(a), the Notice of Appeal was timely filed.

## V.   STATEMENT OF THE ISSUES PRESENTED

**A.**    Whether the district court properly held that it lacked Article III standing to review the allegations brought by Appellants against Clark County because the causal chain between Appellants' alleged injuries and the conduct of Clark County was too weak.

**B.**    Whether a private right of action exists under the Thirteenth Amendment and, if so, whether Appellants can assert such a claim against Clark County after the statute of limitations for section 1983 claims has lapsed.

**C.**    Whether tax and business license revenue received from third-party businesses constitutes a knowing benefit within the meaning of the TVPRA to a county or municipality when said businesses engage in unlawful conduct.

## VI.   STANDARD OF REVIEW

The Ninth Circuit "review[s] de novo an order granting a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and construe[s] all material allegations of fact in the complaint in favor of the plaintiff." *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 416–17 (9th Cir. 2020); *see also Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021). "**De novo review means that the reviewing court** does not defer to the lower court's ruling

but **freely considers the matter anew, as if no decision had been rendered below**." *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (emphasis added).

"'The party invoking federal jurisdiction bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

"To have standing, the party invoking federal jurisdiction must allege 'a case or controversy within the meaning of Art. III of the Constitution.'" *Meland v. WEBER*, 2 F.4th 838, 843–44 (9th Cir. 2021) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).

## VII.    STATEMENT OF THE CASE

### A. Procedural Posture and Case Summary

Appellants Angela Williams and Jane Doe #1 filed their initial complaint on or around September 10, 2021. ER-126. Appellants' claims against Appellee Clark County and the other government appellees contended that Appellants' "experiences [being sex-trafficked] are collectively attributable to Nevada's system of legalized prostitution because 'legal trade correlates with exponential increases in the illegal trade.'" ER-32. Appellee Clark County filed a Motion to Dismiss the initial

complaint on or around October 28, 2021, because Appellants' allegations failed to establish a causal link between the conduct of Clark County and their alleged injury and Appellants' theories of liability were too tenuous to maintain claims against the government appellees. ER-129. Rather than file a response to Clark County's motion to dismiss, on or around November 10, 2021, Appellants filed a First Amended Complaint thereby rendering this first motion to dismiss moot. ER-130.

Appellants did not substantively amend or alter their theory of liability in their First Amended Complaint, which did little more than add an additional plaintiff, Jane Doe #2, and her associated allegations. Notably, the Appellants' relative allegations of sex trafficking shared almost no common questions of fact or law and did not arise from the same transaction or occurrence. *See*, *e.g.*, ER-31–32, 36–37 ("[…] claims implicating the constitutionality of legal prostitution in Nevada may have been the primary commonality between the plaintiffs, **it is unclear if there is justification for the plaintiffs to remain joined**.") (emphasis added).

As the table below demonstrates, the three Appellants were in Nevada at different times, allegedly induced into sex trafficking through different means, sex trafficked by multiple different pimps/sex traffickers, and sex trafficked through different types of businesses and in different jurisdictions:

| | Williams | Doe #1 | Doe #2 |
|---|---|---|---|
| **Time Period in Nevada** | 2006-2017 (ER-75) | 2013-2018 (ER-85) | March 2017 to September 2018 (ER-90) |
| **Time Duration** | 11 years (ER-75) | 5 years (ER-85) | 1 ½ years (ER-90) |
| **Location where sex trafficking began** | Houston, Texas (ER-75–79) | Unidentified Out-of-State Location (ER-85) | Houston, Texas (ER-90) |
| **Introduction to Sex Trafficking** | Illegal brothels in Texas (Andre McDaniels) (ER-76–78) | Child sex abuse while ward of unknown state (ER-85) | Backpage.com and other social media apps (ER-90) |
| **Mechanism of Travel to Nevada** | Answered ad for escort agency (ER-79) | Induced by family member (ER-85) | Tricked into taking trip to Las Vegas by sex trafficker (ER-90) |
| **Alleged Nevada Sex Traffickers/Pimps** | 1. Defendant Jamal Rashid, aka, "Mally Mall" 2. Tarnita Woodard 3. Tyree Wight (ER-79–84) | 1. Three pimps, including Khalieff "Leef" Wilson 2. Nicole Flowers (ER-86–87) | 1. Unidentified sex trafficker/Romeo pimps (ER-90–91) |
| **Locations Trafficked** | Texas, Nevada, Dallas, Los Angeles, Chicago, and Boston (ER-82) | Nevada, New York, New Jersey, Colorado, Oregon, Texas, New Mexico, California, Oklahoma, Arizona, and Georgia (ER-86) | Texas, Nevada (ER-90–91) |

| Businesses Allegedly Trafficked | 1. Multiple venues 2. Defendant V.I.P. Entertainment, LLC (ER-79–82) | 1. Multiple venues 2. Street Prostitution 3. Defendant Chicken Ranch (ER-86–87) | 1. Defendant Sapphire 2. Defendant Hustler (ER-91–97) |
|---|---|---|---|

Based on the deficient allegations in the First Amended Complaint and Appellants' improper attempt to join unrelated plaintiffs to create some quasi-class action suit without obtaining class certification from the district court, Appellee Clark County filed a Motion to Strike the First Amended Complaint or Motion to Dismiss in the Alternative on or around November 16, 2021. ER-130. The district court granted Clark County's Motion to Dismiss and denied Clark County's Motion to Strike as moot. ER-138.

In its order granting Clark County's Motion to Dismiss, the district court identified the unrelated nature of the various Appellants' allegations and the numerous bad acts of third parties involved in the allegations by going through the experiences of each Appellant in detail. ER-31–32. The district court's findings highlighted that "the [Appellants] were separately trafficked and their ordeals relative to one another were distinct." ER-32.

The district court order provided that to establish Article III standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." ER-32. Each element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." ER-35 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992)). The district court also pointed out that where "a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Id*. (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)).

Ultimately, the district court correctly determined that the "[Appellants] do not plausibly allege that the injuries they suffered are fairly traceable to Nevada's system of legal prostitution **or to the [government Appellees]**." ER-36 (emphasis added). The district court held that "Nevada's legal system of prostitution is, at best, an attenuated cause of the plaintiffs' alleged injuries" and that the "[Appellants] reference[d] numerous third-party actors throughout the First Amended Complaint 'whose independent decisions collectively [had] a significant effect on the [Appellants'] injuries.'" *Id*. (quoting *Maya*, 658 F.3d at 1070).

Accordingly, the order granted Appellee Clark County's Motion to Dismiss and "dismiss[ed] with prejudice the [Appellants'] claims against the City and State Defendants (Clark County, Nye County, the City of Las Vegas, Steve Sisolak, and

Aaron Ford).” ER-47. Appellants and their counsel now appeal from this district court order. However, as this appeal is just as frivolous as the underlying action against Clark County and the other government appellees, the Court should affirm the district court's dismissal with prejudice of the Appellants' claims against Clark County, Nye County, City of Las Vegas, Steve Sisolak and Aaron Ford.

