No. 22-16859

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

ANGELA WILLIAMS, JANE DOE #1, and JANE DOE #2,

Plaintiffs-Appellants,

v.

JOSEPH LOMBARDO, IN HIS OFFICIAL CAPACITY AS
GOVERNOR OF NEVADA; AARON FORD,
IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF NEVADA;
CITY OF LAS VEGAS; CLARK COUNTY;
AND NYE COUNTY,

Defendant-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA (SOUTHERN DIVISION)
Case No.: 2:21-cv-01676-APG-VCF

\* \* \*

## DEFENDANT-APPELLEE NYE COUNTY'S ANSWERING BRIEF

BRENT L. RYMAN, ESQ.
PAUL M. BERTONE, ESQ.
ERICKSON, THORPE & SWAINSTON, LTD.
1885 South Arlington Ave., Suite 205
Reno, Nevada 89509
Telephone: 775-786-3930
*Attorneys for Defendant/Appellee NYE COUNTY*

# **TABLE OF CONTENTS**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

I.      Appellants point at nothing to overcome the presumption
        the district court reviewed the entire record in arriving at
        its conclusion concerning dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . .  11

II.     The district court did not abuse its discretion in granting
        dismissal with prejudice due to futility. . . . . . . . . . . . . . . . . . . . . . . . .  16

III.    There is no injury fairly traceable to Nye County. . . . . . . . . . . . . . . . .  19

        A.      An alleged irregularity in the licensing process is
                insufficient to tie Nye County to Jane Doe's purported
                injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

        B.      The district court did not overstate the role of
                independent parties in the casual chain. . . . . . . . . . . . . . . . . . . .  25

        C.      Nye County's system of regulating licensed brothels is
                not traceable to appellants' injuries. . . . . . . . . . . . . . . . . . . . . . .  27

        D.      The foreign jurisdiction, non-controlling "causation
                by benefitting through sex trafficking" cases have no
                applicability here, as Nye County is not facilitating
                criminal sex trafficking through maintaining a system
                of legal, licensed brothels. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

IV.  The district court's dismissal of this action due to lack of
     constitutional standing does not nullify any constitutional
     or statutory claims against sex traffickers' enablers or profiteers. . . . . . .  32

     A.   The fairly traceable standard has no implications to
          the merits of a rarified and hypothetical Thirteenth
          Amendment claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

     B.   The fairly traceable standard has no implications
          to the merits of a claim under the Trafficking
          Victims Protection Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

ii

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Allstate Ins. Co. v. Swann*
    27 F.3d 1539, 1542 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Alhawarin v. McCament*
    2018 WL 6265081 (C.D. Cal., Mar. 29, 2018). . . . . . . . . . . . . . . . . . . . . . . 9

*Asongakap v. Garland*
    2023 WL 3145316 (9th Cir., Apr. 28, 2023). . . . . . . . . . . . . . . . . . . . . . . 12

*Bonin v. Calderon*
    59 F.3d 815 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*BWD Prop. 2, LLC v. Franklin*
    2022 WL 2068813 (D. Nev., May 9, 2022). . . . . . . . . . . . . . . . . . . . . . . . 12

*Charleston v. Nevada*
    423 F.Supp.3d 1020 (D. Nev. 2019), *aff'd*, 830 F.App'x 948
    (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 28, 39

*Coho Salmon v. Pac. Lumber Co.*
    61 F.Supp.2d 1001 (N.D. Cal. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Curley v. Wells Fargo & Co.*
    692 F.App'x 900 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, n.1

*Fla. Abolitionist v. Backpage.com, LLC*
    2018 WL 1587477 (M.D. Fla., Mar. 31, 2018) . . . . . . . . . . . . . . . . . . . . . 30

*Fleites v. MindGeek S.A.R.L.*
    617 F.Supp.3d 1146 (C.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Frye v. Clark Cnty.*
    97 Nev. 632, 637 P.2d 1215 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*G & G Fire Sprinklers, Inc. v. Bradshaw*
    1997 WL 1106525 (9th Cir., Aug. 27, 1997). . . . . . . . . . . . . . . . . . . . 27, n.5

*Goodwin v. Hous. Auth. of New Orleans*
    2013 WL 3874907 (E.D. La., July 25, 2013). . . . . . . . . . . . . . . . . . . . . . 22

*Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc.*
    2023 WL 3040454 (D. Kan., Apr. 21, 2023). . . . . . . . . . . . . . . . . . . . . . 33

*Harewood v. Miami-Dade Cnty.*
    780 F.App'x 748 (11th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*H2O Houseboat Vacations Inc. v. Hernandez*
    103 F.3d 914 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hodge v. Hodge*
    14 V.I. 238 (Terr. V.I., Dec. 14, 1977). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re: Bella Hosp. Grp., LLC*
    649 B.R. 200 (B.A.P. 9th Cir. 2023).. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jahed v. Abraham* (No. 82749)
    524 P.3d 83, 2023 WL 2053075 (Nev. Ct. App., Feb. 15, 2023).. . . . . . . 24

*Jobson v. Henne*
    355 F.2d 129 (2d Cir. 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Kadva Patidar 42 Gam Samaj v. Cnty. of Riverside*
    777 F.App'x 215, 2019 WL 3099511 (9th Cir. 2019). . . . . . . . . . . . . . . 17

*Kelly v. United States*
    2020 WL 6074113 (S.D. Cal., May 22, 2020). . . . . . . . . . . . . . . . . . . . . 17

*Kokkonen v. Guardian Life Ins. Co.*
    511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) . . . . . . . . . . . . . 8

*Lacano Invs., LLC v. Balash*
765 F.3d 1068 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Larita-Martinez v. I.N.S.*
220 F.3d 1092 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lincoln v. BNSF Ry. Co.*
900 F.3d 1166 (10th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Maya v. Centex Corp.*
658 F.3d 1060 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27, 35

*McDermed v. Aces High Mgmt.*
2011 WL 2295140 (D. Nev., June 10, 2011). . . . . . . . . . . . . . . . . . . . 7, 34

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc*.
874 F.3d 604 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Morrison v. Nat'l Australia Bank Ltd.*
561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). . . . . . . . . . . . . . 7

*Novoa v. The GEO Grp., Inc.*
2020 WL 3031620 (C.D. Cal., Apr. 22, 2020). . . . . . . . . . . . . . . . . . . 36-38

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*
219 F.3d 895 (9th Cir. 2000), as amended (Aug. 11, 2000). . . . . . . . . . . 8

*Poppke v. Poppke*
57 S.D. 262, 231 N.W. 933 (1930). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*
65 F.4th 1012, 1022-23 (9th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. U.S.*
873 F.2d 218 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sywula v. Teleport Mobility, Inc*.
    2023 WL 362504 (S.D. Cal., Jan. 23, 2023).. . . . . . . . . . . . . . . . . . . . . . . 21

