No. 22-16859

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

ANGELA WILLIAMS, JANE DOE #1, AND JANE DOE #2,

*Plaintiffs-Appellants*,

v.

JOSEPH LOMBARDO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
NEVADA; AARON FORD, IN HIS OFFICIAL CAPACITY AS ATTORNEY
GENERAL OF NEVADA, CITY OF LAS VEGAS, CLARK COUNTY, AND NYE
COUNTY

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Nevada
No. 2:21-CV-01676
Hon. Andrew P. Gordon

_____

**APPELLANTS' REPLY BRIEF**

_____

Jason D. Guinasso (SBN# 8478)
Hutchison & Steffen, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

Benjamin W. Bull (SBN#388206)
Peter A. Gentala (SBN#021789)
Dani Bianculli Pinter (SBN#120441)
Christen M. Price (SBN#1016277)
National Center on Sexual
Exploitation
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Attorneys for Appellants Angela Williams,
Jane Doe #1, and Jane Doe #2*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... iii

TABLE OF AUTHORITIES .................................................................. iv

INTRODUCTION ................................................................................... 1

ARGUMENT .......................................................................................... 3

   I.   The Government Defendants contest Plaintiffs' facts and demand inferences in their favor, violating the motion to dismiss standard. ...................................... 3

      A.    By invoking their own facts and demanding that the Court make all material inferences in their favor, Government Defendants undermine the motion to dismiss standard. ................................................................ 4

      B.    Through victim-blaming rhetoric and mocking Plaintiffs' claims, the City Defendants demonstrate precisely the indifferent, enabling behaviors that Plaintiffs allege. ................................................................... 14

   II.   Government Defendants incorrectly attempt to expand the range of relevant abuses while obscuring their own role in causing Plaintiffs' injuries. ............... 16

      A.    Government Defendants monetized Plaintiffs' sexual abuse through tax and licensing revenues. ..................................................................... 16

      B.    Government Defendants' legalized prostitution system substantially motivated the Sex Industry Defendants' sex trafficking of Plaintiffs .............. 19

   III.  As sex trafficking survivors suing to address systemic abuses, Plaintiffs have sufficiently alleged their own injuries, their relationship to persons still sex trafficked by legal, licensed Nevada businesses, and those persons' inability to vindicate their own rights while being actively enslaved. ................................... 29

CONCLUSION ...................................................................................... 36

Form 8. Certificate of Compliance for Briefs ........................................ 37

ADDENDUM…………………………………………………………… ADD-1

# TABLE OF AUTHORITIES

*Cases*

*Alaska v. United States*, 201 F.3d 1154 (9th Cir. 1995)..........................................27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................21

*Bailey v. Alabama*, 219 U.S. 219 (1911)....................................................25

*Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894 (9th Cir. 2011)....................19, 20

*Barrows v. Jackson*, 346 U.S. 249 (1953)................................................32

*Bennett v. Spear*, 520 U.S. 154 (1997).........................................16, 19, 23

*Cato v. United States*, 70 F.3d 1103 (9th Cir. 1995).........................................25, 26

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (en banc)....21

*Charleston v. Nevada*, 830 F. App'x 948 (9th Cir. 2020)................................passim

*Coyote Pub., Inc. v. Miller*, 598 F.3d 592 (9th Cir. 2010) ........................................5

*Craig v. Boren*, 429 U.S. 190 (1976) .......................................................32

*Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718 (S.D. Ind.), *aff'd*, 838 F.3d 902 (7th Cir. 2016) ................................................................34

*Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100 (9th Cir. 2006)................................................................................33

*Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022) .................17

*Frye v. Clark Cnty.*, 637 P.2d 1215 (1981) .............................................................23

*Harewood v. Miami-Dade Cnty.*, 780 F.App'x 748 (11th Cir. 2019) ......................4

*Hodge v. Hodge*, 14 V.I. 238 (Terr. V.I. 1977) ........................................................8

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) ........................................................33

*In re Breland*, 989 F.3d 919 (11th Cir. 2021) ........................................................26

*In re Tracht Gut, LLC*, 836 F.3d 1146 (9th Cir. 2016) .............................................4

iv

*Jahed v. Abraham (No. 82749)*, 524 P.3d 83, 2023 WL 2053075, at *3 (Nev. Ct. App., Feb. 15, 2023) (unpublished disposition) ...................................................8

*Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966) ...................................................27

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) ...................................20

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ...........................................................30

*Larita-Martinez v. I.N.S.*, 220 F.3d 1092 (9th Cir. 2000) ...................................4

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...............................................16

*Martinez-Rodriguez v. Giles*, 31 F.4th 1139 (9th Cir. 2022) .............................27

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011).....................................20, 21

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)..............30

*Nasir v. Morgan*, 350 F.3d 366 (3d Cir. 2003) .................................................31

*Novak v. United States*, 795 F.3d 1012 (9th Cir. 2015) ...................................19, 21

*Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998) .........................28

*Phillips v. Snyder*, 836 F.3d 707 (6th Cir. 2016) ...........................................25, 26

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925)...............................................32

*Poppke v. Poppke*, 57 S.D. 262 N.W. 933 (1930)..................................................8

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002) .......................31

*Ronnow v. City of Las Vegas*, 65 P.2d 133 (1937) ..............................................25

*Singleton v. Wulff*, 428 U.S. 106 (1976).............................................................31

*Terenkian v. Republic of Iraq*, 694 F.3d 1122 (9th Cir. 2012)..............................21

*Turaani v. Wray*, 988 F.3d 313 (6th Cir. 2021) ................................................19

*United States v. Beardslee*, 197 F.3d 378, 389 (9th Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 983 (9th Cir. 2000)...................................................11

*United States v. Blackfeather*, 155 U.S. 218 (1894) ...........................................26

v

*United States v. Kozminski*, 487 U.S. 931 (1988) ....................................................27

*United States v. LeMaux,* 994 F.2d 684 (9th Cir.1993) ..........................................28

*Warth v. Seldin*, 422 U.S. 490 (1975) ....................................................................17

*White v. U.S. Pipe & Foundry Co.*, 646 F.2d 203 (5th Cir. Unit B May 1981) 25, 26

*WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212 (9th Cir. 2023) ............................................................................................................................23, 24

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)........................................28

**Statutes**

18 U.S.C. § 1595(a) ..................................................................................................17

NEV. REV. STAT. § 368A.090 ..................................................................................18

NEV. REV. STAT. § 368A.200 ..................................................................................18

NEV. REV. STAT.§ 281A.145 ....................................................................................25

U.S. Const. Amend. I ...........................................................................................31, 35

U.S. Const. Amend. XIII .....................................................................................27, 35

**Other Authorities**

Cir. R. 28.1 ..............................................................................................................37

Cir. R. 29 .................................................................................................................37

Cir. R. 32 .................................................................................................................37

Fed. R. App. P. 29 ...................................................................................................37

Fed. R. App. P. 32 ...................................................................................................37

Fed. Rules Civ. Proc. Rule 46 ................................................................................27

Neal Kumar Katyal, Note, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 Yale L.J. 791, 815, 819 (1993) .................33

# INTRODUCTION

The Government Defendants' briefs are an exercise in obfuscation. While the case has some complexities – given that it deals with an ecosystem of sexual exploitation – its premise is simple: selling women is profitable. The profitability – and thus the selling –increases when it has legal cover. Nevada has chosen to provide that legal cover, and to share in those profits. The Plaintiffs have suffered enormous harms as a result, directly violating their rights to be free from slavery.

