**No. 22-16859**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

ANGELA WILLIAMS, JANE DOE #1, AND JANE DOE #2,

*Plaintiffs-Appellants*,

v.

JOSEPH LOMBARDO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
NEVADA; AARON FORD, IN HIS OFFICIAL CAPACITY AS ATTORNEY
GENERAL OF NEVADA, CITY OF LAS VEGAS, CLARK COUNTY, AND NYE
COUNTY

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Nevada
No. 2:21-CV-01676
Hon. Andrew P. Gordon

_____

**APPELLANTS' PETITION FOR REHEARING
OR REHEARING EN BANC**

_____

Jason D. Guinasso (SBN# 8478)
Hutchison & Steffen, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

1

Benjamin W. Bull (SBN#388206)
Peter A. Gentala (SBN#021789)
Dani Bianculli Pinter (SBN#120441)
Christen M. Price (SBN#1016277)
National Center on Sexual Exploitation
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Attorneys for Appellants Angela Williams,
Jane Doe #1, and Jane Doe #2*

## INTRODUCTION/RULE 35(b) STATEMENT

Rape for profit was a cornerstone of American chattel slavery. As a system, it was formally abolished with the Thirteenth Amendment. Yet it persists within Nevada's legalized prostitution scheme, where government entities collude with private actors to facilitate and profit from sex trafficking, blatantly defying the Thirteenth Amendment and Trafficking Victims Protection Act (TVPRA).

This case is about that ecosystem: at issue is whether survivors of it have standing to sue the Government Defendants for their central role in it.  Government Defendants are not bystanders in their own legal system; they are instigators, who persuaded the panel to adopt a heightened standard for standing, and thus to extend the impunity they have enjoyed for so long.  The panel effectively ruled that any other person – even a co-defendant – contributing to Plaintiffs' injuries defeats causation as to the Government Defendants, absent governmental coercion.

En banc review is necessary to maintain consistent, uniform Ninth Circuit standing decisions, because the panel's causation rule conflicts with Supreme Court precedent, Ninth Circuit precedent, and every other federal circuit's precedent.

Additionally, en banc review is needed because this case presents questions of exceptional importance: whether government officials can be sued when they

enable and benefit from sex trafficking, and whether a federal court considering those questions *de novo* can essentially bypass them in an under-reasoned decision.

Accordingly, Plaintiffs request rehearing en banc, or in the alternative, rehearing and reconsideration by the panel.

## BACKGROUND

Plaintiffs were sex trafficked by legal, licensed businesses in Nevada: an escort agency, Chicken Ranch Brothel, and Sapphire and Hustler strip clubs (Sex Industry Defendants). Plaintiffs sued the Nevada Governor and Attorney General (State Defendants), Clark County, the City of Las Vegas, and Nye County (City Defendants) (collectively, Government Defendants), and Sex Industry Defendants, alleging Thirteenth Amendment and TVPRA violations through perpetrating, facilitating, and benefiting from sex trafficking. ER-130. As to Government Defendants, Plaintiffs alleged, in part:

- Federal policy, international law, and academic research regarding prostitution recognize it as sexual exploitation leading to sex trafficking.[1]

---

[1] ER-64–65, 72–75, 79.

- Nevada has legalized prostitution – explicitly in rural brothels, and implicitly through "entertainment by referral service,"[2] escorting, and strip clubs elsewhere.[3]

- Nevada's legalized prostitution system, as a condition of licensing, requires women to be controlled by pimps:  the State and Nye County require women in rural prostitution to be under a brothel's control, Las Vegas requires escorts to be controlled by an escort agency, and Clark County requires women receiving strip club licenses to be under a strip club's control.[4]

- The State Defendants require women in brothel prostitution (but not the men buying them) to submit to forced weekly STI testing, at their own expense.[5]

- The State and Nye County permit brothels to lock women inside for weeks at a time, prevent them from having their own transportation, and take a 50% cut of the fees.[6]

---

[2] Nevada permits escorting and "entertainment by referral service" throughout the state, which are euphemisms for prostitution. ER-68.1 Nevada defines "entertainment by referral service" to anticipate, if not outright compel, that "entertainers" be managed by an agency. *See* NEV. REV. STAT. § 244.345(8)(a).