### B. Allegations of the Respective Appellants

*Angela Williams*

Appellants' First Amended Complaint alleged that Angela Williams “was sex trafficked in Nevada from 2006 to **2017**.” ER-75 (emphasis added). Ms. Williams was allegedly first enticed into sex trafficking in Houston, Texas, as a minor when “Andre McDaniels […] enticed her to go to his 'modeling studio.'” ER-75–76. Ms. Williams later learned that these “modeling studios” “were illegal brothels disguised as lingerie modeling studios.” ER-76.

“Mr. McDaniels continued to groom Ms. Williams until she was eighteen, then increased his recruitment tactics.” *Id.* “Mr. McDaniels isolated Ms. Williams from friends and family […] [and] [e]ventually, through fraud and coercion, Mr. McDaniels brought Ms. Williams to his 'modeling studio.'” ER-77. Ms. Williams then allegedly performed sex acts for customers in exchange for money at Mr. McDaniels' brothels and contended that Mr. McDaniels prevented her from leaving

these brothels and confiscated a significant portion of the money she received in exchange for performing sexual acts. ER-77–78.

Ms. Williams contended that she "**was able to break free** from Mr. McDaniels, but then ended up stripping at a strip club chain in **Houston, Texas**." ER-78 (emphasis added). However, the "**Houston strip club** [also] generally encouraged prostitution and sex trafficking within the clubs." *Id*. (emphasis added). Ms. Williams contended that she was sex trafficked by "a very violent trafficker through the **Houston strip club**" and "**began browsing classified ads** in an effort to escape." ER-79 (emphasis added).

In or around 2006, Ms. Williams then voluntarily "responded to an advertisement for a job posted by Tarnita Woodard, an employee of Jamal Rashid, also known as 'Mally Mall,'" another alleged sex-trafficker. ER-79. Appellants contend that Ms. Williams "was hired to work for one of Mr. Rashid's companies, V.I.P. Entertainment, LLC, which was a licensed escort business in Las Vegas." *Id*. Notably, V.I.P. Entertainment, LLC is a business with its primary place of business and registration address in Henderson, Nevada. ER-55. While Henderson is located within Clark County as an incorporated municipality, Henderson is a separate legal entity from Clark County that enacts its own ordinances—including the licensing and taxing of businesses located in its jurisdiction. *Id*.

Appellants alleged in the Complaint that the "City of Las Vegas knew Mr. Rashid was an active sex trafficker" and that "Ms. Williams was required to obtain a work card from the Clark County Sheriff's Office by one of Mr. Rashid's escort agencies." ER-80. No such allegations are made regarding knowledge of Mr. Rashid by Clark County or one of its employees or agents. Notably, Clark County is a distinct legal entity from both City of Las Vegas and the Clark County Sheriff's Office aka the Las Vegas Metropolitan Police Department (hereinafter "LVMPD"). *See*, *e.g.*, *Denson v. Clark Cnty.*, No. 2:10-CV-00525-RCJ, 2010 WL 3076260, at *3 (D. Nev. Aug. 4, 2010) (holding that the Sheriff of Clark County, aka, "The Las Vegas Metropolitan Police Department is a distinct entity, with its own capacity to sue and to be sued.").

According to Appellants, Mr. Rashid and his associate "enticed Ms. Williams to travel across state lines from Texas to Las Vegas, Nevada to be sex trafficked, under the guise of upscale escorting, because the demand for prostitution was so high in Nevada." ER-80. Ms. Williams was reportedly also "traveling for commercial sex acts **outside of Nevada**" during this time. *Id*. (emphasis added).

Ms. Williams admitted that she "was sometimes **arrested for trespassing**" while being prostituted by Mr. Rashid and contended that Mr. Rashid also "trafficked [her] by plane from Las Vegas, Nevada to perform sex acts for money **in large cities such as Dallas, Los Angeles, Chicago, and Boston**." ER-81 (emphasis

added). Notably, the fact that Ms. Williams admitted to being arrested for trespassing at hotels and casinos while she was engaging in prostitution in Southern Nevada contradicts her claims that the local jurisdictions intentionally created a haven for prostitution and sex trafficking. *Id*.

At some point, "Ms. Williams **was arrested by Chicago Police while being sex trafficked by Mr. Rashid's company**. Ultimately, Ms. Williams served 13 months in jail." ER-83 (emphasis added). After getting out of jail in Chicago, "**Ms. Williams moved to Los Angeles**, where Mr. Rashid had multiple community apartments for the women and girls who worked for him." *Id*. (emphasis added).

Ms. Williams went "back and forth between being sex trafficked by Mr. Rashid and working in the strip clubs" before ultimately connecting with yet another new alleged sex trafficker. ER-83. This new trafficker then allegedly trafficked Ms. Williams through various "strips clubs again, including the Sapphire in Las Vegas." *Id*. Ms. Williams' last sex-trafficker, however, was extremely violent and Ms. Williams was allegedly "able to escape the grip of sex traffickers" after this last pimp attempted to kill her. ER-84.

Consistent with the foregoing, the district court pointed out in its order dismissing Appellants' First Amended Complaint that Williams alleged her sex trafficking was facilitated by numerous bad actors. ER-36. The district court found that Williams alleged "she was groomed and trafficked by Andre McDaniels, an

unnamed 'violent trafficker,' defendant Jamal Rashid, Tarnita Woodard, unnamed 'managers [and] assistant traffickers' to Rashid, and an unnamed 'final sex trafficker.'" *Id*. The court also pointed out that "Williams […] also allege[d] that [her] trafficking **began in Houston**, and Williams […] allege[d] that [she was] **trafficked in numerous states**." *Id*. (emphasis added).

Notably, while Williams alleged that she was occasionally trafficked to hotels or strip clubs located in Clark County—she did not identify the conduct of any specific Clark County employee, agent, or officer that furthered her sex-trafficking ordeal. *See generally* ER-75–84. Williams did not allege that Clark County or one of its employees, agents, or officers knew who she was or knew she was being sexually trafficked. *Id*. She did not allege that the business entity for which she worked was licensed in Clark County. *Id*. She did not specifically identify any money generated by her sex trafficking that was somehow remitted to or benefited Clark County. *Id*.

Ms. Williams also did not explain how Clark County was responsible for her introduction to sex trafficking in Houston, Texas, the conduct of her numerous sex traffickers, or how Clark County ordinances somehow facilitated her alleged trafficking around the country. ER-75–84. Most notably, Ms. Williams cannot articulate how Clark County or the conduct of one of its agents somehow proximately caused her to continue to voluntarily seek out new sex traffickers in

other jurisdictions each time she somehow managed to escape her previous sex traffickers. *Id.*

### *Jane Doe #1*

Appellant "Jane Doe #1 was sex trafficked in Nevada from 2013 to **2018**." ER-85 (emphasis added). Notably, this means that Doe #1's sex trafficking ordeal was finished more than two years prior to the time the initial complaint in this action was filed. ER-126.