*Toland v. AT&T*
    489 F.App'x 318 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Unified Data Servs., LLC v. Fed. Trade Comm'n*
    39 F.4th 1200 (9th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Kozminski*
    487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) . . . . . . . . . . . . . 33

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*
    243 F.3d 1181 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Valley Forge Christian Coll. v. Americans United*
*for Separation of Church & State, Inc.*
    454 U.S. 464, 102 S.Ct. 752, 70 L.Ed. 2d 700 (1982). . . . . . . . . . . . . . 8, 25

*Wages v. I.R.S.*
    915 F.2d 1230 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 32

*Warren v. Fox Fam. Worldwide, Inc*.
    328 F.3d 1136 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Xayamonty v. United States*
    2023 WL 1438748 (D. Nev., Jan. 31, 2023) . . . . . . . . . . . . . . . . . . . . . . . 17

**U.S. Constitution**

U.S. CONST. art. III, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 37

**U.S. Constitutional Amendments**

U.S. CONST. amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Statutes – Federal**

18 U.S.C. § 1589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

18 U.S.C. § 1591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-5

18 U.S.C. § 1595. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-5

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

**Statutes – State**

NRS 200.468. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 26

NRS 201.320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

NRS 201.354. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 26

NRS 201.360. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 26

NRS 244.345. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

**Rules**

USCA 9th Cir. Rule 36-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28, n.5

USCA 9th Cir. Rule 30-1 (CIRCUIT ADVISORY COMMITTEE
   NOTE TO RULE 30-1.4(f)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, n.1

USCA 9th Cir. Rule 28-2.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

USCA 9th Cir. Rule 32-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

FED. R. APP. P. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

FED. R. APP. P. 32.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27, n.5

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, n.2

Fed. R. Civ. P. 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## **Codes**

Nye County Code (NCC) § 9.20.060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Nye County Code (NCC) § 9.20.140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## **Other Authorities**

*Execution and enforcement of law*, 1 Civ. Actions Against
      State & Loc. Gov't § 3:14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**INTRODUCTION**

Appellants Angela Williams and Jane Does #1 and #2, who claim to be former prostitutes, contend that Nevada's system of legalized prostitution enabled their purported abuse and trafficking. This suit represents the second attempt of at least one of these Appellants to end legalized prostitution in Nevada through a variety of constitutional, statutory and equitable attacks. The first suit was dismissed for lack of subject matter jurisdiction against various governmental agencies, a decision later affirmed in this Ninth Circuit Court of Appeals. *See*, *Charleston v. Nevada*, 423 F.Supp.3d 1020 (D. Nev. 2019), *aff'd*, 830 F.App'x 948 (9th Cir. 2020). Because only the faces have changed, this suit is similarly flawed. And in fact, this second suit was dismissed by the District Court for its near-identical lack of subject matter jurisdiction and constitutional standing due to the inability of these former prostitutes to articulate any injuries fairly traceable back to the acts or omissions of these city and state entities.

For the sound reasons of law and policy developed below, Nye County requests that this Court of Appeals now affirm the district court's well-reasoned and well-supported decision. No matter how lurid and stomach-churning the allegations within the First Amended Complaint, neither Nevada's system of highly-regulated, legalized prostitution nor these governmental entities' implementation of that system

may be found to be fairly traceable to these Appellants' alleged injuries. That is why the dismissal of this matter must be affirmed.

## STATEMENT OF ISSUES

1.      Did the Appellants overcome the presumption that the district court reviewed the entire record before arriving at its conclusion that no injury was fairly traceable back to Nye County and to the governmental entity Appellees generally?

2.      Did the district court err in dismissing the action with prejudice and without leave to amend due to futility, where dismissal for lack of subject matter jurisdiction is typically made without prejudice and with leave to amend?

3.      Did the district court err in making the determination on the face of the pleadings that no injury was fairly traceable back to Nye County and the governmental entity Appellees generally, and hence in dismissing the action for lack of subject matter jurisdiction?

4.      Does the fairly traceable injury standard employed in the constitutional standing analysis undermine the efficacy of claims made under the Thirteenth Amendment or the Trafficking Victims Protection Act as against those who may have inflicted injuries indirectly, or be subject to derivative forms of liability?

///

///

2

## STATEMENT OF THE CASE

Nevada maintains a system of legalized prostitution where licensed houses of prostitution are permitted to operate in counties whose population is 700,000 or fewer. *See*, NRS 244.345(8). This system is strictly regulated and controlled, and Nye County allows licensed bordellos to operate within its borders. *See*, ADD-131-153 (referencing partial portions of Nye County Code dedicated to regulating prostitution in licensed brothels). Pandering, sharing proceeds from prostitution with a pimp, sex trafficking and prostitution outside of the licensed brothel environment all constitute crimes in Nevada. *See*, NRS 201.320 (living from earnings of prostitute); NRS 200.468 (human trafficking); NRS 201.354 (prostitution outside licensed brothel); NRS 201.360 (making placing person in house of prostitution a crime).

Plaintiffs in the underlying action and Appellants here, Angela Williams and Jane Does #1 and #2, all claim to be former prostitutes and sex workers who at one time or another employed their services within the confines of Nevada and/or Nye County, services which included both legal and illegal acts of prostitution. Within the confines of the First Amended Complaint, filed November 10, 2021, Angela Williams and Jane Does #1 and #2 paint a tale of woe, regaling stories of ruined lives, savaged by violence and cruel manipulation at the hands of calculating

pimps and others who cruelly employed intoxicants, sexual abuse and rape to usher these hapless girls and women into careers of erotic entertainment and prostitution. *See*, ER-52-98. Throughout the pleadings these woman repeatedly portray themselves as genuine 21st-Century slaves. *Id*. At some point in time during these years-long dark odysseys, and even if ever so briefly, these women's paths all careened through Nevada. Here they allegedly served as erotic entertainers and/or prostitutes of both the licensed (and hence legal) and unlicensed (and hence criminal) variety. Jane Doe #1 avers she was "trafficked" in Nevada for a period of five years, from 2013 to 2018. *See*, ER- 85 (First Am. Compl.), p. 37, l.4. Specifically as to this Appellee (Nye County), Jane Doe further alleges that irregularities in the application process for a Nye County Sheriff's work card allowed her to prostitute herself at the Chicken Ranch in Nye County, where she was "trafficked," since at all times she was under the control of a pimp. *See*, ER 88-89. The pleading is unclear as to exactly how long Jane Doe suffered this plight within Nye County.

After a prolonged recitation of sordid factual averments, many of which are mere legal conclusions cast as fact, the Amended Complaint eventually coalesces into three causes of action, sounding as follows: (1) alleged violation of the Thirteenth Amendment ban on slavery; (2) alleged violation of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1595 by perpetrating sex trafficking, and (3) alleged violation of

4

18 U.S.C. § 1591(a)(2) and 18 U.S.C. § 1595 by benefitting from sex trafficking. *See*, ER- 98-101. The pleading's prayer for relief requests declaratory and injunctive relief that would effectively and actually put an immediate end to legalized prostitution in Nevada, nominal damages against the state defendants, compensatory and punitive damages against Nye County and the other city and sex industry defendants, restitution and disgorgement and finally attorneys' fees. *See*, ER-101-103.