The Government Defendants have legalized prostitution throughout the state, whether formally in brothels, or tacitly through entertainment by referral service, escorting, and strip clubs. They allow these entities, including Sex Industry Defendants, to be licensed and to engage in sex trafficking on an industrial scale:

- State Defendants allow brothel prostitution in rural counties, force STI testing on prostituted people but not sex buyers, do not enforce their own regulations limiting prostitution advertising, and permit escorting and "entertainment by referral service" throughout Nevada, ER-67–68, 72–74;

- State Defendants allow counties to self-regulate and do not bar brothel debt bondage practices, nor do they permit independent prostitution, ER-68;

- Nye County not only permits brothel prostitution but implicitly permits compelling someone into prostitution (as long as it occurs in a brothel),

1

prevents persons in prostitution from operating independently, and gives itself latitude to license felons to operate brothels, ER-69–70;

- Las Vegas permits escorting and strip clubs, and forces escorts to work for an escort agency and to undergo STI testing for licensure, ER-70–72;

- Clark County permits escorting, outcall entertainment, and strip clubs; ER-70–71; and

- The legal environment has led to increased sex buyer demand and a disproportionately large sex trade, yet Government Defendants have a sparse sex trafficking prosecution record, ER-72–74.

Despite these regulations resulting in entirely predictable outcomes, Government Defendants attempt to obscure their responsibility by presenting themselves as agnostic about their own system or helpless before various criminal elements they maintain are exploiting it. But Plaintiffs are not seeking to hold Government Defendants accountable for every harm they suffered while being sex trafficked, only the specific harms they suffered while being sex trafficked by Sex Industry Defendants – legal, licensed, Nevada businesses under Government Defendants' control.

This case is about the systematic flourishing of sex trafficking at scale in blatant defiance of federal laws against slavery. Slavery is an essentially private enterprise, so it is functionally decriminalized wherever government officials

2

refuse to enforce laws against it. And Government Defendants are not bystanders; they are investors, who now invite this court to adopt a heightened standard for standing, and thus to extend the impunity they have enjoyed for so long. Plaintiffs urge the Court to reject this invitation, and reverse and remand the district court's standing determination.

## ARGUMENT

Government Defendants' arguments do not support affirmance for the following reasons: I) They contest Plaintiffs' facts and demand inferences in their favor, violating the motion to dismiss standard; II) They incorrectly attempt to expand the range of relevant injuries while obscuring their own role in causing Plaintiffs' harm; and III) As sex trafficking survivors suing to address systemic abuses, Plaintiffs have sufficiently alleged their own injuries, their relationship to persons still sex trafficked by legal, licensed Nevada businesses, and those persons' inability to vindicate their own rights while being actively enslaved .

## I.     The Government Defendants contest Plaintiffs' facts and demand inferences in their favor, violating the motion to dismiss standard.

The Government Defendants ignore the motion to dismiss standard by invoking their own facts, contesting Plaintiffs' facts, mischaracterizing Plaintiffs' facts, and demanding inferences in Defendants' favor. The City Defendants[1] take

---

[1] Defendants Clark County and Nye County, whose briefs were joined by Defendant City of Las Vegas.

this further by mocking and victim-blaming Plaintiffs, indicating their refusal to take sex trafficking seriously.

### A. By invoking their own facts and demanding that the Court make all material inferences in their favor, Government Defendants undermine the motion to dismiss standard.

Because this case is at the motion to dismiss stage, the court "must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (internal citations omitted).

Nye improperly refers to an evidentiary presumption, not a rule for motions to dismiss, citing cases that are not motion to dismiss cases. Nye at 21 (citing *Larita-Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir. 2000); *Harewood v. Miami-Dade Cnty.*, 780 F.App'x 748, 753 (11th Cir. 2019)). No presumption applies here to how the court handled "evidence in the record," because there is no evidence in the record – this case is at the motion to dismiss stage. No such presumption applies in a motion to dismiss case that a court reviewed and considered all the plaintiffs' factual allegations, especially as here, Plaintiffs list over 30 fact claims, of which the district court plainly considered five, Brief at 32-38.

Yet all Government Defendants contest Plaintiffs' facts to some degree, and the City Defendants do so repeatedly, as summarized here:

4

| Cite | Summary |
|------|---------|
| State, 9-10 | The State of Nevada is agnostic about "the legality of prostitution in much of the state[.]"[2] |
| State, 10 | Nevada's legal regime protects both the women in prostitution and the men who buy them.[3] |
| Clark, 23 | Plaintiffs' claims that Clark has created a profitable/enabling environment for sex trafficking are "baseless." |
| Clark, 24 | Refers to a madam pimp/trafficker as "so-called." |
| Clark, 24 | Refers to Jane Doe #1's "own culpability in the allegations in the complaint." |
| Clark, 24 | Jane Doe #1 "prostituted herself." |
| Clark, 27 | Clark is not involved in Las Vegas MPD's licensing process. |
| Clark, 29 | Illegal activities constantly occur in legal businesses. |
| Clark, 29 | Plaintiffs' claim that legal prostitution leads to sex trafficking is unsubstantiated.[4] |
| Clark, 29 | This case is a "politically motivated abuse[] of the judicial system." |

---

[2] The State quotes *Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 607 (9th Cir. 2010) to make this point, but the function is the same: to contest Plaintiffs' facts about their prostitution enabling.

[3] This is plainly false. Nevada does not test the sex buyers. *See* ER-67 (citing Nev. Admin. Code § 441A.800).