[3] ER-68-72.

[4] ER-68-72.

[5] ER-67 (citing NEV. ADMIN. CODE § 441A.800).

[6] ER-69–70.

- Nye County did not screen Jane Doe #1 for sex trafficking or even check her ID when issuing her brothel license (she didn't have an ID; her trafficker had confiscated it).[7]

- Government Defendants permit brothels and strip clubs to coerce women through debt.

- Angela William's trafficker, Defendant Jamal Rashid, was a paid informant for the Las Vegas police, ER-74, 79–80.

- A brothel owner sits on a county commission, which regulates his brothel, ER-68.

- The sex trade is driven by sex buying, and legalized prostitution increases both demand and sex trafficking.[8]

- Despite having a disproportionately large sex trade, Government Defendants do not vigorously enforce sex trafficking laws.[9]

- Government Defendants profit from sex trafficking through taxes and licensing fees.[10]

The district court ruled that Plaintiffs stated claims for perpetrating and benefiting from sex trafficking against Chicken Ranch for coercing Jane Doe #1's

---

[7] ER-88.
[8] ER 72–75.
[9] ER-72–75.
[10] ER-74–75.

commercial sex acts through debt bondage, and Sapphire for providing Jane Doe #2 for commercial sex acts to its patrons, knowing that they were sexually assaulting her.  ER-41–45.

The district court dismissed the Government Defendants with prejudice, finding that because various individual pimps/traffickers and sex buyers exploited Plaintiffs, independent third parties broke the causal chain, defeating standing. ER-36. The ruling ignored most of Plaintiffs' Government Defendant-specific allegations, save claims that Nevada's legalized prostitution increases the illegal sex trade and that Nevada did not enforce its minimal prostitution regulations. ER-36 .  Plaintiffs appealed, ER-107, 140, arguing:

- Plaintiffs sufficiently alleged Government Defendants injured them directly by monetizing their abuse and forcing Jane Doe #1 to undergo STI testing;[11]

- Sex Industry Defendants, who directly injured Plaintiffs by sex trafficking them, are not independent third parties, but co-defendants before the court;

- Plaintiffs need only trace their injuries from Sex Industry Defendants (not third-party pimps or sex buyers) to Government Defendants for causation;

---

[11] As Plaintiffs alleged, one-sided, forcible STI testing of prostituted women has long been part of the abuse they experience. *See* ER-62.

- Plaintiffs alleged numerous facts that the district court appeared to ignore, including Government Defendants' requiring women in prostitution to be controlled by pimps;

- Finding no causation would undermine Ninth Circuit precedent on allegations deemed sufficient on a motion to dismiss, especially as to government action's predictable effects; and

- Such a finding would also undermine federal law, as the Thirteenth Amendment and TVPRA forbid enabling and profiting from slavery, which by definition involve third parties' bad acts.

Pls. Opening Br. at 31-68.

On December 7, 2023, the panel issued a memorandum decision, without oral argument, affirming the district court and denying leave to amend, subjecting plaintiffs to a new, narrowed causation rule. The panel's causation analysis, in its entirety, reads:

> The district court correctly concluded that plaintiffs lack Article III standing to sue the government defendants because plaintiffs' injuries are the result of allegedly illegal third-party conduct in Nevada's commercial sex industry. While the government defendants have various roles in regulating that industry, the injuries plaintiffs suffered were allegedly inflicted by the "independent action[s]" of third parties, *Lujan*, 504 U.S. at 560—namely, the traffickers, escort agencies, strip clubs, and brothels who were also named in their complaint. Plaintiffs' allegations are therefore insufficient to support traceability under Article III. *See id.* When plaintiffs raise claims based on government action or inaction, they must sufficiently allege that government defendants' actions "exert[ ] a 'determinative

or coercive effect' on the third-party conduct that directly causes the[ir] injury." *WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1217 (9th Cir. 2023) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Plaintiffs' allegations do not meet that standard, especially when by the allegations of the complaint certain third parties engaged in conduct that violated federal and state laws against sex trafficking.[12]

*Williams v. Sisolak*, No. 22-16859, 2023 WL 8469159, at *1 (9th Cir. Dec. 7, 2023). The panel summarily denied leave to amend, stating without explanation that amendment would be futile. *Id.* at *2.