Doe #1's introduction into sex trafficking apparently occurred in an unidentified jurisdiction when she was "placed in the foster care system" and suffered "sexual abuse as a child." ER-85. "Jane Doe #1 moved in with the abuser, and within six months had entered a domestic violence shelter with her child, pregnant with her second child." *Id.*

Doe #1 lost custody of her children to her alleged abuser and then "was thereafter **introduced to prostitution by a family member who induced her to travel to Las Vegas**, promising that it would be a way to quickly make money […]." ER-85. (emphasis added). Accordingly, it can be inferred that Doe #1, like the other Appellants in this matter, was also first sex trafficked in a jurisdiction other than Clark County. *Id.* After arriving in Las Vegas, Doe #1 "was introduced to at least three other pimps in 24 hours, who all sex trafficked her." ER-86. When the pimps

discovered that Doe #1 was working with other pimps, "they brutally beat both Jane Doe #1 and her aunt." *Id*.

Doe #1 contended that thereafter she was "trafficked by a guerilla pimp in Las Vegas street prostitution" and that after she escaped the "guerilla pimp" she "was then trafficked by a 'Romeo' pimp." ER-86. The "Romeo pimp", allegedly named Khalieff "Leef" Wilson, "required [Jane Doe #1] to **travel throughout the United States to prostitute for him in New York, New Jersey, Colorado, Oregon, Texas, New Mexico, California, Oklahoma, Arizona, [and] Georgia** […]" *Id*. (emphasis added). Appellants allege that Doe #1's pimp "required travel to maximize his profits from Jane Doe #1's prostitution **and to reduce the chances that they would be arrested**." ER-87 (emphasis added). Notably, this threat of arrest and constant nationwide travel contradicts Appellants' baseless allegations elsewhere in the complaint that insinuate that Clark County and the other government Appellees have created an extremely profitable environment for sex-trafficking and turned a blind eye to sex-trafficking that occurs here. *See*, *e.g.*, ER-74–75.

Appellants contend that Doe #1 was "trafficked in multiple venues, including casinos, executive officers, brothels, agencies, outcall/incall to sex buyers' preferred locations, hotels, underground business pubs, restaurants, and massage parlors." ER-87. Notably, Appellants do not identify the locations of any of these businesses or indicate that they are licensed or operating in Clark County. *Id*.

After Doe #1's "Romeo Pimp" was sent to prison, Doe #1 "fell under the control of [an] additional madam pimp, Nicole Flowers." ER-87. This so-called madam pimp, Ms. Flowers, "required [Doe #1] **to work two weeks in the state of [her] choosing**." ER-88 (emphasis added). This language further supports that Doe #1 was frequently trafficked outside of Nevada in other states. *Id*.

The only location where Doe #1 was allegedly trafficked and identified with any specificity in the complaint was the "legal brothel" Chicken Ranch, located in Nye County. ER-88. Appellants contended that Doe #1 was required to obtain a work card from Nye County Sheriff's Office in conjunction with her employment at the Chicken Ranch. *Id*. It should go without saying that Clark County is neither Nye County nor is it the Nye County Sheriff's Office. The two counties are independent legal entities.

After working at the Chicken Ranch for some time, Doe #1 "**left the brothel together [with her friend] to prostitute elsewhere in Nevada and then in the friend's Oklahoma hometown**." ER-90 (emphasis added). Thereafter Doe #1 allegedly fell under the control of the so-called madam pimp Ms. Flowers again and prostituted herself "until 2018 in Nevada and **2019 in California**." *Id*. (emphasis added). This further demonstrates Doe #1's own culpability in the allegations in the complaint and confirms that Doe #1's allegations of sex-trafficking are no more tied

to Nevada or Clark County than they are any of the other number of places where she engaged in prostitution like Oklahoma or California. *Id.*

After reviewing the First Amended Complaint, the district court concluded that there had been numerous bad actors involved in the sex-trafficking of Doe #1. The district court order provided that "Jane Doe #1 similarly allege[d] that she was groomed and trafficked by an unnamed abuser, that a family member introduced her to multiple pimps (one of which was a family member's spouse) who then trafficked her, and that a 'guerilla' pimp, a 'Romeo' pimp named Khalieff Wilson, a 'madam' pimp named Nicole Flowers, and Defendant Chicken Ranch also trafficked her." ER-36. The district court also noted that Doe #1 had been trafficked in "numerous states." *Id.* As a result, the district court correctly found that Doe #1's allegations, which were rife with the conduct of numerous bad actors and which occurred in a variety of locations outside of Nevada, could not support a strong enough causal chain to support Article III standing for the court to hear the matter as against Clark County and the other government appellees. ER-36–37.

Notably, the allegations for Jane Doe #1 never indicated that Doe #1 was ever trafficked in Clark County or at a business licensed in Clark County. ER-85–90. They do not allege conduct of a Clark County employee, agent, or officer furthered Jane Doe #1's sex trafficking. *Id.* The allegations do not reference how a Clark County law or ordinance impacted her or facilitated her alleged sex-trafficking

ordeal. *Id*. In fact, Clark County is not expressly referenced anywhere in Doe #1's allegations about her experiences with sex-trafficking. *Id*.

### *Jane Doe #2*

Appellant Jane Doe #2, who contended that she "was sex trafficked in Nevada from March 2017 to **September 2018**" for the first time in the First Amended Complaint, also did not bring her claims against Clark County until more than two years after her alleged trafficking had already ended. ER-90.

Appellants alleged that Doe #2 was first trafficked "**through social media apps** […] before she turned eighteen" while living in Texas by sex traffickers. ER-90 (emphasis added). Thereafter, "Jane Doe #2 was trafficked for sex by various pimps/sex traffickers **in the Houston area** after she turned eighteen." ER-90 (emphasis added). Doe #2 "[w]as manipulated and coerced into prostitution **by a series of boyfriend/"Romeo" pimps.**" *Id*. (emphasis added).

Sometime later, Doe #2 "was induced to travel to Las Vegas on pretext of taking a short vacation in 2017. Once in Las Vegas, the pimps/sex traffickers pressured Jane Doe #2 to engage in stripping […]." ER-90–91. Doe #2 contended that she was trafficked by a particularly abusive pimp/sex trafficker through two different strip clubs, "Sapphire and Hustler." ER-91.

Doe #2 alleged that she "was required to get a work card from the Clark County Sheriff's Office" to work at these strip clubs and that she "**assume[d] the**

**identity of an older woman (due to regulations requiring dancers to be twenty-one) to obtain the work card** […].” ER-91 (emphasis added). According to Appellants, “[Doe #2] was not asked by the Sheriff’s office whether she was being trafficked, was under a pimp’s control, or whether she was consenting.” ER-92. Again, it is incumbent that Appellee Clark County points out that it does not set the policy or procedures for the Clark County Sheriff, aka, LVMPD, and is not liable for the conduct of the Clark County Sheriff or its employees. *Denson v. Clark Cnty.*, No. 2:10-CV-00525-RCJ, 2010 WL 3076260, at *3 (D. Nev. Aug. 4, 2010) (holding that the Sheriff of Clark County, aka, “The Las Vegas Metropolitan Police Department is a distinct entity, with its own capacity to sue and to be sued.”). The Clark County Sheriff is an elected position and the police department, of which he sits at the head, is a separate legal entity with the “capacity to sue and be sued.” *Id.*

Appellants describe in detail the trafficking Doe #2 experienced in these private strip clubs, which included additional allegations about the conduct of LVMPD officers who would visit the club and/or arrest Doe #2 and other strippers. ER-90–97. Notably, however, Appellants did not allege any conduct by a Clark County agent, employee, or officer in conjunction with the alleged trafficking that Doe #2 experienced at these clubs and did not allege that Clark County was in anyway involved or profited off any illegal activity that allegedly occurred therein. *Id.*

## C. Allegations against Clark County and the other Government Appellees

### *Broad Sex Trafficking Conspiracy Allegations*

Appellants' First Amended Complaint is generally devoid of any specific conduct by Clark County or one of its employees, agents, or officers. *See generally* ER-50–103.