On November 16, 2021, Clark County filed a "Motion to Strike Plaintiffs' First Amended Complaint for Misjoinder or Motion to Dismiss Plaintiffs' First Amended Complaint, in the Alternative."[1] This document comprehensively attacked the subject matter jurisdiction of the district court to hear the suit, and moved to dismiss on that

---

[1]. Neither the referenced motion, nor any of the other briefing from the district court was included in the Excerpts of Record by Appellants. Nye County believes omission of such briefing to be a mistake, since Appellants retain the burden of proving subject matter jurisdiction. "[T]he failure to present a sufficient record can itself serve as a basis for summary affirmance." *Curley v. Wells Fargo & Co.*, 692 F.App'x 900, 901 (9th Cir. 2017). "Where . . . we are forced to venture a guess as to the merits of an argument or claim, even an informed guess, we will summarily affirm the district court's judgment." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1190 (10th Cir. 2018). Nonetheless, in accord with this court's direction that "[l]egal memoranda and briefs ordinarily are not relevant to the issues on appeal and, therefore, should be excluded from the excerpts," reference to these motions not included in the excerpts is solely as "procedural history offered only for general background." USCA 9th Cir. Rule 30-1 (CIRCUIT ADVISORY COMMITTEE NOTE TO RULE 30-1.4(f)).

basis, *viz.*, for lack of constitutional standing. Similar briefing followed from a variety of defendants, in addition to Joinders with Clark County's Motion to Dismiss and particularly the arguments concerning constitutional standing.

On July 18, 2022, the district court issued its "Order on Motions to Dismiss, Strike and Intervene," the Order now under attack. *See*, ER-30-48. This Order dismissed the matter as to Nye County and the other State and City defendants for lack of subject matter jurisdiction because Angela Williams' and the Jane Does' causal link was too weak (not fairly traceable) to support constitutional standing. *See*, ER- 37. On November 4, 2022, a hearing was held whereupon the district court granted the defendants' motion for certification and entry of final judgment under FRCP Rule 54(b), with an Order issued following the hearing which formalized this result on November 7, 2022. *See*, ER-5; ER-8-29. Timely Notice of Appeal followed on December 1, 2022.

## STANDARD OF REVIEW

On appeal from dismissal for lack of subject matter jurisdiction, this Court of Appeals reviews the district court's legal conclusions de novo. *In re Bella Hosp. Grp., LLC*, 649 B.R. 200, 203 (B.A.P. 9th Cir. 2023); *Smith v. U.S.*, 873 F.2d 218, 219 (9th Cir. 1989). Findings of fact relevant to the district court's determination of subject matter jurisdiction are, however, reviewed for "clear error." *H2O Houseboat*

*Vacations Inc. v. Hernandez*, 103 F.3d 914, 916 (9th Cir. 1996).

When conducting its review, this court should adhere to the "cardinal principle of judicial restraint," which instructs that "if it is not necessary to decide more, it is necessary not to decide more." *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 617, n.13 (9th Cir. 2017). "Issues that clearly are not designated in the initial brief ordinarily are considered abandoned." *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994). The appellate court need "consider only those arguments raised in an appellant's initial brief." *Toland v. AT&T*, 489 F. App'x 318, 319, n.1 (11th Cir. 2012).

"Subject-matter jurisdiction . . . refers to a tribunal's power to hear a case. It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254, 130 S.Ct. 2869, 2877, 177 L.Ed. 2d 535 (2010). "A jurisdictional dismissal is not a judgment on the merits." *Wages v. I.R.S.*, 915 F.2d 1230, 1234 (9th Cir. 1990). "Subject matter jurisdiction is a threshold issue that goes to the power of the court to hear a case . . . ." *McDermed v. Aces High Mgmt.*, 2011 WL 2295140, at *2 (D. Nev., June 10, 2011).

///

///

7

> At the most general level, the standing inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete case or controversy to which the federal judicial power may extend under Article III, § 2.

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000), as amended (Aug. 11, 2000).

"In addition, even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474-75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). And in the State of Nevada, whose voters have repeatedly rejected bids to end legalized prostitution, it remains the plaintiff who bears the burden of demonstrating that the court has subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

"In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. When there is a facial attack on jurisdiction, the nonmoving party is not required to present evidence

8

outside the pleadings . . . ." *Alhawarin v. McCament*, 2018 WL 6265081, at \*4 (C.D. Cal., Mar. 29, 2018). "In the context of a motion to dismiss, all of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Unified Data Servs., LLC v. Fed. Trade Comm'n,* 39 F.4th 1200, 1209 (9th Cir. 2022). "For purposes of this inquiry, there is no difference between allegations and the underlying facts." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). Nonetheless, the court is under no obligation to "accept legal conclusions in the complaint as true, even if cast in the form of factual allegations." *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). And "in ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc*., 328 F.3d 1136, 1141, n.5 (9th Cir. 2003).

## <u>SUMMARY OF ARGUMENT</u>

Nye County attempts throughout this brief to closely follow the Appellants' line of argument with coherent, responsive counter-argument, with supporting authority, seeking to illustrate for the court the errors or weaknesses in the Appellants' position and contentions. As such, Nye County shall initially illustrate that the district court was not required to separately cite and analyze each and every averment in the Amended Complaint. While this appears to be the main thrust of

9

Appellants' attack, it simply does not support an inference that the district court failed to consider all unmentioned allegations and averments. It is the Appellants' burden to point to evidence in the record or wording in Order with which to overcome the presumption that the district court reviewed the entire record in reaching its decision, and this they have failed to do.

Next, Nye County will illustrate that while dismissal for lack of subject matter jurisdiction is often without prejudice, a dismissal with prejudice and without leave to amend is justified here since any amendment would truly be futile. Futility is demonstrated in a number of manners here, not the least of which is that district court had already afforded one opportunity at amendment. And, of course, this Court of Appeals has already affirmed a very similar dismissal of a very similar suit, involving at least one of the Appellants here.

Nye County will then thwart Appellants' contention that the acts of independent third-parties did not break the causal chain from their alleged injuries to the County. Nye County will show how no injury is "fairly traceable" back to the County by illustrating several points, including: (A) how mere irregularities in the licensing application process of a prostitute is insufficient to render Nye County responsible for Jane Doe's alleged sexual trafficking; (B) how the district court did not overstate the role of independent third-parties, as regardless, the links to the

county are too hypothetical and tenuous to be plausible; (C) how legalized prostitution is not the source of Appellants' or Jane Doe's injuries; and finally, (D) how there is no causation sufficient to confer standing, since Nye County is not benefitting through sex trafficking by maintaining a system of licensed brothels. These points are fatal to Appellants' challenge of the district court's dismissal for lack of standing.