[4] They did not have to do this at the motion to dismiss stage, but Plaintiffs cited multiple academic journal articles for this point. ER-65–66.

| Clark, 30 | Clark County cannot control the illegal behavior of its licensees.[5] |
|---|---|
| Clark, 35 | Escort and outcall entertainer licenses stop prostitution because they create probable cause to arrest persons for unlicensed prostitution. |
| Clark, 35 | Escort and outcall entertainer licenses stop prostitution by charging fees that "are used to fund law enforcement activities directed at curtailing illegal prostitution."[6] |
| Clark, 35-36 | Clark County is taking many steps to stop prostitution. |
| Clark, 50 | Clark has delegated most of its enforcement functions regarding prostitution to the Las Vegas MPD so it cannot be responsible if the law isn't enforced. |
| Clark, 51 | Outcall entertainers do "legitimate outcall entertainment services" like clowns. |
| Clark, 51 | Clark has no way to know who is a clown or a DJ and who is in prostitution when they process licensing applications. |
| Nye, 10, 12 | Nevada's prostitution is "highly regulated" and "strictly regulated and controlled." |

---

[5] Raising the question: what is the point of the licensing scheme?
[6] Citing CCC § 6.140.010. This provision does not refer to how law enforcement in Clark County is funded.

6

| Nye, 12-13 | Mocks the idea of plaintiffs as victims and calls them criminals. |
|---|---|
| Nye, 24 | Plaintiffs are desperate to blame Nye County for "their own personal failings" |
| Nye, 24 | Nye County didn't traffic Plaintiffs; it has a "highly-regulated, carefully-monitored and lawfully-sanctioned, safe and sanitary system of legalized prostitution." |
| Nye, 27 | Insinuates Plaintiffs are just "former prostitutes" who are "casting themselves as victims of sex trafficking." |
| Nye, 30 | In her brothel license application, Jane Doe #1 was "subjected to substantial scrutiny and investigation." |
| Nye, 31 | Failure to engage in any screening for trafficking or even check identification for Jane Doe #1's brothel license application was "anomalous." |
| Nye, 32 | Nye is not profiting from sex trafficking. |
| Nye, 32 | Nye's laws are there to stop sex trafficking, an effort which begins with protecting prostitution.[7] |

---

[7] This is the same code that, by its terms, allows compelled prostitution.  ER-69–70 (citing Nye Co. Code §§ 9.20.160, 9.20.020).

| Nye, 32 | Prostitution is "legalized and highly and strictly controlled and regulated." |
|---|---|
| Nye, 32-33 | Nye is entitled to presume adult women in prostitution are consenting and not coerced.[8] |
| Nye, 35 | Legalized system didn't make the Plaintiffs or their pimps/traffickers turn criminal. |
| Nye, 35 | Abuse was Plaintiffs' own fault; they're the criminals. |
| Nye, 40 | Denies profiting from any illegal activity, including sex trafficking. |
| Nye 40 | "The only admitted criminals or former criminals here are Jane Doe #1 and her pimps." |
| Nye 41 | Claims "licensed prostitutes" are "free to leave at any time." |
| Nye 43 | Where women are locked inside the brothels, including because they owe the brothel money, the Sheriff's office doesn't act as an enforcer and make the women return because it is just a civil contract matter, not a crime. |

---

[8] The cases Nye County cites about assuming that people are generally acting in good faith are not authoritative and say nothing about presuming that prostituted people are not acting under coercion.  *See* Nye at 33 (citing *Hodge v. Hodge*, 14 V.I. 238, 244 (Terr. V.I., Dec. 14, 1977); *Poppke v. Poppke*, 57 S.D. 262, 231 N.W. 933, 934 (1930; *Jahed v. Abraham (No. 82749)*, 524 P.3d 83, 2023 WL 2053075, at *3 (Nev. Ct. App., Feb. 15, 2023) (unpublished disposition).

Besides contesting Plaintiffs' facts, Defendants also demand this Court make numerous inferences in their favor, directly contradicting the motion to dismiss standard – namely, that because Nevada has laws banning trafficking in persons and prostitution outside of brothels, they uphold and enforce the laws as written. *See* State at 10-11, Clark at 35-36, 40, and Nye at 32-35.

*State Defendants*

The State also asks the Court to infer that the Nevada statute explicitly legalizing rural brothel prostitution forecloses any inference that the State's entertainment by referral statute tacitly or euphemistically legalizes prostitution everywhere else. State at 23. The State maintains legalizing entertainment by referral and escorting "does not give rise to a reasonable inference that Nevada has legalized other conduct that is expressly criminalized, any more than a state's legalizing drinking implies that it legalized drunk driving too." State at 24.

But Plaintiffs alleged that the legalized conduct is a euphemism for the illegal act. ER-68, 75. A better analogy would be if Nevada legalized buzzed driving and tipsy driving, but outlawed drunk driving except in rural counties. Drivers would likely reasonably conclude Nevada had legalized driving under the influence of alcohol.

The State also asks the Court to infer that the testing regime is just about managing risks in prostitution: making sure "STIs are diagnosed and treated

9

promptly". State at 24. Plaintiffs allege the State's testing regime is discriminatory – only applying to prostituted people, not the men buying them. ER-67. Accordingly, it is reasonable to infer that the regulations do not protect public health, but sex buyers.

The State also mischaracterizes Jane Doe #1's claims as not alleging injuries connected to the testing. State at 14 n. 4. But Plaintiffs alleged STI testing protects sex buyers, ER-67 (citing Nev. Admin. Code § 441A.800), and that increased sex buyer demand leads to sex trafficking, ER-72. Plaintiffs alleged that Jane Doe #1 was subjected to STI testing while sex trafficked in a brothel. ER-89–90. And based on these allegations, it is reasonable to infer that forced weekly STI testing was both painful and humiliating for Jane Doe #1. This satisfies naming an injury based on state regulation.

*Clark County*

Clark County asks the Court to infer that because Jane Doe #1 was afraid of being arrested for unlicensed street prostitution, and traveled elsewhere to avoid it, Clark County could not be creating a "profitable environment" for or enabling non-street prostitution and sex trafficking in licensed businesses.[9] Clark at 23. *See also* Clark 28 (same, as to other Plaintiffs).

---

[9] Not only is this a *non sequitur*, but treating street prostitution differently could be motivated by various factors, including that it is not taxable.

Clark cites *Beardslee* to say criminal conduct is always possible regardless of enforcement efforts, misreading the case,[10] and asks the Court to presume that the sex trafficking within Nevada's legalized prostitution system is simply the inevitability of crime, which apparently runs rampant in licensed Nevada businesses, and is not Clark County's fault. Clark at 29 ("Illegal activity frequently occurs in legal businesses of all types. Restaurants and clubs without liquor licenses frequently serve alcohol, adult clubs often admit minors or serve them alcohol… shipping companies frequently traffic in illicit goods, and law firms regularly engage in fraudulent billing practices."), 50.

But whether licensed Nevada businesses engage in sex trafficking as some inevitable feature of general crime or whether Sex Industry Defendants are acting consistently with an enabling system is a fact question for discovery. Clark County may not demand inferences in its favor at the motion to dismiss stage.