## ARGUMENT

En banc review is appropriate where "necessary to secure or maintain uniformity of the court's decisions," or where "the proceeding involves a question of exceptional importance." Fed. R. Civ. P. 35(a). *See also* Fed. R. App. P. 35(a). Rehearing en banc is appropriate here, because the panel's decision conflicts with the Supreme Court, Ninth Circuit, and other federal circuits, and because at issue are exceptionally important questions concerning the constitutional right to be free from slavery.

I. **Because the panel imposed a new standard for alleging causation, en banc review is necessary to secure and maintain uniformity of the Ninth Circuit's decisions.**

### A. The panel decision conflicts with Supreme Court precedent.

---

[12] The panel spends twice as much space restating the standard of review and relevant law as on this analysis. 2023 WL 8469159, at *1.

The Supreme Court has ruled that where plaintiffs' injuries are caused by the government regulating someone else, and causation "depends on the unfettered choices made by independent actors not before the courts," standing is possible, but plaintiffs must do more to establish it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992) (cleaned up).

Notably, this rule is about third parties, not parties to a case. The Court is reluctant to speculate "about the decisions of independent actors," unless the plaintiff shows "third parties will likely react in predictable ways." *California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (cleaned up).

This is true even if the predictable response amounts to illegal behavior. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565–66 (2019) (causation established in challenge to census citizenship question, which would allegedly chill participation, even though refusal to participate or penalizing persons for census answers were both illegal).

Importantly, "the escort agencies, strip clubs, and brothels…named in [the] complaint," 2023 WL 8469159, at *1, were named as *defendants*, not "independent third parties." Plaintiffs are not suing Government Defendants for injuries from independent illegal traffickers, only harms they suffered while Sex Industry Defendants were sex trafficking them.

Even so, Plaintiffs also alleged that Sex Industry Defendants reacted in predictable ways to Government Defendants' legalized prostitution system: for example, Government Defendants force women in the sex trade to associate with pimps for licensure, virtually guaranteeing they will be trafficked. That is, legally mandated pimp control predictably leads to control by pimps.

By defining causation to exclude even contributory harm from other co-defendants, and by not considering the predictable effects of Government Defendants' actions, the panel impermissibly contravened Supreme Court precedent, imposing a much higher causation standard on Plaintiffs.

### B. The panel decision conflicts with Ninth Circuit precedent.

The Ninth Circuit, which is bound by Supreme Court decisions, requires an injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[.]" *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 905 (9th Cir. 2011)(cleaned up) (traceability can be based on government action causing predictable public perceptions and responses). And an injury can have multiple causes; a plaintiff "need not eliminate any other contributing causes to establish its standing." *Barnum*, 633 F.3d at 901 (cleaned up).

"To plausibly allege that the injury was not the result of the *independent* action of some third party," the plaintiff must show the "government's unlawful

conduct is at least a substantial factor motivating the third parties' actions." *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (cleaned up).

The panel cited *Maya*, but ignored most of that court's analysis, namely, that the plaintiffs sufficiently alleged standing at the motion to dismiss stage, even though the causal chain had numerous independent factors, including homebuyers defaulting on mortgages and mortgage assignees foreclosing on them. *Maya v. Centex Corp.*, 658 F.3d 1060, 1066 (9th Cir. 2011). The developers' decision to market homes to financially unsound buyers, finance those buyers, and hide that information was fairly traceable to decreased property values. 658 F.3d at 1064–65.

The Ninth Circuit also found that carbon emissions harm was sufficiently traceable to federal subsidies and leases, which authorized and incentivized "fossil fuel production, extraction, and transportation," because government policies were at least arguably "a substantial factor," even though independent third parties decided whether to extract the fossil fuels. *Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) (cleaned up).