The First Amended Complaint alleged generally that "Nevada has cooperated with the City of Las Vegas, Clark County, Nye County, [and numerous private sex trafficking entities] to maintain and profit from a legalized system of prostitution—explicit in certain counties, and de facto elsewhere." ER-50. Appellants contend that this "cooperation" is demonstrated by the fact that "[Appellants] were induced to engage in commercial sex acts […] in legal strip clubs, legal escort businesses, and a legal brothel operating in Nevada." ER-51. They further contend that the "collusion of the State of Nevada, its political subdivisions [like Clark County], and private businesses in the sex trade […] has allowed sex traffickers to operate in Nevada with impunity." ER-51.

While this is contrary to allegations elsewhere in the complaint that Appellants were frequently arrested in Clark County and Las Vegas, frequently left the State of Nevada to avoid arrest, and frequently had to lie about their ages or names to be allowed to work in Nevada, Appellants arguments in this regard are also specious.

Illegal activity frequently occurs in legal businesses of all types. Restaurants and clubs without liquor licenses frequently serve alcohol, adult clubs often admit minors or serve them alcohol, factories, farms, and landscaping companies frequently employ undocumented workers not eligible to work, shipping companies frequently traffic in illicit goods, and law firms regularly engage in fraudulent billing practices. It's absurd to argue that by licensing and/or collecting taxes from these businesses, the government is somehow culpable for their criminal conduct.

Appellants' theory of causation in Nevada rests on their unsubstantiated conclusion that "the legal [sex] trade **correlates**[1] with exponential increases in the illegal trade and state cash flow." ER-66 (emphasis added). The legal trade to which Appellants refer is NEV. REV. STAT. § 244.345(8), a statute drafted by the state legislature "legalizing prostitution in county-licensed brothels, for counties with fewer than 200,000 residents." ER-67.

For the Court to understand Appellants' instant appeal, it needs to understand that both this appeal and the *Charleston* appeal from 2020 have been politically motivated abuses of the judicial system that seek primarily to generate publicity for the Appellants' position and to influence the conversation on legalized prostitution in Nevada, and not focused on seeking redress for genuine, justiciable issues.

---

[1] In this regard Appellants even seem to concede the lack of a causal chain by using the word "correlates" because, as the old adage provides: "correlation is not causation."

Notably, as a county with more than 200,000 residents, Clark County played no role in drafting NEV. REV. STAT. § 244.345(8) and prostitution is not legalized within Clark County's jurisdictional boundaries. Appellants concede that "[p]rostitution is officially illegal in Las Vegas and Clark County" though they argue that "this is more pretense than reality." ER-70.

### *Thirteenth Amendment Allegations Against Clark County*

Appellants' First Amended Complaint provides that the "State and City Defendants provided legal cover for the Nevada sex trade, enabling the system through which the [Appellants] were subjected to slavery and involuntary servitude in the form of sex trafficking" in violation of the Thirteenth Amendment. ER-98. According to Appellants, this so-called "legal cover" by Clark County consisted of licensing "legal escort agencies and legal strip clubs." ER-98.

Accordingly, Appellants' theory of Thirteenth Amendment liability against Clark County is based on the untenable position that by licensing escort businesses and strip clubs, Clark County is somehow responsible for these entities when they engage in unlawful conduct or engage in sex trafficking or that Clark County has a duty to prevent every unlawful act perpetrated by bad actors somehow associated with businesses licensed in the County.

These claims are absurd on their face and, even if they weren't, Appellants' Thirteenth Amendment claims would still be barred as a matter of law because there

is no recognized private right of action under the Thirteenth Amendment and Appellants brought their claims more than two years after the statute of limitations for section 1983 claims had already lapsed in Nevada anyway.

## *TVPRA Claims Against Clark County*

Appellants make conclusory allegations unsupported by fact contending that Clark County "knowingly harbored and/or maintained [Appellants], knowing or in reckless disregard of the fact that force, fraud, and/or coercion were being used to induce [Appellants] to engage in commercial sex acts." ER-99. Appellants further contend that through "local taxes, licensing fees, and the general tourism revenue derived from their reputations as legal havens for commercial sex, City Defendants [like Clark County] knowingly benefit, financially and by receiving something of value, knowing or in reckless disregard of the fact that they are participating in sex trafficking ventures" in violation of 18 U.S.C. §§ 1591(a)(1)–(2). ER-100–101. Appellants contend that they are authorized to sue Clark County and the other government appellees under 18 U.S.C. § 1595(a). *Id.*

Notably, Title 18 is the primary **criminal code** for the federal government. 18 U.S.C. § 1591(a) provides that:

> (a) Whoever knowingly--
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports,

provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) **benefits**, financially or by receiving anything of value, **from participation in a venture which has engaged in an act described** in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a) (emphasis added).

Accordingly, 18 U.S.C. §§ 1591(a)(1)–(2) are criminal statutes making it unlawful for a person to knowingly engage in sex trafficking or to knowingly benefit from sex trafficking. *Id*. 18 U.S.C. §§ 1595(a) authorizes individuals who are victims of crimes enumerated in Chapter 77, including 18 U.S.C. §§ 1591(a)(1)–(2), to bring civil actions against their sex traffickers and those who knowingly profit from their sex trafficking. 18 U.S.C.A. § 1595(a).

First, it warrants pointing out that Clark County is not a person capable of being convicted of 18 U.S.C. §§ 1591(a)(1)–(2). Despite Appellants' cursory legal conclusions that Clark County "harbored and/or maintained" them as part of an elaborate sex trafficking operations, Appellants do not allege that they were ever in the custody of Clark County or one of its employees, officers, or agents. *See*

*generally* ER-49–103. Appellants do not allege that a specific Clark County officer, agent, or employee ever actively participated in their sex trafficking. *Id*. Appellants do not identify a specific Clark County officer, employee, or agent with actual knowledge about any of their alleged sex trafficking experiences or who was aware of any specific benefit or revenue being derived from these services. *Id*. Accordingly, Appellants' claims under the TVPRA must also necessarily fail as a matter of law.

### *Clark County Ordinances at Issue*

Appellants argue that "Clark County […] licenses escorting, outcall entertainment and strip clubs, despite acknowledging that prostitution occurs in these." *Williams Appeal* Dkt. 9 at 7.

Clark County ordinances specifically referenced by the Appellants in the First Amended Complaint primarily include ordinances contained in "Title 6 – Business Licenses" and "Title 8 – Liquor and Gaming Licenses and Regulations" of the Clark County Code. *See*, *e.g.*, ER-70, 72.[2] Though it is notable that Appellants never expressly allege that any of the entities that trafficked them were licensed under any of these sections of code. *See generally* ER-49–103.