Finally, Nye County will illustrate how the fairly traceable component of the constitutional standing test does not thwart or undermine the application or efficacy of either a Thirteenth Amendment claim or a claim made pursuant to the statutory Trafficking Victims Protection Act.

I.   **Appellants point at nothing to overcome the presumption the district court reviewed the entire record in arriving at its conclusion concerning dismissal.**

Appellants Williams and the Jane Does claim the district court failed to review the entire record in coming to its conclusion that the sex trafficking injuries alleged were not sufficiently traceable to the government appellees. This contention seems to derive in large part through implication, since the written Order dismissing the lower action did not individually identify and dissect each and every allegation and averment contained within the First Amended Complaint. *See*, AOB, pp. 22-31. But

this Circuit employs a presumption that the lower court reviewed the entire record in arriving at its conclusion, and the Appellants have certainly made no affirmative showing to overcome this presumption within their opening papers.

In the Ninth Circuit, "it is so expected that a court would review all relevant materials in the record that reviewing courts have presumed it." *Larita-Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir. 2000). As such, a presumption exists that "a fact finder reviews all the evidence presented unless it explicitly expresses otherwise." *Id.* "Absent evidence to the contrary," the presumption will stand. *Id.* Though the entire record must be reviewed, such requirement does not translate into a duty to issue a decision which "must individually identify and discuss every piece of evidence in the record." *Asongkap v. Garland*, 2023 WL 3145316, at *1 (9th Cir., Apr. 28, 2023). "Sufficient indicia" may show that the decision below considered the total record. *Id.*; *see also, BWD Prop. 2, LLC v. Franklin*, 2022 WL 2068813, at *1 (D. Nev., May 9, 2022) ("Nothing in the record suggests the Court did not consider it before issuing its order."); *Harewood v. Miami-Dade Cnty.*, 780 F.App'x 748, 753 (11th Cir. 2019) ("It has long been the law of this circuit that in the absence of some affirmative indication to the contrary, we assume all courts base rulings upon a review of the entire record.").

///

12

The premise of these Appellants' argument, explored via flow-chart, is that if a particular allegation was not separately mentioned and discussed in the district court Order, it could not have been "analyz[ed]" or "accept[ed] as true" in construing the causal role of the governmental entities in these unfortunate women's "exploitation." *See*, AOB, p. 23 (quoted language); pp. 23-29 (charts employed). The mere fact that each accusation in the Amended Complaint was not discussed in the Order dismissing the governmental defendants is not an indication of a failure to review the entire record. There is no such duty to identify and discuss every averment of the pleading under attack. Sufficient indicia that the entire record was reviewed is reflected in the reasoning and language of the Order itself. And an examination of that dispositive Order reflects that the lower court discussed, and thoroughly analyzed, what it considered to be the more salient allegations, and the failure of these facts, which were presumed to be true, to establish constitutional standing against these governmental entities. The vast scope of the district court's consideration of the entire record is reflected in both the "Background" portion of the Order, and that portion examining Clark County's subject matter jurisdiction arguments. *See*, ER-30-33; ER-34-38. This Order was no "one-liner." And it employs linear reasoning supported by facts, accepted as true, with case authority throughout.

///

13

And to the extent that the Appellants are complaining that the district court "lumped . . . together" its analysis of governmental entity defendants without consideration of "facts specific to each one," the overwhelming components of those purportedly neglected facts, supposedly left unconsidered, are nothing but legal conclusions dressed up to look like factual allegations. The following are some salient examples of these legal conclusions cast in the form of factual allegations levied against Nye County: allowing brothels to employ coercion through debt; allowing compelled prostitution (trafficking) in brothels; failure to vigorously prosecute sex trafficking; significant government corruption; failure to check ID or otherwise screen for sex trafficking; profiting from sex trafficking through brothel license fees; profiting from sex trafficking from collecting property taxes; depending significantly on tourism and casino revenue, which is motivated at least in part by sex buying/sex tourism; correlation of legalized prostitution with sex trafficking; and, demand fueled by perception of legalized prostitution. *See*, AOB, pp. 25-29 (legal conclusions dressed as "factual" allegations which are proffered in flow chart against Nye County particularly).

On a motion to dismiss for lack of subject matter jurisdiction, the district court was obligated to accept all of the factual allegations in the complaint as true, but there is no corresponding duty to accept legal conclusions in the complaint as true, "even

if cast in the form of factual allegations." *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). The lower court had no obligation to accept multitudinous legal conclusions which purportedly prove that the governmental entity defendants "built sex trafficking into their system." *See*, AOB, p. 31. And in the end, the use of these legal conclusions does nothing more than draw into stark relief the desperation of these former sex workers to somehow paint Nye County (and these governmental Appellees in general) with a degree of culpability for the skewed paths of their lives and their own personal failings, where there is none. Nye County did not sex traffic these women, and whatever injuries they suffered are not fairly traceable to its highly-regulated, carefully-monitored and lawfully-sanctioned, safe and sanitary system of legalized prostitution.

In granting Clark County's Motion to Dismiss for lack of subject matter jurisdiction, the Order of July 22, 2022 also reflects that not only was Clark County's contribution considered, but so too were all the efforts of the parties who joined Clark County's dispositive motion. "The State Defendants, Nye County, the City of Las Vegas, and the Brothel Defendants join Clark County's motion, largely echoing Clark County's arguments or providing no additional analysis." *See*, ER-35, Order,

15

pp. 5-6, ll. 18-2.[2]  If the district court could critique the co-defendants' arguments, that necessarily indicates that those voluminous matters were read, analyzed and considered.  Again, the fact the district court did not specifically mention each and every allegation in the Amended Complaint in its ruling does not mean it did not consider them, and any contention otherwise, any requirement that the allegation is either mentioned, or implicitly deemed overlooked, would be utter folly and completely unworkable.

## II.     The district court did not abuse its discretion in granting dismissal with prejudice due to futility.

Appellants contend error through the district court's refusal to allow amendment to the pleading, rather than dismissal without prejudice with leave to amend.  *See*, AOB, pp. 31-32.  The district court had denied amendment because the Plaintiffs had previously amended their complaint, and because it determined that the standing deficiency could not be cured by further amendment.  *See*, ER-37, Order, p. 8, ll. 7-9.  This was undoubtedly the correct result.

---

[2]. Nye County primarily focused its own dispositive motions and joinders in Clark County's briefings on the merits of the claims proffered in the Amended Complaint, attacking under FRCP Rule 12(b)(6), whereas Clark County had already accomplished a very thorough attack of subject matter jurisdiction under FRCP Rule 12(b)(1), and frankly Nye County wanted to avoid repetitive argument.  But one way or another, all these issues which Appellants contend were overlooked were assiduously addressed in the lower court proceedings.

"Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court." *Xayamonty v. United States*, 2023 WL 1438748, at *2 (D. Nev., Jan. 31, 2023). "However, where there is no way to cure the jurisdictional defect, dismissal with prejudice is proper." *Id.* "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). And having properly determined a lack of subject matter jurisdiction, the district court does not abuse its discretion, in denying leave to amend and thus in dismissing with prejudice, where amendment would be futile. *See, Kadva Patidar 42 Gam Samaj v. Cnty. of Riverside*, 777 F. App'x 215, 217, 2019 WL 3099511, at *2 (9th Cir. 2019) ("[B]ecause the district court correctly held that it lacked subject matter jurisdiction, it did not abuse its discretion by denying . . . leave to amend the complaint as any amendment would have been futile."); *Kelly v. United States*, 2020 WL 6074113, at *6 (S.D. Cal., May 22, 2020) ("Finding amendment would be futile, the Court DISMISSES WITH PREJUDICE Plaintiff's suit for lack of subject-matter jurisdiction.").

The standing deficiency here is not going to be cured by further amendment. Firstly, Appellants have already enjoyed an opportunity to amend within this suit, as is evidenced by the fact that it was an amended complaint which was dismissed. But

moreover, this Court of Appeals should not lose sight of the fact this action is now at least the second attempt of these former prostitutes, who by casting themselves as victims of sex trafficking, are essentially seeking to repeal legalized prostitution in Nevada.[3]  Certainly there are some differences between the first and second suits. Now the Appellant "victims" include additional Jane Does, and the causes of action have been refined and the allegations made more shocking.  However, the objectives of both suits are exactly the same: To accomplish that which cannot be done at the polls or legislature, and eliminate legalized prostitution in Nevada.

In any event, the first suit is sufficiently similar to the parties and issues here to make the point concerning futility.  And the first suit ended for exactly the same reason, specifically lack of subject matter jurisdiction over the governmental entity defendants.   A similar facial challenge even spelled the end in both suits. *Charleston v. Nevada*, 423 F.Supp.3d 1020 (D. Nev. 2019).  The first dismissal too was affirmed by this Court of Appeals.  *Charleston v. Nevada*, 830 F.App'x 948 (9th Cir. 2020).  Appellants, or more aptly the attorneys pursuing both this suit and the first, suits which share many common themes and parties, have enjoyed multiple

---

[3].  In this regard, Nye County would point to the following media report for illustrative purposes:

https://www.rgj.com/story/news/local/mason-valley/2019/03/22/brothel-workers-personal-information-sought-attorney-investigation/3219207002/

opportunities to extend their theories of liability to the governmental entities charged with implementing Nevada's system of legalized prostitution. They cannot find one that works because legalized prostitution has no culpability for the appellants' injuries.

Further amendment, with ever more fantastic, ever more far-fetched and salacious tales of woe, will not magically bestow constitutional standing where there is none. Where the Amended Complaint already paints a yarn of years-long tortures at the hands of monstrously cruel and manipulative third-party pimps, much of it unfolding out-of-state, that these misadventures may have at some point stumbled through Nye County does not render injuries fairly traceable to it or to its system of legalized prostitution.

**III. There is no injury fairly traceable to Nye County.**

    **A.    An alleged irregularity in the licensing process is insufficient to tie Nye County to Jane Doe's purported injury.**

Appellants maintain the district court misunderstood or misconstrued their relevant injuries, which they claim were fairly traceable back to the government entity defendants. *See*, AOB, pp. 32-35. According to the Appellants, "[t]hey sued for what was done to them in entities ultimately under the Government Defendants' control, that is for enabling and profiting from the Sex Industry Defendants' trafficking of

Plaintiff." *See*, AOB, p. 34. In line with this argument, since they were trafficked in "legal, licensed businesses," the district court somehow misconstrued the third-parties' roles and involvement, leaving the court unable to trace liability for injury back to the governmental entities under attack. *Id*. On this basis, dismissal for lack of constitutional standing and subject matter jurisdiction was purported error.

By way of a quick review of applicable law,

> the three elements that comprise the irreducible constitutional minimum of standing: (1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical that is (2) causally connected and fairly traceable to the conduct complained of and not the result of the independent action of some third party not before the court and (3) likely as opposed to merely speculative, such that the injury will be redressed by a favorable decision.

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1022-23 (9th Cir. 2023).

The Order under attack found the causal chain too weak to support standing against the City and State Defendants, which include Nye County. *See*, ER-37. Nonetheless, Appellants now maintain that Jane Doe #1's injuries for being trafficked are allegedly "fairly traceable" to Nye County due to its, or rather its Sheriff's, purported failure of due diligence. Supposedly, because the Sheriff's Office did not ask for her "government ID," her injuries are fairly traceable to Nye County. *See*,

20

ER-88. Contrary to Appellants' assertion here, the complaint does not allege that Nye County "did not even ask for identification." *See*, AOB, p. 34. Again, the operable pleading alleges the Sheriff did not ask for a "government ID." *See*, ER-88, Amended Complaint, p. 40, ll. 8-12. One way or another, Jane Doe did obtain a work card, which if County regulations were even remotely enforced, necessarily means that Jane Doe was subjected to substantial scrutiny and investigation. *See*, ADD 142-46 (NCC § 9.20.140 (Requirement And Application for Work Card)). Jane Doe does not allege that she was under-aged during this application process.

But let us go along with Jane Doe's version of events, and assume the Sheriff's Office did not ask for a "government ID." From this, Appellants maintain it is "reasonable to infer" that her traffickers knew, from this single alleged failure, that Nye County did not check identification and did not care that sex workers could not produce one. *See*, AOB, pp. 34-35. And with this inference, Nye County's conduct supposedly falls "squarely" in the casual chain of abuses suffered by Jane Doe. Even with this syllogism, dependent on legal conclusions cast as fact, it should be readily apparent that Nye County is not in any way responsible for Jane Doe's injuries. And that is so even "[i]n the nebulous land of 'fairly traceable,' where causation means more than speculative but less than but-for . . . ." *Sywula v. Teleport Mobility, Inc.*, 2023 WL 362504, at *22 (S.D. Cal., Jan. 23, 2023). And once the court determines

that the fairly traceable requirement of constitutional standing has not been met, it need not address whether the proponent is able to establish the other requirements of constitutional standing. *Goodwin v. Hous. Auth. of New Orleans*, 2013 WL 3874907, at *10, n.47 (E.D. La., July 25, 2013).

Again, even taking Jane Doe's allegations at face value, to trace liability to Nye County, the court is asked to infer that one anomalous application for a Sheriff's work card means that all applications are accomplished in the same erroneous fashion, and moreover that the "traffickers" are aware of this fact and count on it. Yes, if only the Sheriff's Office had asked for "government ID," then that Office could have prevented her from prostituting herself, because Jane Doe's reasoning also asks the court to infer and assume that she had no will power of her own. Such is too faint a trail for even a bloodhound to trace back to Nye County. More importantly, public entities are not liable for injury caused by failing to enforce any law. *See, e.g.*, *Frye v. Clark Cnty.*, 97 Nev. 632, 633, 637 P.2d 1215, 1216 (1981) (municipalities or governmental agencies are not usually liable for failure to enforce ordinances or for dereliction of duties which benefit the public at large); § 3:14. *Execution and enforcement of law*, 1 Civ. Actions Against State & Loc. Gov't § 3:14 (citing statutes affording municipal immunity and case law upholding same, in legion).