*Nye County*

Nye County demands the Court draw inferences in its favor as to Plaintiffs' allegation that the County, in which prostitution is apparently "highly regulated,"

---

[10]  *United States v. Beardslee*, 197 F.3d 378, 389 (9th Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 983 (9th Cir. 2000) (referring to how much an arsonist could have anticipated the harm that occurred) ("However, a possibility, even a considerable one, is not the same as a 'practical certainty,' and here it was not practically certain that the burning of Beardslee's warehouse would create a substantial risk of death or injury.").

did not screen Jane Doe #1 for trafficking or even ask her for a government ID (she did not possess one). Nye at 29-30. Nye wants the Court to infer that this was an outlier event, a mere irregularity in the process. Nye at 30.

But the implications and enforcement of these regulations are precisely what Plaintiffs contest. Plaintiffs alleged that these laws send mixed messages about what conduct Government Defendants will tolerate, and that how the laws are enforced (or not) sends a clarion message about what sex traffickers can expect to get away with.

Additionally, Nye says it should be entitled to presume that adult women seeking brothel prostitution licenses are consenting and not coerced, Nye 32-33, but cites cases talking about a presumption that people are acting morally and in good faith, which is inapposite: Jane Doe #1 wasn't acting in bad faith, she was acting under coercion. ER-85–90.

Nye County also mischaracterizes many of Plaintiffs' factual allegations as legal conclusions.[11] Factual allegations that tend to indicate legal liability are not legal conclusions. For example, "Nye County engaged in sex trafficking" is a legal

---

[11] *See* Nye at 23: "The following are some salient examples of these legal conclusions cast in the form of factual allegations levied against Nye County: allowing brothels to employ coercion through debt; allowing compelled prostitution (trafficking) in brothels; failure to vigorously prosecute sex trafficking; significant government corruption; failure to check ID or otherwise screen for sex trafficking[.]"

conclusion.  But "Nye County profited from and tolerated the local brothel's employment of debt bondage to coerce women into commercial sex acts" is a factual allegation.

Nye County disregards Plaintiffs' allegations about Jane Doe #1 being sex trafficked, claiming that she was "prostituting herself" when under the control of both the legal brothel and external pimps/traffickers.  Nye at 31.  And finally, Nye County, like the post-Reconstruction Southern states it tries to distinguish itself from, imagines that debt bondage/false imprisonment is just a contract dispute (despite a court finding that Plaintiffs stated a claim against the brothel for sex trafficking on precisely that basis):

> While appellants may contend they are slaves because they cannot leave the brothel during the pendency of their sex work, a more apt and accurate description of their plight and dilemma would be "cannot leave the brothel without breaking the terms of their contractual agreement with the brothel."  *See*, *e.g.*, AOB, p. 25 (claiming women required to be attached to a brothel and locked inside).  Breaching any agreement with a brothel, or leaving a debt owed to a brothel *is not a crime, but a civil matter.*  The Sheriff's Office is not charged to dispatch deputies to catch the "runaway prostitutes" and force them under duress or threat of criminal prosecution to return to the servitude of the brothel.[12]

Nye at 43 (emphasis added).

---

[12] Unlike the post-Reconstruction Southern governments, Nye helpfully clarifies that it will not prosecute women for escaping from the brothel or force them to return; the brothel can only come after its escapees and debtors in civil, not criminal court.  *See* Nye at 43.

Ultimately, Defendants attempt to invert the real presumption operative here: that Plaintiffs' alleged facts must be accepted as true at this stage. Contesting Plaintiffs' facts should not be necessary if Plaintiffs haven't sufficiently alleged causation, and amounts to a tacit admission that a factual dispute exists that should be resolved in discovery.

**B. Through victim-blaming rhetoric and mocking Plaintiffs' claims, the City Defendants demonstrate precisely the indifferent, enabling behaviors that Plaintiffs allege.**

But Defendants don't just contest Plaintiffs' claims, they mock them. Clark County refers to Jane Doe #1's prostitution/trafficking after the brothel as her "prostituting herself" and having "culpability in the allegations in the complaint," while also claiming Plaintiffs' sex trafficking "involved significant elements of personal choice." Clark at 24, 42.

Clark County also refers to sex trafficking survivors' attempts to seek justice for themselves and other victims as "politically motivated abuses of the judicial system [.]" Clark at 29. Clark County does not find that violence and debt coercion in brothels and strip clubs "shocks [its] conscience," which shows precisely the callousness that Plaintiffs allege. *See* Clark at 7.

Similarly, Nye County refers to the Plaintiffs as "former prostitutes," and calls their allegations "lurid," "sordid," "fantastic," "far-fetched," and "salacious." Nye at 10, 12-13, 28. Nye also insinuates Jane Doe #1 is a criminal because she

was coerced into unlicensed street prostitution, and puts the term "trafficked" in scare quotes. Nye at 13.

Elsewhere Nye County refers to Plaintiffs as "turn[ing] to crime" as though they were co-conspirators with and not victims of the people selling them, and accusing them of blaming Government Defendants "for the skewed paths of their lives and their own personal failings[.]" Nye at 24, 35. Nye callously refers to sex trafficking as a "misadventure." Nye at 28.

The City Defendants ask this Court, to assume they vigorously enforce sex trafficking laws in the legal prostitution system, when they cannot even talk about sex trafficking victims respectfully. Despite not being allowed to contest Plaintiffs' facts at this stage, the victim-blaming tone tells the Court precisely what City Defendants think of sex trafficking victims, demonstrating the indifferent, enabling behaviors that Plaintiffs allege have created and maintain this ecosystem of exploitation.

By contesting and mischaracterizing Plaintiffs' factual allegations, demanding reasonable inferences in their own favor, and demeaning Plaintiffs for being sex trafficked, the Government Defendants attempt to obscure the nature of Plaintiffs' injuries (and by extension, the relevant causal chain and their role in it), in blatant violation of the motion to dismiss standard.

**II.    Government Defendants incorrectly attempt to expand the range of relevant abuses while obscuring their own role in causing Plaintiffs' injuries.**

Plaintiffs have adequately alleged causation for standing as to their claims against Government Defendants. To establish constitutional standing, Plaintiffs must show three elements:  an injury in fact that is 1) "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; 2) "fairly traceable" to the defendant's "challenged action," and "not the result of the independent action of some third party not before the court"; and 3) redressable "by a favorable decision." *Lujan v. Defs.  of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). At the motion to dismiss stage, Plaintiffs' burden as to causation and redressability is "relatively modest[.]" *Bennett v. Spear*, 520 U.S. 154, 171(1997).

Government Defendants' causation arguments fail for two reasons.  First, Government Defendants, especially State Defendants, are the central actors in the monetization injuries, making the causal chain very short, and second, Government Defendants are significant actors in the trafficking-by-legal business injures, and so the causal chain is not broken.