The panel's ruling thus conflicts with Ninth Circuit precedent on at least three fronts: first, Plaintiffs alleged that Government Defendants injured them directly. For example, Plaintiffs alleged that the State mandated, and Nye County

enforced, forced STI testing on Jane Doe #1.  ER-67 (citing NEV. ADMIN. CODE § 441A.800). This is a government-specific injury, as it is a government requirement.

Second, the other relevant injuries were committed by Sex Industry Defendants, who are co-defendants and parties to this case.  The court is not forced to speculate about parties' actions.

Third, either way, as detailed above, Plaintiffs alleged facts showing Government Defendants' conduct was "a substantial factor motivating" Sex Industry Defendants' sex trafficking. For example, Government Defendants' regulations required Plaintiffs to be controlled by the businesses that trafficked them.  ER-68-72.  The panel mis-applies *WildEarth*, which says a government regulator's coercive or determinative effect is one way – not the only way – to show causation where a regulated third party causes the injury.  *See WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1217-18 (9th Cir. 2023). The *WildEarth* plaintiffs could not make that showing because the Forest Service did not have authority to regulate the conduct in question. *Id*. By contrast, the Government Defendants in this case *do* have regulatory authority over the co-defendants' conduct.

Thus, causation can be established by government actors incentivizing predictable, harmful activity, without necessarily compelling it.  Plaintiffs alleged

Government Defendants substantially motivated Sex Industry Defendants'
trafficking, through a regulatory regime that operates more like a protection racket.

By requiring Plaintiffs to allege Government Defendants either solely caused
or coerced their harm, and not considering whether Government Defendants
substantially motivated Sex Industry Defendants' conduct, the panel's decision
conflicts with Ninth Circuit causation standards.

### C. The panel decision conflicts with relevant precedent in other circuits.

No circuit treats the actions of a third party, and certainly not a co-defendant,
as an absolute bar to causation for Article III standing. *See, e.g.*, *Producers of
Renewables United for Integrity Truth & Transparency v. Env't Prot. Agency*, No.
19-9532, 2022 WL 538185, at *7–8 (10th Cir. Feb. 23, 2022) (cleaned up)
(causation concerns whether the "injury can be traced to the defendant's challenged
conduct, rather than to that of some other actor not before the court."); *J.B. v.
Woodard*, No. 20-1212, 2021 WL 1903214 (7th Cir. May 12, 2021), *reh'g denied*
(May 27, 2021) (cleaned up) (defendant's actions "need not be the very last step in
the chain of causation," if the injury is "fairly traceable" to the defendant and "the
independent action of some third party not before the court."); *Galaria v.
Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 390 (6th Cir. 2016) (traceability
excludes "cases in which a third party and not a party before the court causes the
injury.") (cleaned up); *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016)

(cleaned up) (causation is about whether the "injury could have been a consequence" of the defendant's actions "rather than…independent acts of some other person not before the court."); *Frank Krasner Enterprises, Ltd. v. Montgomery Cnty., MD*, 401 F.3d 230, 234–35 (4th Cir. 2005) **(**"We have …denied standing because the actions of an independent third party, who was not a party to the lawsuit, stood between the plaintiff and the challenged actions."); *Intell. Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001) (cleaned up) (causation cannot generally be based on "the independent action of some third party not before the court"); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 669–70 (D.C. Cir. 1996) (cleaned up) (causal links "presume certain independent actions of some third party not before this court.").

Courts look to conditions the defendant created for third-party conduct, such as negligence in data breach cases. *In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017) (finding causation as to defendant employer for data breach due to inadequate security systems, even though hackers committed the identity theft); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 158 (3d Cir. 2022 (finding causation as to defendant employer for data breach following phishing attack).