---

[2] Appellants have attached portions of the Clark County Code to their Opening Brief as an Addendum. *See*, *e.g.*, *Williams Appeal* Dkt. 9 at ADD-2–4, 30–93. The Clark County Code is also available to view in its entirety at https://library.municode.com/nv/clark_county/codes/code_of_ordinances.

Accordingly, Appellants' citation to these ordinances appears to be more about asserting that Clark County is somehow complicit with the other government Appellees in some grand conspiracy to create a haven for sex trafficking than it is to draw a factual connection between these ordinances and the purported sex trafficking of the Appellants specifically.

Notably, the ordinances erroneously cited by Appellants as purportedly creating a haven for sex trafficking were expressly drafted to inhibit illegal prostitution in unincorporated Clark County. CCC § 6.140.010 provides in relevant part:

> **6.140.010 Findings.**
>
> The Clark County liquor and gaming licensing board and the board of county commissioners of Clark County find that:
>
> For several years preceding 1986, escort bureaus had been operating as modified brothels in Clark County, engaging in the business of sending "escorts" to hotel and motel rooms for the purposes of prostitution. Disciplinary action was brought against each of the escort services resulting in a surrender or revocation of their business license. The escort business, then instituted a new business method, by obtaining promoter's licenses and offering in response to a telephone call, what they purported to be "entertainment." Police undercover activities have established that these promoters are actually operating as modified brothels, sending individuals to hotel and motel guestrooms for the purpose of prostitution under the subterfuge of "entertainment." **The cover of the First Amendment has materially increased the burden of policing this**

> **business to decrease the incidence of prostitution and drug sales**.
>
> **The purpose of the ordinance codified in this chapter is to regulate the outcall entertainment business to the end that many types of criminal activities will be curtailed, without de facto prohibiting or curtailing protected expression.** This chapter represents a balancing of the legitimate ends of the community by imposing an incidental, content neutral place, time and manner regulation on the outcall promoter business, without limiting alternative avenues of communication, and **at the same time, requiring the business to carry its share of financing law enforcement activities.**

CCC § 6.140.010 (emphasis added); *see also Williams Appeal* Dkt. 9 at ADD-32.

As the Court can see, the so-called "outcall entertainment" license ordinance which Appellants' contend provides legal cover for prostitution is actually intended to curtail illegal prostitution. *Id*.

Requiring licenses for entertainers who enter hotels or for companies who refer entertainers to hotels combats prostitution in a few different of ways. First, there is automatically probable cause to initiate a stop and/or detention for violation of Clark County ordinances if any so-called entertainer attempts to conduct business in a hotel without a license. Second, if any licensed entertainer or business is found to be engaging in unlawful conduct as part of their licensed business, they may also be subject to additional criminal and civil penalties associated with the terms thereof. Furthermore, as the license fees for so-called outcall entertainment are used to fund law enforcement activities directed at curtailing illegal prostitution, the outcall

entertainment industry is essentially required to pay to regulate itself. *See* CCC § 6.140.010. Notably, as the funds are directed to law enforcement activities intended to curtail illegal prostitution, it is difficult to see how any revenue derived from these activities could qualify as a benefit within the meaning of 18 U.S.C. § 1591(a)(2) anyway.

As the Clark County ordinances cited by the Appellants stand for the proposition that Clark County is actively taking steps to curtail illegal prostitution and as Appellants have not factually tied the enactment or operation of these ordinances to any of the tortious conduct alleged in the First Amended Complaint, their claims are completely devoid of merit. As Appellants have alleged no other conduct by Clark County besides passing these ordinances and a failure to fully enforce laws prohibiting prostitution, their claims must fail on their face.

## VIII.   ARGUMENT

### A. The District Court Correctly Held that Appellants Lacked Article III Standing to Assert the Claims in their First Amended Complaint against Clark County

Federal courts are courts of limited jurisdiction. *See, e.g., Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). For a federal court to have subject matter jurisdiction under Article

III, there must a justiciable case and controversy. *See* U.S. Const., Art. III, § 2. To establish standing, three elements must be met—the plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

In this case, the Court lacks subject matter jurisdiction on the Appellants' claims against Appellee Clark County because Appellants: i) have not suffered an invasion of a legally protected interest by Clark County; ii) have failed to establish a line of causation between Clark County's actions and their alleged harm; and iii) have not demonstrated how the declaratory/injunctive relief sought in the Complaint will provide redress for their purported injuries.

### i. Appellants have not Suffered an Invasion of a Legally Protected Interest that is Concrete and Particularized and Actual or Imminent

"**Injury in fact is a constitutional requirement**, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (emphasis added) (internal citations and quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is **'concrete and particularized' and 'actual or imminent, not**

**conjectural or hypothetical**.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S., at 560) (emphasis added). "[W]here a plaintiff seeks prospective relief such as a declaration and injunction, as here, **concreteness is strictly construed**." *Charleston v. Nevada*, 423 F. Supp. 3d 1020, 1026 (D. Nev. 2019), aff'd, 830 F. App'x 948 (9th Cir. 2020) (emphasis added).

In *City of Los Angeles v. Lyons*, the Supreme Court held that a victim of a police chokehold who was seeking injunctive relief against the Los Angeles Police Department ("LAPD") was unable to show a sufficient likelihood of recurrence as to him personally to establish standing for seeking the injunction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). The Supreme Court held that, "[i]n order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).

The facts of instant case are highly analogous to the those in *City of Los Angeles v. Lyons*. All the Appellants in this matter alleged injury in the past. Neither

Appellants in this case or the plaintiff in *Lyons* were suffering an injury at the time their respective complaints were filed—in fact Appellants in this case acknowledged that Appellants Williams, Doe #1, and Doe #2 have not been victims of sex trafficking since 2017, 2018, and 2018, respectively. ER-84, 94, 99. In *Lyons*, the plaintiff contended that his threat of future injury from subsequent chokeholds was the result of an LAPD policy sanctioning chokeholds in non-life-threatening situations. *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983). In this case, Appellants contend that they were sexually trafficked because Clark County "has allowed sex traffickers to operate in Nevada with impunity" by "fail[ing] to enforce […] state and federal laws against prostitution, prostitution advertising" and by passing "ordinances licensing escort businesses, as well as regulations licensing outcall entertainment." *See* ER-51, 71 (internal citations omitted).

As indicated in *Lyons*, in order to maintain a claim for declaratory and injunctive relief against Clark County, Appellants must have alleged that they were likely to wind up being sex-trafficked in Clark County again, despite having been removed from the situation for several years, demonstrated that each and every outcall entertainment license or escort business license issued by Clark County is *always* a cover for a sex-trafficking business, and shown that Clark County authorized the issuance of outcall entertainment and escort licenses with the intent to allow sex trafficking. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).