///

22

Nye County is not profiting from sex trafficking. *See*, AOB, p. 35. It has a system of laws in place – an entire code – designed not only to preclude trafficking, but to protect that public health and welfare. The effort to thwart trafficking begins with legalized prostitution's stated salutary public policy goal: "It is the declared policy of the Board that all establishments, where brothels are conducted or operated, are licensed and controlled so as to better protect the public health, safety, morals, good order and welfare of the inhabitants of the County." Nye County Code (NCC) § 9.20.060.[4] Neither Nye County nor its Sheriff or Sheriff's Deputies have the obligation to assume that every adult woman who seeks to prostitute herself is necessarily a tragic bondmaid, possessing no will of her own, behind whom is a vicious puppet master, forcing her ribald acts for their own illegal, personal profit.

In a jurisdiction where prostitution is legalized and highly and strictly controlled and regulated, absent some indication otherwise, an adult woman who seeks to prostitute herself should be presumed to act of her own free will and in good

---

[4] Available at the following link: https://nyecounty.municipalcodeonline.com/book?type=ordinances#name=9.20.060:_Application_Generally. Nye County did also want to take this opportunity to clarify that the ADD papers filed with this court by Appellants contain only select portions of the Nye County Code applicable to prostitution, and not the whole code. All provisions applicable to prostitution are however available here: https://nyecounty.municipalcodeonline.com/book?type=ordinances#name=CHAPTER_9.20_PROSTITUTION.

faith. "Public policy demands that all persons are presumed to act in a moral and legal fashion rather than the contrary." *Hodge v. Hodge*, 14 V.I. 238, 244 (Terr. V.I., Dec. 14, 1977). "[T]he general rule is that all persons are presumed to act honestly and in good faith." *Poppke v. Poppke,* 57 S.D. 262, 231 N.W. 933, 934 (1930); *see also*, *Jahed v. Abraham* (No. 82749), 524 P.3d 83, 2023 WL 2053075, at *3 (Nev. Ct. App., Feb. 15, 2023) (unpublished disposition) ("Good faith is presumed, and the party alleging a lack of good faith must carry the burden of proving bad faith."). Both Nye County and its employees should benefit from that presumption, and to require otherwise would potentially put these actors in danger of violating the rights of other applicants who seek approval under the Brothel Code.

Under a system which has sought to contain, control and regulate prostitution, Nye County may not presumptuously treat every person who applies to work as a prostitute as a criminal, who is working in tandem with other criminals, all to accomplish some sinister criminal conspiracy. And that is precisely what is being sought. In that light, Nye County looks at the allegations within the Amended Complaint and suggests there is nothing that necessarily leads to the conclusion, or even the suspicion, that Jane Doe was being trafficked. Some mere irregularity in the application process, which is all that is alleged here, is simply insufficient to fairly trace liability for damages back to Nye County.

24

**B.      The district court did not overstate the role of independent parties in the casual chain.**

Appellants contend that in denying constitutional standing, the district court placed too much emphasis on the acts of independent third parties, especially where the criminal conduct of those third-persons was a "predictable result of the system the Government Defendants have established." *See*, AOB, p. 38.  Such arguments reveal the true nature of this suit, which is posing as a vehicle for individual damages and wrongs, but is in reality a generalized attack on the entire system and institution of legalized prostitution.  The district court acted within its sound and salutary discretion in refusing to allow the court system to be so abused.  "[E]ven when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating abstract questions of wide public significance which amount to generalized grievances . . . most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474-75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982).

If Nevada's experiment in legalized prostitution, a half-century in the making, is to be ended, it should be accomplished at the polls or through the legislature.  Lest the court lose sight, both sex trafficking and prostitution outside regulated brothels

are specifically outlawed in Nevada. *See*, NRS 200.468 (human trafficking); NRS 201.354 (prostitution outside licensed brothel); *see also*, NRS 201.360 (making placing person in house of prostitution a crime). Nevada's system of legalized prostitution did not make the Appellants or their pimps turn to crime. And because the system of legalized prostitution may have been criminally abused by the appellants and their traffickers is not a basis to find fault in the system.

Appellants need look no further than their purported traffickers, or perhaps in the mirror, to find the cause for their alleged misery. Trying to blame the state when their own conduct alleged the Amended Complaint is outright criminal is simply farcical. "The causal link between the alleged harm and the challenged conduct may become too attenuated if the injury complained of is the result of the independent action of some third party not before the court." *Coho Salmon v. Pac. Lumber Co.*, 61 F.Supp.2d 1001, 1013 (N.D. Cal. 1999). The purported links to Nye County are too hypothetical and too tenuous to remain plausible, even under the nebulous "fairly traceable" standard:

> What matters is not the length of the chain of causation, but rather the plausibility of the links that comprise the chain. In cases where a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the Supreme Court and this court have found the causal chain too weak to support standing at the pleading stage.

*Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)

There are multitude of pimps, panderers, human traffickers and racketeers described in the Amended Complaint and hence in the chain of causation here, some of them in prison, whose independent decisions collectively had a significant impact on Appellants' injuries. In legalizing prostitution, these were the exact people which Nevada sought to remove from the equation. Nevada's system is not responsible for these third-persons' crimes, and not responsible for these former prostitutes alleged injuries. The district court had good reason to refuse constitutional standing based on too weak and attenuated a connection with the government entity appellees.

### C. Nye County's system of regulating licensed brothels is not traceable to appellants' injuries.

Continuing with this theme, Appellants contend that through erroneous enforcement of regulation and licensing, it was predictable that their traffickers would inflict injury upon them, and hence those injuries are fairly traceable back to Nye County. *See*, AOB, pp. 39-46. With respect, the reasoning was somewhat hard to follow, but the above summation is a good faith one. Regardless, in addition to simply incorporating by reference the responsive arguments in the subsection immediately above, Nye County did have some additional comments. None of that case law which purportedly shows that causation may be established where the

government fails to properly regulate "someone else," has anything to do with legalized prostitution.[5] But there is some authority in this circuit which the appellants may have overlooked, which if not controlling, is certainly more persuasive than any of the decisions offered by Appellants. And the district court surely did not overlook this highly persuasive authority, because it cited such precedent in dismissing Appellants' case against these governmental entities. The decision (from the Order), and its reliance on this authority is worth quoting at length:

> Because numerous third parties and their independent actions collectively impacted the plaintiffs in a significant way, and because the out-of-state origins and continuations of the plaintiffs' trafficking further attenuate Nevada's role in their respective ordeals, the plaintiffs' alleged causal chain is too weak to support standing against the City and State Defendants. *See Charleston v. Nev.*, 423 F.Supp.3d 1020, 1027-28 (D. Nev. 2019) (dismissing comparable action, including some identical parties, for lack of standing), *aff'd*, 830 F.App'x 948 (9th Cir. 2020). Consequently, I dismiss with prejudice the plaintiffs' claims against Clark County, Nye County, the City of Las Vegas, Steve Sisolak, and Aaron Ford.