### A. Government Defendants monetized Plaintiffs' sexual abuse through tax and licensing revenues.

The State disagrees that monetization can be an injury in itself, arguing that Plaintiffs weren't subject to a tax, and that sexual-abuse-for-profit is not a particular injury, and no legal basis exists for recognizing it.  State at 21.

16

The State misunderstands the argument. Plaintiffs were injured when the Government Defendants profited from their abuse. The tax is the vehicle through which the State profited. ER-75. And the State doesn't offer any authority for claiming a TVPRA violation for benefitting from sex trafficking doesn't constitute a particular kind of injury, State at 21-22, particularly since it is based on a statute: "The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (cleaned up). The TVPRA provides for civil liability for direct traffickers and those who benefit from what they should know is trafficking, 18 U.S.C. § 1595(a), implying that benefiting from trafficking injures the trafficked person.

The State attempts to distinguish and cite *Fleites* in its support. But *Fleites* never mentions the term "tax," nor does it assert that government monetization of sex trafficking isn't an injury. *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1157 n.7 (C.D. Cal. 2022) (questioning whether government regulation case was apposite for causation analysis, and concluding plaintiff met the standard either way).

Visa provided the infrastructure for Pornhub and Visa to monetize and benefit from sex trafficking through pornography, while the Government Defendants have provided the infrastructure of taxes and licensing fees for

*themselves* to monetize and benefit from sex trafficking. *See* Brief at 57. The State benefits the most explicitly by taxing a percentage of the fees charged by escorting agencies and strip clubs. ER-75, NEV. REV. STAT. §§ 368A.090, 368A.200. So, the State quite literally gets paid for specific sex trafficking acts. And unlike Visa, which could at most block payments to Pornhub, the Government Defendants have the power to license, tax, regulate, investigate, prosecute, and even abolish the Sex Industry Defendants. *See* ER-53–57, 67–75.

Importantly the court below ruled that Plaintiffs had stated a claim against Sapphire, and Chicken Ranch for sex trafficking, and Plaintiffs have alleged that all the Government Defendants have received profits from at least one of those two entities. The City Defendants appear to have conceded the point about monetization. Nye Brief; Clark Brief at 7, 11. The Government Defendants appear to also concede that Plaintiffs need only trace their conduct to one injury to sufficiently allege standing. Nye Brief; Clark Brief; State Brief at 21.

As an injury, this is directly traceable to Government Defendants. Brief at 44. State Defendants take a cut from escort agency and strip club fees, and City Defendants through licensing fees and property taxes. Because Plaintiffs stated that Government Defendants received tax revenue, licensing fees, and tourism revenue from their sex trafficking, Plaintiffs have sufficiently alleged that Government Defendants injured them directly by profiting from their abuse.

**B. Government Defendants' legalized prostitution system substantially motivated the Sex Industry Defendants' sex trafficking of Plaintiffs**

The State argues that Plaintiffs have not sufficiently alleged causation because given the role third parties played in the abuse, they haven't shown that the "government's conduct had a 'determinative or coercive effect' on the third party." State at 19 (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (emphasis omitted); *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021)). *See also* Clark at 35.

And the State argues that like *Novak*, "the third parties may well have engaged in their injury-inflicting conduct in the absence of the parts of Nevada law that Plaintiffs challenge." State at 20. *See also Novak v. United States*, 795 F.3d 1012 (9th Cir. 2015). *See also* Clark at 26. Clark County similarly points to the pimps/traffickers who exploited Plaintiffs in locations beyond Nevada as an indication that third parties break the causal chain. Clark at 14-16. The State also tries to distinguish cases Plaintiffs cite, saying:

- In *Barnum*, the plaintiff was "directly injured" by the government "listing its property as ' impaired,'" which reduced its value. State at 22 (internal citations omitted);

- In *Juliana*, "the government had taken 'direct actions,' including by financially subsidizing the harmful conduct." State at 22 (internal citations omitted)

- In *Maya*, there was no "government action or inaction." State at 22 (internal citations omitted)

The State maintains that it has "criminalized, not subsidized, the actions that injured Plaintiffs," State at 2, and that since it did not force or order anyone to sex traffic the Plaintiffs, their injuries cannot be traced to the State even if the State legalized prostitution everywhere and encouraged pimps to exploit it. State at 23. The City Defendants also reference the *Charleston* appeal, arguing it supports dismissal for causation. Clark at 8. Nye at 38.

Plaintiffs have several responses. First, as in *Barnum* and *Juliana*, Government Defendants *have* taken direct actions: writing their cut of the prostitution proceeds into the tax and licensing codes, forcing women but not the men buying them to undergo STI testing, and requiring prostituted people to be managed by someone (i.e., a pimp).

Second, while *Maya* did not involve government action, it still stands for the principle that Plaintiffs need only allege "a line of causation between defendants' action and their alleged harm that is more than attenuated," and that the causal chain can have multiple links, as long as they are not tenuous. *Maya v. Centex*

20

*Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). In *Maya*, causation was found where the defendants' actions and market forces together resulted in an economic disadvantage for the plaintiffs. *Maya v. Centex Corp.*, 658 F.3d 1065-66 (9th Cir. 2011). Similarly, Plaintiffs here allege Government Defendants and Sex Industry Defendants' actions together resulted in serious violations of Plaintiffs' human rights.

The State said *Maya* shouldn't be relied on because it didn't apply *Iqbal* and the Court should apply *Chapman* and *Terenkian* instead. State at 18 n.6. But *Chapman* did not apply *Iqbal* to analyze causation, it noted in a footnote that its ruling was consistent with not allowing simple formulaic statements to plead an injury, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 n.9 (9th Cir. 2011), and *Terenkian* did not really analyze standing, *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1139 n.9 (9th Cir. 2012), so there is no reason to prefer them to *Maya*, when *Maya* is more on point.

Third, *Novak* explains that causation as to government regulation where independent third parties might commit the direct harm, "the plaintiff must offer facts showing that the government's unlawful conduct is at least a substantial factor motivating the third parties' actions." *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (cleaned up) .

Plaintiffs argue that prostitution is functionally decriminalized in Nevada, and the ecosystem Government Defendants created, oversee, and profit from is a substantial factor motivating their violation. ER-64–75. Plaintiff Angela Williams was trafficked in Nevada for over a decade, ER-75, and Plaintiff Jane Doe #1 was trafficked within a day of arriving in Nevada, having never been in prostitution before, ER-86. Plaintiffs alleged that sex trafficking increases dramatically where prostitution enjoys state protection. ER-64–66, 72. Whether Plaintiffs are correct about this last point is a fact question for trial or summary judgment after discovery, not a motion to dismiss. Including by alleging that Government Defendants license sex traffickers, including Sex Industry Defendants, and force women in prostitution to associate with them, Plaintiffs have thus alleged "the government's unlawful conduct is at least a substantial factor motivating the third parties' actions." *See* ER-68–97.