Courts also look to whether the third-party harmful conduct was a predictable effect of the defendant's actions. *Missouri v. Biden*, 83 F.4th 350, 370–71 (5th Cir. 2023), *cert. granted sub nom. Murthy v. Missouri*, No. 23-411,

2023 WL 6935337 (U.S. Oct. 20, 2023) (plaintiffs sufficiently showed third party social media platforms would "likely react in a predictable way" to government pressure, even though the government did not require content removal); *Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 95–96 (11th Cir. 2022) (cleaned up) ( suggesting third party conduct does not defeat standing if the plaintiff shows "third parties will likely react in predictable ways[.]"); *Wiener v. MIB Grp.*, Inc., 86 F.4th 76, 88 (1st Cir. 2023) (cleaned up) (causation is possible if defendant's actions had a predictable effect on third parties).

Thus, because it treats co-defendants' actions as independent third parties' actions, the panel's decision is also at odds with the precedent of every other federal appeals court.

**II.    This case presents questions of exceptional importance, because it concerns whether government actors can be sued for enabling and profiting from sex trafficking, whether courts may effectively nullify federal rights through standing doctrine, and whether courts may sidestep *de novo* review in an appeal as of right.**

**A. This case concerns government actors implicated in systemic human rights abuses and whether federal laws providing recourse against them may be nullified by standing doctrine.**

Whether Plaintiffs have sufficiently alleged causation for 1983 claims against government actors under the Thirteenth Amendment and TVPRA is a question of national importance.  The Thirteenth Amendment, unlike other constitutional rights, is not just a restriction on government behavior; it requires

16

affirmative action from government entities: when it was ratified, independent, private actors were a constant threat to newly freed people, and states could be held responsible for not controlling them. *See* Neal Kumar Katyal, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 Yale L.J. 791, 817, 820–22 n.171-175 (1993) (internal citations omitted). Had there been a rule that private third-party involvement destroyed standing, regardless of what state actors did to enable or collude with them, the Amendment would have been dead on arrival.

Slavery is an essentially private enterprise, so it is functionally decriminalized wherever government officials refuse to enforce laws against it. And if those charged with enforcing laws against slavery are themselves violators, and Plaintiffs cannot sue them, they are without recourse to secure rights the constitution guarantees them. Yet the panel's perfunctory decision gives no weight to what's at issue: whether formerly enslaved women may sue the government that profited from their rape deserves more than 178 words.

Additionally, the TVPRA provides for civil liability for traffickers and those who benefit from what they should know is trafficking, 18 U.S.C. § 1595(a), meaning an entity can be liable for enabling and profiting, even without directly causing the injury. As the rapes perpetrated by sex buyers are the primary source of

sexual assault and other violence, *see* ER-75–97, numerous third parties' independent decisions (to buy sexual access) are always present in sex trafficking.

Following the court's logic to its end would make profiting from sex trafficking almost non-actionable, directly contravening 1595(a)'s purpose, and effectively nullifying beneficiary liability under it. Thus, the panel's rule undermines federal constitutional and statutory rights, presenting questions of exceptional importance.

### B. The panel's decision was under-reasoned and contained multiple errors, depriving Plaintiffs of genuine appellate review.

The panel's decision devoted 356 words to the standard of review and relevant rule (but only 247 words on the actual analysis), yet failed to mention – and then disregarded – the motion to dismiss standard, which requires that Plaintiffs' factual allegations be presumed true and all reasonable inferences be drawn in their favor. *See In re Tracht Gut, LLC,* 836 F.3d 1146, 1150 (9th Cir. 2016).

The panel did not acknowledge, let alone presume the truth of, almost any of Plaintiffs' facts implicating Government Defendants, even facts the Government Defendants admitted to: Nye County conceded that it does not screen women for sex trafficking before issuing brothel licenses, and sees no problem with the brothel locking women inside and not letting them leave if they owed the brothel

18

money (the County helpfully clarifies that it will not force any woman to return the brothel should she manage to escape). *See* Nye at 43. The panel drew no inferences in Plaintiffs' favor. The panel flipped the rule and instead presumed facts and inferences in the government's favor, including Government Defendants' claims that their system is highly regulated, they enforce their laws, and they cannot control their licensees' behavior. *See* State at 10-11, Clark at 35-36, 40, and Nye at 32-35.