By Appellants' own admissions, they are currently residing in Texas and California. ER-52. Appellants also conceded that they have not been the victims of sex trafficking in Nevada since 2017, for Appellants Williams, and 2018, for Appellants Doe #1 and Doe #2. ER-75, 85, 90. Appellants have also failed to identify which businesses that engaged in their sex trafficking—if any—were licensed by Clark County. *See generally* ER-49–103. Given that Appellants are living out of state and are several years removed from their sex-trafficking experience and did not allege they had ever suffered sex trafficking at the hands of a business licensed in Clark County, Appellants cannot show that they are realistically threatened by a repetition of their experience in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–08 (1983) ("If Lyons has made no showing that he is realistically threatened by a repetition of his experience of October 1976, then he has not met the requirements for seeking an injunction in a federal court"). Absent such a showing, Appellants cannot meet their burden by demonstrating a concrete and imminent deprivation of a legally protected right and, accordingly, their complaint is ripe for dismissal as a matter of law. Furthermore, as Clark County's ordinances have been expressly implemented to combat illegal activity like sex trafficking—Appellants' contentions to the contrary are unavailing anyway. CCC § 6.140.010; *Williams Appeal* Dkt. 9 at ADD-32.

Appellants undoubtedly contend that the physical and psychological effects of sex trafficking and prostitution endure long after the actual act, but it is well settled that "[t]he emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Lyons*, 461 U.S. at 107 n.8; *see also Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020).

> **ii. Appellants have not Established a Line of Causation between the Conduct of Clark County or its Agents and the Harm they Allegedly Suffered**

To survive a motion to dismiss for lack of Article III standing, Appellants must demonstrate that there is a line of causation between Clark County's conduct and their alleged harm that is more than attenuated. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011); *see also Charleston v. Nevada*, 423 F. Supp. 3d 1020, 1027 (D. Nev. 2019), aff'd, 830 F. App'x 948 (9th Cir. 2020). The purported causal links cannot be "hypothetical or tenuous" and in "cases where a chain of causation '**involves numerous third parties**' whose '**independent decisions**' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and this court have found the causal chain too weak to support standing at the pleading stage." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citing *Allen v. Wright*, 468 U.S. 737, 757 (1984)).

Appellants contend generally that the Nevada State, County and City defendants "[have] allowed sex traffickers to operate in Nevada with impunity" by "fail[ing] to enforce […] state and federal laws against prostitution, prostitution advertising, debt bondage, and sex trafficking" in "collusion […] [with] private sex traffickers." ER-51. Appellants alleged Clark County has "ordinances licensing escort businesses, as well as regulations licensing outcall entertainment" which serves as "legal cover for the Nevada sex trade". ER-71, 98 (internal citations omitted). Appellants contended generally that the laws and practices of the various Nevada jurisdictions have created an environment that allows prostitution to flourish across all of Nevada more so than other states in the union. *See*, *e.g.*, ER-74.

Appellants' own allegations clearly demonstrate that their respective sex trafficking began in jurisdictions outside of Nevada, involved numerous third-party facilitators, pimps, and traffickers, occurred in multiple states outside of Nevada, and involved significant elements of personal choice.

The district court found that Appellant Williams alleged in the First Amended Complaint that she "was groomed and trafficked by Andre McDaniels, an unnamed violent trafficker, defendant Jamal Rashid, Tarnita Woodard, unnamed managers and assistant traffickers to Rashid, and an unnamed final sex trafficker." ER-36 (internal citations and quotation marks omitted). The district court made similar

findings about the numerous traffickers allegedly involved in the sex trafficking of Appellants Doe #1 and Doe #2 as well. *Id*.

Accordingly, it is apparent, even from the face of the First Amended Complaint, that Appellants' alleged injury is significantly impacted by the independent decisions of numerous third parties and that any alleged contribution from Clark County or the other government Appellees is merely hypothetical or tenuous.

What's more, given that much of Appellants' experiences also occurred in New York, New Jersey, Colorado, Oregon, Texas, New Mexico, Oklahoma, Arizona, Georgia, California, Illinois, and Massachusetts, their contention that Nevada and/or Clark County's laws created a haven or legal cover for sex trafficking carry little weight. The extensive history of the US sex trade provided in Appellants' First Amended Complaint demonstrates that this is a centuries-old issue not strictly limited to the state of Nevada or attributable to its laws. ER-57–66.

When addressing this issue in *Charleston*, the district court found that the "[Appellants'] [contention that they] were unlawfully forced into prostitution and sex trafficked in Nevada and other states is not sufficiently traceable to Nevada laws permitting legal prostitution as opposed to other factors, namely the illicit behaviors of private bad actors." *Charleston v. Nevada*, 423 F. Supp. 3d 1020, 1028 (D. Nev.

2019), aff'd, 830 F. App'x 948 (9th Cir. 2020). The district court in this case made similar findings:

> Williams and Jane Doe #2 also allege that their trafficking began in Houston, and Williams and Jane Doe #1 allege that they were both trafficked in numerous states. **Because numerous third parties and their independent actions collectively impacted the plaintiffs in a significant way, and because the out-of-state origins and continuations of the plaintiffs' trafficking further attenuate Nevada's role in their respective ordeals,** the plaintiffs' alleged causal chain is too weak to support standing against the City and State Defendants.

ER-36–37 (emphasis added).

As there is no traceability between the conduct of Clark County and Appellants' alleged harm because of the significant impact of third parties and the substantial amounts of trafficking that occurred outside of Clark County, the district court properly held that it lacked subject matter jurisdiction to hear the claims against Clark County.

### iii.     Appellants cannot Demonstrate how the Declaratory Relief Sought in the First Amended Complaint Will Provide Redress

In order for the Court to have jurisdiction over an issue, the injury alleged by the Appellants must be likely to be redressed by a favorable judicial decision. *See*, *e.g.*, *Charleston v. Nevada*, 423 F. Supp. 3d 1020, 1025 (D. Nev. 2019), aff'd, 830 F. App'x 948 (9th Cir. 2020). "Satisfaction of this requirement ensures that the lawsuit does not entail the issuance of an advisory opinion without the possibility of

any judicial relief, and that the exercise of a court's remedial powers will actually redress the alleged injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 129 (1983).

The relief primarily sought by Appellants' First Amended Complaint is one for "declaratory and injunctive relief" to have certain Nevada Revised Statutes declared unconstitutional and to institute an injunction prohibiting the operation of legal brothels in rural counties and issuance of outcall entertainer licenses in urban counties. ER-99, 102.

Nothing about the desired declaration or injunctions will provide any redress to the Appellants. Nor will it discourage future sex trafficking. Sex trafficking pre-dates the foundation of the United States and Nevada's statehood. Appellants' own First Amended Complaint provides that their experiences in sex trafficking began in other jurisdictions and were initially unrelated to Nevada or Clark County and its laws. In short, "the facts [Appellants] allege do not demonstrate a likelihood that the primary relief [Appellants] request—declaratory relief and injunction concerning legal prostitution in Nevada—will redress their alleged injuries as a result of being illegally forced into prostitution and being sex trafficked." *Charleston v. Nevada*, 423 F. Supp. 3d 1020, 1028 (D. Nev. 2019), aff'd, 830 F. App'x 948 (9th Cir. 2020). The declaratory and injunctive relief sought in this case would serve as nothing more than an impermissible advisory opinion and provide no actual remedy to the harm suffered by Appellants.

As the district court could not provide proper redress through the relief sought by the Appellants against Clark County and the other government Appellees, it lacks subject matter jurisdiction to hear Appellants' claims against Clark County and the other government Appellees.