*See*, ER-36-37, Order, pp. 7-8, ll. 23-7.

///

---

[5]. Nye County notes that Appellants' argument included repeated reliance on an unpublished decision issued before January 1, 2007, which is inappropriate. *See*, AOB, p. 40 and pp.44-45, citing *G & G Fire Sprinklers, Inc. v. Bradshaw*, 1997 WL 1106525 (9th Cir., Aug. 27, 1997); Fed.R.App.P. 32.1(a)(ii); U.S.Ct. of App. 9th Cir.Rule 36-3 (prohibiting citation of disposition issued before January 1, 2007 except in circumstances which have no application here).

What has changed between this suit and the first besides a couple different faces and ever more lurid and fantastical details, drafted in an increasingly desperate effort to conjure constitutional standing?  As correctly observed by the district court, the most persuasive decision and reasoning from this circuit, which involved a comparable action, even including some identical parties, has already found that the causal chain between governmental defendants and aggrieved former prostitutes is too weak to support standing.  Rather than relying on case authority having nothing to do with legalized prostitution, appellants' efforts would be better spent attempting to distinguish why and how this second dismissal for lack of subject matter jurisdiction is any different from the first dismissal for exactly the same reason.

But in this vein, the comparisons with labor trafficking and debt bondage in Reconstruction-era Mississippi (approx. years 1865 through 1877) have about as much utility as the case law cited by appellants which does not address regulating and licensing bordellos.  The district court got it right.  Both times.  Nye County hopes and expects this appellate court do the same.

///

///

///

///

29

**D.    The foreign jurisdiction, non-controlling "causation by benefitting through sex trafficking" cases have no applicability here, as Nye County is not facilitating criminal sex trafficking through maintaining a system of legal, licensed brothels.**

As alluded to above, the prior related action and the decisions which resulted therefrom represent, if not controlling authority, then certainly the most persuasive and pertinent for the questions concerning standing here presented.    The two decisions cited by Appellants which the district court allegedly failed to consider do nothing which would have required a different result from the Order which dismissed this case.[6]    *See*, AOB, pp. 46-50.  In *Fla. Abolitionist v. Backpage.com, LLC,* 2018 WL 1587477, at *2 (M.D. Fla., Mar. 31, 2018), the purported facilitator-beneficiary to whom there was attributable sufficient causation to confer constitutional standing was a website operator which posted advertisement, for a fee, for criminal and illegal prostitution services.  In *Fleites v. MindGeek S.A.R.L.*, 617 F.Supp.3d 1146, 1155-58 (C.D. Cal. 2022), the credit agency Visa facilitated injury, sufficient to confer constitutional standing, where it was processing payment from a website which it knew (assumed for the purpose of testing standing, since knowledge was alleged in

---

[6].  This position presupposes that these decisions were actually brought to the district court's attention, which is unclear.

the complaint) was selling a substantial amount of child pornography. Both these decisions therefore reflect generating a profit from knowingly criminal activities.

By maintaining a system of highly-regulated and licensed brothels, Nye County was not profiting or facilitating, directly or indirectly, any form of outright criminal activity, much less from sex trafficking. Legalized prostitution is not a criminal activity which, again, is exactly what the Appellants are asking this court to infer with this argument, and with the citation to these two cases. As such, Nye County has nothing remotely in common with the alleged "facilitators" in either *Backpage.com* or in *MindGeek*. And if Jane Doe #1 were criminally sharing the proceeds of her labors with a pimp, it was not the fault of Nye County's such as to make any injury suffered by her fairly traceable back to Nye County. The only admitted criminals or former criminals here are Jane Doe #1 and her pimps, and Nye County's alleged failure to catch and prosecute them does not magically render the county liable for their crimes.

///

///

///

///

///

IV.    **The district court's dismissal of this action due to lack of constitutional standing does not nullify any constitutional or statutory claims against sex traffickers' enablers or profiteers.**

A.    **The fairly traceable standard has no implications to the merits of a rarified and hypothetical Thirteenth Amendment claim.**

Appellants contend that the district court's application of the "fairly traceable" prong undermines the Thirteenth Amendment. *See*, AOB, pp. 51-56. In the face of such a contention, Nye County maintains that one has nothing to do with the other. If the injury is fairly traceable to party, constitution standing may be inferred, and the party pursuing the claims is free to utilize the Thirteenth Amendment to their heart's content. "A jurisdictional dismissal is not a judgment on the merits." *Wages v. I.R.S.*, 915 F.2d 1230, 1234 (9th Cir. 1990). Facially, the fairly traceable standard would seem to have nothing to do with the merits of a Thirteenth Amendment claim, even if 42 U.S.C. § 1983 could be deemed to afford a private right of action to the Thirteenth Amendment, and even if such a claim could then be extended to the plight of "enslaved" regulated and licensed prostitutes who are free to leave at any time.

///

///

32

As the district court noted in its Order, at least one circuit court has recognized a private right of action under the Thirteenth Amendment, *Jobson v. Henne*, 355 F.2d 129, 132 (2d Cir. 1966), which found that a plaintiff stated such a claim under § 1983. On that basis, the district court liberally and generously recognized the possibility of such claim in the underlying Order under attack. *See*, ER-39, Order, p. 10, ll. 7-10. But the vast majority of cases have ruled otherwise. *See, e.g., Guesby v. Bert Nash Cmty. Mental Health* Ctr., Inc., 2023 WL 3040454, at *3 (D. Kan., Apr. 21, 2023) (citing cases in legion). Either way, "[e]ven courts who have concluded that the Thirteenth Amendment may give rise to a private cause of action agree that such an action could arise only when attacking slavery itself or other forms of compulsory labor akin to slavery and not when challenging badges and incidents of slavery." *Id.*

Any putative Thirteenth Amendment claim must necessarily include some involvement of the state and the sanction of its system of laws, which must underlie and support that form of involuntary servitude, and that is what is blatantly missing here. "Looking behind the broad statements of purpose to the actual holdings, we find that in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *United States v. Kozminski*, 487 U.S. 931, 942-43, 108 S.Ct. 2751, 2760,

101 L.Ed.2d 788 (1988). Absent state sanction in the form of a system of laws forcing the plaintiffs to continue prostituting themselves or face punishment, there can be no Thirteenth Amendment claim. While appellants may contend they are slaves because they cannot leave the brothel during the pendency of their sex work, a more apt and accurate description of their plight and dilemma would be "cannot leave the brothel without breaking the terms of their contractual agreement with the brothel." *See, e.g.*, AOB, p. 25 (claiming women required to be attached to a brothel and locked inside). Breaching any agreement with a brothel, or leaving a debt owed to a brothel is not a crime, but a civil matter. The Sheriff's Office is not charged to dispatch deputies to catch the "runaway prostitutes" and force them under duress or threat of criminal prosecution to return to the servitude of the brothel. And absent such allegations, there is no sanction of law for leaving the brothel, and no involuntary servitude.