Strangely, Clark County says to establish causation on this theory, Plaintiffs must show: "that each and every outcall entertainment license or escort business license issued by Clark County is always a cover for a sex-trafficking business," and that Clark County issued outcall and escorting licenses "with the intent to allow sex trafficking." Clark at 39.[13] Clark cites no authority for this claim, which

---

[13] Clark says Plaintiffs didn't allege which businesses were licensed by them, Clark at 40. But it is reasonable to infer that Clark licensed the businesses in Clark County, namely Sapphire and Hustler. *See* ER-56.

contradicts the rule described above, and the implications are absurd: even if Clark County knew that 90% of its licenses were issued to sex traffickers or persons under their control they would still have absolutely no facilitator liability.[14]

Nye cites a case to claim "public entities are not liable for injury caused by failing to enforce any law," a case which is both non-controlling and distinguishable. *Frye v. Clark Cnty.*, 637 P.2d 1215, 1216 (1981) (fire department not liable for initially going to the wrong address when answering an emergency call). The case was about negligence in responding to a single call, not systematically enabling sex trafficking at scale. It would not have come out the same way if the fire department was systematically ignoring emergency calls and getting tax revenue from arsonists.

Fourth, the relevant third parties – the Sex Industry Defendants *are* parties to this case. Brief at 22-23. The language the State cites from *Bennett* actually says: "the result of the *independent* action of some third party not before the court," (emphasis in original) *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (cleaned up).

Similarly, in *WildEarth*, the Court noted where standing depends on a third party's response to "government action or inaction," the plaintiff must "adduce

---

[14] There is no reason to demand that Plaintiffs meet an impossible causation standard if Plaintiffs truly failed to meet the more basic standard needed to survive a motion to dismiss.

facts showing that those choices have been or will be made," and one way to do so is "by showing that the defendant's action exerts a 'determinative or coercive effect,'" – "defendant's action could have such an effect if the defendant had 'clear regulatory authority over the third party who more directly caused the plaintiff's injury' or was 'an integral participant in a third party's allegedly harmful action.'" *WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1216-17 (9th Cir. 2023) (internal citations omitted) ("Here, the claimed injury arises from the actions of a third party that is two steps removed from the Service. The Service does not kill wolves, nor does it regulate those who do. It regulates livestock grazing, but WildEarth does not object to grazing in itself. Rather, WildEarth objects to grazing because it may lead to depredations, which may in turn lead the Department of Fish and Wildlife to consider and in some cases exercise its discretion to lethally remove wolves. Lethal removal, the direct cause of WildEarth's injury, is not regulated by the Service.").

*WildEarth* is distinguishable from this case, as the behavior the plaintiffs objected to was not only not committed by the government defendant, it wasn't even regulated by them, where here the Government Defendants do have a determinative or coercive effect, as they both incentivize and regulate those causing the direct harm. This is not a complicated causal chain: Plaintiffs are suing the Government Defendants for their role – through both regulation and

participation – in Sex Industry Defendants' trafficking, within the government's system, on the government's watch, and without the government's interference. The Government Defendants' pointing to the unlicensed pimps/traffickers who also exploited Plaintiffs is irrelevant, because Plaintiffs are not suing for those injuries.

The State tries to distance itself from its own regulatory scheme, as well as City Defendants and their policies, calling itself agnostic on prostitution's legal status. State at 9. Precisely. In fact, the State's agnosticism about prostitution appears to extend to prostitution that is induced through debt bondage in legal brothels. But more to the point, in Nevada, local governments are political subdivisions of the state with severely limited autonomy, permitted to do only what the State explicitly allows. *See, e.g.*, NEV. REV. STAT.§ 281A.145; *Ronnow v. City of Las Vegas*, 65 P.2d 133, 136 (1937).

The Government Defendants appear to misunderstand Plaintiffs' arguments regarding Plaintiffs' legal claims and their relationship to standing. Plaintiffs have not argued that standing is irrelevant, but that causation shouldn't be interpreted so narrowly that standing is impossible to establish for derivative claims. Brief at 59-68.[15] The State distinguishes *Bailey* , arguing that *Bailey* had standing because he

---

[15] The State gives *Breland* and *Phillips* as standing examples in Thirteenth Amendment cases, and *Cato* and *White* as examples where standing was not found. State at 25. These cases have nothing to do with the kinds of facts

was prosecuted. State at 25. As Plaintiffs noted in their initial brief, that was the method of coercion; the Supreme Court did not say or imply he had standing only because he was prosecuted; it suggested that the threat of prosecution alone made the law unconstitutional because it had a coercive effect: Brief at 64. Plaintiffs argue that Government Defendants' legalizing prostitution, tolerance toward sex trafficking, and either explicit or implicit requirements that women in prostitution be controlled by a pimp collectively also have an unconstitutional coercive effect.

Finally, the City Defendants propound several arguments about the merits of Plaintiffs' claims, which are not the subject of this appeal, and therefore not properly before this Court. City Defendants did not appeal any part of the district court's order. *See United States v. Blackfeather*, 155 U.S. 218, 221 (1894) ("It is enough to say in reference to this application that no appeal was taken by the appellee. Without an appeal, a party will not be heard in an appellate court to question the correctness of the decree of the trial court.").

---

Plaintiffs allege. *See In re Breland*, 989 F.3d 919, 922 (11th Cir. 2021) (real estate developer alleged Thirteenth Amendment violations against bankruptcy trustee appointed by court); *Phillips v. Snyder*, 836 F.3d 707, 714, 722 (6th Cir. 2016) (plaintiffs sued emergency manager appointed to handle government financial crisis); *Cato v. United States*, 70 F.3d 1103, 1109 (9th Cir. 1995) (plaintiffs sued United States for historical slavery practices), *White v. U.S. Pipe & Foundry Co.*, 646 F.2d 203, 206 (5th Cir. Unit B May 1981) (case considering whether appointing counsel for litigants violated Thirteenth Amendment).

These include that no court has permitted a private right of action for a

Thirteenth Amendment claim,[16] that Plaintiffs must plead an outdated standard to

establish a Thirteenth Amendment claim,[17] that Plaintiffs must meet a heightened

standard to plead a TVPRA claim,[18] the plaintiffs have waived[19] any chance to

---

[16] Clark at 46 -47.  The Thirteenth Amendment has been interpreted to allow private right of action.  *See Jobson v. Henne*, 355 F.2d 129, 130 (2d Cir. 1966) (permitting Thirteenth Amendment claim from inmate at state mental health institution, who alleged he was forced to work excessive hours).  As Plaintiffs have noted, the Ninth Circuit has not determined the question yet.