Additionally, the decision does not explain what the case is about, why the Government Defendants are involved, or what other parties are involved – all of which are relevant to causation. Most of the "independent third parties" the panel referenced are not third parties at all, but co-defendants. The panel spends one sentence summarizing the case, and even gets that wrong – claiming Plaintiffs brought federal and state claims against the government. Plaintiffs' complaint, which the panel apparently did not review, contains no state law claims. ER-130.

The panel stated that nothing in the record indicated the district court had not considered all the Plaintiffs' allegations in its causation determination, 2023 WL 8469159, at *2, even though Plaintiffs reproduced nearly seven pages of Government Defendant-specific allegations the district court never mentioned, and noted that the district court mistakenly characterized the complaint as not

challenging the Government Defendants' STI testing regime, which, as a statutory requirement, is manifestly traceable to them. Pls Opening Br. at 32-38.

Curiously, the panel says Plaintiffs have not sufficiently alleged causation against Government Defendants because the third parties they regulate were breaking the law. This is question-begging: it directly contradicts Plaintiffs' allegations that Government Defendants were *themselves* breaking the law by colluding with Sex Industry Defendants.

The decision's errors suggest the panel did not even read the tables of contents in the briefs, let alone the briefs themselves.

The panel offered even less analysis than the district court, giving neither the district court nor the Plaintiffs meaningful guidance on how to proceed. The decision was only four paragraphs, and mostly devoted to summarizing the rules, rather than analyzing. It gave no reason for denying leave to amend as futile, especially as Plaintiffs only amended their complaint once to add another plaintiff, not to address causation, Pls Opening Br at 40. In short, the panel gave us their conclusions but not their reasons.

The decision's non-precedential nature makes its effects worse, since a reasoned precedent can be distinguished, but an under-reasoned memorandum leaves Plaintiffs without recourse *or* explanation. This suggests the panel intended

to foreclose this type of case without telling us why, thus the decision functioned more like a certiorari denial than a *de novo* appeal.[13]

Therefore, because at issue is whether sex trafficking survivors have standing to sue government entities that facilitated and profited from their exploitation, and because the panel decision deprived Plaintiffs of genuine appellate review, this case concerns questions of exceptional importance, and is appropriate for rehearing en banc.

///

///

///

///

///

///

///

///

_____

[13] By contrast, *Charleston* found lack of standing but provided a fully reasoned memorandum suggesting how plaintiffs might establish redressability. *Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020) (citing Neal Kumar Katyal, Note, Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution, 103 Yale L.J. 791, 815, 819 (1993)) ("Third-party standing may be the only practical way to assert the rights of enslaved human beings."). The court did not question causation, and its suggestion is inconsistent with causation being impossible to sufficiently allege.

## CONCLUSION

For the reasons explained above, the Court should grant the petition for rehearing or rehearing en banc.

DATED this 20th day of December, 2023

*s/ Christen M. Price*
Jason D. Guinasso (SBN# 8478)
HUTCHISON & STEFFEN, PLLC
5371 Kietzke Lane
Reno, NV 89511
775.853.8746
*jguinasso@hutchlegal.com*

Benjamin W. Bull (SBN#388206)
Peter A. Gentala (SBN#021789)
Dani Bianculli Pinter (SBN#120441)
Christen M. Price (SBN#1016277)
NATIONAL CENTER ON SEXUAL
EXPLOITATION
1201 F Street NW, Suite 200
Washington, DC 20004
202.393.7245
*lawcenter@ncose.com*

*Attorneys for Appellants*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
Form 8. Certificate of Compliance for Briefs**
*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*
**9th Cir. Case Number(s)** No. 22-16859

I am the attorney or self-represented party.

**This petition contains 3,912 words,** excluding the items exempted by Fed.

R. App. P. 32(f). The petition's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this petition *(select only one)*:

[ x ] complies with the word limit of Cir. R. 40-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.

29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because

*(select only one)*:

      [ ] it is a joint brief submitted by separately represented parties;
      [ ] a party or parties are filing a single brief in response to multiple briefs; or
      [ ] a party or parties are filing a single brief in response to a longer joint
      brief.
[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___s/ Christen M. Price_____ **Date:** December 20, 2023 _____