**B. Appellants' Thirteenth Amendment Claims Fail on their Face because there is no Private Right of Action under the Thirteenth Amendment**

Appellants have alleged violations of the Thirteenth Amendment under 42 U.S.C. § 1983 against Clark County. ER-99.

It is important to note that there is no recognized private right of action under the Thirteenth Amendment. *See Jane Doe I v. Reddy*, 2003 WL 23893010, at * 10 (N.D. Cal. Aug. 2003) ("[N]o decision has ever actually upheld a private right of action under the Thirteenth Amendment."); *Johnson v. Lucent-Alcatel*, 2019 WL 4391121, at *2 (C.D. Cal. July 24, 2019) ("The Court is not aware of any case that has recognized a private right of action under the 13th Amendment."); *see also Lagayan v. Odeh*, 199 F. Supp. 3d 21, 29 (D.D.C. 2016) ("[T]here is no private right of action under the Thirteenth Amendment.") (internal quotations omitted); *Doe v. Siddig*, 810 F. Supp. 2d 127, 135 (D.D.C. 2011) ("Courts in this Circuit have consistently held that there is no private right of action under the Thirteenth Amendment"); *Holland v. Bd. of Trustees of Univ. of D.C.*, 794 F.Supp. 420, 424 (D.D.C.1992) ("[T]he Thirteenth Amendment does not give rise to an independent cause of action.").

In fact, "it appears that just about **every decision to consider the issue has concluded that there is no private right of action under the Thirteenth Amendment**." *Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *10 (N.D. Cal. Aug. 4, 2003) (emphasis added). Cases have reasoned that "using the Thirteenth Amendment as a basis for private relief was not 'appropriate' or 'necessary.'" *Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *10 (N.D. Cal. Aug. 4, 2003) (citing *Turner v. Unification Church*, 473 F.Supp. 367, 373—74 (D.R.I.1978)). This reasoning was based on the fact that the Thirteenth Amendment was intended to govern private conduct and not state conduct and, accordingly, the establishment of statutory/tort remedies would be more appropriate than creating a new constitutional cause of action. *Id*.

As no court to date has upheld a private right of action under the Thirteenth Amendment and, in fact, every court to consider the issue has rejected it, the Honorable Court should find that Appellants have not alleged a valid constitutional deprivation under 42 U.S.C. § 1983 and/or the Thirteenth Amendment and dismiss those claims as against Clark County.

### C. Appellants' Thirteenth Amendment Claims Also Fail because They were Brought more than Two Years after the Applicable Statute of Limitations for Section 1983 Claims in Nevada

Even if this Court were to adopt or acknowledge a private cause of action under the Thirteenth Amendment against the Nevada State, County, and City

Appellees, however, Appellants bringing a Section 1983 claim in Nevada still only "ha[ve] **two years** within which to commence [their] 1983 claim[s]." *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (emphasis added); *see also* NRS § 11.190(4)(e).

Appellants' First Amended Complaint clearly provides that the Appellants' alleged sex trafficking ended in 2017 for Appellant Williams and 2018 for Appellants Doe #1 and Doe #2. ER-84, 94, 99. As both 2017 and 2018 are far more than two years prior to the date that the initial complaint was filed on September 10, 2021, Appellants' claims under 42 U.S.C. § 1983 are barred by the applicable statute of limitations.

As the "statute of limitations is jurisdictional", this Court lacks subject matter jurisdiction to hear the matter unless Appellants can demonstrate otherwise. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

**D. Appellants' Claims under the TVPRA Fail as a Matter of Law because Clark County, as a Non-Sentient Entity, is not Capable of the Mens Rea Necessary to Violate U.S.C. § 1591(a) and Appellants have Alleged no Conduct or Knowledge of a Clark County Employee or Agent**

Appellants have asserted that Clark County is liable under 18 U.S.C. §§ 1591(a) and 1595 by perpetrating and benefiting from the sex trafficking of Appellants. ER-99–101.

18 U.S.C.A. § 1595 provides in relevant part that: an "individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever **knowingly benefits, financially or by receiving anything of value from participation in a venture** which that person knew or should have known has engaged in an act in violation of this chapter)". *See* 18 U.S.C.A. § 1595 (emphasis added). Because section 1595 provides a civil remedy for violations of criminal statutes, the underlying offenses necessarily include a *mens rea* element. In this case, the violation of the TVPRA must be done "knowingly" to qualify for civil relief under section 1595. *Id.*

Black's Law Dictionary defines "knowingly" as "In such a manner that the actor **engaged in prohibited conduct with the knowledge that the social harm** that the law was designed to prevent **was practically certain to result**." *Knowingly*, Black's Law Dictionary (10th ed. 2014) (emphasis added). The "terms 'perpetrator' and 'whoever' are not defined by [the TVPRA]". *Mojsilovic v. Oklahoma ex rel. Bd. of Regents for Univ. of Oklahoma*, 841 F.3d 1129, 1132 (10th Cir. 2016).

First, as a non-sentient political subdivision of the State of Nevada comprised of more than 10,000 employees and elected officials, what Clark County "knows" is a difficult concept to define. What can be certain, however, is that Clark County itself is not capable of "knowing" anything independently beyond what the employees and officers that comprise it know. Appellants' First Amended

Complaint, however, does not specifically address which Clark County employees or officers, if any, were "knowing" participants or beneficiaries of the sex trafficking alleged in the First Amended Complaint—nor can it. Ordinances are passed in open meetings which invite public comment. Multiple departments and stakeholders are involved in their drafting, amendments, and ratification. It would be absurd to allege that somehow each of these levels of County government and the public at large are somehow intent on promulgating illegal sex trafficking in the County by ordinance. Notably, primary enforcement responsibility of the County's ordinances and prostitution prohibitions has been delegated to the LVMPD—a separate legal entity—and, accordingly, allegations that the County knowingly failed to enforce the law are both inaccurate and misplaced as against the County.

Appellants' First Amended Complaint indicated that Clark County's knowing participation in the alleged sex trafficking was comprised of passing ordinances—which as discussed, *supra*, were actually for the express purpose of curtailing illegal conduct—and sufficiently failing to enforce laws against prostitution on a general level. ER-99–101. It is always a possibility that individuals will abuse ordinances passed and licenses issued by the County and commit crimes and evade punishment; however, criminal conduct occurring is never a practical certainty. *United States v. Beardslee*, 197 F.3d 378, 389 (9th Cir. 1999), opinion amended on denial of reh'g, 204 F.3d 983 (9th Cir. 2000) ("a possibility, **even a considerable one**, is not the

same as a practical certainty") (emphasis added). Undoubtedly, many sex traffickers continue to avoid detection and punishment nationwide while many outcall entertainers licensed by the County perform legitimate outcall entertainment services for parties and banquets like emcees, DJs, clowns, musicians, etc. There is no way for the County or any of its agents to know with the requisite certainty who is legitimate—though best efforts are taken by requiring outcall entertainers to undergo a background check with LVMPD prior to licensing and by authorizing the liquor and gaming licensing board to deny license applications if "the applicant has been convicted of prostitution, soliciting prostitution, living off the earnings of a prostitute, pandering[, etc.]" *See* CCC §§ 6.140.085–6.140.095; *Williams Appeal* Dkt. 9 at ADD-43–49.