But all this goes to the merits of a Thirteenth Amendment claim. Subject matter jurisdiction involves a different set of elements from those used in determining whether a plaintiff has failed to state a claim upon which relief can be granted. "Subject matter jurisdiction is a threshold issue that goes to the power of the court to hear a case . . . ." *McDermed v. Aces High Mgmt.*, 2011 WL 2295140, at *2 (D. Nev., June 10, 2011).

34

>       *Twombly* and *Iqbal* are ill-suited to application in the
>       constitutional standing context because in determining
>       whether plaintiff states a claim under 12(b)(6), the court
>       necessarily assesses the merits of plaintiff's case. But the
>       threshold question of whether plaintiff has standing (and
>       the court has jurisdiction) is distinct from the merits of his
>       claim. Rather, the jurisdictional question of standing
>       precedes, and does not require, analysis of the merits. Nor
>       can standing analysis, which prevents a claim from being
>       adjudicated for lack of jurisdiction, be used to disguise
>       merits analysis, which determines whether a claim is one
>       for which relief can be granted if factually true. This is not
>       to say that plaintiff may rely on a bare legal conclusion to
>       assert injury-in-fact, or engage in an ingenious academic
>       exercise in the conceivable to explain how defendants'
>       actions caused his injury. We simply note that *Twombly*
>       and *Iqbal* deal with a fundamentally different issue, and
>       that the court's focus should be on the jurisprudence that
>       deals with constitutional standing.

*Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

Constitutional standing is a fundamentally different issue from the
consideration of the merits of a claim. Before one even reaches the merits, the fairly
traceable injury component must be satisfied. Appellants have somehow conflated
the two concepts, but either way, the constitution standing analysis the district court
employed in no way limits the application of the Thirteenth Amendment or affects the
merits of such a claim, or limits its application. And again, all this assumes that such
a claim even exists, which is doubtful, especially where these women were not being
held in place and forced to prostitute themselves by any laws employed and enforced

by Nye County.

> **B.** **The fairly traceable standard has no implications to the merits of a claim under the Trafficking Victims Protection Act.**

Appellants apply identical reasoning to the Trafficking Victims Protection Act, arguing the district court's application of the fairly traceable element and subsequent dismissal for lack of constitutional standing somehow affects the merits of a claim made under the Act. *See*, AOB, pp. 57-59. And in response, Nye County will largely incorporate by reference the arguments immediately above, which are equally applicable to the merits of any TVPA or TVPRA claims. Constitutional standing involves a different set of criteria than adjudging the merits of any claims, including claims made under the TVPA or TVPRA. Apples and oranges.

If an injury is not fairly traceable back to a party, then the mere presence of a remedy under the TVPA or TVRPA is not going to serve to confer constitutional standing. But as long as the standing component can be satisfied, a party is free to proceed with the trafficking victims' claim. For example, *Novoa v. The GEO Grp., Inc.*, 2020 WL 3031620, at *1 (C.D. Cal., Apr. 22, 2020), plaintiff, as the head of a class of persons similarly situated, was seeking an injunction arising out of his detention at a correctional facility. The underlying suit was proffering a number of

claims, including violation of California's Minimum Wage Law, violation of California's Trafficking Victims Protection Act ("CTVPA"), as well as a claim involving allegations of forced labor under the Federal Trafficking Victims Protection Act ("TVPA"). *Id.*

But before the court could reach any of these claims, or the request for injunctive relief, it had to first conduct its constitutional standing analysis, to determine "whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete 'case' or 'controversy' to which the federal judicial power may extend under Article III, § 2." *Id*., at *6. In so doing, the court determined the harm asserted to be concrete and particularized, and further that it could be traced to the defendant's sanitation policies and reliance on detainee labor. *Id.*

Only once standing requirements were determined did the court then proceeded to the analysis of the request for injunctive relief (a temporary restraining order), finding in part, that the plaintiffs were likely to succeed on the merits of their TVPA claim. *Id.*, at *6-7. And in so doing, the court also recognized the component of that statutory remedy which afforded liability against a party who "knowingly benefits, financially or by receiving anything of value, from participation in a venture involving forced labor." *Id.*, at *6 (*citing*, 18 U.S.C. § 1589(b)).

///

37

Though the TRO was eventually denied for other reasons, if nothing else, this case serves as a marvelous illustration that considerations of constitutional standing are separate and distinct from the merits of any cause of action. The district court's application of the "fairly traceable" standard does not "gut" any component of the TVPA or TVPRA, and while appellants are free to argue for a change in the law, Nye County does emphasize that Appellants cite to no decisional authority to support this novel interpretation of law. *See*, AOB, p. 59.

No injury is fairly traceable to Nye County, and Nye County did not indirectly injure these former sex workers by knowingly profiting from sex trafficking. Legalized prostitution is not sex trafficking and further it does not promote sex trafficking, which remains a crime in Nevada. There is no error in the district court's reasoning or conclusions, and the Order dismissing this matter with prejudice must be affirmed.

## **CONCLUSION**

Based on the aforementioned argument and authority, Nye County respectfully requests that this Court if Appeals affirm the disrict court's Order of July 18, 2022, dismissing Nye County for lack of subject matter jurisdiction. Its system of controlled and regulated prostitution is simply to attenuated to the injuries alleged in the Amended Complaint to allow this matter to go forward.

38

## STATEMENT OF RELATED CASES

In accord with Circuit Rule 28-2.6, Appellees hereby state that there are no other cases pending with this Court that are deemed related, save and except for the suit dismissed for lack of subject matter jurisdiction against various governmental agencies, a decision later affirmed in this Ninth Circuit Court of Appeals. *See*, *Charleston v. Nevada*, 423 F.Supp.3d 1020 (D. Nev. 2019), *aff'd*, 830 F.App'x 948 (9th Cir. 2020).

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(5)(A) and Circuit Rule 32-1, I hereby certify that the attached opening brief is proportionately spaced, has a typeface of 14-point and contains 8,817 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

DATED this 13th day of July, 2023.

ERICKSON, THORPE & SWAINSTON, LTD.


_____*/s/ Brent Ryman*_____
BRENT L. RYMAN, ESQ. (#008648)
PAUL M. BERTONE, ESQ. (#004533)
ERICKSON, THORPE & SWAINSTON, LTD.
1885 South Arlington Ave., Suite 205
Reno, Nevada 89509
Telephone: (775) 786-3930
*Attorneys for Defendant-Appellee Nye County*