[17] Nye presents that wrong standard here.  Nye at 42.  The Ninth Circuit has recognized that *Kozminski* was abrogated by the TVPRA.  *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1156 (9th Cir. 2022) (internal citations omitted) ("This argument ignores the breadth of the statutory language of § 1589, which we have previously observed was enacted to abrogate, as a practical matter, the Supreme Court's narrow interpretation of 'involuntary servitude' in United States v. Kozminski[.]").

[18] Clark says that a statute that plainly allows for a should have known standard requires a knowing violation.  *Compare* Clark at 49 *with* 18 U.S.C. 1595(a).  And repeats its point that because it has over 10,000 employees it doesn't have a brain that knows things, and thus cannot violate the TVPRA.  Clark at 43.  Clark also claims without warrant that any TVPRA claim must allege that Clark County employees actively participated in sex trafficking.  Clark at 32-33.  Plaintiffs must allege not only that they are likely to be trafficked in Clark again, but also that every outcall or escort license is always a cover for sex trafficking and Clark issues them with intent to allow sex trafficking.  Clark at 39 (internal citation omitted).  This completely contradicts 1595(a)'s text.

[19] State at 28.  Plaintiffs did not forfeit their chance to request leave to amend, because they never had the chance, an issue they raised in their request for interlocutory appeal.  Brief at 24; ER-138.  Plaintiffs didn't request leave to amend their complaint; it was dismissed with prejudice – meaning Plaintiffs could not seek leave to amend it, by definition.  The case they cite concerned a plaintiff whose case was not dismissed with prejudice, and thus is entirely distinguishable.  *See Alaska v. United States*, 201 F.3d 1154, 1163-1164 (9th Cir. 1995).  Failure to object when there is no opportunity to do so doesn't prejudice a party.  FRCP 46.

request leave to amend their complaint, and that Plaintiffs' claims should be dismissed under the statute of limitations.[20]

Notably, despite Government Defendants' insinuations to the contrary, Clark at 8, 41-43, this Court in *Charleston* did not rule against the plaintiffs on causation

---

[20] The statute of limitations is a waivable defense that is not jurisdictional and may be subjected to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). It is generally "waived if not raised in the trial court." *See United States v. LeMaux,* 994 F.2d 684, 689 (9th Cir.1993). Even where a defendant raises it, waiver may occur if the defendant engages in sandbagging. *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998), *"as amended on denial of reh'g and reh'g en banc"* (June 15, 1998) (internal citations omitted) ("For example, if a defendant were to engage in 'sandbagging' by raising the issue of personal jurisdiction on a motion to dismiss, deliberately refraining from pursuing it any further when his motion is denied in the hopes of receiving a favorable disposition on the merits, and then raising the issue again on appeal only if he were unhappy with the district court's ultimate decision, then we would not hesitate to find that the defendant had waived any right to pursue the defense.").

Defendant Clark County makes a brief statute of limitations argument, which is not properly before this Court for similar reasons. Clark at 47-48. Clark County raised the statute of limitations in its initial Motion to Dismiss Plaintiffs' original complaint, Def. Clark Mot to Dismiss at 18, which was mooted when Plaintiffs filed their First Amended Complaint, ER-130, and then denied by the court as moot, ER-130. Clark immediately filed a motion to strike to try to force the original complaint to be reinstated, ER-130, and tried to incorporate by reference its denied motion to dismiss to circumvent page limits, including its statute of limitations argument, Def. Clark Mot. to Strike at 19. Plaintiffs pointed this out in their opposition, whereupon Defendants briefed the statute of limitations argument in a reply brief that exceeded the page limits, in an apparent attempt to prevent Plaintiffs from responding. ER-132. Plaintiffs then filed a motion to strike the excessive pages or in the alternative for a sur-reply. ER-133. The district court denied this motion as moot when it dismissed Clark County for standing. ER-138. Thus, the statute of limitations is not properly before the appeals court. But if the Court wishes, Plaintiffs will supply supplemental briefing on this issue.

grounds, nor suggest that it would have had it reached that issue. *Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020) (suggesting in case solely against state actors that invoking third-party standing might be the only way to secure the rights of enslaved people).

In sum, the ecosystem that Government Defendants created, sustained, and profited from was a substantial motivating factor in Plaintiffs' injuries by being sex trafficked by legal licensed businesses within that ecosystem, accordingly, Plaintiffs have sufficiently alleged the Government Defendants' causal role in their sex trafficking by Sex Industry Defendants.

**III.  As sex trafficking survivors suing to address systemic abuses, Plaintiffs have sufficiently alleged their own injuries, their relationship to persons still sex trafficked by legal, licensed Nevada businesses, and those persons' inability to vindicate their own rights while being actively enslaved.**

The State argues that even if Plaintiffs have sufficiently alleged causation, Plaintiffs have not alleged redressability as to the State:  Plaintiffs cannot get money damages against the State, and the injunctive and declaratory relief would not remedy Plaintiffs' injuries from sex trafficking, because they are not currently being trafficked.  State at 15, 28.  Importantly, this argument only applies to redressability as to the State, because Plaintiffs can get damages against the City Defendants.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

690–91(1978) (permitting Section 1983 lawsuits against municipalities for damages).

As to redressability against the State, Plaintiffs have asserted third-party standing on behalf of people currently being sex trafficked within Nevada's legalized prostitution system, and are seeking injunctive and declaratory relief for those individuals. ER-97–102 . Clark says Plaintiffs haven't pled the relevant close relationship for third-party standing. Clark at 53-54.[21]

The Supreme Court has noted that, while generally discouraged, plaintiffs may assert others' legal rights if they have a "close relationship with the person who possesses the right," and there is " a hindrance to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) (cleaned up).[22]

The Court noted that even these criteria are not absolute: "We have been quite forgiving with these criteria in certain circumstances," such as in the First Amendment context. *Kowalski*, 543 U.S. at 130 (cleaned up). *See also Sec'y of*

---

[21] Clark County incorrectly asserts that Plaintiffs have waived their right to respond to arguments about third-party standing. Clark at 55. Plaintiffs did not forfeit arguments related to third-party standing, because Plaintiffs briefed third-party standing in the court below and the district court did not make a ruling on this point, *see* ER-37, thus it was not at issue until Defendants raised it in their appellee briefs.

[22] Clark County conflates the more demanding next friend standing standard with third-party standing. Clark at 53.

*State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984) (finding third-party standing for professional fundraiser who worked for charities, even though the Plaintiff's own First Amendment rights weren't implicated and there was no showing that the affected charities couldn't bring their own lawsuit, due to the public interest in protecting First Amendment rights).