As Clark County is incapable of the "knowing" *mens rea* required for liability under 18 U.S.C. §§ 1591(a) and 1595 and Appellants have alleged no individual Clark County officer or employee who knew with a practical certainty that sex trafficking would result from the passage of any County ordinances, Appellants' action for civil damages under U.S.C. §§ 1591(a) and 1595 against Clark County must fail as a matter of law.

### E. Appellants lack Third-Party Standing to Assert Claims on Behalf of Women Currently being Sex-Trafficked

Appellants contend that "[a]s persons recently sex trafficked within Nevada, Plaintiffs are appropriate persons to assert third-party standing on behalf of people

currently being illegally sex trafficked within legal brothels in Nevada jurisdictions which permit prostitution, and within legal escort agencies in Nevada jurisdictions that do not permit prostitution." ER-97–98. Appellants assert that persons currently being sex trafficked are "unable to enforce their rights and seek redress apart from third-party standing which [Appellants] assert." *Id*. Appellants, however, never qualify how, under third-party standing, they would be entitled to the "[c]ompensatory, consequential, general, and punitive damages" they seek against the City and County defendants in this matter. ER-103.

The Supreme Court "has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This rule is based on the healthy concern that cases brought on behalf of third parties will result in the court being called upon "to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)) (internal quotation marks omitted).

This rule is not absolute, however, as the Court has granted third-party standing (aka next-friend standing when writs of habeas corpus are implicated) under certain circumstances and subject to a couple of conditions. *Kowalski v.*

*Tesmer*, 543 U.S. 125, 129 (2004). First, "[i]n order to establish next-friend standing, the putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner." *Coalition of Clergy v. Bush*, 310 F.3d 1153, 1159–60 (9th Cir. 2002) (quoting *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001)); *see also Kowalski v. Tesmer*, 543 U.S. 125, 130, 125 S. Ct. 564, 567 (2004) (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)) ("First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, we have considered whether there is a "hindrance" to the possessor's ability to protect his own interests.") (internal citations omitted).

While Clark County concedes that a true victim of sex trafficking may be unable to access the courts, Appellants can establish no "close" or "special" relationship with these unidentified victims of sex trafficking in Nevada. Appellants' only allegation is that they were victims of sex trafficking 3-4 years ago in Nevada. They do not identify any individuals currently being sex trafficked. They don't explain the nature of their relationship with any individuals being sex trafficked. The very existence of these purported victims is pure speculation.

-47-

Case: 22-16859, 07/12/2023, ID: 12753993, DktEntry: 24, Page 54 of 59

The courts have held that third-party standing may apply where a contractual relationship (or putative contractual relationship) exists between the third party and the party in interest. *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990). The courts have similarly held that confidential relationships, like a physician and patient or a physician and spouse of a patient, or legal rights, like a property owner's right to challenge a racist covenant on the land, may also impute third party standing on an individual. *Singleton v. Wulff*, 428 U.S. 106, 115 (1976).

Appellants here, however, have no legal right, contractual relationship, confidential relationship, or close interpersonal association with any of the purported current victims of sex trafficking in Nevada, nor have they alleged one. In fact, it is not apparent that they can even identify any such victim—let alone assert that they have a special relationship with them. For this reason alone, Appellants should be denied third-party standing to bring this action.

Notably, while Appellants asserted third-party standing in their First Amended Complaint, the district court considered the issue of third-party standing and indicated that it was "unconvinced that the [Appellants] successfully plead[ed] a requisite special relationship with presently trafficked individuals to support third-party standing, and while that class as pleaded is amorphous, the same standing defect that is fatal to the plaintiffs' claims against the State and City Defendants applies equally in the third-party standing context." ER-37.

-48-

Furthermore, as Appellants have not briefed the issue of third-party standing in their opening brief on appeal, they have effectively waived the issue on appeal anyway. *In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 325 (9th Cir. 1991) (citing *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1332 (9th Cir.1981)); *see also Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991) ("Failure to raise or brief an issue in a timely fashion may constitute waiver of the issue on appeal."); *Williams Appeal* Dkt. 9.

As the Court lacks jurisdiction to issue informational decisions on abstract questions of wide public significance like this—particularly where the Appellants have no special relationship with the alleged parties in interest, are not truly dedicated to the best interests of the alleged parties in interest, and have waived the issue by not raising it on appeal—the Court should affirm the dismissal of Appellants' First Amended Complaint for a lack of third-party standing as well.

## IX.    CONCLUSION

The district court properly dismissed Appellants' claims against Clark County and the other government Appellees when it determined that the causal link alleged between the conduct of Clark County and the harm of the Appellants was too tenuous and weak to qualify for Article III standing. On de novo review, this court can affirm the district court's order or, if it so chooses, affirm the dismissal on other substantive grounds based on the face of the First Amended Complaint. Regardless of whichever

path the Court elects, however, the outcome is the same. Appellants' claims against

Clark County and the other government Appellees lack merit and do not articulate a

viable theory of causation and, accordingly, affirming the dismissal of this action

against these Appellees is the only appropriate course of action.

DATED this 12th day of July, 2023.

> STEVEN B. WOLFSON
> DISTRICT ATTORNEY
>
> By: /s/ Joel K. Browning
>     JOEL K. BROWNING
>     Deputy District Attorney
>     Nevada State Bar No. 14489
>     500 South Grand Central Pkwy. 5th Flr.
>     Las Vegas, Nevada 89155-2215
>     *Counsel for Defendant–Appellee Clark*
>     *County*

## X.     CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1. This document complies with the type-volume limitation set forth in Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 11,410 words.

2. This document complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5)(A) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point font.

DATED this 12th day of July, 2023.

> STEVEN B. WOLFSON
> DISTRICT ATTORNEY
>
>
> By: /s/ Joel K. Browning
>     JOEL K. BROWNING
>     Deputy District Attorney
>     Nevada State Bar No. 014489
>     500 South Grand Central Pkwy. 5th Flr.
>     Las Vegas, Nevada 89155-2215
>     *Counsel for Defendant–Appellee Clark County*

## XI.   STATEMENT OF RELATED CASES

The undersigned, counsel for Defendants-Appellees, certifies that to the best of his knowledge there are no related appeals pending in this Court.

DATED this 12th day of July, 2023.

> STEVEN B. WOLFSON
> DISTRICT ATTORNEY
>
> By: /s/ Joel K. Browning
>     JOEL K. BROWNING
>     Deputy District Attorney
>     Nevada State Bar No. 014489
>     500 South Grand Central Pkwy. 5th Flr.
>     Las Vegas, Nevada 89155-2215
>     *Counsel for Defendant–Appellee Clark County*

## XII.   CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Office of the Clark County District Attorney and that on this 12th day of July, 2023, I served a true and correct copy of the foregoing **DEFENDANT-APPELLEE CLARK COUNTY'S ANSWERING BRIEF** via the Court's electronic filing and service process.

/s/ Patricia Villa
An Employee of the Clark County
District Attorney's Office
Civil Division