Close relationships are not determined by whether the relevant persons are emotionally close, *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003) (no third-party standing for former inmate who was current inmate's romantic partner) (internal citations omitted), but how closely the one can represent the other's interests. That is, where "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Singleton v. Wulff*, 428 U.S. 106, 115 (1976). *See also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1055 (9th Cir. 2002) (applying this principle and denying third-party standing to former nightclub operators challenging ordinance on behalf of former patrons, since they had no plans to return to the business).

As the Defendants noted, close relationships have included physician-patient and attorney-client relationships. *Kowalski v. Tesmer*, 543 U.S. at 128, 138 (internal citations omitted). But courts have also permitted third-party standing where a beer vendor challenged a law on behalf of her male customers. *Craig v.*

31

*Boren*, 429 U.S. 190, 195 (1976).  The law at issue forbade alcohol sales to men under 21, but allowed them to women over 18, and the beer seller was able to assert gender discrimination claims for her 18-20-year-old male customers.  *Id.*

Even more relevant for this case, a white property owner was sued for her failure to enforce a racially restrictive housing covenant, and in her defense successfully asserted third-party standing to bring equal protection claims on behalf of Black people.  *Barrows v. Jackson*, 346 U.S. 249, 251-53 (1953).  The Supreme Court ruled that the serious rights violations at issue warranted relaxing the third-party standing rules, as it "would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court," and given "the peculiar circumstances of this case, we believe the reasons which underlie our rule denying standing to raise another's rights…are outweighed by the need to protect the fundamental rights which would be denied by permitting the damages action to be maintained."  *Barrows v. Jackson*, 346 U.S. 249, 257 (1953) (internal citation omitted). The Court also cited *Pierce,* in which they had permitted private schools to assert the constitutional rights of parents and guardians and challenge a law (which did not apply to the private schools) requiring them to send their children to public schools.  *Barrows v. Jackson*, 346 U.S. 249, 257–58 (1953) (citing *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ("In other unique

situations which have arisen in the past, broad constitutional policy has led the Court to proceed without regard to its usual rule.").

The case the State cites for the claim that even if Plaintiffs can assert third-party standing, they must be entitled to prospective relief in their own right, State at 30, is about associational standing which is subject to a different standard. *Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1105–06 (9th Cir. 2006) (internal citations omitted).

By contrast, a Supreme Court case on third-party standing articulates this rule: "But even when we have allowed litigants to assert the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (cleaned up) (not requiring a plaintiff be eligible for the exact same relief to assert third-party standing).

Finally, third-party standing is supported by this Court's past language in *Charleston*:

> The Supreme Court has "recogniz[ed] that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129–31 (2004). Third-party standing may be the only practical way to assert the rights of enslaved human beings. *See, e.g.*, Neal Kumar Katyal, Note, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 Yale L.J. 791, 815, 819 (1993).

*Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020).

Plaintiffs are effective advocates to assert the rights of those still enslaved within the Nevada ecosystem.  Plaintiffs have sufficiently alleged an injury by the Defendants' legalized prostitution system, since they were sex trafficked by legal, licensed businesses, and the court below found they had stated a claim for sex trafficking against two of them.  ER-41–45.  They are not concerned bystanders, but suffered the exact, severe rights violation as those whose rights they assert.

Plaintiffs have sufficiently alleged congruent interests with persons currently being sex trafficked by legal, licensed Nevada businesses, consistent with the close relationship prong's central principle.  And it is reasonable to infer that the very things that keep persons currently enslaved in Nevada's legalized prostitution system from asserting their own rights also keep them from forming the relationships that traditionally would have allowed someone to assert third-party standing on their behalf, like a doctor, therapist, attorney, or, as in *Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718, 732 (S.D. Ind.), *aff'd,* 838 F.3d 902 (7th Cir. 2016), a social services provider.

Plaintiffs have also sufficiently alleged the hindrance prong, as it is reasonable to infer that enslaved people, almost by definition, cannot assert their own rights while being actively controlled by others.  *See* ER at 97–98; *Charleston* at 949.  Even if someone was somehow able to file a lawsuit, it is reasonable to infer that they would almost certainly face retaliation from the person exploiting

34

them. This is particularly severe because where the State is concerned, it prevents

them from seeking injunctive and declarative relief when they actually need it, and

as soon as they are free and stable enough to pursue litigation, they have no

remedy. Indeed, Clark County concedes that enslaved people may not be able to

access the courts. Clark at 53.

Third-party standing is also prudential, so it can be waived or overridden;

the Supreme Court has been willing to relax the conditions, as described above, to

protect First Amendment rights. The right to be free from slavery is at least as

fundamental as the rights to freedom of speech, religion, and association,

particularly if the alternative is that state officials could violate a persons'

Thirteenth Amendment rights with impunity.

Given that Plaintiffs have themselves been injured as sex trafficking

survivors, have closely aligned interests with those still trafficked in the legalized

Nevada prostitution system, and are able to bring claims for those who, as still-

enslaved persons, are manifestly unable to do so for themselves, they are proper

parties to assert third-party standing and thus have sufficiently alleged

redressability for injunctive and declaratory relief.

Accordingly, because Plaintiffs have sufficiently alleged that Government

Defendants injured them by profiting from their abuse, substantially motivated the

Sex Industry Defendants to engage in the abuse, and have appropriately invoked

third-party standing on behalf of those continuing to be abused in the legal sex industry, they have sufficiently alleged standing.

## CONCLUSION

For the foregoing reasons, the District Court's dismissal of the Government Defendants for lack of standing should be reversed, and the case remanded for consideration of Plaintiffs' claims on the merits.

DATED this 5th day of September, 2023

*s/ Christen M. Price*
Jason D. Guinasso (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

Benjamin W. Bull (SBN#388206)
Peter A. Gentala (SBN#021789)
Dani Bianculli Pinter (SBN#120441)
Christen M. Price (SBN#1016277)
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Attorneys for Appellants*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
**Form 8. Certificate of Compliance for Briefs**
*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*
**9th Cir. Case Number(s)** No. 22-16859

I am the attorney or self-represented party.

**This brief contains  8,326  words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.

29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[x] complies with the longer length limit permitted by Cir. R. 32-2(b) because

*(select only one)*:

> [ ] it is a joint brief submitted by separately represented parties;
> [x] a party or parties are filing a single brief in response to multiple briefs; or
> [ ] a party or parties are filing a single brief in response to a longer joint
> brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   s/ Christen M. Price        **Date:** September 5, 2023

37

# ADDENDUM

Except for the following, all applicable statutes, etc., are contained in the

Addendum to Appellants' Opening Brief.

ADDENDUM…………………………………………………………………………1

Fed. Rules Civ. Proc. Rule 46……………………………………………………3

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs &
  Annos)
    Title VI. Trials

Federal Rules of Civil Procedure Rule 46

Rule 46. Objecting to a Ruling or Order

A formal exception to a ruling or order is unnecessary. When the ruling or order is requested or made, a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection. Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made.

ADD-3